UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
DURAVEST, INC.,

       Plaintiff,

  - against -

VISCARDI, AG, WOLLMUTH MAHER & DEUTSCH,          07 Civ. 10590 (JSR)
LLP, MASON H. DRAKE, ESQ., BRUCE O'DONNELL,
CPA, BRUCE O' DONNELL CPA/PFS, P.A.,
BIOMEDICAL CONSULTANT SL, RICHARD
MARKOLL, and ERNESTINE BINDER MARKOLL,

       Defendants.
-------------------------------------------------------------------X

## MEMORANDUM OF LAW OF DEFENDANTS BRUCE O'DONNELL, CPA AND BRUCE O'DONNELL CPA/PFS, P.A. IN SUPPORT OF MOTION TO DISMISS

Of Counsel
      Stephen Jacobs (SJ 4437)
      Ameet B. Kabrawala (AK 2976)

LANDMAN CORSI BALLAINE & FORD P.C.
120 Broadway
NEW YORK, N.Y. 10271-0079
(212) 238-4800

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.    The Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.    Lawyer Defendants' Answer and Cross-Claims . . . . . . . . . . . . . . . . . . . . . . . 9

    C.    Documents Referenced in the Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    I.    APPLICABLE LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    II.    PLAINTIFF'S RICO CLAIMS AGAINST O'DONNELL
          SHOULD BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

          A.    Plaintiff Fails to Plausibly Allege an "Enterprise" . . . . . . . . . . . . . . . . . 13

          B.    Plaintiff Fails to Allege RICO Participation by O'Donnell . . . . . . . . . . 14

          C.    Plaintiff Has Failed to Adequately Allege Predicate Acts . . . . . . . . . . . 16

          D.    Plaintiff Has Failed to Allege a Pattern of Racketeering Activity . . . . . 19

          E.    Plaintiff's Conspiracy Claim Under Section 18 U.S.C. §1962(d)
              Also Fails . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    III.    THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL
          JURISDICTION OVER THE STATE LAW CLAIMS . . . . . . . . . . . . . . . . . . 23

    IV.    IN THE ALTERNATIVE, THE FRAUD AND BREACH OF
          CONTRACT CLAIMS AGAINST O'DONNELL SHOULD BE
          DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

TABLE OF AUTHORITIES

CASES

A. Terzi Productions, Inc. v. Theatrical Protective Union,
  2 F. Supp. 2d 485 (S.D.N.Y. 1998) ........................................................................... 17

American Arbitration Association, Inc. v. DeFonseca,
  No. 93 Civ. 2424, 1996 U.S. Dist. LEXIS 9160 (S.D.N.Y. June 28, 1996) ............................... 22

Bell Atlantic Corp. v. Twombly,
  127 S. Ct. 1955 (2007) .................................................................................... 11, 12

Bernstein v. Misk,
  948 F. Supp. 228 (E.D.N.Y. 1997) .......................................................................... 21

Caravella v. Hearthwood Homes, Inc.,
  No. 05-CV-1529, 2007 U.S. Dist. LEXIS 72417 (N.D.N.Y. Sept. 27, 2007) ........................... 20

Casio Computer Co. Ltd. v. Sayo,
  1999 U.S. Dist. LEXIS 14675 (S.D.N.Y. 1999) ...................................................... 20, 21

Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,
  187 F.3d 229 (2d Cir. 1999) ............................................................................... 19

Cortec Industrial Inc. v. Sum Holding LP,
  949 F.2d 42 (2d Cir. 1991) ................................................................................ 10

Davis Lee Pharmacy, Inc. v. Manhattan Central Capital Corp.,
  327 F. Supp. 2d 159 (E.D.N.Y. 2004) ................................................................. 12, 13

De Falco v. Bernas,
  244 F.3d 286 (2d Cir. 2001) ............................................................................... 21

Department of Economic Development v. Arthur Andersen & Co.,
  924 F. Supp. 449 (S.D.N.Y. 1996) ........................................................................ 15

Diven v. Amalgamated Transit Union International & Local 689,
  38 F.3d 598 (D.C. Cir. 1994) .............................................................................. 23

FD Prop. Holding, Inc. v. US Traffic Corp.,
  206 F. Supp. 2d 362 (E.D.N.Y. 2002) ..................................................................... 21

Feigenbaum v. Marble of America, Inc.,
  735 F. Supp. 79 (S.D.N.Y. 1990) .......................................................................... 24

First Capital Asset Mgmt. v. Satinwood, Inc.,
  385 F.3d 159 (2d Cir. 2004) ............................................................... 13, 20, 21, 22

First Nationwide Bank v. Gelt Funding Corp.,
   820 F. Supp. 89 (S.D.N.Y. 1993) ................................................................. 14

Freedom Holdings, Inc. v. Spitzer,
   357 F.3d 205 (2d Cir. 2004) ....................................................................... 11

GICC Capital Corp. v. Technology Finance Group, Inc.,
   67 F.3d 463 (2d Cir. 1995) .................................................................... 19, 21

Greenes v. Empire Blue Cross & Blue Shield,
   No. 92 Civ. 8599, 1996 U.S. Dist. LEXIS 16469 (S.D.N.Y. Nov. 4, 1996) ............ 18

H. J. Inc. v. Northwestern Bell,
   492 U.S. 229, 239 (1989) ....................................................................... 19, 20

Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison,
   955 F. Supp. 248 (S.D.N.Y. 1997) ............................................................... 15

Hecht v. Commerce Clearing House, Inc.,
   897 F.2d 21 (2d Cir. 1990) ......................................................................... 22

Indian Harbor Insurance Co. v. Global Transport System, Inc.,
   191 F. Supp. 2d 400 (S.D.N.Y. 2002) ........................................................... 10

Inn Chu Trading Co. v. Sara Lee Corp.,
   810 F. Supp. 501 (S.D.N.Y. 1992) ............................................................... 24

Iqbal v. Hasty,
   490 F.3d 143 (2d Cir. 2007) ....................................................................... 11

Island Lathing & Plastering v. Travelers Indemnity Co.,
   161 F. Supp. 2d 278 (S.D.N.Y. 2001) ........................................................... 10

Katzman v. Victoria's Secret Catalogue,
   167 F.R.D. 649 (S.D.N.Y. 1996) ................................................................. 12

Marks v. New York University,
   61 F. Supp. 2d 81 (S.D.N.Y. 1999) ............................................................. 25

Mathon v. Marine Midland Bank, N.A.,
   875 F. Supp. 986 (E.D.N.Y. 1995) ............................................................... 12

Mills v. Polar Molecular Corp.,
   12 F.3d 1170 (2d Cir. 1993) ....................................................................... 17

Moore v. PaineWebber, Inc.,
   189 F.3d 165 (2d Cir. 1999) ....................................................................... 16

Morin v. Trupin,
  711 F. Supp. 97 (S.D.N.Y. 1989) .................................................................. 22

Naso v. Park,
  850 F. Supp. 264 (S.D.N.Y. 1994) ................................................................ 22

Pension Plan of Public Service Co. of New Hampshire v. KPMG Peat Marwick,
  815 F.Supp. 52 (D.N.H. 1993) ...................................................................... 24

