UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
DURAVEST, INC.,

                                   Plaintiff,

            -against-

VISCARDI, AG; WOLLMUTH MAHER & DEUTSCH, LLP;          Docket No.:  07-Civ-10590(JR)
MASON H. DRAKE, ESQ., BRUCE O'DONNELL, CPA,
BRUCE O'DONNELL CPA/PFS, P.A., BIOMEDICAL
CONSULTANT SL, RICHARD MARKOLL, and
ERNESTINE BINDER MARKOLL,

                                   Defendants.
--------------------------------------------------------------------x


## MEMORANDUM OF LAW IN OPPOSITION TO
## O'DONNELL DEFENDANTS' MOTION PURSUANT TO 12(b)(1); 12(b)(6), and 9(b)


RAS ASSOCIATES, PLLC
Attorneys for Plaintiff
Ten Bank Street
White Plains, N.Y. 10606
(914) 289-2909

Luis F. Ras, Esq. (LFR 9989)

## TABLE OF CONTENTS

TABLE OF AUTHORITIES  ..................................................................................  ii

BACKGROUND ..........................................................................................  1

STATEMENT OF FACTS  ..............................................................................  2

ARGUMENT  ...........................................................................................  8

   I.       THE O'DONNELL DEFENDANTS' MOTION MUST BE DENIED BECAUSE PLAINTIFF'S 33 PAGE COMPLAINT, COVERING 224 PARAGRAPHS OF ALLEGATIONS, CONTAINS SUFFICIENT DETAIL, AND FOR PURPOSES OF THIS MOTION, ALL OF PLAINTIFF'S CONTENTIONS CONTAINED IN THE COMPLAINT MUST BE ACCEPTED AS TRUE .................................................. 8

   II.     THE O'DONNELL DEFENDANTS OFFER NO SUPPORT FOR THEIR CONTENTION THAT PLAINTIFF'S FRAUD CLAIMS 'SHOULD BE DISMISSED' ..................................................................................10

   III.   THIS COURT HAS JURISDICTION OVER PLANTIFF'S STATE LAW CLAIMS...11

   IV.   THE COMPLAINT MAKES OUT A *PRIMA FACIE* RICO CASE AGAINST THE O'DONNELL DEFENDANTS

        A.    Accounting Firms Are Proper RICO Defendants Based on Frauds They Commit, Since They are Professionally Bound not to Commit or Facilitate Fraud  ...................................................... 12

        B.    Movants' Challenges to Plaintiffs' Claims are Evidentiary in Nature And Improper in the Context of a Motion on the Sufficiency of the Pleadings.........................................14

            1.   "Plausible" Allegation of Enterprise...........................14

            2.   The O'Donnell Defendants' 'Participation' in the Enterprise is Sufficiently Alleged.......................16

        C.    The Predicate Acts are Sufficiently Alleged.....................................19

        D.    The Pattern of Racketeering Activity is Sufficiently Alleged ..........20

E.     The Moving Defendants' Argument Relating to RICO
       Conspiracy is Circular……………………………………………………20

CONCLUSION ……………………………………………… . ………………. ………………………21

**TABLE OF AUTHORITIES**

**CASES**

American Medical Ass'n v. United Healthcare Corp.,
        Not Reported in F.Supp.2d, 2006 WL 3833440 (S.D.N.Y. 2006)...............18

Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)....…....8

Commercial Cleaning Services, LLC v. Colin, 271 F.3d 374, 380 (2d Cir. 2001)…16

Cosmas v. Hassett, 886 F.2d 8, 12 (2d Cir.1989)……………………………………...8

Credit & Fin Corp. v. Warner & Swasey Co., 638 F.2d 563, 566 (2d Cir. 1981).....10

Dahlberg v. Becker,  748 F.2d 85, 88 (2d Cir.1984), cert. denied,
        470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985)………………….……..8

Emcore Corp. v. Pricewaterhouse Coopers, LLC, 102 F. Supp. 2d 237
        (D.N.J. 2000)……………………………………..………………………………12

First Capital Asset Management v. Satinwood, Inc., 385 F.3d 159, 176
        (2d Cir. 2004)……………………………………………………………….......18

Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir.1980)…………………………..……8

Handeen v. Lemaire, 112 F.3d 1339 (8th Cir. 1997)……………………………………16

Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229
        81 L.Ed.2d 59 (1984)……………………………………………………….……..9

In re Computer Personalities Systems, Inc., 2003 WL 22844863
        (Bkrtcy Court E.D.Pa. 2003)……………………………………………………13

In re CITX Corp., Inc., 2005 WL 1388963 (E.D.Pa. 2005)………………………………13

In re: Init. Pub Offering Securities Litigation, 241 F.Supp.2d 281
        (E.D.N.Y. 2003) ……………………………………………………………..…..10

In re: Scholastic Corp Securities Litigation, 252 F.3d 63, 72 (2d Cir. 2001)………...10

In re Tower Automotive Securities Litigation, 483 F.Supp.2d 327
        (S.D.N.Y. 2007)………………………………………………………………....10

Maez v. Mountain States Tel. & Tel., Inc., 54 F.3d1488, 1496 (10th Cir. 1995)…….....9

<u>Napoli v. United States</u>, 32 F.3d 31 (2d Cir. 1994) cert. denied,
    513 U.S. 1110, 115 S. Ct. 900, 130 L.Ed.2d 784 (1995)....................................17

<u>Nowak v. Ironworkers Local 6 Pension Fund</u>,
    81 F.3d 1182 (2d Cir. 1996)……………………………………………………………11

<u>Ouaknine v. MacFarlane</u>, 897 F.2d 75 (2d Cir. 1990)…………………………………10

<u>Phonometrics, Inc. v. Hospitality Franchise System, Inc.</u>, 203 F.3d 790
    (Fed. Cir. 2000)…………………………………………………………………….....9

<u>Reves v. Ernst & Young</u>, 507 U.S. 170 (1993)……………………………………………18

<u>Robinson v. Kidder, Peabody and Co., Inc.</u>, 674 F.Supp. 243
    (E.D.Mich.1987)……………………………………………………………………… 17

<u>Scheuer v. Rhodes</u>, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90…………………………8

<u>Shaw v. Digital Equipment Corp.</u>, 82 F.2d 1194, 1225 (1st Cir. 1996)…………………10

<u>Strand v. Diversified Collection Service, Inc.</u>, 380 F.3d 316 (8th Cir. 2004)…………..9

<u>Thomas v. Ross & Hardies</u>, 9 F.Supp.2d 547(D.Md.1998)…………………………17, 18

<u>Tribune Co. v. Purcigliotti</u>, 869 F. Supp. 1076 (S.D.N.Y. 1994),
    <i>aff'd sub nom</i>, <u>Tribune Co. v. Abiola</u>, 66 F3d 12 (2d Cir. 1995)………………17

<u>RULES</u>

Fed.R.Civ.P. 8…………………………………………………………………………10

Fed.R.Civ.P. 9(b) …………………………………………………………………...10

Fed.R.Civ.P. 12……………...……………………………………………………9, 15

<u>PROFESSIONAL ETHICS STANDARDS</u>

American Institute of Certified Public Accountants ("AICPA")
    Ethics Code, §102-1 …………………………………………………...12

AICPA Rules, AR Section 100.09………………………………………………13

## BACKGROUND

This Memorandum of Law and attached documentation are respectfully submitted in opposition to Defendants Bruce O'Donnell and Bruce O'Donnell, C.P.A./PFS' ("O'Donnell Defendants") within Motion to dismiss this action pursuant to F.R.Civ.P 12(b)(1), 12(b)(6), and 9(b). Plaintiff's Complaint and Jury Demand ("Complaint") was filed on November 21, 2007.

For the purposes of the within Motion, the O'Donnell Defendants concede, as they must, that all allegations set forth in Plaintiff's Complaint and Jury Demand are to be accepted as true, and all reasonable inferences contained therein are to be drawn in favor of Plaintiff (O'Donnell Defendants' Memo of Law, p. 11).    As discussed more fully below, Plaintiff respectfully submits that Defendants' within Motion must be denied, as the factual assertions set forth in the Complaint are more than sufficient to set forth a *prima facie* case in fraud, and RICO, against the O'Donnell Defendants.