Plount v. American Home Assurance Co., Inc.,
  668 F. Supp. 204 (S.D.N.Y. 1987) ................................................................ 17

Powers v. British Vita, P.L.C.,
  57 F.3d 176 (2d Cir. 1995) ............................................................................. 18

Reves v. Ernst & Young,
  507 U.S. 170 (1993) ................................................................................ 14, 15

Rothberg v. Chloe Foods Corp.,
  2007 U.S. Dist. LEXIS 53914 (E.D.N.Y. July 25, 2007) ............................. 16

S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.,
  84 F.3d 629 (2d Cir. 1996) ............................................................................. 17

Schlaifer Nance & Co. v. Estate of Warhol,
  119 F.3d 91 (2d Cir. 1997) ............................................................................. 21

Schmidt v. Fleet Bank,
  16 F. Supp. 2d 340 (S.D.N.Y. 1998) .............................................................. 12

Schmidt v. Fleet Bank,
  No. 96 Civ. 5030, 1998 U.S. Dist. LEXIS 1041 (S.D.N.Y. Feb. 4 1998) ................................. 16

Schreiber Distributing Co. v. Service-Well Furniture Co.,
  806 F.2d 1393 (9th Cir. 1986) ....................................................................... 18

Sedima, S.P.L.R. v. Imrex Co.,
  473 U.S. 479 (1985) ....................................................................................... 17

Shields v. CityTrust Bancorp, Inc.,
  25 F.3d 1124 (2d Cir. 1994) ..................................................................... 16, 18

Tavakoli-Azar v. Crescent Mgmt., Inc.,
  No. 97 Civ. 0696, 1999 U.S. Dist. LEXIS 17944 (S.D.N.Y. Nov. 18, 1999) ........................... 18

Thompkins v. Lil' Joe Records, Inc.,
  476 F.3d 1294 (11th Cir. 2007) ..................................................................... 24

USA Certified Merchs., LLC v. Koebel,
  262 F. Supp. 2d 319 (S.D.N.Y. 2003) ..................................................... 13, 16, 18

U.S. v. Bonanno,
  683 F. Supp. 1411 (S.D.N.Y. 1988), *aff'd*, 879 F.2d 20 (2d Cir. 1989) ................................... 22

U.S. v. Diaz,
  176 F.3d 52 (2d Cir. 1999) ........................................................................................... 19, 20

U.S. v. Indelicato,
865 F.2d 1370 (2d Cir. 1989) ............................................................................................ 19

U.S. Fire Insurance Co. v. United Limousine Service, Inc.,
  303 F. Supp. 2d 432 (S.D.N.Y. 2004) ............................................................................... 15

West 79th St. Corp. v. Congregation Kahl Minchas Chinuch,
  No. 03 Civ. 8606, 2004 U.S. Dist. LEXIS 19501 (S.D.N.Y. Sept. 30, 2004) ........................... 15

## STATUTES

15 U.S.C. § 1 ............................................................................................................... 12

15 U.S.C. §77 (l) ............................................................................................................ 9

15 U.S.C. §78 (J) ............................................................................................................ 9

18 U.S.C. § 1341 ........................................................................................................... 16

18 U.S.C. § 1343 ........................................................................................................... 16

28 U.S.C. § 1367 ...................................................................................................... 1, 23

18 U.S.C. § 1961(4) .................................................................................................. 13, 16

18 U.S.C. §1962(c) and (d) ..................................................................................... passim

18 U.S.C. § 1964(c) ....................................................................................................... 13

## RULES

Fed.R.Civ.P. 8 ............................................................................................................ 11

Fed.R.Civ.P. 9 ...................................................................................................... passim

Fed.R.Civ.P. 12 .................................................................................................. 1, 10, 11

Defendants Bruce O'Donnell, CPA and Bruce O'Donnell, CPA/PFS, P.A. (together, "O'Donnell") respectfully submit this memorandum of law in support of their motion to dismiss (1) the claim of plaintiff Duravest, Inc. ("Duravest") under the Racketeer Influenced and Corrupt Organizations Act ("RICO") pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure ("FRCP"); (2) the three state law claims against O'Donnell for lack of subject matter jurisdiction, pursuant to FRCP 12(b)(1) and 28 U.S.C. § 1367; and (3) in the alternative, plaintiff's fraud and breach of contract claims for failure to state a claim, pursuant to FRCP 12(b)(6) and 9(b).

## INTRODUCTION

Plaintiff claims to have incurred losses arising from its 2005 purchase of all the shares of Bio-Magnetic Therapy Systems, Inc., ("BMTS"), previously majority owned by its then CEO, defendant Richard Markoll ("Mr. Markoll") (together with defendants Ernestine Binder Markoll, his wife, and Biomedical Consultant SL, the "Markoll Defendants"), and dealings with Mr. Markoll. Casting a wide net, plaintiff has also sued Viscardi, AG ("Viscardi"), the broker allegedly involved in the purchase; Wollmuth Maher & Deutsch, LLP and Mason H. Drake (together, the "Lawyer Defendants"), who allegedly provided some legal services to plaintiff; and O'Donnell, who provided routine accounting services to BMTS, including compiled financial statements, which plaintiff claims were deficient.

As set forth below, the rambling complaint is replete with vague and conclusory allegations. As explained in Point II, they fall far short of what is required to allege a valid RICO claim. As set forth in Point III, the Court should decline to exercise supplemental jurisdiction over the state law claims. Should it exercise such jurisdiction, however, the fraud and breach of contract claims should be dismissed for the reasons set forth in Point IV.

STATEMENT OF FACTS

A.    The Complaint

The complaint alleges that O'Donnell performed accounting work for BMTS and the Markolls since prior to 2000, communicating with them periodically regarding their personal financial condition and that of the company.  ¶¶127-29.[1]  Through April of 2006, it alleges, "the O'DONNELL Defendants *compiled* corporate information, data, and research on BMTS, INC., individually and d/b/a Bio-Medical Technologies, Inc." ¶131 (emphasis added)    Compiling a financial statement is markedly less involved than auditing or reviewing one.[2]

The complaint alleges that, in 2001, over five years before plaintiff began its takeover of BMTS, Mr. and Mrs. Markoll plead guilty to, or were convicted of, violations of the Food, Drug, and Cosmetic Act and mail fraud. ¶¶69-71.  Although the complaint alleges that "the MARKOLL Defendants failed to disclose and/or concealed their aforementioned criminal convictions and/or

---

[1] Unless otherwise noted, references to "¶" are to the complaint, Docket #1, a copy of which is attached as Exhibit A to the accompanying Declaration of Stephen Jacobs ("Jacobs Dec.").

[2] As explained in Goldwasser & Arnold, ACCOUNTANTS LIABILITY §1.2.1 at 1-10-11 (2007)(footnotes omitted):

> Today, the accounting profession recognizes three types of historical statement engagements: compilation, review, and audit. The compilation is the simplest... In performing a compilation, an accountant does not undertake any procedures to verify the accuracy of the client's financial data, but simply assumes the data contained in the company's records to be complete and accurate. In compilation engagements, the accountant's only responsibility is to make sure that the data is reasonable, mathematically consistent, and free from any obvious errors. The resulting report specifically disclaims any opinion or assurance with respect to the accompanying financial data. Accordingly, any reliance upon the accuracy of compiled financial statements or on the possibility that fraud may be detected by a compilation engagement, is likely to be misplaced .