## STATEMENT OF FACTS

This is an action which variously seeks damages against several defendants based on violations of federal securities laws [15 U.S.C. §77(l) and the Securities and Exchange Act of 1933 §12(2) and the Securities and Exchange Act of 1934, Rule 10(b)(5)]; the federal civil RICO statute [18 U.S.C. §§1962(c), and (d)]; and upon state common law torts of fraud, negligence, and conversion. The claims are all connected to the pre-purchase and/or post-purchase activities of the Defendants in connection with the Plaintiff's purchase of a majority stake in a company known as Bio-Medical Technologies, Inc. ("BMTS") in or about December 2005, and the unlawful transfer of post-purchase operating funds provided by Plaintiff, to Defendants Richard Markoll, Ernestine Binder Markoll, and their consulting company, Bio-Medical Consultant, S.L. ("Markoll Defendants")

The various Defendants were involved in differing ways with the facts that form the basis of the claims asserted herein, all leading up to and stemming from the purchase of BMTS. Defendants Wollmuth, Maher, & Deutsch, LLP, and Mason Drake, Esq., have answered and asserted cross-claims against the O'Donnell Defendants **(Exhibit "A" hereto)**. They served as legal counsel for Plaintiff on the transaction, and are alleged to have failed in their duties of representation to Plaintiff, but-for which the transaction would not have been consummated.

Defendants VISCARDI, A.G., BIOMEDICAL CONSULTANT, S.L., RICHARD MARKOLL and ERNESTINE BINDER MARKOLL have not yet answered. Service of process is underway as against each of these defendants pursuant to the Hague Convention rules, and it is expected that such service shall be completed shortly.

The O'Donnell Defendants, who move herein challenging the sufficiency of

the Complaint, have not answered.  The Complaint asserts that Defendant Bruce O'Donnell, C.P.A. was and is a licensed Certified Public Accountant [¶ 28],[1] and that Mr. O'Donnell and his firm, Bruce O'Donnell, C.P.A./PFS, were (over a six year period from 2000 through 2006 [¶s 126 et. seq.]) the corporate accountants for an enterprise known as Bio-Medical Technologies, Inc. ("BMTS") [¶ 126].  Significantly, the O'Donnell Defendants also concurrently served as personal accountants for Defendants Richard Markoll and Ernestine Binder Markoll [¶ 127], who were controlling principals of BMTS, and corporate officers.

It is this relationship between the O'Donnell Defendants and the Markoll Defendants, both personally and as controlling corporate officers of BMTS [¶ 130-132], that is asserted to have, at the very least, conferred the O'Donnell Defendants with sufficient knowledge that BMTS' assertions of profitability were either totally or substantially materially false [¶ 133].  It is further alleged that the O'Donnell Defendants conspired with the Markoll Defendants to crate financial statements that were knowingly false [¶ 135-136], and that those financial statements were disseminated via mails and/or telephone lines, in violation of 18 U.S.C. §§ 1341 and/or 1343 [¶ 137].

Significantly, the O'Donnell Defendants' within Motion cannot and does not contain any denials of any of Plaintiff's allegations in the Complaint regarding the intimate working relationship between the O'Donnell Defendants and the Markoll Defendants going back at least as far as the year 2000; the length of that relationship; the preceding criminal conviction history of the Markolls; nor the fact that the O'Donnell Defendants concurrently performed personal accounting services for the Markoll Defendants.

---

[1] Paragraph references herein are made to the Complaint, which has been attached as Exhibit "A" to the

3

The length of the personal relationship between the Markoll Defendants is significant in that the Markolls were prosecuted and either plead guilty or were convicted of Medicare fraud in the Federal District Court for the District of Connecticut in 2001 [¶s 69-71]. As the nature of such conviction (involving improper billing of company products to Medicare and a finding that Mr. Markoll – who presented himself as "Dr. Markoll" - had no medical license) stood to affect the core of BMTS' medical services products business, this placed the O'Donnell Defendants, at the least, on notice of serious issues of credibility in regard to any "representations of management." The Complaint asserts that the O'Donnell Defendants went further, and had knowledge that the contents of the financial statements issued under their name were substantially false [¶s 82-85].

The Complaint sets forth specifically that the O'Donnell Defendants knew, prior to the sale of BMTS to Plaintiff, that BMTS was being marketed for sale to third parties [¶ 138]. Under the O'Donnell Defendants' imprimatur as Certified Public Accountants, the O'Donnell Defendants issued restated 'compiled' financial Statements for BMTS in May 2005 which contained material misrepresentations regarding BMTS' financial condition [¶ 134-135]. The O'Donnell Defendants' December 31, 2003 and 2004 Consolidated Financial Statement is attached as Exhibit C to their within Motion.

The O'Donnell Defendants knew or should have known that the 'restated' May 2005 compilation was materially false in view of their position as personal accountants for the Markolls. As the Markolls' personal accountants, for instance, the O'Donnell Defendants knew or should have known that the May 2005 financial statement that they signed off on 'failed to mention' substantial related-party

O'Donnell Defendants' within Motion.

transactions between BMTS and the Markolls, in the form of approximately $970,000.00 'deferred compensation' [¶ 97-101] which was allegedly owed by BMTS to the Markolls,[2] and in the form of approximately $600,000.00 in 'loans' due the Markolls from BMTS [¶ 150-152] had they been true, would have been disclosed on personal income tax returns for the Markolls.  Had there been legitimate claims for such sums, the Markolls' personal finances, handled by the O'Donnell Defendants, would have shown signs of same.  The Complaint sets forth that these claimed related party transactions in the form of 'loans' and 'deferred compensation' between the Markolls and BMTS [¶ 133-139 and 151-153], were false and never disclosed to Plaintiff prior to the purchase.

The O'Donnell Defendants also aided and assisted in the fraud upon Plaintiff in that the 'restated' May 2005 compiled financial statement showed BMTS to be profitable when it was not [¶ 82-85]. In conveniently claiming temporary 'profitability' of BMTS with knowledge that it was being offered for sale at the time,[3] the O'Donnell Defendants' personal accountancy relationship with the Markoll Defendants should have again provided sufficient notice that

By relying upon such false financial statements, setting forth that BMTS was profitable when it was not, Plaintiff was fraudulently induced into the purchase of BMTS [¶ 126-139, 147-149, 163-170].  In addition, following the purchase, these false statements served as pretexts for conversion of over one and one half million dollars by the Markoll Defendants [¶ 98-100, 187-189].

The O'Donnell Defendants allowed, permitted, and facilitated the operation

---

[2] The Complaint specifies that there was no existing payroll documentation to support any of the claimed deferred compensation [¶ 100] due the Markolls from BMTS.  This is further evidence of the falsity of the financial representations therein.

of the criminal enterprise by providing it with the false imprimatur and veneer of financial legitimacy necessary to defraud Plaintiff.  This constitutes racketeering activity [¶ 174-185], since it was accomplished via the telephone lines, wires, and mails.  Moreover, there is a substantial likelihood that the racketeering activity shall continue, as the O'Donnell Defendants continue their relationship with the Markoll Defendants, and the Markoll Defendants illegally continue to market the very same 'technologies' that were sold to Plaintiff in its purchase of BMTS [¶ 182].

The moving Defendants attach one of the BMTS financial statements prepared for disclosure and dissemination by their firm, on or about May 31, 2005,[4] when BMTS was being marketed for sale [¶ 113].  As set forth in Plaintiff's Complaint [¶ 82], it contains 'restated' results for fiscal year 2003 that misrepresented the company as being profitable [¶ 83], and differ greatly from both the previous financial statement **(Exhibit "C" to Affirmation of Plaintiff's counsel)**, and the subsequent financial statement  issued in April 2006 **(Exhibit "D" to Affirmation of Plaintiff's counsel)**.  Significantly, the May 31, 2005 'restated' financial statement also contains financial information regarding the Markoll Defendants' criminal liabilities for Medicare fraud, at Note 12, page 11 of the Statement, as follows:

> "monetary damages incurred as a result of the ***investigation*** by the United States Attorney's office for the District of Connecticut in regards to ***a possible Medicare/Medicaid violation***."

See Declaration of O'Donnell counsel, Exhibit "C," note 12, page 11.  The description of such liabilities is false, as Defendants Richard and Ernestine Binder Markoll were, upon information and belief, ***convicted*** of Medicare fraud in 2001.  As with the other fraudulent aspects of the financial statements referenced in the

---

[3] The May 31, 2005 'restated' consolidated financial statement is in sharp contrast to the previous and subsequent [i.e. post-purchase] consolidated financial statements of the O'Donnell Defendants, which both showed operating losses.

Complaint, the O'Donnell Defendants were aware of the falsity of this statement by virtue of their personal relationship with the Markoll Defendants.

Plaintiff respectfully alleges that based on the facts set forth in the Complaint, and summarized above, the Complaint sufficiently alleges both state common law fraud claims and federal statutory civil RICO claims against the O'Donnell Defendants, which mandate the denial of their within Motion.    These claims should be allowed to proceed through discovery, and ultimately be decided by a jury.