2

guilty pleas from DURAVEST prior to the Purchase," ¶¶72-73, plaintiff does not, and could not, claim that information regarding such matters was not public and readily available. Nor does plaintiff deny having knowledge of the criminal proceedings at the time of the purchase.

In or about November 2005, the complaint alleges that plaintiff paid approximately $1.2 million to existing shareholders of BMTS for their shares "based on the MARKOLL Defendants' representations as to the value of BMTS, INC., its business prospects, intellectual properly rights and assets, the contemplated transfer of the MARKOLL Defendants' intellectual property rights and assets, and the skills and reputation of its management, all of which were mostly or substantially untrue. ¶161. Plaintiff alleges that, "to provide operating capital to the company as part of the Purchase, between November and December of 2005, DURAVEST purchased all then-authorized shares of BMTS, INC.," transferring approximately $1,824,000 to BMTS. ¶157.[3]

As to O'Donnell's purported misconduct, the complaint includes an array of largely repetitive, frequently vague, and sometimes confusing allegations that defy easy capsulization. Accordingly, a representative sample of plaintiff's allegations appears below, with others appearing at ¶¶ 2, 6, 132, and 136-39 of the complaint:

Conclusory Allegations Regarding Profitability of BMTS

      83.    Prior to the Purchase, on or about May 31, 2005, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI intentionally and/or negligently and/or reckessly misrepresented BMTS to be profitable insofar as its

---

[3] In November 2005, plaintiff allegedly paid $800,000 to Mr. Markoll "based on the MARKOLL Defendants' representations as to the value of BMTS, INC., its business prospects, intellectual property rights and assets, the contemplated transfer of the MARKOLL Defendants' intellectual property rights and assets, and the skills and reputation of its management, all of which were mostly or substantially untrue." ¶160. Allegedly, plaintiff paid an additional $2,676,000 for an additional 2.65 million shares of BMTS in January 2006. ¶159.

operating income for 2004 in that they represented that such income exceeded its 2004 operating expenses.

84.    The aforestated pre-Purchase representations by the O'DONNELL Defendants, The MARKOLL Defendants, and Defendant VISCARDI that BMTS had earned operating income in fiscal years 2003 and/or 2004 income were without reasonable basis in fact, and these Defendants knew or should have known that such representations were without reasonable basis, contrary to General Accounting Principles ("GAP") [sic], and/or were outright false.

85.    Following the Purchase, on or about April 2006, the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARD's, receipt of substantial fees, proceeds, and/or commissions from the Purchase, the O'DONNELL Defendants, and the MARKOLL Defendants, restated 2005 pre-Purchase operating income and expenses for BMTS, so as to disclose for the first time that the company's operating income did not exceed operating expenses, and that BMTS was therefore not profitable dating back to the Purchase date.

90.    Prior to the Purchase, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI, caused 2003, 2004 and 2005 financial statements of BMTS. INC. to be issued and disseminated via the mail across state lines and/or faxed across state fines, containing material misrepresentations and/or omissions regarding significant elements of the business, financial condition, and future business prospects of BMTS, INC.

91.    The foregoing material misrepresentations and omissions supported previous oral and written representations, misrepresentations, and omissions made by the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI, regarding significant elements of the business, financial condition, and future business prospects of BMTS, INC.

Claimed Non-Disclosure, Non-Identification, or Lack of Documentation of Related Party Loans

86.    Following the Purchase, on or about April 2006, and the O'DONNELL, MARKOLL Defendants, and VISCARDI's receipt of substantial fees, proceeds, and/or commissions from the Purchase, the O'DONNELL Defendants, and the MARKOLL Defendants, for the first time, claimed the existence of "loans" due and payable from BMTS, INC. to the MARKOLL Defendants.

87.    The aforementioned loans to BMTS, INC. were not and have never been documented in amount, date, terms, or otherwise.

4

88. The O'DONNELL and MARKOLL Defendants' claims of loans due and payable to the MARKOLL Defendants from BMTS were and are a pretext for the looting of BMTS' operating capital provided by DURAVEST, by means of money wire transfers to the MARKOLL Defendants, in the guise "loan repayments."

134. The "restated" financial statements for BMTS, INC. issued in May 2005 contained material omissions in that certain of the items booked as "liabilities on behalf of the company were linked to related party transactions that were not stated to be such in the statements.

155. The MARKOLL Defendants' claim of being owed Six Hundred Thousand Dollars ($600,000) was part and parcel of a fraudulent scheme to serve as a pretext for conversion of post Purchase conversion of operating capital provided by plaintiff DURAVEST for their won [sic] exclusive use and enjoyment.

Conclusory Allegations of Conspiracy

133. In and prior to May of 2005, the O'DONNELL Defendants conspired with the MARKOLL Defendants to issue 'restated' financial statements for BMTS, INC. which, by virtue of their contact and relation with BMTS, INC. and its principals, they knew or should have known to be substantially or totally misleading and/or false.

Inconsistent and Vague Allegations of Intent

135. Prior to the Purchase, the O'DONNELL Defendants knew or should have known that there were none or insufficient proofs for many of the items listed on the financial statements.

150. On or about November 28, 2005, the O'DONNELL and MARKOLL Defendants, and defendant VISCARDI caused a letter to be sent to Plaintiff DURAVEST, containing representations which were fraudulent and/or reckless and/or negligent, in that they, amongst other things, denied related party transactions prior to the Purchase; they stood by the "accuracy" of knowingly false financial statements relating to BMTS, INC.; they misrepresented that there were no known litigation or claims against BMTS, INC. at the time of such letter, and they misrepresented the intentions of the MARKOLL Defendants, as members of BMTS, INC. management following the Purchase, to preserve funds received from Plaintiff DURAVEST in the Purchase as operating capital for BMTS, INC. following the Purchase.

5

To the extent these allegations are specific, they (a) are either refuted by the compiled financial statement referenced in the complaint, *see* Section C, *infra,* as in the case of purportedly undisclosed deferred compensation, or (b) make no sense, as in the case of liabilities shown in the balance sheet but purportedly lacking documentation or restatement of 2005 financials.[4]  The complaint's failure to allege how BMTS's financial condition was allegedly misrepresented in a way that could have damaged plaintiff, for example, by identifying the line items and amount involved, is inexcusable, given that plaintiff has had control of the corporate books and records since its purchase of BMTS allegedly over two years ago.

The complaint's first cause of action, for common law fraud against the Markoll Defendants, Viscardi, and O'Donnell, adds the following, additional conclusory allegations, among others *(see also* ¶¶ 163-64, 169):

> 165.    By means of the foregoing pre-Purchase material misrepresentations, but for which the Purchase would not have been made, and which resulted in the Purchase, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI committed a fraud at common law which damaged Plaintiff DURAVEST.

> 166.    By means of the foregoing post-Purchase misrepresentations as to the existence of pre-Purchase loans and deferred compensation "debts" owed to the MARKOLL Defendants, and which ultimately resulted in monetary transfers to the MARKOLL Defendants, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI committed a fraud at common law which damaged Plaintiff DURAVEST.