[4] See Exhibit "C" to Jacobs Declaration.

<u>POINT I</u>

**THE O'DONNELL DEFENDANTS' MOTION MUST BE DENIED BECAUSE PLAINTIFF'S 33 PAGE COMPLAINT, COVERING 224 PARAGRAPHS OF ALLEGATIONS, CONTAINS SUFFICIENT DETAIL, AND FOR PURPOSES OF THIS MOTION, ALL OF PLAINTIFF'S CONTENTIONS CONTAINED IN THE COMPLAINT MUST BE ACCEPTED AS TRUE**

It is well settled that in considering a motion to dismiss for failure to state a claim, the court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. <u>Geisler v. Petrocelli</u>, 616 F.2d 636, 639 (2d Cir.1980). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In order to prevail on a motion to dismiss, the moving party must demonstrate beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); <u>Dahlberg v. Becker</u>, 748 F.2d 85, 88 (2d Cir.1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A court must accept as true the factual allegations accompanying the complaint and draw all reasonable inferences in favor of the non-moving party. <u>Cosmas v. Hassett</u>, 886 F.2d 8, 12 (2d Cir.1989).

As set forth below, the O'Donnell Defendants' within Motion must fail because at its core, it is based merely on claims of evidentiary insufficiency rather than deficiencies in the Complaint. At this early stage of the litigation, even before an Answer has been filed or one discovery document has been exchanged by any defendant, Plaintiff is entitled to set forth, as it has, good faith assertions that suffice to state a *prima facie* claim. Indeed, it is indicative of the specificity of the Complaint that the O'Donnell Defendants have been able to identify specific

documentation that Plaintiff avers they fraudulently generated.[5] This, in itself, demonstrates that the Complaint (33 pages in length, and covering 220 paragraphs of details) is can easily withstand a motion on its sufficiency.   It is not necessary for a Plaintiff to try and win an entire case based on details provided in its Complaint.   Rather, a complaint must merely contain enough detail to permit a defendant to answer.  Phonometrics, Inc. v. Hospitality Franchise System, Inc., 203 F.3d 790, 794 (Fed. Cir. 2000)(Rule 12(b)(6) requires no more).  It has been held that there is a powerful presumption against dismissing pleadings for failing to state a cognizable claim for relief.  Maez v. Mountain States Tel. & Tel., Inc., 54 F.3d1488, 1496 (10th Cir. 1995); Strand v. Diversified Collection Service, Inc., 380 F.3d 316 (8th Cir. 2004).  A claim will only be dismissed under Rule 12(b)(6) if it appears beyond doubt that the pleader can prove no set of facts in support of the claim that would entitle the pleader to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

---

[5] A copy of the O'Donnell Defendants' financial statement for BMTS in years 2003 and 2004 is annexed to their counsel's Declaration in support of their Motion.

### POINT II

**THE O'DONNELL DEFENDANTS OFFER NO SUPPORT FOR THEIR
CONTENTION THAT PLAINTIFF'S FRAUD CLAIMS 'SHOULD BE DISMISSED'**

Defendants claim that Plaintiff's fraud claims should be dismissed, without setting forth exactly why they take this position.    F.R.Civ.P. Rule 9(b) sets forth the pleading requirements of fraud, which are not specifically addressed by the moving defendants anywhere in their motion papers.

Courts in the Second Circuit have uniformly held that Rule 9(b) does not abrogate the notice pleading requirements of F.R.Civ.P. Rule 8.    In re Tower Automotive Securities Litigation, 483 F.Supp.2d 327 (S.D.N.Y. 2007); Ouaknine v. MacFarlane, 897 F.2d 75 (2d Cir. 1990)(Rule 9(b) must be read together with Rule 8(a) which requires only a 'short and plain statement' of the claims for relief"); Credit & Fin Corp. v. Warner & Swasey Co., 638 F.2d 563, 566 (2d Cir. 1981); In re: Init. Pub Offering Securities Litigation, 241 F.Supp.2d 281, 327 (E.D.N.Y. 2003)(These two rules have been read together to mean that a plaintiff need not plead evidentiary details).    The Second Circuit has stated that it does not require the pleading of detailed evidentiary matters in securities litigation.    In re: Scholastic Corp Securities Litigation, 252 F.3d 63, 72 (2d Cir. 2001); Shaw v. Digital Equipment Corp., 82 F.2d 1194, 1225 (1st Cir. 1996)(stating that 'in determining the adequacy of a complaint under Rule 9(b), we cannot hold plaintiffs to a standard that would effectively require them, pre-discovery, to plead evidence").

Plaintiff's fraud claims have been plead with particularity, specifying the time, method, and contents of the moving Defendants' false representations [¶ 82-91, 126-139].    This is sufficient to set forth a *prima facie* claim pursuant to Rule 9(b).

## POINT III

### THIS COURT HAS JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

For the reasons set forth herein, Plaintiff respectfully submits that it has set forth a valid RICO claim against the O'Donnell Defendants.  Accordingly, pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over the state law claims asserted against the O'Donnell defendants.   Simply put, there is no way to extricate claims nor parties from the controversy before this court.  Moreover, in the interests of fairness and judicial economy, there is no sound reason put forth by the O'Donnell Defendants as to why Plaintiff, seeking compensation for the wrongs it alleges, should be made to concurrently litigate what is one controversy in multiple courts at the federal and state level.  This would not serve judicial economy, not the interests of justice.

In the case at bar, involving state law fraud claims and federal RICO claims that are inextricably related, and where multiple parties are alleged to have conspired to participate in carrying out the fraud, there is no logical or fair way to concurrently adjudicate such claims in different fora.   Moreover, forcing Plaintiff to undergo the expense of litigating in two different courts at once would not serve judicial economy nor the interests of justice.

It is well settled that even if a Court dismisses claims which conferred it with original jurisdiction, it may still exercise supplemental jurisdiction over related state law claims.   <u>Nowak v. Ironworkers Local 6 Pension Fund</u>, 81 F.3d 1182 (2d Cir. 1996).  In the case at bar, multiple federal claims still exist, and Plaintiff respectfully submits that there is ample sufficiency in the Complaint to set forth a *prima facie* RICO claim against the O'Donnell Defendants.

<u>POINT IV</u>

**THE COMPLAINT MAKES OUT A *PRIMA FACIE* RICO CASE AGAINST
THE O'DONNELL DEFENDANTS**

**A.    Accounting Firms Are Proper RICO Defendants Based on Frauds They Commit, Since They are Professionally Bound not to Commit or Facilitate Fraud**

The Racketeer Influenced and Corrupt Organizations Act ("RICO") has been successfully used to challenge accounting firms' corrupt conduct in the operation of a criminal enterprise.  <u>Emcore Corp. v. Pricewaterhouse Coopers, LLC</u>, 102 F. Supp. 2d 237 (D.N.J. 2000).

The American Institute of Certified Public Accountants ("AICPA") publishes rules of ethics, which provide, in relevant part, as follows:

> **"102-1—Knowing misrepresentations in the preparation of financial statements or records.**
>
> A member shall be considered to have knowingly misrepresented facts in violation of rule 102 when he or she knowingly—
>
> *a.*  Makes, or permits or directs another to make, materially false and misleading entries in an entity's financial statements or records; or
>
> *b.*  Fails to correct an entity's financial statements or records that are materially false and misleading when he or she has the authority to record an entry; or
>
> *c.*  Signs, or permits or directs another to sign, a document containing materially false and misleading information.
>
> [Revised, effective May 31, 1999, by the Professional Ethics Executive Committee.]"

It is this very type of conduct which forms the basis for Plaintiff's claims agains the O'Donnell Defendants.

Though nowhere denying their personal relationship and work for the Markoll Defendants, the O'Donnell Defendants seek in this litigation to hide behind the assertion that their work issuing factually irreconcilable financial statements for BMTS

was a mere "compilation." While not devoid of significance, the "compilation defense" does not eliminate well-recognized ethics obligations on their part, and, again, the AICPA ethics code is instructive as to an accountant's obligations not to put blinders on and generate and sign documents which they know or should know to contain materially fraudulent misrepresentations. The AICPA ethics code notes that when compiling financial statements:

> "The accountant is not required to make inquiries or perform other procedures to verify, corroborate, or review information supplied by the entity. However, the accountant may have made inquiries or performed other procedures. The results of such inquiries or procedures, knowledge gained from prior engagements, or the financial statements on their face may cause the accountant to become aware that information supplied by the entity is incorrect, incomplete, or otherwise unsatisfactory. In such circumstances, the accountant should obtain additional or revised information. If the entity refuses to provide additional or revised information, the accountant should withdraw from the engagement."