---

[4]  While O'Donnell vigorously denies that it ever committed an error in compiling the financials of BMTS, as a matter of common sense, the listing  as a payable or other liability on its balance sheet of either an unidentified related-party or an undocumented (or even fictitious) debt would not have inflated the value the company and thus could not have damaged plaintiff.  Similarly, since plaintiff alleges it purchased BMTS in 2005, it could not have been harmed by any purported errors in the company's 2005 financials, which, by definition, could not have been issued until 2006.

167. At the time of the Purchase, plaintiff justifiably relied upon the oral representations made by the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI.

168. Following the Purchase, during the time period that the MARKOLL Defendants held positions of management at BMTS, INC., plaintiff justifiably relied upon the oral representations made by the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI.

The complaint's second cause of action seeks $28.5 million, plus attorneys fees, costs, and interest, for violations of 18 U.S.C. §1962(c) and (d), against the Markoll Defendants, Viscardi, and O'Donnell.  It appears to define BMTS as the "enterprise" by virtue of the following:

177. At all relevant times herein, and by means of the foregoing activities, the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI, by means of their individual and collective participation therein, constituted "persons," and collectively controlled BMTS, INC. *(rendering it an "enterprise"* within the meaning of 18 U.S.C. §1962(c) and (d), up to the time of its purchase by Plaintiff when the MARKOLL DEFENDANTS relinquished day- today control over it, and during that time engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d).

¶177 (emphasis added).

Notwithstanding that the complaint had previously made clear that, by the end of 2005, plaintiff had purchased all the then-authorized shares of BMTS, ¶157, the RICO count alleges that:

182. There is a substantial threat that the Enterprise's racketeering activities will continue, as Defendants continue active in the business of selling biomagnetic therapies, including the fraudulent reselling of biomagnetic technologies which were sold to Plaintiff Duravest as part of the Purchase. The racketeering activities associated with the Enterprise constitute defendants' ordinary method of doing business.

¶182.

The RICO cause of action adds the following, additional conclusory allegations, among others (*see also* ¶¶ 172-74, 180, 183):

175.    The aforementioned November 28, 2005 correspondence, the FY2004 BMTS, INC. financial statement, the pre-Purchase sale presentations, and the post-Purchase monetary transfers totaling approximately Three Million Dollars ($3,000,000), constituted acts of fraud committed by and through interstate and international commerce, and affected interstate and international commerce within the meaning of 18 U.S.C. § 1962(c) and (d).

176.    The defendants conspired and operated the Enterprise knowingly and intentionally to defraud Plaintiff DURAVEST and others.

178.    The MARKOLL Defendants, the O'DONNELL Defendants, and VISCARDI, each, jointly and severally, as set forth above, participated in conducting the affairs of the enterprise, in violation of 18 U.S.C. § 1962(c) and (d).

179.    By means of the foregoing, and in violation of 18 U.S.C. § 1962(d), the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI, conspired to engage in a pattern of racketeering activity, as set forth above.

181.    At all relevant times herein, the O'DONNELL and MARKOLL Defendants, and Defendant VISCARDI, continue to attempt to market and sell the same biomagnetic technologies that were to have been acquired by Plaintiff DURAVEST and the rights to which were to be turned over to Plaintiff DURAVEST as part of the Purchase.

In five paragraphs, the complaint's fourth cause of action, for breach of contract against the

Markoll Defendants, Viscardi, and O'Donnell, alleges, among other things:

191.    The MARKOLL Defendants' aforementioned contacts with, and aid to, competitors of BMTS, INC. following the Purchase violated the terms and provisions of MR. MARKOLL's terms of employment with BMTS, INC., as set forth in a December 29, 2005 Consulting Agreement.

192.    By means of the concerted actions of the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI leading up to the Purchase, the terms and conditions of the Purchase were violated, constituting a breach of contract.

Nowhere does it allege that O'Donnell was party to any contract with plaintiff.

8

The complaint's eighth cause of action claims negligence by the Markoll Defendants, Viscard, and O'Donnell, alleging that they "had a duty to Plaintiff to reasonably and accurately portray the financial value, financial prospects, liabilities and prospective liabilities, accounts payable and accounts receivable of BMTS, INC." ¶220.

The complaint also alleges the following causes of action solely against defendants other than O'Donnell. The third cause of action alleges conversion by the Markoll Defendants. The fifth cause of action alleges professional malpractice by the Lawyer Defendants. The sixth and seventh causes of action, alleged only against the Markoll Defendants and Viscardi, claims violations of 15 U.S.C. §78 (J) and 15 U.S.C. §77 (l).

B.    Lawyer Defendants' Answer and Cross-Claims

On February 4, 2008, the Lawyer Defendants filed an answer and cross-claims. Jacobs Dec. Ex. B. Their First Defense asserts lack of subject matter jurisdiction and urges the Court not to exercise supplemental jurisdiction over the against claims them. According to the Third and Fifth Defenses, a Subscription Agreement, signed on November 25, 2005 by plaintiff and BMTS, stated in part:

4.    Representations

... the Subscriber hereby represents, warrants, acknowledges, covenants and agree as follows:

a.    Analysis of Investment. The undersigned has (1) analyzed and reviewed the investment and (2) had an opportunity to ask questions of and receive answers from BMTS officers and directors concerning subscription, and to obtain any additional information which BMTS possesses or can acquire that is necessary to verify the accuracy of the information furnished. In particular, the Subscriber acknowledges and agrees that the Subscriber has been given access to, or has been furnished with, all material books and records of BMTS and all

9

material contracts and documents.  All questions have been answered, and all additional information has been provided, all to the full satisfaction of the undersigned."

*        *        *

i.      Risk of Loss.  The Subscriber recognizes that an investment in the Shares is highly speculative and involves a substantial risk of loss of the entire investment, and involves significant and material risk.

The boilerplate two-paragraph cross-claims against all the other defendants, including O'Donnell, allege that any damages sustained by plaintiff were "by reason of the carelessness, recklessness, negligence and/or affirmative acts of omission or commission including, but not limited to, breach of contract, and/or warranty and/or statute by the co-defendants . . . ." ¶¶247, 249.

C.      Documents Referenced in the Complaint

The Accountants Report included with the 2004 and restated 2003 financials referenced in the complaint, Jacobs Dec. Ex. C at 3, is addressed to the Board of Directors and Stockholders of Bio-Magnetic Therapy Systems, Inc. and Subsidiaries.  Its second of two paragraphs states:

A compilation is limited to presenting, in the form of financial statements, information that is the representation of management.  We have not audited or reviewed the accompanying financial statements and, accordingly, do not express an opinion or any form of assurance on them.[5]

---

[5] Rule 12(b) permits the Court to consider those documents referenced in the complaint. *See Cortec Indus. Inc. v. Sum Holding LP*, 949 F.2d 42, 48 (2d Cir. 1991); *Indian Harbor Ins. Co. v. Global Transport System, Inc.*, 191 F.Supp 2d. 400 (S.D.N.Y. 2002); *Island Lathing & Plastering v. Travelers Indemnity Co.*, 161 F. Supp. 2d. 278, 282 (S.D.N.Y. 2001). Should the Court wish to consider any materials extrinsic to the pleadings, pursuant to FRCP 12(b), the Court may treat the motion as one for summary judgment and provide plaintiff a reasonable opportunity to present any additional material pertinent under Rule 56.