In re CITX Corp., Inc., 2005 WL 1388963, 4 (E.D.Pa. 2005), citing AICPA Rules, AR Section 100.09.

In line with these common sense ethics principles in the accounting profession, courts have held that accountants have duties not to close their eyes to circumstances which should lead them to question claims in compilations. In In re Computer Personalities Systems, Inc., 2003 WL 22844863 (Bkrtcy Court E.D.Pa. 2003). The Bankruptcy Court for the Eastern District of Pennsylvania observed:

> "When Touche Ross agreed to provide unaudited accounting services for Wooler, it undertook to exercise that degree of accounting skill possessed by other accountants in the community. Touche Ross' obligation required that its personnel be reasonably alert to internal control defects which were patently obvious.

> Id. Thus, it appears that the statement that Stockton relies upon as insulating it from suit is insufficient by itself to dictate a dismissal of this Count.

> Here the Trustee has alleged that the Debtor had a complete lack of internal controls, that its principal had no clear grasp of the Debtor's financial condition, that the Debtor's records and books were inherently unreliable.

Moreover, he alleges Stockton should have alerted Debtor of these shortcomings rather than issue the Financial Statements, which contained a false financial picture of the company. The Trustee will be permitted to attempt to prove whether these allegations could qualify as the "suspicious circumstances" that should have raised "red flags" for Stockton and a concomitant duty to inform Debtor."

Plaintiff respectfully submits that given the wide fluctuations in BMTS' claimed earnings – virtually claiming that it "found" substantial profit from a prior year to a subsequent year **(Compare BMS profit claims set forth in Defendant's financial statements - Plaintiff counsel Affidavit's Exhibit " C" and Exhibit "D" – with restated financial statement – Exhibit "C" to Jacobs Declaration)** to miraculously take BMTS out of the red at the time it was being shopped around – coupled with its knowledge of the Markolls' personal finances – was enough of a "red flag" that the O'Donnell Defendants should not have lent any legitimacy by generating and signing the false statements.

**B.     Movants' Challenges to Plaintiffs' Claims are Evidentiary in Nature and Improper in the Context of a Motion on the Sufficiency of the Pleadings**

The O'Donnell Defendants herein do <u>not</u> challenge that Plaintiff's Complaint: (1) sets forth two or more predicate acts of mail and wire fraud that; (2) would constitute racketeering activity; (3) directly or indirectly related to the conduct of an enterprise; and (4) that such activities affected interstate commerce.   Movants also do not attempt to challenge that the Complaint pleads the existence of a criminal enterprise, and that the continuity of the enterprise is of sufficient length of time that it meets continuity requirements, whether by closed-ended or open ended fashion.

1.    "Plausible" Allegation of Enterprise

Movants' quarrel with the Complaint is that they claim it does not "plausibly" allege an enterprise (p. 13); that it does not "allege RICO participation by O'Donnell" (p. 14); that the predicate acts are not "adequately alleged" (p. 16); that the acts do not form a pattern (p. 19); and that they deny the existence of a conspiracy (p. 22).  All of the foregoing O'Donnell Defendants' RICO contentions lack merit, and their motion to dismiss the RICO claim must be denied for the reasons set forth below.

First, "Plausibility" is not a matter for a Rule 12(b)(1) Motion, as even the O'Donnell Defendants must concede that all contentions in the Complaint must be considered true for the purposes of such a Motion. Indeed, Movants' own 'plausibility' characterization of their attack on the Complaint is a thinly veiled admission that their difficulty with Plaintiff's allegation of an enterprise is based on the *merits* of the allegation, rather than its *sufficiency*.  Such is not a battle to be waged in the context of a Motion attacking the sufficiency of pleadings.

As correctly pointed out by movants, Plaintiff has alleged that while under Defendants' control, BMTS operated as a RICO criminal enterprise [¶ 177] in that it lacked any real value [¶ 207] despite the fact that it was being fraudulently offered for sale as a going concern with value [¶ 82-84, 126-139, 141, 142-150, 163, 207]. Such offering was facilitated by the assistance of the O'Donnell Defendants' fraudulent financial statements from 2000 to 2005, and which served as a pretext for post-purchase conversion by the Markoll Defendants in 2006 [¶ 7, 96-101].  The Complaint sets forth that O'Donnell Defendants have had involvement in the financial affairs of the Markolls and BMTS since as far back as the year 2000, and created the fraudulent corporate financial statements as recently as 2006 [¶ 86].

15

Therefore, such conduct satisfies the continuity 'length of time' requirements of a 'closed-end' RICO enterprise at the very least, and makes the Complaint sufficient insofar as alleging an 'enterprise.'

2.    The O'Donnell Defendants' 'Participation' in the Enterprise is Sufficiently Alleged

Dismissal of a civil RICO complaint for failure to state a claim is only appropriate when it is clear that no relief could be granted under any set of facts that could be proved consistent with plaintiff's allegations. Commercial Cleaning Services, LLC v. Colin, 271 F.3d 374, 380 (2d Cir. 2001). Thus, Movants' claim that their "participation" is not alleged, must also fail.  The Complaint alleges that the O'Donnell Defendants were *the* entity that *conspired* with the Markoll Defendants to fraudulently misstate the profitability, assets, and liabilities of BMTS, and translated those false claims into financial statements knowing that the company was being presented for sale. Specifically, the O'Donnell Defendants, while knowing or having reason to know of the falsity of such statements by virtue of their personal relationship with the Markoll Defendants, restated the financial condition of BMTS at a time when they knew that the company was being offered for sale.  Such intimate involvement with the outright misrepresentation of, and sole presentation of, of BMTS' assets can clearly constitute participation in the conduct of the enterprise.  At the very least, Plaintiff should be permitted to obtain discovery to prove their case.

Fraudulent activities on the part of what would otherwise appear to be putative 'professional service providers' as part of a conspiracy with controlling principals of the enterprise, are sufficient to constitute participation in the

16

enterprise's affairs.  <u>Handeen v. Lemaire</u>, 112 F.3d 1339 (8th Cir. 1997)(attorneys who cooperated with judgment debtor and debtor's parents to minimize creditor's recovery on his judgment by filing Chapter 13 petition on debtor's behalf, in which debtor fraudulently inflated his expenses after executing false promissory note in favor of parents and otherwise creating sham debts, were sufficient to state civil RICO claim against attorneys for "participating" in conduct of affairs of RICO enterprise);    <u>Robinson v. Kidder, Peabody and Co., Inc.</u>, 674 F.Supp. 243 (E.D.Mich.1987)(broker's 'churning' of security accounts under firm's name without concern for plaintiffs' legitimate investment needs provided sufficient evidence of 'pattern' of racketeering activity); <u>Thomas v. Ross & Hardies</u>, 9 F.Supp.2d 547(D.Md.1998)(allegations that attorney and principal of financial firm had engaged in various acts of wire and mail fraud, and monetary transactions in property derived from unlawful activity, over nine-month period, as result of scheme to divert proceeds of mortgages, were sufficient to establish pattern of racketeering activity, as required to state claim under RICO against attorney's law partnership). In applying the United States Supreme Court's standard with regard to determining the "participation" of professionals in a criminal enterprise, the Court in <u>Thomas</u>, <i>supra</i>, stated:

> "A person may violate §1962(c) if he conducts the affairs of an enterprise, even though he does so through the provision of professional services. Because of the supportive nature of professional services, it is most often the case that lawyers and accountants do not conduct an enterprise's affairs. Nevertheless, there are situations in which the professional services provided strike at the very core of the enterprise and therefore the lawyer or accountant providing the services is managing or operating the firm. See, e.g., <u>Napoli v. United States</u>, 32 F.3d 31 (2d Cir. 1994); (where enterprise was law firm, lawyers participated in core activities of trying cases and obtaining settlements), cert. denied, 513 U.S. 1110, 115 S. Ct. 900, 130 L.Ed.2d 784 (1995); <u>Tribune Co. v. Purcigliotti</u>, 869 F. Supp. 1076 (S.D.N.Y. 1994); (denying motion to dismiss where lawyers allegedly helped devise scheme and directed others to act to further scheme of filing false claims), aff'd sub nom, <u>Tribune</u>

<u>Co. v. Abiola</u>, 66 F3d 12 (2d Cir. 1995)."

<u>Thomas</u>, *supra*, at 555.