10

The following page lists among Current Liabilities "Deferred Compensation" of $656,261 and $826,261 as of December 31, 2003 and 2004, respectively. *Id*. at 2. Footnote 10 addresses these liabilities, noting that most relate to Mr. Markoll. *Id*. at 10.

In addition to Deferred Compensation, "Accounts payable and accrued expenses" of $1,755,037 and $1,557,208 are shown as of December 31, 2003 and 2004, respectively. *Id*. at 2. The balance sheet showed an Accumulated Deficit of $7,773,041 as of December 31, 2004. *Id*.

## ARGUMENT

### I.    APPLICABLE LEGAL STANDARDS

In considering a motion to dismiss pursuant to FRCP 12(b)(6), the Court accepts as true the facts alleged in the complaint and draws all reasonable inferences in favor of plaintiff. *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004). The Court's review of the Complaint, except as to allegations of fraud, mail fraud and wire fraud, which are governed by the heightened pleading requirement of Rule 9(b), *see infra*, is guided by the pleading standard set forth in Rule 8, requiring that a civil complaint "shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2).

Although the complaint "does not need detailed factual allegations" to survive a motion to dismiss, a "formulaic recitation of the elements of a cause of action" cannot suffice. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). At a minimum, the Supreme Court now requires that plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level...." *Id*. at 1965 (citation omitted). Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 1974; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007). If plaintiff "ha[s] not nudged its claims across the line from conceivable to plausible, [its]

complaint must be dismissed." *Twombly,* 127 S. Ct. at 1974.  For example, in the context of

pleading an agreement violative of Section 1 of the Sherman Act, 15 U.S.C. § 1, the Court required

"enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal

agreement." *Id.* at 1965.

II.     PLAINTIFF'S RICO CLAIMS AGAINST O'DONNELL SHOULD BE DISMISSED.

RICO provides for treble civil damages for injuries sustained by reason of a defendant's use

of racketeering-derived income to invest in, acquire, or control an enterprise engaged in or affecting

foreign or interstate commerce.  18 U.S.C. §§ 1962,1964(c).  Courts of this Circuit have noted that

RICO violations "must be reviewed with appreciation of the extreme sanctions [the statute] provides,

so that actions traditionally brought in state courts do not gain access to treble damages and attorneys

fees in federal court simply because they are cast in terms of RICO violations." *Mathon v. Marine*

*Midland Bank, N.A.*, 875 F. Supp. 986, 1001 (E.D.N.Y. 1995).[6]

"To state a claim for civil damages under RICO, a plaintiff has two pleading burdens.  First,

he must allege that the defendant has violated the substantive RICO statute." *Davis Lee Pharmacy,*

*Inc. v. Manhattan Cent. Capital Corp.*, 327 F. Supp. 2d 159, 163 (E.D.N.Y. 2004).  To state a claim

under § 1962(c), a plaintiff must plead:  (1) that the defendant (2) through the commissions of two

or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly to

---

[6] *See also Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998) ("[Civil RICO] is an unusually potent weapon - the litigation equivalent of a thermonuclear device ... [and] courts must always be on the lookout for the putative RICO case that is really nothing more than an ordinary fraud case clothed in the Emperor's trendy garb.") (internal quotation marks and citation omitted).  "Because the mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (internal quotation marks and citation omitted).

conduct or participate in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce. *See USA Certified Merchs., LLC v. Koebel*, 262 F. Supp. 2d 319, 332 (S.D.N.Y. 2003). Second, plaintiff must allege injury by reason of defendants' violation of Section 1962. *See* 18 U.S.C. § 1964(c); *Davis Lee Pharmacy*, 327 F. Supp. 2d at 163.

A.    Plaintiff Fails to Plausibly Allege an "Enterprise."

Plaintiff has failed to allege facts necessary to plausibly establish an "enterprise" within the meaning of RICO. "Enterprise" is defined by 18 U.S.C. § 1961(4) to include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity. *See First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004). A RICO enterprise is thus "a group of persons associated together for a common purpose of engaging in a course of conduct," the existence of which is proven "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *See id.* (citing *U.S. v. Turkette*, 452 U.S. 576, 583 (1981)). The enterprise must be separate from the pattern of racketeering activity, and distinct from the person conducting the affairs of the enterprise. *See First Capital*, 385 F.3d at 173 (citing *Turkette*, 452 U.S. at 583). The Second Circuit further requires that plaintiff allege that a nexus exist between the enterprise and the alleged racketeering activity. *See id.*, 385 F.3d at 174 (citation omitted).

Here, Paragraph 177 of the complaint appears to define BMTS as the "enterprise:"

At all relevant times herein, and by means of the foregoing activities, the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI, by means of their individual and collective participation therein, constituted "persons," and collectively controlled BMTS, INC. (rendering it an "enterprise" within the meaning of 18 U.S.C. § 1962(c) and (d), up to the time of its purchase by Plaintiff when the MARKOLL DEFENDANTS relinquished day-to-day control over

13

it, and during that time engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d).

But, the complaint's attempt to identify BMTS as the "enterprise"makes no sense in light of its allegations that there "is a substantial threat the Enterprise's racketeering activities will continue," ¶177, and plaintiff purchased all of the authorized shares of by the end of 2005, ¶157.

Nor does the complaint allege facts from which one could plausibly infer that O'Donnell "associated together" with the Markoll Defendants and Viscardi to form or use BMTS for the purpose of engaging in any course of conduct, whether lawful or unlawful. Plaintiff alleges in only the most conclusory way that O'Donnell was part of the enterprise. It alleges that O'Donnell "provided accounting service" to the Markoll Defendants and BMTS, ¶ 38, and that there were errors in the BMTS financial statements that O'Donnell compiled, but neither audited nor reviewed. Such allegations do not provide a plausible basis for inferring that O'Donnell shared a common unlawful purpose to violate RICO. *See First Nationwide Bank v. Gelt Funding Corp.*, 820 F. Supp. 89, 98 (S.D.N.Y. 1993) (dismissing RICO claim where complaint failed to allege how the perpetrators of a series of "discontinuous independent frauds" were associated together in an enterprise and "common sense" did not support the existence of such an enterprise).

B.    Plaintiff Fails to Allege RICO Participation by O'Donnell.

Pursuant to Section 1962(c), it is unlawful "for any person employed by or associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." In *Reves v. Ernst & Young*, 507 U.S. 170, 177, 179 (1993), the Supreme Court upheld the dismissal of a RICO claim against an outside accountant in the absence of a showing that it had played "*some* part in directing the enterprise's

14

affairs." The Court held that a party is not liable under Section 1962(c) unless such party participated "in the operation or management of the enterprise itself." *Id.* at 185. Significantly, "[i]n this Circuit, the 'operation and management' test is . . . extremely rigorous . . . ." *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 451-452 (S.D.N.Y. 2004) (*citing Schmidt*, 16 F. Supp. 2d at 346).