Accountants have been the subject of considerable scrutiny under RICO, for the obvious role they play in painting the financial "public face" picture of an enterprise and placing their veneer of legitimacy on it by virtue of their professional licenses. The United States Supreme Court has made clear that RICO liability is not limited to those with a formal position in the enterprise. <u>Reves v. Ernst & Young</u>, 507 U.S. 170 (1993). Subsequent cases in this District have made clear that "the 'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage." <u>First Capital Asset Management v. Satinwood, Inc.</u>, 385 F.3d 159, 176 (2d Cir. 2004). Allegations involving individuals who are not formal employees of the enterprise and are alleged to have dishonestly reported numbers, as in this case, have been found to satisfy RICO pleading requirements. In <u>American Medical Ass'n v. United Healthcare Corp.</u>, Not Reported in F.Supp.2d, 2006 WL 3833440 (S.D.N.Y. 2006), Judge McKenna denied defendants' motions to dismiss, stating:

> "Defendants first argue that Plaintiffs have failed to surmount this hurdle because "Defendants are not alleged to have played any role in 'directing' the conduct of the alleged Out-of-Network Reimbursement Enterprise' ... But Plaintiffs satisfy the *Reves* standard by alleging that Defendants, "in concert with the HIAA Group, ... manipulat[ed] the UCR Databases" using a variety of methods...Such actions constitute "operation or management" of the enterprise's affairs and therefore satisfactorily allege the conduct element of the Proposed RICO claims."

<u>American Medical Association</u>, *supra*, at 14.

In the case at bar, the purpose of the "enterprise" was to falsely induce others to invest in it, give nothing of real value in return, and render itself and its claimed 'assets' attractive for sale and re-sale to others. The Complaint herein

makes clear that by virtue of the O'Donnell Defendants' personal relationship with the Markoll Defendants, their creation of knowingly false financial statements for BMTS operated as a conspiracy with the Markoll Defendants that, in turn, constituted participation in the core activities of the criminal enterprise. The O'Donnell Defendants' activities amount to far more than, and are distinguishable from, an accounting firm providing simple "accounting services" for a client.

Even after BMTS was purchased by Plaintiff, the Complaint makes clear that Defendants have continued to offer the same 'intellectual property' which was part of the Plaintiff's purchase of BMTS, to third parties for sale [¶ 182]. Such offers come via Defendants Richard and Ernestine Binder Markoll's control and participation in the affairs of Biomedical Consultant, S.L. The continuation of offering the same worthless or nearly worthless assets for sale up through the present time [¶ 182] offer the threat of continuing activity, since there is no finite goal and the attempts are not self-terminating. Since the O'Donnell Defendants have continued to perform personal accounting services for the Markolls, it can be reasonably inferred that their financial activities and assistance to the enterprise also continue.

C, **The Predicate Acts are Sufficiently Alleged**

Plaintiff respectfully submits that the O'Donnell Defendants' contentions regarding the alleged "insufficiency" of predicate acts allegations are seriously misplaced. The O'Donnell Defendants are specifically alleged to have generated and exchanged false and substantially misleading financial statements which contained misrepresentations regarding: BMTS' financial condition [¶ 82-84, 126-139, 141, 142, 147-150, 163, 207], the extent of its operating income; and the nature and extent of its related party transactions [¶ 89, 134, 150, 152-156]. The dissemination of such materials on at least two occasions in May 2005 [¶ 9, 82-83, 132-139] and April

2006 [¶ 9, 147, 152] by telephone, mail and/or wire to Plaintiff and/or others ultimately reaching Plaintiff, across state lines [¶ 90, 118, 137-139, 156] is a crime, and these suffice as a predicate allegations of criminal acts giving rise to a proper civil RICO claim.

### D. The Pattern of Racketeering Activity is Sufficiently Alleged

The moving Defendants' contention regarding the lack of a 'pattern' of racketeering activity can only be explained by a lack of desire to see it in the Complaint. Quite plainly, Plaintiff's contentions regarding the O'Donnell Defendants' pattern of fraudulent racketeering activity is set forth at paragraphs 132-138 [May 2005 fraudulently 'restated' financial statement for 2004], and 86 [April 2006 fraudulent financial statement disclosing never-before mentioned related party transactions].

### E. The Moving Defendants' Argument Relating to RICO Conspiracy is Circular

Defendants' entire argument relating to the RICO conspiracy claims is circular, since it depends on, and must thus fall together with, their claim that "plaintiff has alleged no substantive RICO violation" (Defendants' Memo, p. 22). As set forth in the Complaint, the O'Donnell Defendants generated financial statements for BMTS, knowing that the company was being offered for sale [¶ 126-139], and knew or should have known that the content of the statements was substantially misleading or false [¶ 136]. Despite this knowledge, the O'Donnell Defendants agreed with the Markoll Defendants to put these false numbers together, place their name on them, and identify themselves on the statements as Certified Public Accountants. This is the very definition of a conspiracy to commit fraud.

The Second Circuit has had occasion to assess the legal sufficiency of pleadings based in fraud.  Such statements are detailed enough to satisfy Rule 9(b) where, as here:  the communications alleged to be fraudulent are specified; the reasons why they are fraudulent are specified; and the time period in which the communication is made is also set forth.  <u>Cosmas v. Hassett</u>, 886 F.2d 8 (2d Cir. 1989).  All of the foregoing elements of Plaintiff's allegations regarding the O'Donnell's Defendants' fraud and conspiracy to commit fraud are set forth in Plaintiff's complaint [¶ 118, 133-139, 145-156, 171-185].

## <u>CONCLUSION</u>

The moving Defendants' within Motion should be denied, as it is really evidentiary in nature.  The Complaint adequately sets forth specific assertions of fact sufficient to make out *prima facie* claims against the O'Donnell Defendants sounding in civil RICO, negligence, and fraud.  The moving Defendants' Motion does not seek dismissal of the negligence claim against them, and the Court has supplemental jurisdiction to entertain such a claim even if no other claims remained against the O'Donnell Defendants.

Dated:    White Plains, New York
          March 3, 2008

Yours, etc.

RAS ASSOCIATES, PLLC
Attorneys for Plaintiff
Ten Bank Street
White Plains, N.Y. 10606
(914) 289-2909

_____s/LFR_____
Luis F. Ras, Esq. (LFR 9989)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

DURAVEST, INC.,                              Docket No.: 07 CIV 10590 (JSR)

                          Plaintiff,          ANSWER AND
                                              CROSS-CLAIMS

        -against-

VISCARDI, AG; WOLLMUTH MAHER &               DEFENDANTS DEMAND
DEUTSCH, LLP.; MASON H. DRAKE,               TRIAL BY JURY
ESQ.; BRUCE O'DONNELL, CPA,
BRUCE O'DONNELL CPA/PFS,
P.A., BIOMEDICAL CONSULTANT SL,
RICHARD MARKOLL, and
ERNESTINE BINDER MARKOLL,

                          Defendants.

--------------------------------------------------------x

        Defendants WOLLMUTH MAHER & DEUTSCH LLP

("WOLLMUTH") and MASON H. DRAKE, ESQ. ("DRAKE"), by their attorneys,

ABRAMS, GORELICK, FRIEDMAN & JACOBSON, P.C., as and for their Answer and

Cross-Claims to plaintiff's Complaint allege, upon information and belief, as follows:

                          JURY DEMAND

        1.      Neither admits nor denies each and every allegation set forth in

paragraph "1" of the Complaint as no response is required to an allegation demanding a

jury trial.

                NATURE OF ACTION AND SUBJECT MATTER JURISDICTION

        2.      Deny each and every allegation set forth in paragraph "2" of the

Complaint.

3.      Deny each and every allegation set forth in paragraph "3" of the Complaint and refer to the contents of the documents.

4.      Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "4" of the Complaint.

5       Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "5" of the Complaint.

6.      Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph "6" of the Complaint, except deny each and every allegation set forth in paragraph "6" of the Complaint concerning WOLLMUTH and DRAKE.

7.      Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "7" of the Complaint.

8.      Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "8" of the Complaint.

9.      Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "9" of the Complaint.

10.     Deny each and every allegation set forth in paragraph "10" of the Complaint and refer all questions of law to the Court.

<u>PARTIES AND VENUE</u>

11.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "11" of the Complaint.

12.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "12" of the Complaint.

13.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "13" of the Complaint.

14.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "14" of the Complaint.

15      Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "15" of the Complaint.

16.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "16" of the Complaint.

17.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "17" of the Complaint.

18.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "18" of the Complaint.

19.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "19" of the Complaint.

20.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "20" of the Complaint.

21.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "21" of the Complaint.

22.     Admit the allegations contained in paragraph "22" of the Complaint.

22.     Admit the allegations contained in paragraph "23" of the Complaint.

24.     Deny each and every allegation set forth in paragraph "24" of the Complaint, except admit that at all relevant times, DRAKE was a contract partner employee at the WOLLMUTH firm but held no equity interest.