A long line of cases has kept outside accountants and lawyers from being dragged into RICO cases absent sufficient allegations that they have conducted or participated, directly or indirectly in the conduct of an enterprise's affairs through a pattern of racketeering activity. *See, e.g., Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248 (S.D.N.Y. 1997) ("it is well established that the provision of professional services by outsiders, such as accountants, to a racketeering enterprise, is insufficient to satisfy the participation requirement of RICO, since participation requires some part in directing the affairs of the enterprise itself"); *West 79th St. Corp. v. Congregation Kahl Minchas Chinuch*, No. 03 Civ. 8606, 2004 U.S. Dist. LEXIS 19501, at *43 (S.D.N.Y. Sept. 30, 2004) (quoting *Hayden* with approval); *Department of Econ. Dev't v. Arthur Andersen & Co.*, 924 F. Supp. 449, 465 (S.D.N.Y. 1996) (even accountants' fraudulent certification of misleading financial statements in aid of corporation's securities fraud does not constitute participation in operation and management of enterprise for purposes of assessing RICO liability).

Plaintiff's conclusory allegation that O'Donnell, among others, "participated in conducting the affairs of the enterprise," ¶178, does not adequately plead that O'Donnell played "*some* part in directing the enterprise's affairs." *Reves*, 507 U.S. at 179. Nowhere is it alleged that O'Donnell did

15

more than provide professional services, which are not sufficient, by themselves, to bring O'Donnell within the scope of Section 1962(c).[7]

C.    Plaintiff Has Failed To Adequately Allege Predicate Acts.

To state a RICO claim, plaintiff must allege that O'Donnell committed at least two or more racketeering predicate acts, as defined by 18 U.S.C. § 1961(1).  *Rothberg v. Chloe Foods Corp.*, 2007 U.S. Dist. LEXIS 53914, at *43 (E.D.N.Y. July 25, 2007).  Here, plaintiff claims that O'Donnell committed predicate acts of mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343. *See, e.g.,* ¶¶172-174.

It is well-settled that where the alleged predicate acts involve mail and wire fraud, the allegations must satisfy the particularity requirement of FRCP 9(b).  *See Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999) (citation omitted); *Koebel*, 262 F. Supp. 2d at 332 (citations omitted).  Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Although allegations of scienter - "malice, intent, knowledge, and other condition of mind of a person" - "may be averred generally," FRCP 9(b), "the relaxation of Rule 9(b)'s specificity requirement for scienter must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Shields v. CityTrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (internal quotation marks and citations omitted).

To state a predicate mail and wire fraud claim under RICO, the Complaint "must allege that the defendant made two predicate communications, via interstate commerce, that constitute a pattern

---

[7] Plaintiff's allegation that O'Donnell obtained either a fee or commission from professional services to the Markoll Defendants and BMTS is woefully insufficient to plead participation. *See Schmidt v. Fleet Bank*, No. 96 Civ. 5030, 1998 U.S. Dist. LEXIS 1041 (S.D.N.Y. Feb. 4, 1998) (dismissing RICO claim against attorney alleged to have profited from legal fees received from illegal scheme on the grounds that the plaintiff failed to satisfy *Reves*).

16

of racketeering activity." *Sedima, S.P.L.R. v. Imrex Co.*, 473 U.S. 479, 495-96 (1985). Moreover, allegations of mail and wire fraud predicate acts "should state the contents of the communications, who was involved, where and when they took place, and explain why they were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993); *A. Terzi Productions, Inc. v. Theatrical Protective Union*, 2 F. Supp. 2d 485, 499 (S.D.N.Y. 1998). Allegations of mail and wire fraud must also demonstrate (1) the existence of a scheme to defraud; (2) defendant's knowledge or intentional participation in such a scheme; and (3) the use of interstate mails or wires to further the fraudulent scheme. *See S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996) (citation omitted); *A. Terzi Productions*, 2 F. Supp. 2d at 499. "All of the concerns that dictate that fraud be pleaded with particularity exist with even greater urgency in civil RICO actions." *Plount v. American Home Assurance Co., Inc.*, 668 F. Supp. 204, 206 (S.D.N.Y. 1987).

The purported written and oral misrepresentations that form the basis of plaintiff's wire and mail fraud claims are alleged in only the most general terms and thus, fail to satisfy the pleading burden established by Rule 9(b). *See, e.g.*, ¶¶ 82-83, 133-34, 139, 168, 181, quoted in the Statement of Facts above. None of these paragraphs identify the date, circumstances, or content of a single communication between O'Donnell and plaintiff. Nor do they identify specific statements which are alleged to have been fraudulent or explain "why they were fraudulent." *See Mills*, 12 F.3d at 1176. Rather, they generally refer to entire "financial statements", and allege, in vague and sweeping language, that each of these "financial statements" contained one or more misrepresentations "and/or" omissions. *See, e.g.*, ¶¶132-33, 136-39. Plaintiff's vague claims about accounting errors are especially glaring, and any plea that plaintiff may make for discovery would ring hollow, because

17

plaintiff has controlled BMTS, and would have had access to BMT's corporate books and records, for over two years.[8]

Plaintiff's allegations are clearly insufficient to meet the particularity requirement of Rule 9(b).  *See, e.g., Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("We have interpreted Rule 9(b) to mean that the pleader must state the . . . specific content of the false representations."); *Tavakoli-Azar v. Crescent Mgmt., Inc.*, No. 97 Civ. 0696, 1999 U.S. Dist. LEXIS 17944, at *7 (S.D.N.Y. Nov. 18, 1999) (to satisfy particularity requirement, plaintiff must identify "precisely what statements were made in what documents or oral representations or what omissions were made"); *Greenes v. Empire Blue Cross & Blue Shield*, No. 92 Civ. 8599, 1996 U.S. Dist. LEXIS 16469, at *14 (S.D.N.Y. Nov. 4, 1996) (wire and mail fraud allegations dismissed where they failed, *inter alia*, to "indicate precisely what statement or omissions were made in what documents and the manner in which they misled plaintiffs").

Nor does the Complaint allege facts sufficient to give rise to a "strong inference" of any fraudulent intent on the part of O'Donnell.  Rule 9(b) also requires the plaintiff provide a factual basis for allegations of scienter that give rise to a strong inference of fraudulent intent.  *See Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995); *Koebel*, 262 F. Supp. 2d at 333.  A "strong inference" of fraudulent intent may be demonstrated "either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields*, 25 F.3d at 1128.

---

[8] To the extent the complaint purports to allege specific accounting mistakes, it is either disproved by the document upon which it relies or defies common sense.  *See supra* at 6,10-11.

18

Here, while plaintiff indiscriminately claims that O'Donnell, as well as the Markoll Defendants and Viscari, received "substantial fees, proceeds, and/or commissions from the Purchase," ¶85, plaintiff does not attempt to distinguish between these defendants, provides no elaboration as to the specific benefit allegedly received by O'Donnell for purportedly defrauding plaintiff, and does not specifically allege that O'Donnell received any compensation in addition to the regular fees it earned for its recurring services.

> D.     Plaintiff Has Failed to Allege a Pattern of Racketeering Activity.