25.     Deny each and every allegation set forth in paragraph "25" of the Complaint, except admit that at times, DRAKE and WOLLMUTH did perform certain legal services for DURAVEST.

26.     Deny each and every allegation set forth in paragraph "26" of the Complaint, except admit that at times, DRAKE did perform certain legal services for DURAVEST.

27.     Deny each and every allegation set forth in paragraph "27" of the Complaint, except admit that at times, DRAKE and WOLLMUTH performed certain legal services for DURAVEST.

28.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "28" of the Complaint.

29.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "29" of the Complaint.

30.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "30" of the Complaint.

31.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "31" of the Complaint.

32.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "32" of the Complaint.

33. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "33" of the Complaint.

34. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "34" of the Complaint.

35. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "35" of the Complaint.

36. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "36" of the Complaint.

37. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "37" of the Complaint.

38. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "38" of the Complaint.

39. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "39" of the Complaint.

40. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "40" of the Complaint.

41. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "41" of the Complaint.

42. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "42" of the Complaint.

43. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "43" of the Complaint.

44.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "44" of the Complaint.

45.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "45" of the Complaint.

46.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "46" of the Complaint.

47.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "47" of the Complaint.

48.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "48" of the Complaint.

49.     Deny each and every allegation set forth in paragraph "49" of the Complaint and refers all questions of law to the Court.

50.     Deny each and every allegation set forth in paragraph "50" of the Complaint and refer all questions of law to the Court.

## FACTUAL BACKGROUND

### BMTS Corporate Pedigree

51.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "51" of the Complaint.

52.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "52" of the Complaint.

53.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "53" of the Complaint.

54.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "54" of the Complaint.

55.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "55" of the Complaint.

56.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "56" of the Complaint.

57.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "57 of the Complaint.

58.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "58" of the Complaint.

59.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "59" of the Complaint.

60.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "60" of the Complaint.

61.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "61" of the Complaint.

62.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "62" of the Complaint.

63.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "63" of the Complaint.

64.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "64" of the Complaint.

<u>Certain Defendants' Wrongful Pre-Purchase Representations</u>

A.     Individual Professional Backgrounds and Criminal History

65.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "65" of the Complaint.

66.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "66" of the Complaint.

67.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "67" of the Complaint.

68.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "68" of the Complaint.

69.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "69" of the Complaint.

70.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "70" of the Complaint.

71.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "71" of the Complaint.

72.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "72" of the Complaint.

73.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "73" of the Complaint.

B.     BMTS Intellectual Property "Rights"

74.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "74" of the Complaint.

75. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "75" of the Complaint.

76. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "76" of the Complaint.

77. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "77" of the Complaint.

78. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "78" of the Complaint.

79. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "79" of the Complaint.

C. Clinical Studies and Results

80. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "80" of the Complaint.

81. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "81" of the Complaint.

D. BMTS Operating Income

82. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "82" of the Complaint.

83. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "83" of the Complaint.

84. Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "84" of the Complaint.

9

85.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "85" of the Complaint.

E.     Loans Claimed from BMTS

86.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "86" of the Complaint.

87.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "87" of the Complaint.

88.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "88" of the Complaint.

F.     Use of Telephone and Wire Services

89.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "89" of the Complaint.

90.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "90" of the Complaint.

91.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "91" of the Complaint.

Certain Defendants' Wrongful Post-Purchase Acts

A.     Failure to Transfer, and Misuse of, Intellectual Property Rights

92.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "92" of the Complaint.

93.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "93" of the Complaint.

94.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "94" of the Complaint.

95.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "95" of the Complaint.

B.      Conversion of Transferred Purchase Monies

96.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "96" of the Complaint.

97.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "97" of the Complaint.

98.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "98" of the Complaint.

99.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "99" of the Complaint.

100.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "100" of the Complaint.

101.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "101" of the Complaint.

D.      Violation of Non-Competition Agreements

102.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "102" of the Complaint.

103.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "103" of the Complaint.

104.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "104" of the Complaint.

105.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "105" of the Complaint.

<u>VISCARDI</u>

106.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "106" of the Complaint.

107.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "107" of the Complaint.

108.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "108" of the Complaint.

109.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "109" of the Complaint.

110.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "110" of the Complaint.

111.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "111" of the Complaint.

112.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "112" of the Complaint.

113.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "113" of the Complaint.

114.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "114" of the Complaint.

115.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "115" of the Complaint.

116.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "116" of the Complaint.

117.   Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "117" of the Complaint.

118.   Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "118" of the Complaint.

Wollmuth

119.   Deny each and every allegation set forth in paragraph "119" of the Complaint, except admit that, at times, WOLLMUTH and DRAKE did provide certain legal services to plaintiff.

120.   Deny each and every allegation set forth in paragraph "120" of the Complaint, except admit that WOLLMUTH and DRAKE were attorneys licensed to practice law in New York, whose practice included corporate matters.

121.   Deny each and every allegation set forth in paragraph "121" of the Complaint, except admit that, at times, WOLLMUTH and DRAKE did provide certain legal services to plaintiff.

122.   Deny each and every allegation set forth in paragraph "122" of the Complaint, except admit that, at times, WOLLMUTH and DRAKE did provide certain legal services to plaintiff.

123.   Deny each and every allegation set forth in paragraph "123" of the Complaint.

124.   Deny each and every allegation set forth in paragraph "124" of the Complaint.

125.    Deny each and every allegation set forth in paragraph "125" of the Complaint, except admit that, at times, WOLLMUTH and DRAKE did provide certain legal services to plaintiff.

O'Donnell Defendants

126.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "126" of the Complaint.

127.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "127" of the Complaint.

128.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "128" of the Complaint.

129.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "129" of the Complaint.

130.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "130" of the Complaint.

131.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "131" of the Complaint.

132.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "132" of the Complaint.

133.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "133" of the Complaint.

134.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "134" of the Complaint.

135.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "135" of the Complaint.

136.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "136" of the Complaint.

137.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "137" of the Complaint.

138.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "138" of the Complaint.

139.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "139" of the Complaint.

<u>Markoll Defendants</u>

140.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "140" of the Complaint.

141.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "141" of the Complaint.

142.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "142" of the Complaint.

143.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "143" of the Complaint.

144.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "144" of the Complaint.

145.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "145" of the Complaint.

146.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "146" of the Complaint.

147.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "147" of the Complaint.

148.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "148" of the Complaint.

149.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "149" of the Complaint.

150.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "150" of the Complaint.

151.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "151" of the Complaint.

152.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "152" of the Complaint.

153.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "153" of the Complaint.

154.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "154" of the Complaint.

155.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "155" of the Complaint.

156.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "156" of the Complaint.

Damages Resulting Directly From Purchase

157.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "157" of the Complaint and respectfully refer the Court to the documents memorializing the transaction.

158.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "158" of the Complaint and respectfully refer the Court to the documents memorializing the transaction.

159.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "159" of the Complaint and respectfully refer the Court to the documents memorializing the transaction.

160.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "160" of the Complaint and respectfully refer the Court to the documents memorializing the transaction.

161.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "161" of the Complaint and respectfully refer the Court to the documents memorializing the transaction.

### AS AND FOR AN ANSWER TO THE FIRST CAUSE OF ACTION FOR COMMON LAW FRAUD

162.    Repeat, reiterate and reallege each and every response to paragraphs "1" through "161", inclusive, of the Complaint in answer to paragraph "162" of the Complaint, with the same force and effect as if fully set forth herein.

163.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "163" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these

18

answering defendants deny each and every allegation set forth in paragraph "163" of the Complaint.

164.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "164" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "164" of the Complaint.

165.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "165" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "165" of the Complaint.

166.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "166" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "166" of the Complaint.

167.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "167" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "167" of the Complaint.

168.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "168" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "168" of the Complaint.

169.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "169" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "169" of the Complaint.

170.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "170" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "170" of the Complaint.

AS AND FOR AN ANSWER TO THE SECOND CAUSE OF ACTION
ALLEGING THE EXISTENCE OF A CRIMINAL ENTERPRISE
AND DAMAGE THEREFROM IN VIOLATION OF 18 U.S.C. §1962(c) and (d)

171.    Repeat, reiterate and reallege each and every response to paragraphs "1" through "170", inclusive, of the Complaint in answer to paragraph "171" of the Complaint, with the same force and effect as if fully set forth herein.

172.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "171" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these

answering defendants deny  knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "172" of the Complaint.

173.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "173" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "173" of the Complaint and refer all questions of law to the Court.

174.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "174" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "174" of the Complaint and refer all questions of law to the Court.

175.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "175" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "175" of the Complaint and refer all questions of law to the Court.