Plaintiff has also failed to allege the requisite pattern of racketeering activity under Section 1962(c), namely: (1) at least two predicate acts of racketeering occurring within a ten-year period; (2) that the predicate acts are related to each other; and (3) that the predicate acts amount to, or pose a threat of, continued criminal activity. *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999) (*quoting H.J. Inc. v. Northwestern Bell*, 492 U.S. 229, 239 (1989)). While only two predicate acts are necessary, such acts may not be sufficient. *See U.S. v. Indelicato*, 865 F.2d 1370, 1375 (2d Cir. 1989). Rather, "the requirements of relatedness and continuity prevent the application of RICO to isolated and sporadic criminal acts." *U.S. v. Diaz*, 176 F.3d 52, 93 (2d Cir. 1999) (citing *Indelicato*, 865 F.2d at 1375-76). Thus, two isolated and separate acts of racketeering are not sufficient to constitute a "pattern." *Indelicato*, 865 F.2d at 1375-76. "The target of [RICO] is . . . not sporadic activity. The infiltration of legitimate business normally requires more than one 'racketeering activity' and the threat of continuing activity to be effective." *Indelicato*, 865 F.2d at 1376 (citing S. Rep. No. 91-617, at 158 (1969)). As a result, plaintiff must show that the racketeering predicates are "related" and amount to or pose a threat of "continuous" criminal activity. *See GICC Capital Corp. v. Technology Finance Group, Inc.*, 67 F.3d 463, 465-66 (2d Cir. 1995).

"Continuity" may be either "closed-ended" or "open-ended," referring either to "a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H. J. Inc.*, 492 U.S. at 241-42; *Diaz*, 176 F.3d at 93. A closed-ended pattern of racketeering activity consists of a series of related predicate acts that amount to continued criminal activity "extending over a substantial period of time." *First Capital*, 385 F.3d at 181 (internal quotation marks and citation omitted). "Predicate acts extending over a few weeks or months . . . do not satisfy this requirement." *H.J. Inc.*, 492 U.S. at 242; *Caravella v. Hearthwood Homes, Inc.*, No. 05-CV-1529, 2007 U.S. Dist. LEXIS 72417, at *20 (N.D.N.Y. Sept. 27, 2007). "Notably, the Second Circuit has never found a closed-ended pattern where the predicate acts spanned fewer than two years." *Id.*, 2007 U.S. Dist. LEXIS 72417, at *20 (internal quotation marks and citation omitted). "A RICO claim will typically fail when it relies upon a defendant's 'narrowly directed' actions toward a single fraudulent end with a limited goal lasting for a short period of time." *Casio Computer Co. Ltd. v. Sayo*, 1999 U.S. Dist. LEXIS 14675, at *40 (S.D.N.Y. 1999)(internal quotation marks and citation omitted).

Here, plaintiff's allegations suggest that the alleged racketeering activity took place over approximately six months, from on or about May 31, 2005,[9] when someone allegedly represented to plaintiff that BMTS was profitable, ¶¶ 82-83, to apparently the last alleged act of mail or wire fraud on November 28, 2005, when the Markoll Defendants, Viscardi, and O'Donnell allegedly "caused a letter to be sent" to plaintiff "containing representations which were fraudulent and/or reckless and/or negligent . . . ." ¶ 150. Even assuming that the Court could somehow look past

---

[9] The conduct that led to the Markolls' alleged 2001 pleas is not alleged to have involved O'Donnell in any way and, in any event, was not directed at plaintiff.

20

plaintiff's purchase of all the outstanding shares of BMTS in December 2005, it could not look past April 2006, when the complaint alleges that the purchase was completed. *Id.* ¶¶2, 9, 82-83. Clearly, this cannot satisfy the requirement for a "closed-ended" pattern of racketeering activity.[10]

To establish open-ended continuity, a plaintiff must allege past criminal conduct coupled with a threat of future criminal conduct. *First Capital*, 385 F.3d at 180 (citation omitted). Open-ended continuity is established when "an inherently unlawful act is performed at the behest of an enterprise whose business is racketeering activity." *De Falco v. Bernas*, 244 F.3d 286, 323 (2d Cir. 2001). Plaintiff's attempt to plead "open-ended" continuity by alleging that "[t]here is a substantial threat that the Enterprise's racketeering activities will continue . . . and that the racketeering activities associated with the Enterprise constitute defendants' ordinary method of doing business," ¶ 182, is, to put it mildly, not plausible, given that the complaint alleges that plaintiff purchased all the shares of BMTS, the alleged RICO enterprise, over two years ago.[11]

---

[10] Plaintiff's characterization of the alleged fraud amounts to nothing more than "fragmenting [single acts] into multiple acts simply to invoke RICO." *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997) (*citing Indelicato*, 865 F.2d at 1383). The complaint concerns a single alleged scheme with the single purportedly fraudulent goal of inducing plaintiff to purchase BMTS. *See* ¶¶2, 6, 9. The alleged scheme to induce plaintiff to purchase BMTS cannot be called a "multi-faceted scheme" where it involved only a limited number of participants and independent transactions occurring for less than two years. *See First Capital*, 385 F.3d at 181; *GICC Capital Corp.*, 67 F.3d at 466-69; *Casio*, 1999 U.S. Dist. LEXIS 14675, at *41.

[11] Where the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity. *Id.* (internal quotation marks and citation omitted). Plaintiff has alleged nothing from which one could plausibly infer anything other than a single fraudulent scheme. *See Bernstein v. Misk*, 948 F. Supp. 228, 237 (E.D.N.Y. 1997) ("To infer a threat of repeated fraud from a single alleged scheme would . . . render the pattern requirement meaningless.") (citation omitted). Further, plaintiff's allegation that the alleged racketeering activities constitute the defendants' "ordinary method of doing business" is wholly conclusory and unsupported by any specific factual allegations, and is therefore insufficient to establish open-ended continuity. *See FD Prop. Holding, Inc. v. US Traffic*

21

E.    Plaintiff's Conspiracy Claim Under  Section 18 U.S.C. § 1962(d) Also Fails.

"The core of a RICO civil conspiracy is an agreement to commit predicate acts" in violation

of 18 U.S.C. § 1962(a), (b), or (c) and a complaint must specifically allege such an agreement. *Hecht*

*v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990); *see U.S. v. Bonanno*, 683 F.

Supp. 1411, 1440 (S.D.N.Y. 1988), *aff'd*, 879 F.2d 20 (2d Cir. 1989).  Conclusory allegations of

agreement are insufficient.  *See, e.g., Morin v. Trupin*, 711 F. Supp. 97, 111 (S.D.N.Y. 1989).

As a preliminary matter, plaintiff's conspiracy claim under § 1962(d) must be dismissed

because plaintiff has alleged no substantive RICO violation, as explained above. *See First Capital*,

385 F.3d at 182 ("because Plaintiffs did not adequately allege a substantive violation of RICO . . .

the District Court properly dismissed . . . a RICO conspiracy.")  (citation omitted).