176.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "176" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these

answering defendants deny each and every allegation set forth in paragraph "176" of the Complaint.

177.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "177" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "177" of the Complaint and refer all questions of law to the Court.

178.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "178" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "178" of the Complaint and refer all questions of law to the Court.

179.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "179" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "179" of the Complaint and refer all questions of law to the Court.

180.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "180" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these

answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "180" of the Complaint and refer all questions of law to the Court.

181.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "181" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "181" of the Complaint.

182.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "182" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "182" of the Complaint.

183.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "183" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraph "183" of the Complaint.

184.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "184" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "184" of the Complaint.

185.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "185" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "185" of the Complaint and refer all questions of law to the Court.

### AS AND FOR AN ANSWER TO THE THIRD CAUSE OF ACTION
### FOR CONVERSION

186.    Repeat, reiterate and reallege each and every response to paragraphs "1" through "185", inclusive, of the Complaint in answer to paragraph "186" of the Complaint, with the same force and effect as if fully set forth herein.

187.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "187" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "187" of the Complaint.

188.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "188" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "188" of the Complaint.

189.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "189" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these

answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "189" of the Complaint.

### AS AND FOR AN ANSWER TO THE FOURTH CAUSE OF ACTION
### FOR BREACH OF CONTRACT

190.    Repeat, reiterate and reallege each and every response to paragraphs "1" through "189", inclusive, of the Complaint in answer to paragraph "190" of the Complaint, with the same force and effect as if fully set forth herein.

191.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "191" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "191" of the Complaint.

192.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "192" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "192" of the Complaint.

193.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "193" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "193" of the Complaint.

194.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "194" because the allegations do not make any claims

against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "194" of the Complaint.

AS AND FOR AN ANSWER TO THE FIFTH CAUSE OF ACTION
FOR PROFESSIONAL MALPRACTICE

195.    Repeat, reiterate and reallege each and every response to paragraphs "1" through "194", inclusive, of the Complaint in answer to paragraph "195" of the Complaint, with the same force and effect as if fully set forth herein.

196.    Deny each and every allegation set forth in paragraph "196" of the Complaint.

197.    Deny each and every allegation set forth in paragraph "197" of the Complaint.

198.    Deny each and every allegation set forth in paragraph "198" of the Complaint.

199.    Deny each and every allegation set forth in paragraph "199" of the Complaint.

200.    Deny each and every allegation set forth in paragraph "200" of the Complaint.

201.    Deny each and every allegation set forth in paragraph "201" of the Complaint.

202.    Deny each and every allegation set forth in paragraph "202" of the Complaint.

AS AND FOR AN ANSWER TO THE SIXTH CAUSE OF ACTION
FOR LIABILITY BASED ON VIOLATION OF 15 U.S.C. §78(J)

203.    Repeat, reiterate and reallege each and every response to paragraphs "1" through "202", inclusive, of the Complaint in answer to paragraph "203" of the Complaint, with the same force and effect as if fully set forth herein.

204.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "204" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "204" of the Complaint and refer all questions of law to the Court.

205.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "205" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "205" of the Complaint.

206.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "206" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "206" of the Complaint and refer all questions of law to the Court.

207.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "207" because the allegations do not make any claims

against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "207" of the Complaint.

208. These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "208" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "208" of the Complaint and refer all questions of law to the Court.

209. These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "209" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "209" of the Complaint.

AS AND FOR A SEVENTH CAUSE OF ACTION FOR<br>LIABILITY BASED ON VIOLATION OF 15 U.S.C. §77(1)

210. Repeat, reiterate and reallege each and every response to paragraphs "1" through "209", inclusive, of the Complaint in answer to paragraph "210" of the Complaint, with the same force and effect as if fully set forth herein.

211. These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "211" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraph "211" of the Complaint and refer all questions of law to the Court.

28

212.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "212" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraph "212" of the Complaint and refer all questions of law to the Court.

213.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "213" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraph "213" of the Complaint.

214.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "214" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraph "214" of the Complaint.

215.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "215" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraph "215" of the Complaint.

216.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "216" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these

answering defendants deny each and every allegation set forth in paragraph "216" of the Complaint and refer all questions of law to the Court.

217.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "217" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "217" of the Complaint.

218.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "218" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "218" of the Complaint.

## AS AND FOR AN ANSWER TO THE EIGHTH CAUSE OF ACTION
## FOR COMMON LAW NEGLIGENCE

219.    Repeat, reiterate and reallege each and every response to paragraphs "1" through "218", inclusive, of the Complaint in answer to paragraph "219" of the Complaint, with the same force and effect as if fully set forth herein.

220.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "220" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraph "220" of the Complaint and refer all questions of law to the Court.

221.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "221" because the allegations do not make any claims

against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraphs "221" of the Complaint.

222. These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "222" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraphs "222" of the Complaint.

223. These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "223" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraphs "223" of the Complaint.

224. These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "224" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraphs "224" of the Complaint.

## AS AND FOR A FIRST DEFENSE

225.     This Court lacks subject matter jurisdiction over this matter, and as a result, this Court should not exercise supplemental jurisdiction over the claims asserted against these answering defendants.

## AS AND FOR A SECOND DEFENSE

226.     At the time that these answering defendants were contacted in connection with DURAVEST's proposed acquisition of BMTS, a Subscription Agreement that outlined the key terms of the acquisition had already been prepared by others.

## AS AND FOR A THIRD DEFENSE

227.     At the time these answering defendants were first substantively contacted in connection with DURAVEST's proposed acquisition of BMTS, a Subscription Agreement which outlined the key terms of the agreement, prepared by others, had been signed on November 25, 2005, by Ogan Gurel, M.D., on behalf of DURAVEST, and by RICHARD MARKOLL, M.D., on behalf of BMTS.

## AS AND FOR A FOURTH DEFENSE

228.     Prior to the signing of the Subscription Agreement, due diligence regarding the transaction and an analysis of the transaction, had been completed by others.

## AS AND FOR A FIFTH DEFENSE

229.     Paragraph 4 of the signed Subscription Agreement is entitled "Representations," and includes representations and warranties of Subscriber DURAVEST with regard to its independent investigation and analysis of the investment

in BMTS.  Paragraph 4(a) of the signed Subscription Agreement is entitled "Analysis of

Investment".  Those sections, together, state as follows:

> "4.      Representations
>
> In connection with the Subscriber's subscription for Shares
> and becoming a holder of Shares, the Subscriber hereby represents,
> warrants, acknowledges, covenants and agrees as follows:
>
>> a.      Analysis of Investment.  The undersigned has (i)
>> analyzed and reviewed the investment, and (ii) had
>> an opportunity to ask questions of and receive
>> answers from BMTS officers and directors
>> concerning subscription, and to obtain any
>> additional information which BMTS possesses or
>> can acquire that is necessary to verify the accuracy
>> of the information furnished.  In particular, the
>> Subscriber acknowledges and agrees that the
>> Subscriber has been given access to, or has been
>> furnished with, all material books and records of
>> BMTS and all material contracts and documents.
>> All questions have been answered, and all
>> additional information has been provided, all to the
>> full satisfaction of the undersigned."

In addition, paragraph 4(i) of the Subscription Agreement, entitled "Risk

of Loss," contains the following representation and warranty of plaintiff Subscriber

DURAVEST:

> "The Subscriber recognizes that an investment in the Shares is
> highly speculative and involves a substantial risk of loss of the
> entire investment, and involves significant and material risks."

## AS AND FOR A SIXTH DEFENSE

230.      Based on the representation in the Subscription Agreement, set

forth in the immediately preceding affirmative defense, these answering defendants were

justified in relying on those Representations, e.g., that due diligence had been performed

by others, prior to the execution of the Subscription Agreement.

## AS AND FOR A SEVENTH DEFENSE

231.    These answering defendants also had been advised by and had

relied upon statements made by Ogan Gurel of DURAVEST that due diligence has been

completed by VISCARDI.