In any event, the complaint alleges in only the most conclusory fashion that defendants

"conspired" to become part of the alleged enterprise, *see, e.g.*, ¶¶ 133, 176, and fails to plead any

specific factual allegations that defendants consciously agreed to become part of a RICO conspiracy

and commit the necessary predicate racketeering acts.  Plaintiff does not provide factual support to

show that defendants committed the predicate acts with the requisite knowledge of the purpose of

the enterprise and with the intent to further its alleged goals. *See Naso v. Park*, 850 F. Supp. 264,

275 (S.D.N.Y. 1994).  Nor does it allege facts that plausibly suggest that defendants "manifested a

conscious agreement to commit predicate acts in furtherance of the common purpose of the RICO

enterprise," *American Arbitration Ass'n, Inc. v. DeFonseca*, No. 93 Civ. 2424, 1996 U.S. Dist.

LEXIS 9160, at *21 (S.D.N.Y. June 28, 1996) or "understood the scope of the enterprise . . . ."

*Morin*, 711 F. Supp. at 111.

---

*Corp.*, 206 F. Supp. 2d 362, 372-73 (E.D.N.Y. 2002) (collecting cases).

III.    THE COURT SHOULD NOT EXERCISE SUPPLEMENTAL
        JURISDICTION OVER THE STATE LAW CLAIMS.

Pursuant to 28 U.S.C. §1367(c), this Court may, in its discretion, decline to exercise

supplemental jurisdiction over the state law claims asserted against O'Donnell where, *e.g.,* "(2) the

claim substantially predominates over the claim or claims over which the district court has original

jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Of plaintiff's eight causes of action only the second (RICO), sixth (1934 Act), and seventh

(1933 Act) assert federal claims. As demonstrated in Point II above, the RICO cause of action fails

to state a claim.[12]  The securities law claims are asserted only against the Markoll Defendants and

Viscardi. All of those defendants are foreign; none has been served, much less appeared. One can

only speculate whether service can be accomplished, whether these defendants will appear, whether

they will move to dismiss the securities law claims, and, if so, how the Court would rule on such a

motion. In the absence of knowing whether plaintiff will be able to pursue a viable federal claim

against any defendant, the Court should decline to exercise supplemental jurisdiction over the state

law fraud, breach of contract, and negligence claims against O'Donnell and the Lawyer Defendants'

cross-claim arising from the state law malpractice claim against them.

Even if the securities claims proceed, permitting litigation of the state law claims against

O'Donnell in this Court would require substantially more judicial resources to adjudicate, and

private resources to litigate, than the sole federal securities law claim. *See Diven v. Amalgamated*

---

[12] Various of the defects identified in Point II, including, without limitation, plaintiff's failure
to adequately allege an "enterprise" or "pattern of racketeering activity" apply equally to RICO
claims asserted against the Markoll Defendants and Viscardi.

*Transit Union Int'l & Local 689*, 38 F.3d 598, 601 (D.C. Cir. 1994)(noting that the expenditure of more judicial resources to adjudicate state law claims over federal claims is a factor that courts should consider).

Because the complaint fails to state a valid federal cause of action against O'Donnell, and because only state law claims remain against the answering defendants, the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims in the interests of judicial economy and comity. *See Pension Plan of Public Service Co. of New Hampshire v. KPMG Peat Marwick*, 815 F. Supp. 52, 58 (D.N.H. 1993) ("It is in the interest of comity to allow state courts to apply state law when it is not necessary for the federal court to do so.").

IV.    IN THE ALTERNATIVE, THE FRAUD AND BREACH OF
       <u>CONTRACT CLAIMS AGAINST O'DONNELL SHOULD BE DISMISSED.</u>

For the same reasons that the complaint fails to adequately allege fraud for purposes of RICO, its first cause of action fails to allege a claim for common law fraud. *See, e.g., Inn Chu Trading Co. v. Sara Lee Corp.*, 810 F.Supp 501, 506-07 (S.D.N.Y. 1992) (state law fraud claims subject to FRCP 9(b)); *Feigenbaum v. Marble of America, Inc.*, 735 F.Supp 79, 82-83 (S.D.N.Y. 1990) (dismissing state law fraud claim under F.R.C.P. 9(b), 12(b)(6)). Accordingly, if the Court exercises supplemental jurisdiction over the fraud claim, it should be dismissed.

As indicated above, *see supra* at 8, the fourth cause of action for breach of contract does not allege that O'Donnell was a party to any contract that was breached.[13] As such, it does not state a claim for a breach of contract against O'Donnell. *See Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1314 (11th Cir. 2007) ("Without being able to prove the existence of a valid contract with Lil'

---

[13]  *See* Jacobs Dec. Ex. D (Consulting Agreement referenced in ¶191).

24

Joe, he cannot maintain a claim for breach of contract under Florida law."); *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999) ("The elements of a breach of contract claim in New York are: (1) the existence of a contract, (2) performance by the party seeking recovery, (3) non-performance by the other party, and (4) damages attributable to the breach.").[14]

CONCLUSION

For the reasons set forth above, the claims asserted against Defendants Bruce O'Donnell, CPA and Bruce O'Donnell, CPA/PFS, P.A. should be dismissed.

Dated: New York, New York
      February 11, 2008

Respectfully submitted,

LANDMAN CORSI BALLAINE & FORD P.C.

By: _____
     Stephen Jacobs (SJ 4437)
     Ameet B. Kabrawala (AK 2976)
     120 Broadway, 27th Floor
     New York, New York 10271-0079
     (212) 238-4800

     Attorneys for Defendants Bruce O'Donnell, CPA
     and Bruce O'Donnell, CPA/PFS, P.A.

456351

---

[14] Although it would appear that Florida law would apply based upon where O'Donnell and plaintiff are located and the accounting services were performed, there is no difference between Florida and New York law material to this motion. Insofar as Paragraph 192 alleges that "[b]y means of the concerted actions of the O'DONNELL Defendants, the MARKOLL Defendants and Defendant VISCARDI leading up to the Purchase, the terms and conditions of the Purchase were violated," the complaint falls way short of the basic specificity required by Rule 8(a) by failing to allege that O'Donnell was a party, what was violated, or what the "concerted actions" were. Plaintiff does not purport to allege an inducement or intentional interference claim.

25

## AFFIDAVIT OF SERVICE BY MAIL

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

**JASON TAMMAM**, being duly sworn, deposes and says, that deponent is not a party to the action, is over 18 years of age and resides at NEW YORK, NEW YORK.

That on the 11TH day of FEBRUARY, 2008, deponent served the within **MEMORANDUM OF LAW OF DEFENDANTS BRUCE O'DONNELL, CPA AND BRUCE O'DONNELL, CPA/PFS, P.A. IN SUPPORT OF MOTION TO DISMISS**

upon

> Luis Francisco Ras, Esq.
> Ras Associates, PLLC
> Ten Bank Street, Suite 650
> White Plains, NY 10606
>
> Abrams, Gorelick, Friedman & Jacobson, P.C.
> 1 Battery Park Plaza, 4th Floor
> New York, New York 10004

attorneys in this action, at the addresses designated by said attorneys for that purpose by depositing a true copy of same enclosed in a postpaid properly addressed wrapper, in an official depository under the exclusive care and custody of the United States post office department within the State of New York.

JASON TAMMAM

Sworn to before me this
11TH day of FEBRUARY, 2008

Notary

JELENA BRIGIDA
Notary Public, State of New York
No. 01BR6156932
Qualified in Kings County
Commission Expires Dec. 4, 2010