## AS AND FOR AN EIGHTH DEFENSE

232.    After review of the signed subscription agreement, which

contained no representations from BMTS to DURAVEST, DRAKE counseled

DURAVEST to secure Representations and Warranties from BMTS.  In furtherance of

that counsel, DRAKE forwarded an e-mail to Martin Schaffer, Esq. of the law firm of

Shulman, Rogers, Gandal, Pordy and Ecker, P.A., counsel for BMTS, requesting

Representations and Warranties to DURAVEST.  That e-mail, dated November 28, 2005,

3:40 p.m. (CST), provided the following:

> "Martin – I'm a lawyer representing Duravest and only just had a
> chance after the Thanksgiving holiday to review the Subscription
> Agreement in any detail.  From a due diligence perspective, it does
> not contain the usual reps and warranties I would expect from an
> issuer such as existence, authorization, no conflicts, capitalization,
> absence of litigation, financials, etc.  I do not propose making these
> onerous but I do think it necessary that we either amend the
> Subscription Agreement to contain them or fashion a side letter to
> the Subscription Agreement.
>
> Please let me know if this is acceptable to you and I'll draft a set of
> the relevant provisions.
>
> Best regards,
>
> Max Drake"

## AS AND FOR A NINTH DEFENSE

233.     Upon receipt of the e-mail, referred to in the immediately preceding affirmative defense, counsel for BMTS responded by e-mail dated November 28, 2005 2:49 p.m. (EST).  The responding e-mail constitutes an admission that due diligence for the proposed acquisition had been completed by the VISCARDI GROUP. The e-mail provided:

> "Max,
>
> I did not include those reps or warranties because Viscardi Group had already undertaken that review.  Nonetheless, if you are suggesting some basic reps and it will help to move this transaction along, I am sure we can reach an agreement.  Please send me your proposal."

The foregoing reliance on VISCARDI by plaintiff DURAVEST with respect to the due diligence analysis of BMTS was independently confirmed orally to DRAKE by Dr. Ogan Gurel, CEO of DURAVEST, and certain legal due diligence due diligence documents of BMTS being in the possession of and transmitted to DRAKE by VISCARDI and its in-house lawyer.

## AS AND FOR A TENTH DEFENSE

234.     When DURAVEST initially contacted WOLLMUTH and DRAKE, DURAVEST directed that WOLLMUTH and DRAKE work solely to draft the promissory notes necessary to provide for the financing of the proposed acquisition.  Said promissory notes were prepared by DRAKE on November 28, 2005.

## AS AND FOR AN ELEVENTH DEFENSE

235.     The defendants WOLLMUTH and DRAKE have not breached any duty that they may have owed to plaintiff DURAVEST.

## AS AND FOR A TWELFTH DEFENSE

236.    There were no actual or ascertainable damages sustained by plaintiff DURAVEST proximately caused by the conduct of the defendants WOLLMUTH and DRAKE.

## AS AND FOR A THIRTEENTH DEFENSE

237.    Plaintiff DURAVEST is unable to establish that but for the alleged professional negligence of WOLLMUTH and DRAKE, it would not have sustained actual or ascertainable damages and/or that, the result would have been more favorable to it.

## **AS AND FOR A FOURTEENTH DEFENSE**

238.    That if the accident, injuries and damages occurred as alleged by DURAVEST in its Complaint, said injuries and/or damages were, in whole or in part, attributable to the culpable conduct of DURAVEST including, but not limited to, negligence, carelessness, recklessness and/or assumption of risk.

239.    By reason of the foregoing, this answering defendants demand that any damages recovered or any judgment recovered by plaintiff against said defendants be reduced accordingly, pursuant to the common law and CPLR § 1411, in the proportion which the culpable conduct attributable to plaintiff bears to the culpable conduct, if any, of said defendant.

## **AS AND FOR A FIFTEENTH DEFENSE**

240.    Plaintiff's Complaint fails to state a cause of action upon which relief may be granted against these answering defendants.

## **AS AND FOR A SIXTEENTH DEFENSE**

241.    That, to the extent that the alleged damages and/or injuries of plaintiff, if any, were caused or contributed to, in whole or in part, by intervening and superseding causative factors, the claims of plaintiff against this answering defendants should be barred.

### AS AND FOR A SEVENTEENTH DEFENSE

242.    Pursuant to the limited liability provisions of § 1601 of the Civil Practice Law and Rules, these answering defendants' liability, if any, shall be limited to their respective equitable share of the total liability.

### AS AND FOR AN EIGHTEENTH DEFENSE

243.    If the plaintiff was damaged as alleged in its Complaint, which damages are expressly denied, then such damages were the result, in whole or in part, of the conduct of the plaintiff and/or others over whom the answering defendants exercised no influence or control and to the extent that the answering defendants may be liable to the plaintiff, such liability should be in proportion to the percentage that the answering defendants' conduct relates to the conduct of the plaintiff and/or others in causing the damage, and apportioned pursuant to Articles 14 and 16 of the CPLR.

### AS AND FOR A NINETEENTH DEFENSE

244.    Plaintiff DURAVEST has failed to take the necessary steps to mitigate their damages.

### AS AND FOR A TWENTIETH DEFENSE

245.    The damages which plaintiff claims to have sustained were not reasonably foreseeable to these answering defendants.

246.     These answering defendants reserve their rights to assert additional defenses as they arise during this litigation.

## AS AND FOR A FIRST CROSS-CLAIM
## AGAINST VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL

247.     That if the plaintiff was caused to sustain injuries and/or damages at the time and place and in the manner set forth in the plaintiff's Complaint through any carelessness, recklessness, negligence, acts, omissions, and/or breaches of duty and/or warranty and/or contract and/or statute, other than the plaintiff's own negligence, carelessness, recklessness, or other culpable conduct, said damages were sustained by reason of the carelessness, recklessness, negligence and/or affirmative acts of omission and commission including, but not limited to, breach of contract, and/or warranty and/or statute by the co-defendants, VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL, their agents, servants and/or employees, without any negligence or other culpable conduct on the part of the answering defendant contributing thereto.

248.     That by reason of the foregoing, the answering defendants will not be liable to the plaintiff or the co-defendants in the event and in the amount of recovery herein by the plaintiff, and the answering defendants are entitled to indemnification from the co-defendants, VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL.

## AS AND FOR A SECOND CROSS-CLAIM
## AGAINST VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL

249.    That if the plaintiff was caused to sustain injuries and/or damages at the time and place and in the manner set forth in the plaintiff's Complaint through any carelessness, recklessness, negligence, acts, omissions, and/or breaches of duty and/or warranty and/or contract and/or statute, or other culpable conduct, other than the plaintiff's own negligence, carelessness, recklessness, or other culpable conduct, and if plaintiff should recover a verdict or judgment against the answering defendant, they will be damaged thereby, and such injuries or damages and verdict or judgment will have been brought about, cause and sustained by reason of the active and/or primary and/or affirmative carelessness, recklessness, negligence, culpable conduct and/or affirmative acts of omission and commission including, but not limited to, breach of contract, and/or warranty and/or statute and/or wrongdoing by the co-defendants, VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL, their agents, servants and/or employees, without any negligence on the part of the answering defendant contributing thereto or with the negligence, if any, on the part of the answering defendant, which is specifically denied, being merely passive, secondary and/or derivative in nature.  By reason of the foregoing, the answering defendants are entitled to indemnification by said co-defendants, VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL.

250.   By reason of the foregoing, if plaintiff recovers any verdict or judgment against the answering defendants, the co-defendants, VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL, will be liable to the answering defendant under the doctrine of apportionment, contribution and/or indemnification for the full amount of any verdict and judgment, or for a proportionment share thereof, that plaintiff may recover against or from the answering defendant, including, but not limited to, the costs of investigation and attorneys' fees and disbursements incurred in the defense of this action and the prosecution of this cross-claim, and the answering defendant will not be liable to the co-defendants, VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL, in the event and in the amount of any recovery herein by the plaintiff.

WHEREFORE, the answering defendants, WOLLMUTH MAHER & DEUTSCH LLP and MASON H. DRAKE, ESQ., demand judgment dismissing the Complaint as to them, together with the costs and disbursements of this action, or, in the alternative, demand that the ultimate rights of the plaintiff, answering defendants, and co-defendants, VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL, be determined in this action with regard to all claims, and cross-claims and that the answering defendants have judgment over and against the plaintiff, and the co-defendants, VISCARDI, AG, BRUCE O'DONNELL,

41

CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL,

RICHARD MARKOLL and ERNESTINE BINDER MARKOLL, each of them, in the

proportion that each of their culpable conduct bears to the entire culpable conduct

involved in the occurrence, and have judgment over and against, and indemnity from the

plaintiff, DURAVEST, INC. and the co-defendants, VISCARDI, AG, BRUCE

O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL

CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL,

together with the costs and disbursements of this action, and with such other relief as this

Court deems just and proper.

Dated: New York, New York
      February 1, 2008

                        ABRAMS, GORELICK, FRIEDMAN &
                        JACOBSON, P.C.
                        Attorneys for Defendant
                        Wollmuth Maher & Deutsch LLP
                        and Mason H. Drake, Esq.

                        By:_____
                             Barry Jacobs (BJ-0216)
                        One Battery Park Plaza – 4th Floor
                        New York, New York  10004
                        (212) 422-1200