**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

|  |  |
|---|---|
| DURAVEST, INC. | : No. 07 CIV 10590 |
| Plaintiff, | : |
|  | : Hon. Jed Rakoff, U.S.D.J. |
| VISCARDI AG, WOLLMUTH, MAHER & DEUTSCH, LLP; MASON H. DRAKE, ESQ., BRUCE O'DONNELL CPA, BRUCE O'DONNELL CPA/PFS P.A., BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL, | : **NOTICE OF MOTION** |
| Defendants. | : |

-------------------------------------------------------------------x

## NOTICE OF MOTION

**PLEASE TAKE NOTICE** that, upon the annexed Affidavit of Barbara Thätig, sworn to on April 7, 2008, and the exhibit annexed thereto, and the Declaration of Mark W. Lerner, Esq., dated April 7, 2008 and the exhibit annexed thereto, and the accompanying memorandum of law, defendant Viscardi AG ("Viscardi") will move this Court pursuant to the Court's Order of March 17, 2008, before the Honorable Jed Rakoff of the Southern District of New York, at the United States Courthouse located at 500 Pearl Street, New York, New York 10007, for an Order dismissing the Complaint as to Viscardi pursuant to Rules 12(b)(2), 12(b)(6), and/or 9(b) of the Federal Rules of Civil Procedure, and for such other and further relief as this Court may deem just and proper.

**PLEASE TAKE FURTHER NOTICE** that, in accordance the Court's Order of March

17, 2008, Plaintiff's Answering brief, together with any supporting papers, is due on or before

April 28, 2008, Viscardi's Reply brief, together with any supporting papers, is due on or before

May 5, 2008, and oral arguments shall be heard on this motion on May 16, 2008 at 4:00 p.m.

Dated: New York, New York
      April 7, 2008

                            KASOWITZ, BENSON, TORRES
                            & FRIEDMAN LLP

                            */s/ Mark W. Lerner*
                                Mark W. Lerner
                                Joshua A. Berman

                            1633 Broadway
                            New York, New York  10019
                            Telephone: (212) 506-1700
                            Facsimile: (212) 506-1800

                            *Attorneys for Defendant Viscardi A.G.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

DURAVEST, INC.

Plaintiff,

VISCARDI AG, WOLLMUTH, MAHER & DEUTSCH,
LLP; MASON H. DRAKE, ESQ., BRUCE O'DONNELL
CPA, BRUCE O'DONNELL CPA/PFS P.A.,
BIOMEDICAL CONSULTANT SL, RICHARD
MARKOLL and ERNESTINE BINDER MARKOLL,

Defendants.
-------------------------------------------------------------------x

: No. 07 CIV 10590
:
: Hon. Jed Rakoff, U.S.D.J.
:
: DECLARATION OF MARK W.
: LERNER, ESQ.
:
:
:
:
:

## DECLARATION OF MARK W. LERNER, ESQ.

Mark W. Lerner, hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746,

as follows:

1.    I am a partner at the law firm of Kasowitz, Benson, Torres & Friedman, LLP,

counsel to Defendant Viscardi A.G. ("Viscardi") in this action.  I am a member of the bar of the

State of New York, and am admitted to practice in the United States District Court for the

Southern District of New York.  I submit this Declaration, upon personal knowledge, in support

of Viscardi's motion to dismiss the Complaint.

2.    Attached hereto as <u>Exhibit A</u> is a true and correct copy of the Complaint of

Plaintiff Duravest, Inc.

3.    I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
April 7, 2008

_/s/ Mark W. Lerner_____
Mark W. Lerner, Esq.

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

DURAVEST, INC.,

                              Plaintiff,

            -against-

VISCARDI, AG; WOLLMUTH MAHER & DEUTSCH, LLP;
MASON H. DRAKE, ESQ., BRUCE O'DONNELL, CPA,
BRUCE O'DONNELL CPA/PFS, P.A., BIOMEDICAL
CONSULTANT SL, RICHARD MARKOLL, and
ERNESTINE BINDER MARKOLL,

                              Defendants.

-------------------------------------------------------------------X

**COMPLAINT AND
JURY DEMAND**

Docket No.: 07-Civ-10590(JR)

Plaintiff DURAVEST, INC., ("DURAVEST"), by and through its undersigned attorneys, RAS ASSOCIATES, PLLC, as and for its Complaint and Jury Demand against Defendants, VISCARDI, AG ("VISCARDI"), WOLLMUTH MAHER & DEUTSCH, LLP ("WOLLMUTH"), MASON H. DRAKE, ESQ. ("Attorney DRAKE"), BRUCE O'DONNELL, CPA and BRUCE O'DONNELL CPA/PFS, P.A. ("Accountant O'DONNELL"), BIOMEDICAL CONSULTANT SL ("MARKOLL CONSULTING"), RICHARD MARKOLL ("MR. MARKOLL"), and ERNESTINE BINDER MARKOLL ("MRS. MARKOLL"), sets forth and alleges as follows, upon information and belief:

## JURY DEMAND

1.      Plaintiff demands a trial by jury on all issues.

## NATURE OF ACTION AND SUBJECT MATTER JURISDICTION

2.      This action is for monetary damages associated with Plaintiff DURAVEST's majority purchase of shares of Bio-Magnetic Therapy Systems, INC. ("BMTS, INC.") between November 2005 and April 2006 ("Purchase"), which the Defendants knew or should have known were worthless or nearly worthless at the time of the Purchase; further damages arising from certain Defendants' wrongful transfer and conversion of post-purchase operating capital provided by DURAVEST and deposited with BMTS;

1

and damages arising from certain Defendants' post-Purchase breach of non-competition provisions in a consulting agreement.

3.    The sale of BMTS, INC. to DURAVEST was consummated by means of various transactions occurring between November 2005 and April 2006.

4.    At all relevant times herein, BMTS, INC. was and is a holding company wholly owned by Plaintiff DURAVEST, which was organized and formed pursuant to the laws of the State of Virginia.   BMTS, INC. was and is a foreign corporation duly authorized to transact business in the State of New York under the name "Bio-Medical Technologies, Inc.", and did conduct substantial business activities in the State of New York.

5.    At all relevant times herein, until conclusion of the Purchase, BMTS, INC. was a privately held corporation, with numerous New York State domiciled shareholders, including John Hall, Charlotte Hall, Fred Ferri, June Ferri, Bruce Heller, Sheila Heller, Sheryl Heller, Harvey Hellering, Richard Joseph, Nancy Kennaugh, Jeffry Ordover, Stanley Sher, Helen Sher, Stanley Sokol, Judith Sokol, Michael Speigel, Dean Yep, and Winnie Yep.

6.    As set forth below, DURAVEST was induced to and did complete the Purchase in reliance upon both the fraudulent, negligent, reckless, false, and otherwise wrongful representations and assertions made by Defendants VISCARDI, O'DONNELL, MARKOLL CONSULTING, MR. MARKOLL and MRS. MARKOLL; and due to the negligent and deficient advice, omissions, lack of proper advice, and deficient due diligence efforts of Defendants WOLLMUTH and DRAKE.

7.    Following the Purchase, beginning in December 2005 and through April 2006, the MARKOLL Defendants wrongfully transferred to themselves and converted a total of approximately Three Million Seventy Thousand Dollars ($3,070,000) in funds

2

which had been transferred by Plaintiff DURAVEST to the account of BMTS for the purposes of serving as operating capital for BMTS, thereby looting the company.

8.    Following the Purchase, Defendants MR. MARKOLL and MRS. MARKOLL also violated certain non-compete agreements with BMTS, thereby depriving Plaintiff DURAVEST of any reasonable opportunity to earn profits from its subsidiary.

9.    By and through the activities set forth herein, prior to and following the Purchase, between May 2005 and April 2006, Defendants O'DONNELL, MR. MARKOLL, and MRS. MARKOLL engaged in a pattern of racketeering activity in violation of 18 U.S.C. §1961; 18 U.S.C. §1962; and 18 U.S.C. §1964(c).

10.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and 18 U.S.C. § 1964 (a) in that RICO claims arise under the laws of the United States.

<div align="center">**PARTIES AND VENUE**</div>

11.    Plaintiff DURAVEST is a corporation organized under the laws of the State of Florida, and is duly authorized and registered to transact business as a foreign corporation in New York County, in the State of New York.

12.    At all relevant times herein, Defendant VISCARDI, is and was a corporation organized under the laws of the Federal Republic of Germany, maintaining offices at Brienner Strasse 1, 80333 Munich, Germany.

13.    At all relevant times herein, Defendant VISCARDI was engaged in the business of promoting sales and acquisitions of companies as an investment bank.

14.    At all relevant times herein, Defendant VISCARDI engaged in the business of researching and analyzing private equity companies, and providing such research to third parties for profit and in connection with proposed and promoted transactions to acquire companies.

<div align="center">3</div>

15.     At all relevant times herein, Defendant VISCARDI engaged in the business of financing the equity sales of companies.

16.     At all relevant times herein, Defendant VISCARDI engaged in the business of structuring sales of private equity companies to institutional investors and hedge funds.

17.     At all relevant times herein, Defendant VISCARDI derived fees as commissions for the sales of private equity firms, upon the conclusion of the sales of such companies.

18.     At all relevant times herein, Defendant VISCARDI conducted substantial business activities in the United States of America, and in the Southern District of New York.

19.     At all relevant times herein, Defendant VISCARDI solicited business in the United States of America, and in the Southern District of New York.

20.     At all relevant times herein, Defendant VISCARDI entered into contracts in the United States of America, and in the Southern District of New York.

21.     At all relevant times herein, Defendant VISCARDI derived substantial profits from the sale of companies with business activities in the United States of America, and in the Southern District of New York.

22.     At all relevant times herein, Defendant WOLLMUTH was and is a limited liability partnership engaged in the practice of law in the State of New York, with its principal place of business at 500 Fifth Avenue, New York, New York 10110.

23.     At all relevant times herein, Defendant DRAKE was and is an attorney admitted to the practice of law in the Courts of the State of New York.

24.     At all relevant times herein, DRAKE was a member of, and held an equity interest in, the WOLLMUTH firm.

25.     At all relevant times herein, DRAKE had authority to, and did, bind the WOLLMUTH firm to enter into an attorney-client relationship with DURAVEST.

4

26.    At all relevant times herein, Defendant DRAKE practiced law in relation to corporate matters, including corporate acquisitions, with clients doing business in the State of New York.

27.    At all relevant times herein, Defendants DRAKE and WOLLMUTH were retained to provide services to Plaintiff DURAVEST in connection with the acquisition and purchase of a majority stake in BMTS, INC.

28.    At all relevant times herein, Defendant O'DONNELL was and is a Certified Public Accountant licensed to provide accounting services as a CPA in the State of New York.

29.    At all relevant times herein, defendant O'DONNELL conducted the business of accounting by and through a professional association known as BRUCE O'DONNELL, CPA/PFS, P.A., in the State of New York.

30.    At all relevant times herein, defendant BRUCE O'DONNELL, CPA/PFS, P.A., was a sole proprietorship organized and existing under the laws of the State of Florida.

31.    At all relevant times herein, defendant BRUCE O'DONNELL, CPA/PFS, P.A., was a corporation organized and existing under the laws of the State of Florida.

32.    At all relevant times herein, defendant BRUCE O'DONNELL, CPA/PFS, P.A., was a foreign corporation licensed and registered to conduct business in the State of New York.

33.    At all relevant times herein, defendant BRUCE O'DONNELL, CPA/PFS, P.A., was a sole proprietorship organized and existing under the laws of the State of New York.

34.    At all relevant times herein, defendant BRUCE O'DONNELL, CPA/PFS, P.A., was a corporation organized and existing under the laws of the State of New York.

35.    At all relevant times herein, defendant O'DONNELL and his professional association known as BRUCE O'DONNELL, CPA/PFS, P.A., held themselves out as a firm that provided accounting services in the State of New York.

5

36.    At all relevant times herein, defendant O'DONNELL owned, managed, and controlled Defendant BRUCE O'DONNELL, CPA/PFS, P.A.

37.    At all relevant times herein, defendant O'DONNELL and his professional association known as BRUCE O'DONNELL, CPA/PFS, P.A., did have substantial clients and provide accounting services in the State of New York.

38.    At all relevant times herein, Defendant O'DONNELL provided accounting services for companies located in the State of New York, including BMTS' New York operations d/b/a "Bio-Mechanical Technologies, Inc."

39.    At all relevant times herein, MARKOLL CONSULTING was and is a foreign limited liability company organized and existing under the laws of the Kingdom of Spain, with offices at EL Greco 5, 07157 Puerto Andratx, Mallorca, Spain.

40.    At all relevant times herein, MARKOLL CONSULTING was and is a foreign partnership organized and existing under the laws of the Kingdom of Spain, with offices at EL Greco 5, 07157 Puerto Andratx, Mallorca, Spain.

41.    At all relevant times herein, MARKOLL CONSULTING was and is a foreign corporation organized and existing under the laws of the Kingdom of Spain, with offices at EL Greco 5, 07157 Puerto Andratx, Mallorca, Spain.

42.    At all relevant times herein, MR. MARKOLL and MRS. MARKOLL were and are husband and wife.

43.    At all relevant times herein, Defendants MR. MARKOLL and MRS. MARKOLL, were and are members, shareholders and/or principals of MARKOLL CONSULTING.

44.    At all relevant times herein, Defendant MARKOLL CONSULTING provided consulting services to BMTS, INC.

6

45.    At all relevant times herein, Defendant MARKOLL CONSULTING provided consulting services to companies which were authorized to do business, and did business, in the State of New York, including BMTS, INC. d/b/a Bio-Medical Technologies, Inc.

46.    At all relevant times herein, Defendants MR. MARKOLL and MRS. MARKOLL are and were residents of the State of Florida, maintaining a residence at 224 Datura St Ste 909, West Palm Beach Fl 33401-5624.

47.    At all relevant times herein, Defendants MR. MARKOLL and MRS. MARKOLL were officers of BMTS, INC.,

48.    At all relevant times herein, Defendants MR. MARKOLL and MRS. MARKOLL conducted business under the name Bio-Medical Technologies, Inc., in the State of New York in Melville, County of Suffolk.

49.    This Court has pendent jurisdiction over the state common law claims asserted herein in that such claims are so related to the RICO claims that they form part of the same case or controversy.

50.    Venue is predicated on 28 U.S.C. §§1391 (b) (2) and (d) in that a substantial part of the events or omissions giving rise to the claim occurred in this district. In addition, pursuant to 18 U.S.C. 1965(a) and (b), venue is proper in this district as defendants transacted their affairs in this district and the ends of justice require that the defendants be brought before this Court.

## FACTUAL BACKGROUND

### BMTS Corporate Pedigree

51.    At all relevant times herein, non-party BMTS, INC. is and was a corporation organized and existing pursuant to the laws of the State of Florida, and duly authorized and registered to do business as "Bio-Medical Technologies, Inc." in the State of New York.

7

52.    BMTS was founded in or about 1991 by Defendant RICHARD MARKOLL, who became and remained its Chief Executive Officer from the time BMTS was founded, up to and including January 2007.

53.    At all relevant times herein, BMTS, INC. individually and d/b/a "Bio-Medical Technologies, Inc." engaged in substantial business activities in the State of New York.

54.    At all relevant times herein, BMTS, INC. made sales of its biomechanical products and services in the State of New York, maintaining offices in Melville, County of Suffolk.

55.    At all times prior to the Purchase, and up until the time the Purchase was consummated between November 2005 and April 2006, Defendant MR. MARKOLL maintained a majority shareholder stake in BMTS, INC.

56.    At all times prior to the Purchase, and up until the time the Purchase was consummated between November 2005 and April 2006, Defendant MR. MARKOLL and MRS. MARKOLL maintained a majority shareholder stake in MARKOLL CONSULTING, and participated in and controlled its activities.

57.    At all relevant times following the Purchase, MARKOLL CONSULTING acted as a financial conduit for the illicit receipt of operating capital monies wrongfully transferred out of BMTS, INC.

58.    At all relevant times herein, BMTS, INC. acted as a holding company for wholly owned subsidiaries, including BMTS, GmbH and its subsidiaries.

59.    At all relevant times herein, between November 2005 and January 2007, Defendant MR. MARKOLL was the Chief Executive Officer of BMTS, INC., with signing authority on one or more BMTS, GmbH bank accounts at Deutsche Bank, in Munich, Federal Republic of Germany.

60.    At all times hereinafter mentioned, Defendant ERNESTINE MARKOLL was a shareholder in, was employed by, and participated in, the management of BMTS, INC.

61.    At all times hereinafter mentioned, the BMTS INC.'s business model, reputation, and business prospects, were tied to the business and personal reputations, and consulting services, of the MARKOLL Defendants.

62.    At all relevant times herein, BMTS, INC. d/b/a Bio-Medical Technologies, Inc., operated a clinic in Melville, County of Suffolk, New York, for the ostensible treatment of various maladies with magnetic "Pulsed Signal Technology" ("PST").

63.    At all relevant times herein, BMTS, INC. was the sole owner of BMTS, GmbH, a corporation organized and existing under the laws of the Republic of Germany.

64.    At all relevant times herein, BMTS, GmbH was engaged in the business of selling and licensing magnetic medical devices to the medical community, for the ostensible treatment of various maladies with PST.

### Certain Defendants' Wrongful Pre-Purchase Representations

**A.    Individual Professional Backgrounds and Criminal History**

65.    At all relevant times herein, Defendant MR. MARKOLL held himself out as a medical doctor ("M.D.") licensed to practice medicine.

66.    At all relevant times herein, Defendant MR. MARKOLL held himself out as a medical doctor ("M.D.") authorized to practice medicine in all or portions of the United States.

67.    Defendant MR. MARKOLL has never been licensed to practice medicine in any State of the United States.

68.    At all times hereinafter mentioned, and prior to the Purchase, the MARKOLL Defendants held themselves out to be biomedical researchers in good standing and with honorable reputations in the medical and/or medical research community.

69.     Prior to the Purchase, on or about May 18, 2001, in U.S. District Court, District of Connecticut, RICHARD MARKOLL plead guilty to, or was convicted of, violations of the Food, Drug, and Cosmetic Act and mail fraud.

70.     The aforesaid guilty plea or conviction of MR. MARKOLL concerned violations of Title 18 U.S.C. § 371 - Conspiracy, and Title 21 U.S.C. § 331(q)(1)(A), 333(a)(2), 360j(g) - failure or refusal to comply (with the intent to defraud) with any requirement prescribed under Title 21 U.S.C. § 360j(g).

71.     Prior to the Purchase, on or about May 18, 2001 MRS. MARKOLL plead guilty to, or was convicted of, misdemeanor violations of Title 18 U.S.C. § 371 - Conspiracy, and Title 21 U.S.C. § 331(q)(1)(A), 333(a)(1), 360j(g) - failure or refusal to comply with any requirement prescribed under Title 21 U.S.C. § 360j(g).

72.     At all relevant times herein, and since the dates of said convictions to the present, the MARKOLL Defendants have fraudulently concealed the true nature of their criminal convictions, as well as the effects of same upon the continuing viability and profitability of BMTS, INC. and other businesses that they have used to market biomagnetic therapy products.

73.     The MARKOLL Defendants failed to disclose and/or concealed their aforementioned criminal convictions and/or guilty pleas from DURAVEST prior to the Purchase.

**B.     BMTS Intellectual Property "Rights"**

74.     At all times hereinafter mentioned, MR. MARKOLL held himself out as the inventor, author, proprietor, and owner of certain intellectual property used as the basis for various Pulsed Signal Technology ("PST") products which he represented as useful, marketable, and profitable, to treat various maladies in humans, including osteoarthritis, tinnitus, fibromyalgia, and muscle injuries; and similar and other maladies in animals.

75.     Unbeknownst to Plaintiff DURAVEST at the time of the Purchase, Defendants MR. and MRS. MARKOLL were aware of various competing third party claims over the intellectual property rights of the aforementioned PST products that existed on and prior to the Purchase ("adverse intellectual property claims").

76.     Prior to the Purchase, Defendants MR. and MRS. MARKOLL concealed and/or failed to disclose one or more previously asserted competing claims to PST Technology, which were in derogation of BMTS' rights to own or use such technology on an exclusive or protectable basis.

77.     At all times hereinafter mentioned, the competing claims for the aforesaid intellectual property rights surrounding PST technology adversely affected and impacted both the inherent value and future business prospects of BMTS, and its ability to operate as a going concern.

78.     Unbeknownst to Plaintiff DURAVEST at the time of the Purchase, MR. MARKOLL was aware that there was limited or no legal, protectable, or recognized registration for the "technology" which formed the basis for the aforementioned PST products that existed on and prior to the Purchase ("adverse intellectual property claims").

79.     At all times hereinafter mentioned, the failure to have protectable and recognized legal registration for PST technology adversely affected and impacted both the inherent value of BMTS, and its ability to operate as a going concern.

**C.     Clinical Studies and Results**

80.     At all times hereinafter mentioned, the MARKOLL Defendants and Defendant VISCARDI negligently, fraudulently and inaccurately misrepresented to Plaintiff DURAVEST that the MARKOLL Defendants had participated in and conducted clinical trials of PST technology, and that such clinical trials proved and showed that PST Technology was effective for the purposes marketed by BMTS prior to the purchase.

81.     Unbeknownst to Plaintiff DURAVEST, there were virtually no reliable clinical studies or clinical study results for PST Technology in existence prior to the Purchase.

11

**D.**     **BMTS Operating Income**

82.     Prior to the Purchase, on or about May 31, 2005, Defendants O'DONNELL , MR. MARKOLL, and MRS. MARKOLL intentionally and/or negligently and/or recklessly misrepresented BMTS to be profitable insofar as its operating income was restated for 2003 to as to represent that such income exceeded its 2003 operating expenses.

83.     Prior to the Purchase, on or about May 31, 2005, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI intentionally and/or negligently and/or recklessly misrepresented BMTS to be profitable insofar as its operating income for 2004 in that they represented that such income exceeded its 2004 operating expenses.

84.     The aforestated pre-Purchase representations by the O'DONNELL Defendants, The MARKOLL Defendants, and Defendant VISCARDI that BMTS had earned operating income in fiscal years 2003 and/or 2004 income were without reasonable basis in fact, and these Defendants knew or should have known that such representations were without reasonable basis, contrary to General Accounting Principles ("GAP"), and/or were outright false.

85.     Following the Purchase, on or about April 2006, the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI's, receipt of substantial fees, proceeds, and/or commissions from the Purchase, the O'DONNELL Defendants, and the MARKOLL Defendants, restated 2005 pre-Purchase operating income and expenses for BMTS, so as to disclose for the first time that the company's operating income did not exceed operating expenses, and that BMTS was therefore not profitable dating back to the Purchase date.

**E.**     **Loans Claimed from BMTS**

86.     Following the Purchase, on or about April 2006, and the O'DONNELL, MARKOLL Defendants, and VISCARDI's receipt of substantial fees, proceeds, and/or commissions from the Purchase, the O'DONNELL Defendants, and the MARKOLL Defendants, for the first time, claimed the existence of "loans" due and payable from BMTS, INC. to the MARKOLL Defendants.

12

87.    The aforementioned loans to BMTS, INC. were not and have never been documented in amount, date, terms, or otherwise.

88.    The O'DONNELL and MARKOLL Defendants' claims of loans due and payable to the MARKOLL Defendants from BMTS were and are a pretext for the looting of BMTS' operating capital provided by DURAVEST, by means of money wire transfers to the MARKOLL Defendants, in the guise "loan repayments."

F.    **Use of Telephone and Wire Services**

89.    On or about November 28, 2005, the MARKOLL Defendants and Defendant VISCARDI caused a correspondence to be sent to Plaintiff DURAVEST by fax, which contained fraudulent material omissions and misrepresentations as to: the financial condition of BMTS, INC., the stated "lack" of related party transactions between BMTS, INC. and the MARKOLL Defendants in the relevant time period; the "lack" of claims against BMTS, INC., and otherwise materially misrepresented significant elements of the business, financial condition, and future business prospects of BMTS, INC.

90.    Prior to the Purchase, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI, caused 2003, 2004 and 2005 financial statements of BMTS. INC. to be issued and disseminated via the mails across state lines and/or faxed across state lines, containing material misrepresentations and/or omissions regarding significant elements of the business, financial condition, and future business prospects of BMTS, INC.

91.    The foregoing material misrepresentations and omissions supported previous oral and written representations, misrepresentations, and omissions made by the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI, regarding significant elements of the business, financial condition, and future business prospects of BMTS, INC.

<u>Certain Defendants' Wrongful Post-Purchase Acts</u>

**A.     Failure to Transfer ,and  Misuse of , Intellectual Property Rights**

92.     As a part of and partial consideration for, the Purchase, the MARKOLL Defendants agreed to transfer any and all intellectual property rights previously used by BMTS, INC. , to BMTS, INC., for the use of BMTS, INC. in the conduct of its regular business thereafter.

93.     Following the Purchase, Plaintiff requested that the MARKOLL Defendants formally transfer their intellectual property rights by written agreement.

94.     The MARKOLL Defendants have failed to execute any document to transfer any intellectual property rights to BMTS, INC. which were previously used by BMTS, INC. and/or its subsidiaries prior to the Purchase, and which were intended to be, and were, part of the Purchase.

95.     At all relevant times herein, the MARKOLL Defendants have and continue to diminish the value of the intellectual property rights which were promised to and purchased by Plaintiff Duravest as part of the Purchase, by fraudulently continuing to resell those rights to unrelated third parties without permission.

**B.     Conversion of Transferred Purchase Monies**

96.     To accomplish the aforesaid share purchase, and provide operating capital to the company, Plaintiff DURAVEST transferred approximately One and One Half Million Dollars ($1,5000,000) to BMTS , GmbH, at a Deutsche Bank branch located at Promenadeplatz 15, 80333 Munich, Federal Republic of Germany, on or about December 1, 2005.

97.     Two days after the transfer of the One and One half Million Dollars ($1,500,000), on or about December 2, 2005, unbeknownst at the time to Plaintiff Duravest, the MARKOLL Defendants transferred the entire One and One Half Million Dollars ($1,5000,000) to an account maintained and controlled by one or more of the MARKOLL DEFENDANTS, jointly and severally.

98.     Following the Purchase, between December 2005 and April 2006, the MARKOLL Defendants made several other monetary transfers from corporate accounts intended to hold

14

operating capital, which had been funded by Plaintiff DURAVEST, and which were held by and for the benefit BMTS, GmbH, to accounts controlled by one or more of the MARKOLL Defendants, for amounts totaling an additional One Million Five Hundred Seventy Thousand Dollars ($1,570,000) for, *inter alia*, "loan repayments" and "deferred compensation."

99.     That prior to the Purchase, the MARKOLL Defendants failed to disclose any claimed debts owed to them by BMTS, GmbH, nor did they produce any loan documents to Plaintiff in support of, or explaining or justifying, any such loan amounts.

100.    That prior to the Purchase, the MARKOLL Defendants failed to provide any payroll documentation in support of any claimed "deferred compensation" owed to them, nor any reason why any claimed "deferred" compensation had been previously deferred and would be owing to them following the Purchase.

101.    That the MARKOLL Defendants were not and are not entitled to the aforesaid monies that they transferred to themselves, out of BMTS, GmbH, totaling approximately three million dollars ($3,000,000).

### D.    Violation of Non-Competition Agreements

102.    On or about December 29, 2005, Defendants RICHARD MARKOLL individually and on behalf of MARKOLL CONSULTING, represented that they entered into a Consulting Agreement with BMTS, INC., and that they were bound by such Agreement at all times while the MARKOLL Defendants continued to perform services for BMTS. INC. following the Purchase, and for a period of time of at least two years following the conclusion of the Purchase.

103.    That the aforesaid Agreement is today in full force and effect.

104.    Unbeknownst to Plaintiff DURAVEST, at the time of or shortly following the completion of the Purchase, the MARKOLL Defendants conspired to, and/or otherwise did, violate the aforesaid non-competition provisions of the aforesaid Agreement, in that they have contacted and spoken to third party competitors of BMTS, INC. and BMTS, GmbH, in an attempt to provide know-how, illicit

licensing of technology, assistance, and business advice to such competitors for profit, in the areas of business that BMTS, INC. and BMTS, GmbH were and are engaged in.

105.    That since the Purchase, the MARKOLL Defendants have or have agreed to receive value from BMTS, INC.'s and/or BMTS, GmbH's competitors for their know-how, intellectual property, client lists, and other items and property that are covered by the non-compete agreements that the MARKOLL Defendants entered into with BMTS, INC. prior to the Purchase and/or the Purchase agreements themselves.

**VISCARDI**

106.    In and prior to the year 2000, and up through and including December of 2005, VISCARDI maintained BMTS, INC. as a client.

107.    In and prior to the year 2000, and up through and including December of 2005, VISCARDI maintained MR. MARKOLL and MRS. MARKOLL as clients.

108.    Beginning in and prior to November 2005, Defendant VISCARDI, by and through its staff, did hold itself out to Plaintiff DURAVEST and the general public as investment bankers and venture capital experts experienced in all aspects of advising, evaluating, and counseling clients in relation to, reputable corporate acquisitions of companies large and small.

109.    Beginning in or prior to the year 2000, and continuously through April of 2006, VISCARDI compiled and disseminated corporate information, data, and research on BMTS, INC. individually and d/b/a Bio-Medical Technologies, Inc., and their subsidiaries.

110.    In or prior to the year 2000, and up through and including 2004, VISCARDI engaged in unsuccessful efforts to find a purchaser for BMTS, INC.

111.    From the year 2000, and up through and including December of 2005, VISCARDI made various presentations to prospective purchasers in an effort to find a purchaser for BMTS, INC.

112.    The aforesaid presentations put forth BMTS, INC. and its subsidiaries as a going concern with significant value and upside potential, based on representations regarding the protectability and usefulness of its technology, which VISCARDI knew or had reason to know were totally or substantially false.

113.    In the year 2005, VISCARDI marketed the sale of BMTS, INC. to DURAVEST, ultimately resulting in the sale of all or substantially all of BMTS, INC. to DURAVEST.

114.    Prior to the Purchase, VISCARDI drafted and created presentation materials for the sale of BMTS, INC.

115.    Prior to the Purchase, VISACARDI gave one or more presentations regarding the actual earnings, clients, value, good will, profitability, and valuation of BMTS, INC. as a company and going concern.

116.    Prior to the Purchase, DURAVEST relied on VISCARDI's presentations in evaluating the suitability of BMTS, INC. for purchase and in evaluating its value, good will, profitability, and valuation as a going concern.

117.    Prior to the Purchase, VSCARDI knew or should have known that its presentation, documentation, and representations regarding the value and valuation were false or substantially false in that BMTS, INC. was of little or no value as a going concern; in that BMTS, INC. held little or no protectable intellectual property interests; in that its profitability, if any, was declining prior to the Purchase so as to render it a money-losing enterprise at or shortly after the Purchase; in that there were little or no clinical studies which supported the business products sold by BMTS, INC. and its subsidiaries at the time of Purchase; and in that the professional reputations of certain key officers of BMTS, INC. at the time of Purchase were tainted by criminal convictions which would and did affect the reputation of the company.

118.    The aforesaid fraudulent statements, fraudulent omissions, fraudulent misstatements, and the conspiracies to commit same, were performed via the mails and/or telephone lines, in violation of 18 U.S.C. §§ 1341 and/or 1343.

**Wollmuth**

119.    Beginning in and prior to November 2005, Defendant WOLLMUTH, by and through DRAKE and other attorneys and staff, did act as attorneys for Plaintiff DURAVEST.

120.    Beginning in and prior to November 2005, Defendant WOLLMUTH, by and through DRAKE and other attorneys and staff, did hold themselves out to Plaintiff DURAVEST and the general public as attorneys experienced in all aspects of advising, evaluating, and counseling clients in relation to, corporate acquisitions of companies large and small.

121.    Beginning in and prior to November 2005, Defendant WOLLMUTH, by and through DRAKE and other attorneys and staff, reviewed and prepared documents by which DURAVEST accomplished and agreed to accomplish the Purchase.

122.    Prior to the Purchase, WOLLMUTH and DRAKE, were retained to provide the benefit of their experience to advise and counsel Plaintiff in connection with the Purchase.

123.    At all relevant times herein, prior to the Purchase, WOLLMUTH and DRAKE were retained and expected to, inter alia, review the suitability of BMTS, INC. for purchase.

124.    At all relevant times herein, prior to the Purchase, WOLLMUTH and DRAKE were retained and expected to, inter alia, perform due diligence to review the suitability of BMTS, INC. for purchase.

125.    At all relevant times herein, prior to the Purchase, WOLLMUTH and DRAKE were retained and expected to, inter alia, draft proper agreements to assist Plaintiff in protecting its financial and legal interests in connection with and following the Purchase.

**O'Donnell Defendants**

126.    In and prior to the year 2000, and up through and including December of 2005, the O'Donnell Defendants maintained BMTS, INC. as a client for bookkeeping, auditing, tax, and accounting services.

127.    In and prior to the year 2000, and up through and including December of 2005, the O'DONNELL Defendants maintained MR. MARKOLL and MRS. MARKOLL as clients for bookkeeping, auditing, tax, and accounting services provided to BMTS, INC.

128.    In and prior to the year 2000, and up through and including December of 2005, the O'DONNELL Defendants maintained BMTS, INC. and the MARKOLL defendants as personal clients for bookkeeping, auditing, tax, and accounting services provided to them individually.

129.    In and prior to the year 2000, and up through and including December of 2005, the O'DONNELL Defendants periodically communicated with the MARKOLL Defendants for the purposes of obtaining representations of management regarding the financial condition of BMTS, INC.

130.    In and prior to the year 2000, and up through and including December of 2005, the O'DONNELL Defendants periodically communicated with the MARKOLL Defendants for the purposes of obtaining representations regarding the their personal financial condition, for the purposes of determining their personal taxable income, liabilities and write-offs, including taxable income from BMTS, INC.

131.    Beginning in or prior to the year 2000, and continuously through April of 2006, the O'DONNELL Defendants compiled corporate information, data, and research on BMTS, INC., individually and d/b/a Bio-Medical Technologies, Inc.

132.    In and prior to May of 2005, the O'DONNELL Defendants fraudulently, negligently, carelessly, and/or recklessly issued "restated" financial statements for BMTS, INC. which, by virtue of their

19

contact and relation with BMTS, INC. and its principals, they knew or should have known to be substantially or totally misleading and/or false.

133.    In and prior to May of 2005, the O'DONNELL Defendants conspired with the MARKOLL Defendants to issue "restated" financial statements for BMTS, INC. which, by virtue of their contact and relation with BMTS, INC. and its principals, they knew or should have known to be substantially or totally misleading and/or false.

134.    The "restated" financial statements for BMTS, INC. issued in May 2005 contained material omissions in that certain of the items booked as "liabilities" on behalf of the company were linked to related party transactions that were not stated to be such in the statements.

135.    Prior to the Purchase, the O'DONNELL Defendants knew or should have known that there were none or insufficient proofs for many of the items listed on the financial statements.

136.    Prior to the Purchase, the O'DONNELL Defendants disseminated the "restated" financial statements that they had issued for BMTS, INC. in May 2005, to the Plaintiff DURAVEST, knowing or with reason to know that such financial statements contained material omissions and/or misrepresentations which caused them to be completely or substantially false.

137.    The dissemination of the aforesaid "restated" financial statements was performed via the mails and/or telephone lines, in violation of 18 U.S.C. §§ 1341 and/or 1343.

138.    Prior to the Purchase, the O'DONNELL Defendants knew or had reason to know that BMTS, INC. was being offered or evaluated for sale to third parties, and that such third parties would or did rely on the FY2004 financial Statement issued by the O'DONNELL Defendants in or about May 2005 for information as to the financial condition of BMTS, INC. as of the time of the Purchase.

139.    The aforesaid fraudulent statements, fraudulent omissions, fraudulent misstatements, and the conspiracies to commit same, were performed via the mails and/or telephone lines, in violation of 18 U.S.C. §§ 1341 and/or 1343.

**Markoll Defendants**

140.    At all relevant times herein, prior to the Purchase and up until April 2006, the MARKOLL Defendants managed, had controlling equity interest in, and otherwise controlled BMTS, INC.

141.    At all relevant times herein, prior to the Purchase and up until April 2006, the MARKOLL Defendants were aware of the true financial condition of BMTS, INC., including its lack of viability as a going concern.

142.    At all relevant times herein, prior to the Purchase and up until April 2006, the MARKOLL Defendants failed to disclose the true financial condition of BMTS, INC., including its lack of viability as a going concern.

143.    At all relevant times herein, prior to the Purchase and up until April 2006, the MARKOLL Defendants were aware of the lack of suitable clinical studies which would support the effectiveness of bio-magnetic therapies and treatments sold by BMTS, INC.

144.    At all relevant times herein, prior to the Purchase and up until April 2006, the MARKOLL Defendants failed to disclose the lack of suitable clinical studies which would support the effectiveness of bio-magnetic therapies and treatments sold by BMTS, INC.

145.    At all relevant times herein, prior to the Purchase and up until April 2006, the MARKOLL Defendants conspired amongst themselves, and with other defendants herein, to conceal the lack of suitable clinical studies which would support the effectiveness of bio-magnetic therapies and treatments sold by BMTS, INC.

146.    The lack of positive and available clinical studies affected the viability and value of BMTS, INC. as a going concern.

147.    At all relevant times herein, prior to the Purchase and up until April 2006, the MARKOLL Defendants conspired amongst themselves, and with other defendants herein, to conceal the true financial condition of BMTS, INC.

148.    The true financial picture of BMTS, INC. would have substantially diminished or extinguished its value as a going concern.

149.    At all relevant times herein, prior to the Purchase, the MARKOLL Defendants represented to DURAVEST that they had not entered into any "related party transactions" with BMTS, INC., that were not specifically reflected in the financial statements thereof.

150.    On or about November 28, 2005, the O'DONNELL and MARKOLL Defendants, and defendant VISCARDI caused a letter to be sent to Plaintiff DURAVEST, containing representations which were fraudulent and/or reckless and/or negligent, in that they, amongst other things, denied related party transactions prior to the Purchase; they stood by the "accuracy" of knowingly false financial statements relating to BMTS, INC.; they misrepresented that there were no known litigation or claims against BMTS, INC. at the time of such letter; and they misrepresented the intentions of the MARKOLL Defendants, as members of BMTS, INC. management following the Purchase, to preserve funds received from Plaintiff DURAVEST in the Purchase as operating capital for BMTS, INC. following the Purchase.

151.    The MARKOLL Defendants knew or should have known that their pre-Purchase representations to DURAVEST with regard to related party transactions by and between themselves and BMTS, INC. were false.

152.    Following the Purchase, in 2006, the MARKOLL Defendants represented the existence of approximately Six Hundred Thousand Dollars ($600,000) in loans outstanding and payable to them by BMTS, INC., most or all of which they knew to have been fraudulent and never previously disclosed or documented as loans to the MARKOLL Defendants.

153.    Prior to the Purchase by DURAVEST, the MARKOLL Defendants never disclosed or documented debts in the amount of Six Hundred Thousand Dollars ($600,000) allegedly owed to them by BMTS, INC.

154.    The foregoing alleged debt later claimed by the MARKOLL Defendants as owing from BMTS, INC. following the Purchase was a material and fraudulent omission and misrepresentation in connection with the Purchase.

155.    The MARKOLL Defendants' claim of being owed Six Hundred Thousand Dollars ($600,000) was part and parcel of a fraudulent scheme to serve as a pretext for conversion of post-Purchase conversion of operating capital provided by plaintiff DURAVEST for their won exclusive use and enjoyment.

156.    The aforesaid fraudulent statements, fraudulent omissions, fraudulent misstatements, and the conspiracies to commit same, were performed via the mails and/or telephone lines, in violation of 18 U.S.C. §§ 1341 and/or 1343.

**Damages Resulting Directly From Purchase**

157.    To provide operating capital to the company as part of the Purchase, between November and December Of 2005, DURAVEST purchased all then-authorized shares of BMTS, INC. and transferred approximately One Million Five Hundred Thousand Euros (then worth approximately One Million Eight Hundred twenty Four Thousand Dollars $1,824,000) to BMTS, GmbH account(s) in Deutsche bank, Munich, Federal Republic of Germany.

158.    Following a Special Meeting of the Board of Directors of BMTS, GmbH in December 2005, an additional 2.65 million shares were authorized and issued by BMTS, GmbH.

159.    To provide additional working capital for BMTS, INC., Plaintiff DURAVEST paid an additional Two Million Six Hundred Seventy Six Thousand Dollars ($2,676,000) for the aforesaid additional 2.65 million shares of BMTS, GmbH by transfer to BMTS, GmbH account(s) in January 2006.

160.    In November 2005, Plaintiff DURAVEST paid Eight Hundred Thousand Dollars ($800,000) to Defendant MR. MARKOLL, based on the MARKOLL Defendants' representations as to the value of BMTS, INC., its business prospects, intellectual property rights and assets, the contemplated transfer of

23

the MARKOLL Defendants' intellectual property rights and assets, and the skills and reputation of its management, all of which were mostly or substantially untrue.

161.    In or about November 2005, Plaintiff DURAVEST paid approximately One Million Two Hundred Thousand Dollars ($1,2000,000) to existing shareholders of BMTS, INC. for their shares, based on the MARKOLL Defendants' representations as to the value of BMTS, INC., its business prospects, intellectual property rights and assets, the contemplated transfer of the MARKOLL Defendants' intellectual property rights and assets, and the skills and reputation of its management, all of which were mostly or substantially untrue.

## AS AND FOR A FIRST CAUSE OF ACTION
## FOR COMMON LAW FRAUD

162.    Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "161" above, as if fully set forth at length herein.

163.    The foregoing matters concealed from Plaintiff were material to the value, or lack thereof, of the Purchase.

164.    The foregoing misrepresentations made by the MARKOLL Defendants, the O'DONNELL Defendants, and VISCARDI, were material to the value, or lack thereof, of the Purchase.

165.    By means of the foregoing pre-Purchase material misrepresentations, but-for which the Purchase would not have been made, and which resulted in the Purchase, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI committed a fraud at common law which damaged Plaintiff DURAVEST.

166.    By means of the foregoing post-Purchase misrepresentations as to the existence of pre-Purchase loans and deferred compensation "debts" owed to the MARKOLL Defendants, and which ultimately resulted in monetary transfers to the MARKOLL Defendants, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI committed a fraud at common law which damaged Plaintiff DURAVEST.

24

167.    At the time of the Purchase, plaintiff justifiably relied upon the oral representations made by the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI.

168.    Following the Purchase, during the time period that the MARKOLL Defendants held positions of management at BMTS, INC., plaintiff justifiably relied upon the oral representations made by the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI.

169.    Plaintiff was induced to enter into the Purchase based upon the material omissions and misrepresentations of the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI, and would not have entered into the Purchase were it not for such misrepresentations and omissions.

170.    As a result, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI, are liable to DURAVEST for damages therefor, in the amount of Nine Million Five Hundred Thousand Dollars ($9,500,000), plus costs, attorneys' fees, and interest from the dates of omission and commission thereof.

**AS AND FOR A SECOND CAUSE OF ACTION**
**ALLEGING THE EXISTENCE OF A CRIMINAL ENTERPRISE**
**AND DAMAGE THEREFROM IN VIOLATION OF 18 U.S.C. §1962(c) and (d)**

171.    Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "170" above, as if fully set forth at length herein.

172.    The foregoing fraudulent representations and misrepresentations were and have been carried out by the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISACRDI, by means of the international and interstate telephone calls and international and interstate faxed correspondences, thereby constituting acts of fraud committed in interstate commerce.

173.    The foregoing fraudulent and unauthorized monetary transfers were ordered and performed by means of interstate money wires and telephone calls, constituting acts of conversion

committed by and through interstate and international commerce, and affect interstate and international commerce within the meaning of 18 U.S.C. § 1962(c) and (d).

174.    The foregoing fraudulent and unauthorized monetary transfers were in violation of 18 U.S.C. §§ 1341 and/or1343.

175.    The aforementioned November 28, 2005 correspondence, the FY2004 BMTS, INC. financial statement, the pre-Purchase sale presentations, and the post-Purchase monetary transfers totaling approximately Three Million Dollars ($3,000,000), constituted acts of fraud committed by and through interstate and international commerce, and affected interstate and international commerce within the meaning of 18 U.S.C. § 1962(c) and (d).

176.    The defendants conspired and operated the Enterprise knowingly and intentionally to defraud Plaintiff DURAVEST and others.

177.    At all relevant times herein, and by means of the foregoing activities, the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI , by means of their individual and collective participation therein, constituted "persons," and collectively controlled BMTS, INC. (rendering it an "enterprise" within the meaning of 18 U.S.C. §1962(c) and (d), up to the time of its purchase by Plaintiff when the MARKOLL DEFENDANTS relinquished day-to-day control over it, and during that time engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d).

178.    The MARKOLL Defendants, the O'DONNELL Defendants, and VISCARDI, each, jointly and severally, as set forth above, participated in conducting the affairs of the enterprise, in violation of 18 U.S.C. § 1962(c) and (d).

179.    By means of the foregoing, and In violation of 18 U.S.C. § 1962(d), the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI, conspired to engage in a pattern of racketeering activity, as set forth above.

180.   The numerous and fraudulent acts of the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI, jointly and severally, constitute a pattern of racketeering activity affecting interstate commerce within the meaning of 18 U.S.C. § 1961(5) in that said illegal acts have a relationship to each other by reason of having similar objects, methods of commission, common victims, and similar means of transmission.

181.   At all relevant times herein, the O'DONNELL and MARKOLL Defendants, and Defendant VISCARDI, continue to attempt to market and sell the same biomagnetic technologies that were to have been acquired by Plaintiff DURAVEST and the rights to which were to be turned over to Plaintiff DURAVEST as part of the Purchase.

182.   There is a substantial threat that the Enterprise's racketeering activities will continue, as Defendants continue active in the business of selling biomagnetic therapies, including the fraudulent reselling of biomagnetic technologies which were sold to Plaintiff Duravest as part of the Purchase. The racketeering activities associated with the Enterprise constitute defendants' ordinary method of doing business.

183.   By reason of the aforementioned racketeering Enterprise activities, defendants' ability to defraud Plaintiff DURAVEST was enhanced because the illegal operation of the Enterprise facilitated the fraud and aided its concealment, thereby damaging Plaintiff in its business and property.

184.   By means of the foregoing, the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI damaged Plaintiff DURAVEST.

185.   As a result, the O'DONNELL Defendants, the MARKOLL Defendants, and defendant VISCARDI are liable to DURAVEST pursuant to 18 U.S.C. §1964(c) for treble its actual damages therefor,

in the amount of Twenty Eight Million, Five Hundred Thousand Dollars ($28,500,000), plus costs, attorneys' fees, and interest from the dates of omission and commission thereof.

## AS AND FOR A THIRD CAUSE OF ACTION FOR CONVERSION

186.     Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "185" above, as if fully set forth at length herein.

187.     The aforesaid post-Purchase monetary transfers by the MARKOLL Defendants constituted conversion, as they are were not made with any legitimate business purpose.

188.     By means of the foregoing, the MARKOLL Defendants damaged Plaintiff DURAVEST.

189.     As a result, the MARKOLL Defendants are liable to DURAVEST for its actual damages therefor, in the amount of Three Million Seventy Thousand Dollars ($3,070,000), plus costs, attorneys' fees, and interest from the dates of omission and commission thereof.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT

190.     Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "189" above, as if fully set forth at length herein.

191.     The MARKOLL Defendants' aforementioned contacts with, and aid to, competitors of BMTS, INC. following the Purchase violated the terms and provisions of MR. MARKOLL's terms of employment with BMTS, INC., as set forth in a December 29, 2005 Consulting Agreement.

192.     By means of the concerted actions of the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI leading up to the Purchase, the terms and conditions of the Purchase were violated, constituting a breach of contract.

193.     By means of the foregoing, the MARKOLL Defendants damaged Plaintiff DURAVEST.

194.     As a result, the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCADI are liable to DURAVEST for damages in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000); plus costs, attorneys' fees, and interest from the dates of omission and commission thereof.

**AS AND FOR A FIFTH CAUSE OF ACTION FOR PROFESSIONAL MALPRACTICE**

195.    Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "194" above, as if fully set forth at length herein.

196.    That prior to the Purchase, Defendants DRAKE and WOLLMUTH, as legal counsel, were retained to, but failed to provide and/or render, reasonable and proper and sufficient advice, counsel, and perform proper due diligence, in relation to the Purchase.

197.    That prior to the Purchase, Defendants DRAKE and WOLLMUTH, as legal counsel, were retained to, but failed to provide and/or render, reasonable and proper and sufficient advice, counsel, and perform proper due diligence, so as to warn and advise Plaintiff DURAVEST of the significant shortcomings, financial risk of the Purchase.

198.    That prior to the Purchase, Defendants DRAKE and WOLLMUTH, as legal counsel, were retained to, but failed to provide and/or render, reasonable and proper and sufficient advice, counsel, and perform proper due diligence, in relation to; the lack of legal protection, protectability, and verification of claimed "intellectual property" that was to be part and parcel of the Purchase.

199.    That prior to the Purchase, Defendants DRAKE and WOLLMUTH, as legal counsel, were retained to, but failed to provide and/or render, reasonable and proper and sufficient advice, counsel, and perform proper due diligence, in relation to; the claimed lack of adverse legal claims and suits then existing and/or then noticed and/or contemplated against BMTS, which adversely affected the value of BMTS, INC. prior to and following the Purchase.

200.    That prior to the Purchase, Defendants DRAKE and WOLLMUTH, as legal counsel, were retained to, but failed to provide and/or render, reasonable and proper and sufficient advice, counsel, and draft sufficient and proper documentation to ensure the enforceability, sufficiency, and specificity or pre-Purchase representations by the former principals and sellers of BMTS, INC., so as to provide reasonable legal protection to Plaintiff DURAVEST in areas material to the value of BMTS, INC. as a going concern.

29

201.    By means of the foregoing, the Defendants WOLLMUTH and DRAKE damaged Plaintiff DURAVEST.

202.    As a result, Defendants WOLLMUTH and DRAKE are liable to DURAVEST for damages in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000).

## AS AND FOR A SIXTH CAUSE OF ACTION FOR
## LIABILITY BASED ON VIOLATION OF 15 U.S.C. §78(J)

203.    Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "202" above, as if fully set forth at length herein.

204.    That the foregoing misrepresentations were made by use of the mails, wire and telephone lines, in violation of 18 U.S.C. §§ 1341 and 1343.

205.    That based on the foregoing acts and representations, Plaintiff purchased shares in BMTS, INC.

206.    That by means of the foregoing acts and representations, the MARKOLL Defendants and Defendant VISCARDI violated the Securities and Exchange Act of 1934, Rule 10(b)(5) promulgated thereunder.

207.    That the foregoing acts and misrepresentations hid the real and reasonable value of BMTS, INC., which was far less than the value professed by the MARKOLL Defendants. Defendant VISCARDI, and the O'DONNELL Defendants, and rendered the investment a total or substantial loss.

208.    That by reason of the foregoing, the MARKOLL Defendants and Defendant VISCARDI are liable for said conduct pursuant to the provisions of Section 20(a) of the 1934 Securities and Exchange Act in that they offered and sold to Plaintiff securities within the meaning of the Federal Securities Laws by the use of instrumentalities and communication in interstate and foreign commerce whereby (a) they employed a device, scheme or artifice to defraud the plaintiff; (b) they made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

30

and (c) they engaged in transactions, practices, and a course of business which operated as a fraud or deceit upon Plaintiff.

209.    As a result, the MARKOLL Defendants and Defendant VISCARDI are liable to DURAVEST for damages in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000).

<div align="center">

**AS AND FOR A SEVENTH CAUSE OF ACTION FOR**
**LIABILITY BASED ON VIOLATION OF 15 U.S.C. §77(I)**

</div>

210.    Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "209" above, as if fully set forth at length herein.

211.    The Defendants' conduct hereinbefore set forth constituted an offer to sell securities pursuant to 15 U.S.C. §77(I) and the Securities and Exchange Act of 1933 §12(2).

212.    The Defendants' conduct hereinbefore set forth constituted a sale of securities pursuant to 15 U.S.C. §77(I) and the Securities and Exchange Act of 1933 §12(2).

213.    The foregoing representations and misrepresentations of the Defendants contained untrue statements of material facts and/or omitted material facts necessary to make them substantially or reasonably true.

214.    The foregoing representations and misrepresentations of the Defendants were made by means of oral and written communications in interstate commerce, including but not limited to the mails.

215.    Plaintiff reasonably relied on the aforementioned representations and communications of the Defendants.

216.    The foregoing representations and misrepresentations of the Defendants were in violation of 15 U.S.C. §77(I).

217.    As a result of the foregoing, the reasonable share value of BMTS, INC. shares has depreciated.

218.    As a result, the MARKOLL Defendants and Defendant VISCARDI are liable to DURAVEST for damages in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000).

## AS AND FOR A EIGHTH CAUSE OF ACTION FOR
### COMMON LAW NEGLIGENCE

219.    Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "218" above, as if fully set forth at length herein.

220.    That prior to the Purchase, Defendants had a duty to Plaintiff to reasonably and accurately portray the financial value, financial prospects, liabilities and prospective liabilities, accounts payable and accounts receivable of BMTS, INC.

221.    That by means of the foregoing acts, representations, and/or negligent misrepresentations, Defendants breached their duty to reasonably and accurately portray the financial value, financial prospects, good will value, liabilities and prospective liabilities, accounts payable and accounts receivable of BMTS, INC. prior to the Purchase.

222.    That by means of the foregoing acts, representations, and/or negligent misrepresentations, Defendants negligently induced and/or caused Plaintiff DURAVEST to consummate the Purchase.

223.    By means of the foregoing, the Defendants damaged Plaintiff DURAVEST.

224.    As a result, the MARKOLL Defendants, Defendant VISCARDI, and the O'DONNELL Defendants are liable to DURAVEST for damages in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000).

WHEREFORE, Plaintiff DURAVEST demands judgment against defendants, jointly and severally: on the First Cause of Action, in the amount of Nine Million Five Hundred Thousand Dollars ($9,500,000), plus costs, attorneys' fees, and interest from the dates of omission and commission thereof; on the Second Cause of Action, in the amount of Twenty Eight Million, Five Hundred Thousand Dollars ($28,500,000), plus costs, attorneys' fees, and interest from the dates of

omission and commission thereof; on the Third Cause of Action, in the amount of Three Million Seventy Thousand Dollars ($3,070,000), plus costs, attorneys' fees, and interest from the dates of omission and commission thereof; on the Fourth Cause of Action, in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000); plus costs, attorneys' fees, and interest from the dates of omission and commission thereof; on the Fifth Cause of Action, in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000); and on the Sixth Cause of Action, in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000); on the Seventh Cause of Action, in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000); and on the Eighth Cause of Action, in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000).

Dated:     White Plains, New York
           November 21, 2007

Respectfully submitted,

RAS ASSOCIATES, PLLC
Attorneys for Plaintiff
Ten Bank Street
White Plains, N.Y. 10606
(914) 289-2909

By:_____s/LFR_____
   Luis F. Ras (LFR 9989)

33

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------

| | |
|---|---|
| DURAVEST, INC. | No. 07 CIV 10590 |
| Plaintiff, | Hon. Jed Rakoff, U.S.D.J. |
| VISCARDI AG, WOLLMUTH, MAHER & DEUTSCH, LLP; MASON H. DRAKE, ESQ., BRUCE O'DONNELL CPA, BRUCE O'DONNELL CPA/PFS P.A., BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL, | AFFIDAVIT OF BARBARA THÄTIG |
| Defendants. | |

------------------------------------------------------------

BARBARA THÄTIG hereby states, under penalty of perjury:

1.      I am over eighteen years old and am competent to testify to the facts and matters set forth in this affidavit. I have reviewed the Complaint in this action, and unless otherwise indicated, have personal knowledge of the facts set forth herein. This affidavit does not contain all of the facts and circumstances known to me regarding this matter.

2.      I am the General Counsel and Chief Operating Officer of defendant Viscardi AG (hereafter "Viscardi"). As such, I am responsible for Accounting and Controls, Administration, and Legal, Compliance and Regulatory Affairs at Viscardi. I joined Viscardi in 2000 and became General Counsel in 2002. I became Chief Operating Officer in July 2007. Prior to working at Viscardi, I was head of the legal and patent department of Max-Planck-Institute of Plasma Physics in Garching, Germany.

3.      I respectfully submit this Affidavit in support of Viscardi's motion to dismiss the above-captioned Complaint for lack of personal jurisdiction over Viscardi. As set forth herein, neither Viscardi, nor the events described in this Complaint, had any connection to this forum.

4.    At all times relevant to this motion, Viscardi was an independent investment bank with its sole office in Germany and which served small- and mid-capitalized European companies with advisory services for financing transactions and mergers and acquisitions. We focused on the technology, health care and life sciences, and certain other selected industries. We concentrated on growth financing, including private and public placements with institutional investors, hedge funds, family offices, venture capitalists and private equity investors in Europe.

5.    Viscardi conducted its business in Europe. During all relevant times, including up to the filing of the Complaint, we had no operations or subsidiaries in New York, and occupied a single office located at Brienner Strasse 1, D-80333, in Munich, Germany.

6.    At all times relevant to this motion BMTS, Inc. (hereafter "BMTS") was in the business of manufacturing, marketing and supporting medical devices designed to apply pulsed electrical signals (called "Pulsed Signal Therapy," or "PST") to damaged bone or connective tissue to promote healing.

7.    In January 2005, BMTS's principal business operations were in Germany, where it had a wholly-owned subsidiary called BMTS, GmbH. At that time, BMTS mandated Viscardi to find a strategic partner to take over BMTS and roll out PST technology internationally. To that end, on February 1, 2005, Viscardi and BMTS executed an engagement letter in Munich, Germany (the "Engagement Letter"), setting forth that mandate. The Engagement Letter expired according to its terms on February 1, 2006. (A true and correct copy of the Engagement Letter is attached hereto as Exhibit A). I am not aware of BMTS engaging in any business activities in New York from at least the time of the mandate through the filing of this Complaint.

8.    The work begun based on this mandate in 2005 was the first work Viscardi performed for BMTS. Pursuant to the mandate, Viscardi contacted 27 companies, of which

seven showed initial interest and none showed final interest. We did not contact any individuals in New York or speak with any prospective buyer of BMTS in New York.

9. On November 2, 2005, following the lack of interest described above, Viscardi formally suggested to BMTS that, in a change of strategy, it bring in a new Chief Executive Officer who was experienced in developing early stage companies and who would have a stake in the company (a so-called "buy-in manager"), along with new investors.

10. Viscardi did not contact any prospective buy-in manager or investors in New York. The buy-in manager recruited was Dr. Hans Rolf Käse of Germany.

11. With respect to an investor, in mid-November 2005, Viscardi's Chief Executive Officer, Wilhelm-Friedrich Göbel, described BMTS to fellow German Florian Homm, a sophisticated manager and shareholder of a publicly traded European hedge fund based in Majorca, Spain and listed on the London Stock Exchange, known as "Absolute Capital Management," or "ACM." Upon information and belief neither Mr. Homm nor ACM maintained any office in New York. Mr. Homm's researchers were located, upon information and belief, in Majorca.

12. Upon information and belief, Mr. Homm controlled the plaintiff Duravest, which was based in Chicago, Illinois and which, based on its SEC filings, held a single asset – a Canadian company named Estracure which ultimately failed when it did not win U.S. Food and Drug Administration approval for its main product, a coronary stent. Upon information and belief, Duravest maintains no offices, employees or operations in New York. At no time to my knowledge did we have any communications with Duravest related to the transaction involving BMTS in New York.

13.　　On November 22, 2005, shortly after the initial telephone contact between Mr. Göbel and Mr. Homm regarding BMTS, Viscardi representatives met with Mr. Homm and Duravest's CEO, Ogan Gurel, in a hotel in Frankfurt, Germany.  Messrs. Homm and Gurel were informed that a "data-room" containing BMTS's documents and other information was set up for a due diligence investigation at BMTS's office in Munich (although to the best of my knowledge Messrs. Homm and Gurel elected not to visit it). Three days later, on November 25, 2005, at the same hotel in Frankfurt, Mr. Gurel executed a subscription agreement pursuant to which Duravest would purchase 14,062,500 shares of BMTS for $4.5 million.

14.　　In summary, neither Viscardi generally, nor this transaction specifically, have connections to New York which would justify the exercise of jurisdiction by this Court over Viscardi.  For these reasons, therefore, and for the reasons stated in the accompanying Memorandum of Law, we respectfully request that the Court dismiss this action as to Viscardi.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATED: 07\04\2008
April 7th, 2008

_____
Notary Public

_____
Barbara Thätig

File No.    **870** /K/2008/ASS

I, the undersigned Notary Public, herewith certify that the signature, subscribed in my presence, is the true signature of

Mrs. Barbara T h ä t i g,

maiden name Hötzl,

born on 18th December 1971,

with business adress Brienner Str. 1, 80333 München,

identified by her German identity card.

Munich, this 7th Day of April 2008

(Seal)

Dr. Winfried Kössinger
Notary Public in Munich
(Commission does not expire)

# Exhibit A

*Exhibit A*



## VISCARDI AG

### A G R E E M E N T

between

### 1. Bio-Magnetic Therapy Systems Inc.
c/o Atty Martin P. Schaffer
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
11921 Rockville Pike, Third Floor
Rockville, MD 20852
Phone:  301-230-5207
Fax:  301-230-2891
U.S.A.

("BMTS")

### 2. Tinnitus Signal Medizin & INFINOMED GmbH
Kapellenweg 6
91371 Munich
Germany

("Tinnitus")

(Tinnitus, INFINOMED and BMTS hereinafter together the „COMPANIES")

### 3. Dr. Richard Markoll
Kapellenweg 6
81371 Munich
Germany

(the „Significant Shareholder")

and

### VISCARDI AG
represented by Mr. F.W. Goebel
Brienner Strasse 1
80333 Munich
Germany

("VISCARDI")

## I. Preamble

BMTS is engaged in the development, production and commercialization of proprietary technology based on a specific constellation of pulsed signals carried on extremely low frequency magnetic fields to treat osteoarthritis, sports-type injuries, and other degenerative joint and certain neurological disorders.

Tinnitus is engaged in the development, production and commercialization of therapeutic equipment for the indication "Morbus Tinnitus"

INFINOMED is a clinical entity that provides BMTS scientific and clinical data as well as demonstrates PST Technology to doctors, patients and the general public.

The Significant Shareholder together with the shareholders of 100% of the outstanding BMTS shares of stock hold all the shares in BMTS .

The COMPANIES together with the significant shareholder consider currently the sale of their businesses (hereinafter referred to as "Transaction").

## II. Agreement

The following will confirm the understanding and agreement between VISCARDI represented by Mr. WF Goebel and the COMPANIES represented by Dr. R. Markoll pursuant to which VISCARDI has been engaged by the COMPANIES to act as the COMPANIES' exclusive financial advisor in connection with the Transaction. The provisions of this agreement shall apply accordingly, should the COMPANIES decide on an alternative transaction structure (e.g. a private placement or IPO).

## 1. Services of VISCARDI

VISCARDI will provide the following services hereby requested by the COMPANIES:

- develop an information memorandum, which will describe the COMPANIES' structure, products, markets, financials and future perspectives which shall be made available to prospective investors/acquirers;

- identify prospective investors/acquirers;

- assist and take the lead in the screening and analysis of prospective investors/acquirers regarding their "strategic fit";

- provide advice with respect to initiating discussions and negotiations with prospective investors/acquirers and, as requested herewith by the COMPANIES, participate in such discussions and negotiations relating to the Transaction;

- provide advice with respect to the pricing, financing, structure and form of the Transaction;

- coordinate the discussions and negotiations towards the completion of a "Letter of Intent" and a final participation- / purchase agreement as well as the closing of the Transaction.

## 2. Participation of the COMPANIES

The successful completion of the Transaction requires the effective and timely fulfilment of the COMPANIES' participation requirements with the effective guidance of VISCARDI, including:

- disclosure of all necessary information, which is important for the evaluation of the COMPANIES businesses and strategic objectives;

- execution of all necessary measures, decisions, consents, resolutions, legal and formal requirements.

## 3. Fees

### a) Retainer Fee

As compensation for the services performed hereunder, the COMPANIES shall pay VISCARDI as joint and several debtors a Retainer Fee of € 5,000.00 per month plus applicable value added taxes for a period of six months. The first Retainer Fee is due and payable upon signature of this Agreement, the remaining Retainer Fees at the beginning of each month. No other Retainer Fee is applicable.

All Retainer Fees paid will be credited towards the amount of any Transaction Fee.

### b) Transaction Fee

Should new and/or old shares in the COMPANIES be placed and/or should the COMPANIES sell an interest in the COMPANIES business or in the business of any affiliated company (in particular BMTS GmbH and Signal Medizin Vertriebs GmbH), including, without limitation, a sale or exchange of capital stock or assets, a lease of assets with or without a purchase option, a merger, consolidation or reorganization, a tender or exchange offer, a leveraged buy-out, a repurchase transaction, the formation of a joint venture, partnership, or any similar transaction during the period that VISCARDI is engaged,   VISCARDI shall receive as compensation for the services performed hereunder a Transaction Fee of

- 5% of the Transaction Consideration up to € 22.5 MM, plus

- 10 % of the Transaction Consideration exceeding € 22.5 MM

plus applicable value added taxes.

Transaction Consideration is the aggregate maximum value, whether in cash, securities (including options, warrants and similar securities), assumption of any debt, liabilities, obligations, loans, commitments, interests, payables, property, assets and services paid, payable or otherwise assumed directly in connection with the Transaction.

Debtors of the Transaction Fee in accordance with this provision are

- BMTS in case of a Transaction with respect to BMTS (in case of a sale of old shares BMTS will – if appropriate – deduct the Transaction Fee from the Transaction Consideration),

  ‐  Tinnitus in case of a Transaction with respect to Tinnitus,

    ‐  INFINOMED in case of a Transaction with regard to INFINOMED.

The Transaction Fee is due and payable upon the Closing of the Transaction (= signature of the relevant Transaction documents) and payment of the Transaction Consideration. In case of a pro-rata payment of the Transaction Consideration, the Transaction Fee accounts for the pro-rata payment only.

## c) Residual Period

The provisions of sec. 3 b) of this Agreement shall also apply should a Transaction occur during a period of 12 months after the earlier of (i) the date of the expiration of VISCARDI's engagement or (ii) the date of the termination of VISCARDI's engagement ("Residual Period") provided, however, that the Investor/acquirer has been identified by VISCARDI in accordance with sec. 1 of this Agreement.

## 4. Expenses

The COMPANIES shall reimburse VISCARDI upon closing of the transaction for its reasonable out of pocket expenses plus applicable value added taxes (including without limitation all legal, tax, consultant, information, presentation, shipping, communication, secretarial, road show and travel expenses) incurred or accrued during the period of or in connection with the engagement as specifically agreed upon and confirmed in writing by VISCARDI & Dr. R. Markoll.

## 5. Term of Engagement

The term of VISCARDI's engagement shall be 12 months from the date hereof, unless extended. Either the COMPANIES jointly or VISCARDI may terminate VISCARDI's engagement by giving the other party at least 4 weeks prior written notice by the end of the month.

## 6. Exclusivity

During the term of VISCARDI's engagement, the COMPANIES and the Significant Shareholder shall not mandate a third party with respect to financial advisory services which coincide with VISCARDI's engagement. Should a third party directly or indirectly contact the COMPANIES or the Significant Shareholder regarding matters relating to VISCARDI's engagement, they are obliged to inform VISCARDI about such matters. VISCARDI and the COMPANIES or the Significant Shareholder shall then enter consultations regarding the procedure.

## 7. Rights

Any advice, written or oral, provided by VISCARDI hereunder is solely for the information and assistance of the Management, Board of Directors and shareholders of the COMPANIES and is not to be used or circulated for any other purpose without the prior written consent of VISCARDI, which consent shall not be unreasonably withheld. Except for material provided to VISCARDI by the COMPANIES The materials developed by VISCARDI in the course of this engagement shall be used by the COMPANIES, the Board of Directors; Supervisory Board and the Significant Shareholder only in connection with the Transaction. VISCARDI's intellectual property rights remain unaffected. A list of the materials developed, indicating who developed it, will be kept informally by both parties.

## 8. Confidentiality

VISCARDI, its employees and any third parties mandated by VISCARDI, if any, will keep all information relating to this engagement (e.g., information about business operations, financials, management, co-operations and strategy) confidential. This confidentiality provision will survive the term of this Agreement. The COMPANIES and related third parties will keep information relating to the engagement confidential and will not disclose or distribute any information and documents of VISCARDI to third parties without the prior written consent of VISCARDI. VISCARDI shall not use any information that was acquired during the engagement in a way that is adverse to the interests of the COMPANIES.

## 9. Indemnification

VISCARDI provides its services relating to the engagement hereunder on a "best effort" basis. No guarantee or other kind of undertaking can be given for the successful completion of the Transaction and VISCARDI's advise might not favour the completion of the Transaction, should market conditions or other extraordinary economic or political events make a successful completion unlikely, impossible or inappropriate. VISCARDI will perform its duties under the engagement with the necessary care, confidentiality and diligence. This sec. 9. "Indemnification" is mutual for all parties.

VISCARDI is only liable for gross negligence or wilful misconduct with the exception of personnel injuries or injuries to health or life and with exception of fundamental contractual duties.

VISCARDI will rely on the accurateness, completeness and reasonableness of all information (including without limitation any financial, legal and other information) provided, or caused to be provided to VISCARDI in connection with the engagement and will not be responsible for the independent verification. The COMPANIES will notify VISCARDI about any changes that may be material in any information related to the engagement.



The COMPANIES agree to indemnify VISCARDI and/or its employees and representatives ("Indemnified Parties") and hold each of them harmless against any "Liabilities" (including without limitation any damages, proceedings, expenses, inquiries or threats thereof) to which the Indemnified Parties may become subject in connection with the engagement. In the case of any actions brought against the Indemnified Parties, VISCARDI shall promptly notify the COMPANIES in writing and the COMPANIES shall promptly assume the defence thereof, including the employment of counsel reasonably satisfactory to VISCARDI and payment of all necessary fees and expenses. The indemnified party shall not settle any claims without the prior written consent of the other. Indemnification of VISCARDI excludes losses due to their gross negligence or wilful misconduct.

### 10. Exclusion

Legal advice and tax advice are not part of the engagement.

### 11. Headings

All Headings used in the context of this Agreement are for structuring purposes only and shall not be taken into account for interpretation.

### 12. Written Form

This Agreement constitutes the exclusive agreement between both parties and may not be amended or modified except in writing. Written form shall also be required for a waiver of this provision.

### 13. Jurisdiction

This contract shall be solely governed by and construed in accordance with the laws of the Federal Republic of Germany.

### 14. Safeguarding Provision

Any provision of this Agreement, which is false or invalid in its entirety or in part does not affect the correctness or validity of any other provision of this Agreement. The false or invalid provision shall be replaced with a provision that comes closest to the intended meaning of the provision both parties would have agreed to if they had thought about the subject.

Munich, dated 01.02.05                          Munich, dated 01.02.05

_____                       _____
Bio-Magnetic Therapy Systems Inc.               Viscardi AG

Munich, dated 01.02.05                          Munich, dated 01.02.05

_____                       _____
Tinnitus Signal Medizin & INFINOMED GmbH        Dr. Richard Markoll

01.02.2005 10:16                        6

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

DURAVEST, INC.

                Plaintiff,

VISCARDI AG, WOLLMUTH, MAHER &
DEUTSCH, LLP; MASON H. DRAKE, ESQ., BRUCE
O'DONNELL CPA, BRUCE O'DONNELL CPA/PFS
P.A., BIOMEDICAL CONSULTANT SL, RICHARD
MARKOLL and ERNESTINE BINDER MARKOLL,

                Defendants.

---------------------------------------------------------------- x

: No. 07 CIV 10590
:
:
: Hon. Jed Rakoff, U.S.D.J.
:
:
:
:
:
:
:
:
:
:

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS
OF VISCARDI A.G.**

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP
1633 Broadway
New York, New York  10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Mark W. Lerner, Esq.
Joshua A. Berman, Esq.
Henry B. Brownstein, Esq.

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ....................................................................................2

ARGUMENT...........................................................................................................4

I.  STANDARDS APPLICABLE TO THIS MOTION TO DISMISS.......................4

II.  THE COURT LACKS PERSONAL JURISDICTION OVER VISCARDI ...........6

    A.  Facts Relating to Jurisdiction in New York.................................................7

    B.  There Is No "Specific Jurisdiction" Over Viscardi .....................................7

    C.  There Is No "General Jurisdiction" Over Viscardi.......................................8

III.  DURAVEST'S RICO CLAIM MUST BE DISMISSED .........................................9

    A.  The RICO Claim Is Barred By The PSLRA................................................10

    B.  Plaintiff Fails Adequately To Plead Required Elements
       of The RICO Claim ...................................................................................11

          1.  Duravest Fails Adequately To Plead The Existence
             Of An Enterprise............................................................................11

          2.  Duravest Fails To Allege That Viscardi Operated Or
             Managed The Enterprise.................................................................13

          3.  Duravest Fails To Allege That Viscardi Engaged In A
             Pattern of Racketeering Activity ....................................................14

IV.  THE COMMON LAW FRAUD, SECURITIES FRAUD AND
     NEGLIGENCE CLAIMS SHOULD BE DISMISSED ........................................16

    A.  Duravest Fails To Plead Fraud Or Negligent Misrepresentation
       With Particularity ......................................................................................17

    B.  The Fraud And Negligent Misrepresentation Claims Must Be Also
       Dismissed Because Duravest Fails to Plead The Element of Justifiable
       Reliance ....................................................................................................21

V.  THE CLAIM UNDER 15 U.S.C. § 77(*l*) MUST BE DISMISSED......................23

i

VI.    THE BREACH OF CONTRACT AGAINST VISCARDI MUST
       BE DISMISSED ........................................................................................24

CONCLUSION ........................................................................................24

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

<u>131 Main Street Assoc. v. Manko</u>, 897 F.Supp. 1507 (S.D.N.Y. 1995) ...................................... 13

<u>Aaron Ferer & Sons, Ltd v. Chase Manhattan Bank</u>, N.A., 731 F.2d 112 (2d Cir. 1984) ............ 22

<u>ATSI Communications, Inc. v. The Shaar Fund, Ltd.</u>, 493 F.3d 87 (2d Cir. 2007) ...................... 16

<u>Azrielli v. Cohen Law Offices</u>, 21 F.3d 512 (2d Cir. 1994) ...................................................... 13

<u>Bald Eagle Area Sch. Dist. v. Keystone Financial, Inc.</u>, 189 F.3d 321 (3d Cir. 1999) ................ 10

<u>Bell Atlantic Corp. v. Twombley</u>, 127 S.Ct. 1955 (2007) ........................................................... 5

<u>Bialek v. Racal-Milgo, Inc.</u>, 545 F. Supp. 25  (S.D.N.Y. 1982) ..................................................... 4

<u>Biofeedtrac, Inc. v. Kolinor Optical Enter. & Consultants</u>, 832 F.Supp. 585 (E.D.N.Y. 1993) ... 13

<u>Blythe v. Deutsche Bank A.G.</u>, 399 F. Supp. 2d 274 (S.D.N.Y. 2005) ......................................... 10

<u>Burton v. Ken-Crest Servs.</u>, Inc., 127 F.Supp.2d 673 (E.D.Pa. 2001) ......................................... 10

<u>Calder v. Jones</u>, 465 U.S. 783 (U.S. 1984) ................................................................................... 6

<u>Chaiken v.VV Publishing Corp.</u> 119 F.3d 1018 (2d Cir. 1997) ................................................. 8, 9

<u>Chamarac Properties, Inc. v. Pike</u>, 1993 WL 427137 (S.D.N.Y. Oct. 19, 1993) ......................... 13

<u>Chavin v. McKelevy</u>, 1999 U.S. App. LEXIS 15497 (2d Cir. Jul. 9, 1999) ................................. 17

<u>Congress Financial Corp. v. John Morrell & Co.</u>, 790 F. Supp. 459 (S.D.N.Y. 1992) ................ 22

<u>Cosmas v. Hassett</u>, 886 F.2d 8 (2d Cir. 1989) ............................................................................. 17

<u>Courteen Seed Co. v. Hong Kong & Shanghai Banking Corp.</u>, 245 N.Y. 377
   157 N.E. 272 (N.Y. 1927) ....................................................................................................... 20

<u>De Falco v. Bernas</u>, 244 F.3d at 306 (2d Cir. 2001) .................................................................... 15

<u>Fezzani v. Bear, Stearns & Co., Inc.</u>, 2005 U.S. Dist. LEXIS 3266
   (S.D.N.Y. Mar. 2, 2005) .......................................................................................................... 11

<u>Fiedler v. First City Bank of Houston</u> 807 F.2d 315 (2d Cir. 1986) ............................................. 7

<u>First Nationwide Bank v. Gelt Funding Corp.</u>, 820 F.Supp. 89 (S.D.N.Y. 1983) ............. 11, 12, 13

Gatz v. Ponsoldt, 297 F.Supp.2d 719 (D. Del. 2003) ........................................................10

Gavish v. Revlon, Inc., 2004 U.S. Dist. LEXIS 19771 (S.D.N.Y. Sept. 30, 2004) ....................18

GICC Capital Corp. v. Tech, Financial Group, Inc., 67 F.3d 463 (2d Cir. 1995) ....................15

Goodman Mfg. Co. L.P. v. Raytheon Co., 1999 U.S. Dist. LEXIS 13418
    (S.D.N.Y. Aug. 31, 1999) ........................................................................................23

Gustafson v. Alloyd Co., 513 U.S. 561 (1995) ................................................................23

Harsco Corp. v. Segui, 91 F.3d 337 (2d Cir. 1996) ..........................................................16

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984)................................6, 7

Hernandez v. Coughlin, 18 F.3d 133 (2d Cir. 1994) ..........................................................5

IBT v. Carey, 163 F. Supp. 2d 271 (S.D.N.Y. 2001) ........................................................15

In re Crude Oil Litigation, 2007 U.S. Dist. LEXIS 47902 (S.D.N.Y. June 28, 2007) .................19

In re Elevator Antitrust Litigation, 502 F.3d 47 (2nd Cir. 2007) ...........................................3

In re SmithKline Beecham Clinical Laboratories, Inc., 108 F.Supp.2d 84 (D.Conn. 1999).......14

International Shoe Co. v. Washington, 326 U.S. 310 (1945) ..............................................6, 8

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007)....................................................................5

Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd., 205 F.Supp.2d 243 (S.D.N.Y. 2002).....10

Landoil v. Alexander & Alexander Services, 918 F.2d 1039 (2d Cir. 1990) ..............................9

Lewis v. Fresne, 252 F.3d 352 (5th Cir. 2001)................................................................23

Luce v. Edelstein, 802 F.2d 49 (2d Cir. 1986) ................................................................17

Maddaloni Jewelers,Inc. v. Rolex Watch U.S.A., Inc., 354 F. Supp. 2d 293 (S.D.N.Y. 2004)....14

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996) ....................4, 9

Mills v. Polar Molecular Corp., 12 F.3d 1170 (2d Cir. 1993) ..............................................17, 20

Moll v. U.S. Life Title Ins. Co., 654 F.Supp. 1012 (S.D.N.Y. 1987)....................................12, 11

Orlando v. Kukielka, 40 A.D. 3d 829 (2d Dep't 2007)......................................................21

PDK Labs, Inc. v. Friedlander, 103 F.3d 1105 (2d Cir. 1997)..........................................6

Reves v. Ernst & Young, 507 U.S. 170 (1993) ...................................................13, 14

Robinson v. Overseas Military Sales Corp., 21 F.3d 502 (2d Cir. 1994)..........................4

Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004) .................................................5

Saenger v. Presbyterian Church, 1997 U.S. Dist. LEXIS 19108
    (S.D.N.Y. Dec. 1, 1997) .................................................................19

Schenker v. Assicurazioni Generali, S.P.A. 2002 U.S. Dist. LEXIS 12845
    (S.D.N.Y. July 15, 2002) ................................................................4

Siemens Westinghouse Power Corp. v. Dick Corp., 293 F. Supp. 2d 336 (S.D.N.Y. 2003)........17

Serbian, et al. v. Amoskeag Bank Shares, Inc., et al., 24 F.3d 357 (1st Cir. 1994) ......................20

Shaffer v. Heitner, 433 U.S. 186 (1977)..........................................................6, 6

Stone v. Travis, 2006 U.S. Dist. LEXIS 7739 (S.D.N.Y. 2006) ............................16, 14

Stuart Silver Assocs. V. Baco Dev. Corp., 245 A.D.2d 96 (1st Dep't 1997)..............................21

Tellis v. United States Fid. & Guar. Co., 826 F.2d 477 (7th Cir. 1992) ....................14, 15

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135 (2d Cir. 2001) ..................6

United States v. Coonan, 938 F.2d 1553 (2d Cir. 1991) ...........................................12

United States v. Turkette, 452 U.S. 576 (1981) .................................................11

UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney et al.,
    288 A.D.2d 87 (1st Dep't 2001) ...................................................17, 21

White v. Guarente, 43 N.Y.2d 356 (N.Y. 1977)......................................................23

Yung v. Lee, 432 F.3d 142 (2d Cir. 2005) .........................................................23

**Statutes**

15 U.S.C. § 77(*l*)...........................................................................23

18 U.S.C. § 1964(c)..........................................................................10

Pub L. No. 104-67 § 107 .....................................................................10

**Rules**

Fed. R. Civ. P. 9(b) .................................................................................................5

Fed. R. Civ. P. 12(b)(2) ..........................................................................................1

CPLR § 302(a)(1) ...............................................................................................6, 7

CPLR § 302(a)(3) ...............................................................................................6, 8

## **PRELIMINARY STATEMENT**

Defendant Viscardi AG ("Viscardi") respectfully submits this memorandum of law in support of its Motion to Dismiss the Complaint of Plaintiff Duravest, Inc. ("Duravest") pursuant to Rules 12(b)(2), 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").[1]

The Complaint is defective as to Viscardi for multiple reasons. First, because Viscardi has not had minimum contacts with New York, it is not subject to personal jurisdiction in this court, and for that reason the entire Complaint should be dismissed against Viscardi. See Fed. R. Civ. P. 12(b)(2). Second, the Racketeering Influenced and Corrupt Organizations Act ("RICO") claim is barred by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and further fails because Duravest has failed to plead required elements of the claim, including (i) that a RICO "enterprise" existed, (ii) that Viscardi operated or managed the alleged enterprise, or (iii) that Viscardi engaged in a "pattern" of racketeering activity. Third, Duravest's claim under the Securities Act of 1933, 15 U.S.C. §77(*l*) (the "1933 Act"), fails because that section of the 1933 Act does not apply to transactions involving privately-held securities, such as those of BMTS. Fourth, Duravest's claims for negligent misrepresentation, common law fraud and securities fraud must be dismissed as to Viscardi because (i) they do not meet the particularity requirement of Fed. R. Civ. P. 9(b), and (ii) they fail to plead the required element of justifiable reliance. Fifth, and finally, the breach of contract claim fails because there was no contract between Viscardi and Duravest.

---

[1] This memorandum is supported by the Thätig Affidavit and the Declaration of Mark W. Lerner, Esq., dated April 7, 2008, which attaches the Complaint. Also, Viscardi agrees with and joins in the arguments made by Co-Defendants Bruce O'Donnell CPA and Bruce O'Donnell CPA/PFS, P.A. (collectively, the "O'Donnell Defendants") in their Motion To Dismiss (the "O'Donnell Br."). Finally, capitalized terms not separately defined in this memorandum have the meaning ascribed to them in the Complaint.

## STATEMENT OF FACTS

With respect to personal jurisdiction, the facts are principally set forth in the Affidavit of Barbara Thätig, the General Counsel and Chief Operating Officer of Viscardi, sworn to on April 7, 2008 ("Thätig Aff."), submitted herewith. In summary, the Thätig Aff. establishes that Viscardi was a small European investment bank with a European practice. It maintained a single office in Munich, Germany, from which it provided advisory services to small- and mid-capitalized European companies. At all relevant times, through the filing of the Complaint, Viscardi maintained no operations or subsidiaries in New York.

On January 2, 2005, in Munich, Viscardi and Richard Markoll ("Markoll"), the then-principal shareholder of BMTS, Inc. ("BMTS"), executed an engagement letter for Viscardi to seek the sale of BMTS, a company which conducted its business almost entirely in Germany and which had no business operations in New York. It approached no prospective buyers in New York. In mid-November 2005, Viscardi told the individual who controlled Duravest, Florian Homm, about BMTS and its availability. On November 22, 2005, Homm and Duravest's Chief Executive Officer Ogan Gurel met with Viscardi in Frankfurt, Germany to discuss the opportunity, and on November 25, 2005, in Frankfurt, Duravest signed a subscription agreement to purchase BMTS stock. Viscardi assembled a data-room for Duravest to conduct due diligence, at BMTS's offices, in Munich. Duravest, for its part, was a Chicago, Illinois-based company with no known presence in New York. Viscardi conducted no activities in New York in connection with the effort to sell BMTS generally or with respect to the eventual sale to Duravest specifically. Thätig Aff., ¶¶ 4-8, 10-14.Pursuant to the subscription agreement and other terms, Duravest acquired BMTS (hereinafter, the "Acquisition"). Id. ¶ 13.

The factual allegations in the Complaint relating to Viscardi, which, for purposes of Viscardi's motion under Fed. R. Civ. P. 12(b)(6), must be taken as true, are as follows: BMTS

was founded in 1991 by Markoll who, until the time it was purchased, controlled BMTS as its majority shareholder.  BMTS, a Florida corporation, was the sole owner of BMTS, GmbH, a German corporation engaged in the business of selling and licensing medical devices for the treatment of patients, with Pulsed Signal Technology ("PST").  Complaint ¶¶ 52, 55, 63-64.

From "in and prior to the year 2000 up through and including December 2005," the Complaint alleges, Viscardi maintained BMTS and Richard and Ernestine Markoll (the "Markolls") as a clients.  During that time period, "Viscardi compiled and disseminated corporate information" regarding BMTS and engaged in an unsuccessful attempt to find a purchaser for BMTS.  Complaint ¶¶ 106-111.  To that end, Viscardi made presentations falsely portraying, _inter alia_, BMTS's value, profitability, intellectual property rights and technology in a positive light, knowing that such representations were false.  Complaint ¶ 112.  Viscardi also made a presentation to plaintiff, who relied on the information presented in purchasing BMTS. Complaint ¶ 115-16.  However, Viscardi knew or should have known that its representations regarding the value of BMTS were "false or substantially false"; that BMTS was of little or no value as a going concern; that BMTS held little or no protectable intellectual property interests; there were "little or no clinical studies" to support the product; and that the personal reputation of the key officer, Markoll, was tainted by a criminal conviction.  Complaint ¶ 117.

In addition, on November 28, 2005, Viscardi, along with the Markolls and the defendant accountants, sent a letter to plaintiff containing certain material misrepresentations and omissions, including, _inter alia_, that it denied the existence of related party transactions, confirmed the accuracy of false financial statements, and claimed there were no known litigation claims against BMTS.  Complaint ¶ 150.

Duravest then made a series of payments amounting to millions of dollars during November 2005 through January 2006 by which it acquired BMTS. Complaint ¶¶ 157-161. Of the funds paid by Duravest, some $3,070,000 were subsequently wrongfully transferred by Markoll out of BMTS's accounts and into his own personal bank accounts. Complaint ¶¶ 96-101. Markoll also failed to transfer certain intellectual property rights to Duravest, and Markoll violated a non-competition agreement. Complaint ¶¶ 94, 102-105.

Based on foregoing, Duravest alleges eight causes of action, of which Viscardi is named in six. The first, sixth and seventh causes of action allege common law fraud and two types of federal securities fraud, respectively. The second cause of action makes claims under the federal RICO statute, 18 U.S.C. § 1962(c) and (d). The fourth cause of action alleges breach of contract. And the eighth cause of action alleges negligent misrepresentation. (Viscardi is not named in the third claim against the Markolls for conversion, nor in the fifth claim against lawyers for malpractice.)

For the reasons that follow, all of the claims against Viscardi should be dismissed.

## ARGUMENT

### I.

### STANDARDS APPLICABLE TO THIS MOTION TO DISMISS

On a motion to dismiss for lack of personal jurisdiction pursuant to F.R.C.P. 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2d Cir. 1996); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994). In addressing a motion under Rule 12(b)(2), the Court may consider affidavit evidence refuting jurisdictional allegations in the Complaint. See Bialek v. Racal-Milgo, Inc., 545 F. Supp. 25. 33 (S.D.N.Y. 1982); Schenker v. Assicurazioni Generali, S.P.A. 2002 U.S. Dist. LEXIS 12845, *12 (S.D.N.Y. July

15, 2002) (defendant entitled to rebut unsupported jurisdictional allegations in the complaint with "direct, highly specific, testimonial evidence regarding an essential fact to jurisdiction.").

In reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept all the allegations in the Complaint as true. See Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). With respect to this "notice pleading" standard, however, the Supreme Court has recently explained that although a Complaint need not contain a detailed set of factual allegations in order to survive a motion to dismiss, a "formulaic recitation of the elements of a cause of action," is not sufficient, and the complaint must set forth "enough facts to state a claim to relief that is plausible on it face." Bell Atlantic Corp. v. Twombley, 127 S.Ct. 1955, 1964-65 (2007); Iqbal v. Hasty, 490 F.3d 143, 155 (2d Cir. 2007) (recognizing that, in Twombley, the Supreme Court's reasoning "indicated that it intended to make some alteration in the regime of pure notice pleading that had prevailed in the federal courts ever since Conley v. Gibson was decided half a century ago.") (internal citation omitted).

In considering Duravest's claims for common law fraud, securities fraud under Rule 10b-5, and negligent misrepresentation, the Court must ensure that the allegations in the Complaint meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) ("the particularity requirement of Rule 9(b) applies to securities fraud claims brought under Section 10(b) and Rule 10b-5.").

Pursuant to the foregoing standards, Viscardi respectfully submits that it is entitled to an Order dismissing the Complaint as to Viscardi.

## II.

## THE COURT LACKS PERSONAL JURISDICTION OVER VISCARDI

The Complaint must be dismissed as to Viscardi because Viscardi is not subject to personal jurisdiction in New York under its "long-arm statute," Section 302 of the New York Civil Practice Law and Rules ("CPLR"), or the Due Process Clause of the Fourteenth Amendment.[2]

Under CPLR § 302, personal jurisdiction may be asserted over a non-resident defendant if either: (a) the defendant "transacts business" in New York and the claim against the defendant arises out of activity conducted in New York, see CPLR § 302(a)(1); or (b) the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." See CPLR § 302(a)(3)(i). As set forth infra, neither of those circumstances exists here.

The Due Process Clause of the Fourteenth Amendment prohibits the exercise of personal jurisdiction over a nonresident corporate defendant unless that defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Calder v. Jones, 465 U.S. 783, 788 (1984); International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001). The Supreme Court has held that the "minimum contacts" requirement is satisfied when either (i) a defendant's activities in the forum state in general are sufficiently pervasive that it is subject to so-called "general jurisdiction" there, see id. (describing "general personal jurisdiction"); or (ii) the legal controversy itself "is related to or 'arises out of' a defendant's contacts with the forum." Helicopteros Nacionales de

---

[2] In diversity or federal question cases the court must look first to the long-arm statute of the forum state, in this instance, New York. See PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).

Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984) (describing "specific personal jurisdiction"), citing Shaffer v. Heitner, 433 U.S. 186 (1977).  None of these standards is met in this case.

### A.    Facts Relating to Jurisdiction in New York

The facts with respect to the jurisdictional analysis under both CPLR § 302 and the Due Process Clause are set forth in the Thätig Affidavit and may be summarized as follows: (i) Viscardi is a small Munich-based German investment bank with no offices in New York, see Thätig Aff. ¶¶ 4-5; (ii) Viscardi conducts its business in Europe and, through the filing of the Complaint, had no operations or subsidiaries in New York, see id.; (iii) in connection with the Acquisition, Viscardi did not travel to New York, participate in any meetings in New York or send any materials to New York, see id. ¶¶ 7, 9-11, 14, 15; (iv) all contacts between Viscardi and any representative of Duravest occurred in Germany, see id. ¶¶ 11, 14; (v) Duravest likewise maintains no offices, employees or operations in New York, see id. ¶ 13; and (vi) BMTS's main operating subsidiary – BMTS GmbH – was located in Germany, see id. ¶ 8.

### B.    There Is No "Specific Jurisdiction" Over Viscardi

Specific jurisdiction exists under CPLR § 302 when (a) the defendant "transacts business" in New York and the claim against the defendant arises out of activity conducted in New York, see CPLR § 302(a)(1) (emphasis added); Fiedler v. First City Bank of Houston, 807 F.2d 315, 317 (2d Cir. 1986).  In turn, Due Process is satisfied when specific jurisdiction is asserted over a defendant in a lawsuit that itself "is related to or 'arises out of' a defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. at 414 n.8.

Here, although Duravest incorrectly alleges that Viscardi "transacts business" in New York, a close reading of the Complaint reveals that Duravest has failed to allege that Viscardi

committed even a single act in New York with respect to the Acquisition. In contrast, as set forth in the Thätig Affidavit, Viscardi collected all necessary materials to analyze and market BMTS in Germany, and approached all prospective purchasers in Europe. See Thätig Aff., ¶¶ 7, 9-11, 14, 15. Viscardi's interactions with representatives of Duravest – the ultimate purchaser – were entirely in Germany. Id., ¶¶ 11, 14. The BMTS "data room" that Viscardi set up for Duravest to review was located in Munich, Germany. Id., ¶ 14. And Duravest executed the Subscription Agreement for the Acquisition in Germany. Id.[3]

In sum, there is no basis for asserting personal jurisdiction over Viscardi under CPLR § 302(a)(1) or on a theory of "specific jurisdiction" under federal law.

### C.    There Is No "General Jurisdiction" Over Viscardi

There is also no basis for asserting jurisdiction over Viscardi on a theory of "general jurisdiction." Under CPLR § 302(c)(i), general jurisdiction over a non-resident defendant exists where the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." See CPLR § 302(a)(3)(i). Under the Supreme Court's precedents interpreting the Fourteenth Amendment's Due Process Clause, general jurisdiction exists when "a defendant's activities in the forum state in general are sufficiently pervasive." International Shoe, supra, at 318.

The Second Circuit's decision in Chaiken v. VV Publishing Corp. 119 F.3d 1018 (2d Cir. 1997) is instructive with respect to the degree of "pervasive" business activities that a defendant must perform in a forum state to justify the assertion of general jurisdiction. In Chaiken, the

---

[3] Notably, the Complaint fails to allege that any financial consequence or injury occurred in New York. The company sold, i.e., BMTS, was a Florida corporation with its main operating subsidiary based in Munich, Germany, and the purchaser, i.e., Duravest, is a Virginia corporation based in Chicago, Illinois. Thätig Aff. ¶ 8. Duravest itself has no offices or operations in New York, and any financial injury it may have suffered was suffered in Illinois, where it is based, or Virginia, where it is incorporated. Id. ¶ 14.

plaintiff sued an Israeli newspaper for defamation. The newspaper had a regular weekly circulation of 183 copies in the forum state, generating annual revenue of $21,000, and the defendant sought to predicate general jurisdiction upon these facts. See id. Nevertheless, the Court found that the defendant's business activities were not sufficiently "systematic and pervasive" to permit general jurisdiction, and dismissed the complaint. See id. at 1029.

Far from rising even to this minimal level, Viscardi had no operations in New York during all relevant times up to the filing of this Complaint, i.e., the applicable time period for the jurisdictional analysis, see Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2d Cir. 1996), let alone operations that were so "regular and systematic" that Due Process would permit jurisdiction to be asserted over Viscardi in the absence of grounds for specific jurisdiction in New York. See Landoil v. Alexander & Alexander Services, 918 F.2d 1039, 1042 (2d Cir. 1990) (dismissing complaint pursuant to Rule 12(b)(2) because defendants were not incorporated in, or licensed to do business in, New York; defendants had no employees within the state; defendants did not maintain offices, bank accounts, telephone listings, or mailing addresses in New York, and held no real property in the state). Accordingly, this Complaint should be dismissed in its entirety as to Viscardi.

### III.

### DURAVEST'S RICO CLAIM MUST BE DISMISSED

Duravest's RICO claim should also be dismissed pursuant to F.R.C.P. 12(b)(6), for failure to state a claim because it is barred by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and because the allegations fail to support multiple elements of RICO.

**A.      The RICO Claim Is Barred By The PSLRA**

Section 107 of the PSLRA expressly amended the federal RICO statute to <u>remove</u>

securities fraud as a predicate act. <u>See</u> Pub. L. No. 104-67 § 107. Following the amendment,

which became effective on December 22, 1995, the RICO statute reads:

> Any person injured in his business or property by reason of a violation of
> section 1962 of this chapter may sue therefore in any appropriate United
> States District Court and shall recover threefold the damages he sustains and
> the cost of the suit, including a reasonable attorney's fee, <u>except that no</u>
> <u>person may rely upon any conduct that would have been actionable as fraud in</u>
> <u>the purchase or sale of securities to establish a violation of section 1962.</u>

18 U.S.C. § 1964(c) (emphasis supplied).  This bar operates to preclude RICO claims based on

securities fraud regardless of how they are nominally pled.   The purpose of the PSLRA

amendment was not only to bar RICO actions expressly predicated on alleged acts of securities

fraud, "but also to prevent a plaintiff from pleading other specified offenses, such as mail or

wire fraud, as predicate action under civil RICO, if such offenses are based on conduct that

would have been actionable as securities fraud." <u>Bald Eagle Area Sch. Dist. v. Keystone</u>

<u>Financial, Inc.</u>, 189 F.3d 321, 327 (3d Cir. 1999) (internal quotations omitted). <u>See also</u> <u>Blythe</u>

<u>v. Deutsche Bank A.G.</u>, 399 F. Supp. 2d 274, 282 (S.D.N.Y. 2005) ("a plaintiff cannot avoid the

RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate

offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to

securities fraud.  Allowing such surgical presentation of the cause of action [ ] would undermine

the congressional intent behind the RICO Amendment") (Scheindlin, J.).[4]

---

[4] <u>See also</u> <u>Gatz v. Ponsoldt</u>, 297 F.Supp.2d 719, 730 (D. Del. 2003) ("[P]laintiff cannot circumvent the PSLRA's exclusion of securities fraud as a RICO predicate act through artful pleading."); <u>Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.</u>, 205 F.Supp.2d 243, 248 (S.D.N.Y. 2002) (Sweet, J.) ("In amending RICO, Congress was clear in stating that the PSLRA 'was meant to eliminate the possibility that litigants might frame their securities claims under a mail or wire fraud claim.'"); <u>Burton v. Ken-Crest Servs.</u>, Inc., 127 F.Supp.2d 673, 677 (E.D.Pa. 2001) ("Plaintiff cannot magically revive his claim by picking out discrete details of his allegations and then claiming that they are not actionable as securities fraud.").

Here, there is no legitimate question as to whether Viscardi's alleged conduct *could* have been pled as securities fraud. It *was* pled as securities fraud. <u>See</u> Complaint ¶ 206 (asserting claim under Rule 10b-5 based on same conduct underlying the RICO claim). The only conduct that Duravest alleges as to Viscardi is that Viscardi made misrepresentations in connection with its efforts to bring about a sale of BMTS's securities. Where a RICO claim and a securities fraud claim purport to rely on the same alleged conduct, the RICO claim is barred <u>per se</u> by the PSLRA. <u>See</u> <u>Fezzani v. Bear, Stearns & Co., Inc.</u>, 2005 U.S. Dist. LEXIS 3266, *18 (S.D.N.Y. Mar. 2, 2005) (RICO claim dismissed where plaintiff relied on the same factual allegations to support securities fraud and RICO claims).

### B.     Plaintiff Fails Adequately To Plead Required Elements of The RICO Claim

Duravest's RICO claim is also subject to dismissal because Duravest has failed to plead facts sufficient to establish (1) that a RICO "enterprise" existed; (2) that Viscardi participated in the "management or direction" of such enterprise; or (3) that Viscardi engaged in a "pattern" of RICO activity.

### 1.     Duravest Fails Adequately To Plead The Existence Of An Enterprise

Under the RICO statute, Duravest must plead that Viscardi participated in an "enterprise."[5] The enterprise element is proved "by evidence of an ongoing organization, formal or informal, and by any evidence that the various associates function as a continuing unit," <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981). The complaint must allege "hierarchy, organization, and activities" of an association-in-fact to determine whether "its members functioned as a unit." <u>First Nationwide Bank v. Gelt Funding Corp.</u>, 820 F. Supp. 89, 98

---

[5] The statute defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

(S.D.N.Y. 1983), quoting United States v. Coonan, 938 F.2d 1553, 1560-61 (2d Cir. 1991). See also Moll v. U.S. Life Title Ins. Co., 654 F. Supp. 1012, 1031 (S.D.N.Y. 1987) (collecting cases).

The instant Complaint is bare-bones regarding the enterprise element, and confusing. It alleges on the one hand that the enterprise is BMTS. But, it also alleges participation by the accountants, the bankers, BMTS's shareholders, and BMTS in what may be a sort of association-in-fact of those entities, stating:

> At all relevant times herein, and by means of the foregoing activities, the O'DONNELL Defendants, the MARKOLL Defendants and Defendant VISCARDI, by means of their collective participation therein, constituted "persons," and collectively controlled BMTS, Inc. (rendering it an "enterprise" within the meaning of 18 U.S.C. § 1962(c) and (d) . . . ."

Complaint ¶ 177 (emphasis supplied). The deficiency of this formulation is clear from the case law because it fails to describe the nature of each party's role in the enterprise. For example, the complaint in Moll, supra, alleged that members of an "enterprise" took kickbacks in exchange for real estate settlement services, but failed to "specify how these members joined together as a group to achieve these purposes" or include "factual allegations regarding the continuity of structure or personnel of this group," and on that basis the court dismissed the complaint. Moll, 654 F. Supp. at 1032. Likewise in First Nationwide Bank, the court dismissed a RICO claim brought by a bank against a mortgage broker and a group of borrowers based on their overstating property values, finding that the complaint lacked sufficient facts concerning the structure and operation of the enterprise. The allegation was:

> [A]t various times as early as 1985, and possibly earlier, through at least 1990, Gelt . . . and all the other defendants were associated in fact for the common purpose, among others, of defrauding First Nationwide through the loan transactions described in this complaint and other means. This association in fact was an "enterprise" (the "Borrower Enterprise") . . . .

Id. at 98. The court rejected the sufficiency of this pleading, stating:

> Plaintiff has not specified how all defendants, including various borrowers, joined together as a group to perpetrate the frauds alleged in the Amended Complaint. Plaintiff has not pleaded any facts regarding the continuity of structure or personnel of the "Borrower Enterprise." Plaintiff merely asserts that for over six years defendants shared common fraudulent purposes and plans.

Id. Duravest's complaint does no more than this to describe and support the claim that a RICO enterprise existed, mandating on that basis alone dismissal of the RICO cause of action.

> 2.  Duravest Fails To Allege That Viscardi
>     Operated Or Managed The Enterprise

The RICO claim also fails for failure to allege that Viscardi operated or managed the enterprise, which it could do either by pleading that it had "a formal position in the enterprise or had *some* part in directing the enterprise's affairs." Reves v. Ernst & Young, 507 U.S. 170, 179 (1993) (emphasis in original). The Complaint does allege "operation and management" with respect to the Markoll Defendants, Complaint ¶177, but is bereft of such allegations against Viscardi, which functioned as BMTS's outside investment banker.

Applying the Reves test, courts have routinely found similar allegations against outside advisors to be insufficient to implicate a RICO defendant in the "management or operation" of a RICO enterprise. See, e.g., Azrielli v. Cohen Law Offices, 21 F.3d 512, 521-22 (2d Cir. 1994) (defendant's alleged provision of legal services related to fraudulent real estate transaction did not constitute "management" of the alleged RICO enterprise); 131 Main Street Assoc. v. Manko, 897 F. Supp. 1507, 1527 (S.D.N.Y. 1995) ("operation-or-management rule is intended to spare from RICO liability true enterprise outsiders"); Biofeedtrac, Inc. v. Kolinor Optical Enter. & Consultants, 832 F. Supp. 585, 593 (E.D.N.Y. 1993) ("[E]ven when professionals go beyond their customary role, they will not be deemed to have participated in the 'operation or management' of the enterprise itself."); Chamarac Properties, Inc. v. Pike, 1993 WL 427137, *3

(S.D.N.Y. Oct. 19, 1993) (accounting firm's professional misconduct and assumption of limited management responsibilities was insufficient to allege operation or management).

The Complaint's conclusory assertion that Viscardi, together with the Markoll and O'Donnell defendants, "collectively controlled" BMTS, Complaint ¶ 177, lacks averments of facts or substance supporting that conclusion. The Complaint asserts that Viscardi was engaged as professional advisor to sell BMTS, but does not set forth how Viscardi managed or operated BMTS in any way. Complaint ¶¶ 109-116. Merely alleging a legal conclusion that is supported by no factual allegations is insufficient to plead "operation or management." In re SmithKline Beecham Clinical Laboratories, Inc., 108 F.Supp.2d 84, 99 (D.Conn. 1999) ("To satisfy the operation or management test, a plaintiff must allege facts sufficient to establish that a RICO defendant 'ha[d] some part in directing the enterprise's affairs.'") (emphasis supplied), quoting, Reves, supra, at 179. These allegations, are insufficient to satisfy this RICO element.

3.    Duravest Fails To Allege That Viscardi
      Engaged In A Pattern of Racketeering Activity

Duravest has also failed to allege a pattern of racketeering activity both because it alleges only a single predicate act against Viscardi and because the Complaint fails to establish the continuity necessary to constitute a pattern.

It is well-settled that "steps" towards completing a racketeering activity are considered one predicate act. Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc., 354 F. Supp. 2d 293, 303 (S.D.N.Y. 2004) ("a completed act of extortion along with the intermediate steps toward completion of that act constitute one predicate act, not multiple acts"). The Complaint alleges a single fraudulent scheme (to induce Duravest to purchase BMTS) advanced by a number of false oral or written statements. Tellis v. United States Fid. & Guar. Co., 826 F.2d 477 (7th Cir. 1992), resulting in dismissal of a RICO claim where only a single scheme was alleged, is

14

illustrative. There, the complaint alleged a series of mailings intended to defraud plaintiff and extort from him certain compensation. Despite that a series of multiple fraudulent mailings was pled, the Seventh Circuit dismissed the RICO claim finding a failure to plead at least two predicate acts. Specifically, the court held that because the acts of mail fraud were part of a single fraudulent scheme, involved only a single victim, and inflicted a single injury, that they constituted a single predicate act, and not a pattern. Id. at 479. Here, too, the Complaint alleges a single scheme with one victim which suffered a single injury.

Moreover, in order to establish that Viscardi engaged in a pattern of racketeering activity, it must allege, in the absence of a continuing threat, that Viscardi did so for a "substantial period," which the Second Circuit has held must be at least two years.[6] The relevant inquiry focuses on when a particular defendant committed the predicate acts to determine the duration of that defendant's predicate activity. See De Falco v. Bernas, 244 F.3d at 306, 322 n. 22 (2d Cir. 2001) ("[R]egardless of the point in time at which the plaintiffs allege the overall extortion began, to determine whether the plaintiffs satisfied the requisite period of closed-ended continuity for the Bernas defendants, the duration of the pattern of racketeering activity must be measured by the RICO predicate acts that the jury found the Bernas defendants committed."). Furthermore, the duration of a pattern of racketeering is measured by when RICO predicate acts are committed. See GICC Capital Corp. v. Tech. Financial Group, Inc., 67 F.3d 463, 467 (2d Cir. 1995) ("Because [plaintiff] does not allege any racketeering activity in connection with the

---

[6] The Complaint does not allege facts which would support a claim of an "open-ended" pattern, which requires that "[t]here is a substantial threat that the Enterprise's racketeering activities will continue . . . and that the racketeering activities associated with the Enterprise constitute defendants' ordinary method of doing business." De Falco v. Bernas, 224 F.3d at 323. Here, the allegations that post-date the December 2005 Acquisition are several money transfers by Richard Markoll ending April 2006 (which are not attributed to Viscardi, and which did not prompt plaintiff to name Viscardi in the "conversion" cause of action) and Markoll's alleged violation of his non-competition agreement. This is hardly racketeering activity, and does not involve Viscardi. And, as the O'Donnell defendants pointed out in their motion to dismiss, the enterprise, BMTS, was owned and controlled by plaintiff after the Acquisition in December 2005.

individual [defendants'] takeover, the takeover cannot form the starting point of defendants' pattern of racketeering."); <u>IBT v. Carey</u>, 163 F. Supp. 2d 271, 281 (S.D.N.Y 2001) ("Acts that do not constitute predicate racketeering activity are not included in the calculation for determining continuity.").

Here, although with a broad brush the Complaint asserts that Viscardi's conduct dates back to the year 2000, it does not even attempt to allege specific acts against Viscardi until the time of the BMTS Acquisition in late 2005 (and even then fails, as set forth in Point IV(A) below to plead such acts in conformity with Rule 9(b), Fed. R. Civ. P.). Moreover, as set forth in Point III(A) above, the conduct associated with the sale of BMTS stock to Duravest (Viscardi's only role) does not qualify as racketeering activity under RICO due to preemption by the PSLRA. Given the short period of time for which acts by Viscardi are pled, the defects in the pleading of such acts, and the prohibition against relying on securities fraud for predicate acts, this Complaint fails to plead a pattern of racketeering activity for RICO purposes.

For all of the above reasons, therefore, the RICO claim should be dismissed.

## IV.

### THE COMMON LAW FRAUD, SECURITIES FRAUD AND NEGLIGENCE CLAIMS SHOULD BE DISMISSED

In addition to the fatal defect in the § 77(*l*) securities fraud claim pled in the Seventh Cause of Action (<u>see</u> Point V <u>infra</u>), Duravest's claim against Viscardi for common law fraud (First Cause of Action), both federal securities fraud claims (Sixth and Seventh Causes of Action), and negligent misrepresentation (Eight Cause of Action) are further deficient for two reasons. First, the Complaint fails to satisfy the heightened pleading requirements for fraud – including federal securities fraud – and negligent misrepresentation under Rule 9(b), Fed R. Civ. P. <u>See</u> <u>ATSI Communications, Inc. v. The Shaar Fund, Ltd.</u>, 493 F.3d 87, 99 (2d Cir. 2007)

("Securities fraud claims are subject to heightened pleading requirements . . . ."); <u>Stone v. Travis</u>, 2006 U.S. Dist. LEXIS 7739, *2-4 (S.D.N.Y. 2006); <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 348 (2d Cir. 1996) (negligent misrepresentation claim dismissed for failure to meet particularity standard of Rule 9(b)); <u>Siemens Westinghouse Power Corp. v. Dick Corp.</u>, 293 F. Supp. 2d 336, 343 (S.D.N.Y. 2003) (claim for negligent misrepresentation must "adequately specify the statements it claims were false or misleading . . . state when and where the statements were made, and identify those responsible for the statements."). Second, the Complaint fails to allege the element of justifiable reliance required for fraud and negligent misrepresentation claims.[7]

**A.    Duravest Fails To Plead Fraud Or Negligent Misrepresentation With Particularity**

Under Rule 9(b), Fed. R. Civ. P., a securities fraud or negligent misrepresentation complaint based on alleged misstatements must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993) (fraud); <u>Cosmas v. Hassett</u>, 886 F.2d 8, 11 (2d Cir. 1989) (negligent misrepresentation). Allegations that are conclusory or unsupported by factual assertions are insufficient. <u>Luce v. Edelstein</u>, 802 F.2d 49, 54 (2d Cir. 1986).

Duravest's vague and conclusory allegations against Viscardi fall far short of Rule 9(b)'s standard. Throughout the Complaint, Duravest vaguely alleges that false statements were made but fails to supply the specific statement, the speaker, the date or the location the statement was made. Throughout the Complaint, Duravest attributes false statements to groups of some or all

---

[7] The elements of common law fraud and securities fraud are the same, namely, false representation, scienter, materiality, justifiable reliance, and damage. <u>Congress Financial Corp. v. John Morrell & Co.</u>, 790 F. Supp. 459, 469 (S.D.N.Y. 1992) (common law fraud); <u>Chavin v. McKelevy</u>, 1999 U.S. App. LEXIS 15497, *4 (2d Cir. Jul. 9, 1999) (securities fraud). The element of justifiable reliance applies in equal measure to claims for negligent misrepresentation. <u>UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney et al.</u>, 288 A.D.2d 87, 88 (1st Dep't 2001).

of the defendants in the case, typically, the Markolls, the O'Donnell Defendants, and Viscardi, without specifying who or which made the statement. Throughout the Complaint, it alleges generally a subject matter of an alleged misrepresentation – such as "profitability" or "that . . . Defendants . . . had participated in clinical trials," without specifying the specific false statement made and who made it. The few efforts at specificity Duravest does attempt – by alluding to BMTS's financial statements and to a letter dated November 28, 2005 from Richard Markoll – do not cure these glaring defects – because merely identifying these lengthy documents still remains insufficiently particular to satisfy Rule 9(b) and because the Complaint's fraud allegations are broader than those documents.[8] An examination of the allegations is instructive.

For example, paragraph 83 of the Complaint states:

> 83.    Prior to the Purchase, on or about May 31, 2005, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI intentionally and/or negligently and/or recklessly misrepresented BMTS to be profitable insofar as its income exceeded its 2004 operating expenses,

and paragraph 90 further alleges that the 2003, 2004 and 2005 financial statements "contained material misrepresentations and/or material omissions regarding significant elements of the business, financial condition, and future business prospects of BMTS, INC." These allegations fail to specify which statement or statements in the financials is false (*i.e.*, income, operating expenses, both, neither, or simply a conclusion expressed in the document), and further fails to specify, as it should, the amount of any overstatement alleged. See Gavish v. Revlon, Inc., 2004 U.S. Dist. LEXIS 19771, *48 (S.D.N.Y. Sept. 30, 2004) ("[A]lthough there is no numerical benchmark for assessing the materiality of misstatements in financial reports defendants . . . are still entitled to be appraised of the approximate amount of overstatement involved.") Paragraph

---

[8] We do not believe this lack of particularity was inadvertent; rather, we believe that the repleading of this Complaint as to Viscardi will either be impossible or will crystallize the issues for factual inquiry and render the Complaint readily dismissable on summary judgment with reference to plain evidence.

84's allegation that the financials were inconsistent with GAAP, without further elaboration, are also insufficient under 9(b). Id. at *49 (general allegations that defendant did not comply with GAAP inadequate to satisfy the particularity requirement of 9(b)).

Paragraphs 80 and 81 regarding prior clinical trials of the PST technology allege only that:

> 80.    At all times hereafter mentioned, the MARKOLL Defendants and Defendant VISCARDI negligently, fraudulently and inaccurately misrepresented to Plaintiff DURAVEST that the MARKOLL Defendants had participated in and conducted clinical trials of PST technology and that such clinical trials proved and showed that PST technology was effective for the purposes marketed by BMTS prior to the purchase.
>
> 81.    Unbeknownst to Plaintiff Duravest, there were virtually no reliable clinical study results for PST technology in existence prior to the Purchase.

The failure to specify a date on which any such representations were made, along with who made the statements and what they were exactly, is fatal to this claim. Duravest also fails to identify a single clinical study that Viscardi allegedly told Duravest was conducted which was not, in fact, conducted as described to Duravest prior to the sale. Saenger v. Presbyterian Church, 1997 U.S. Dist. LEXIS 19108, *15 (S.D.N.Y. Dec. 1, 1997) (Rule 9(b) not satisfied where complaint failed to state the date on which fraudulent statements made).

The lumping together of all defendants and attributing fraudulent statements collectively – which the Complaint does with respect to virtually all of the fraud allegations – has also prompted courts to dismiss claims under Rule 9(b). In re Crude Oil Litigation, 2007 U.S. Dist. LEXIS 47902, *19 (S.D.N.Y. June 28, 2007) ("In the situation where multiple defendants are alleged to have committed fraud, the complaint must specifically allege fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement.").

Paragraph 89, which references a specific letter, fares no better. It states:

> 89.    On or about November 28, 2005, the MARKOLL Defendants and Defendant VISCARDI caused a correspondence to be sent to Plaintiff DURAVEST by fax, which contained fraudulent material omissions and misrepresentations as to:  the financial condition of BMTS, Inc., the stated "lack" of related party transactions between BMTS INC., and the MARKOLL Defendants in the relevant time period; the "lack" of claims against BMTS, INC., and otherwise materially misrepresented significant elements of the business, financial condition and future business prospects of BMTS, Inc.

Plaintiff fails to specify which written statements in the November 28, 2005 letter are false. Generalized references to BMTS's "financial condition" or "significant elements" of BMTS' "business, financial condition and future business prospects" do not inform Viscardi what statements are alleged to be false statements.  Likewise, Plaintiff fails to identify what "related party transactions" were omitted or which "claims" were omitted.  See Serbian, et al. v. Amoskeag Bank Shares, Inc., et al., 24 F.3d 357, 362 (1st Cir. 1994) (plaintiff failed to adequately plead falsity when it offered no information about the general health of the company's loan portfolio, and failed to cite any specific loans that were in trouble); Mills, supra, at 1175 (plaintiff must specify what was false and why it was false).  Without such specificity, it is impossible to determine if the alleged omission or false statement occurred, and, if it did, whether it was material or immaterial.

Finally, paragraph 111 alleges that from the year 2000 "through and including December of 2005," Viscardi made various presentations to prospective purchasers of BMTS, and paragraph 112 states that such "presentations put forth BMTS, INC. and its subsidiaries as a going concern with significant value and upside potential, based on representations regarding the protectability and usefulness of its technology . . .."  As with the other fraud allegations, this one fails, with respect to the alleged "presentations," to specify the specific false statements allegedly made, who made them, or where or when they were made, all of which are required.

20

For all of these reasons, therefore, Duravest's fraud and negligent misrepresentation claims should be dismissed.

**B.    The Fraud And Negligent Misrepresentation Claims Must Be Also Dismissed Because Duravest Fails to Plead The Element of Justifiable Reliance**

These claims also fail because the allegations do not make out the required element of reasonable reliance.  In a nutshell, the Complaint cannot survive its failure to establish that Duravest conducted any due diligence or any use of public information, which as a sophisticated party it must before a court will consider justifiable its reliance on the mere statements of other parties.

UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney et al., 288 A.D.2d 87 (1st Dep't 2001) is instructive.  In the UST case, plaintiff UST purchased stock in AbTox, a company that had previously engaged the defendant investment bank ("Salomon") to advise it in connection with a debt-offering.  Following the closing, UST learned, apparently for the first time, that AbTox's sole product – a medical sterilizer – had not been cleared for marketing by the FDA.  AbTox subsequently filed for bankruptcy and UST lost the value of its investment.

UST sued Salomon alleging it fraudulently failed to inform it of this material fact.  The trial court dismissed the complaint, reasoning that this sophisticated plaintiff had not acted reasonably as a matter of law in relying solely on Salomon's representations without performing its own due diligence.  Affirming the dismissal, the First Department expressly held: "As a matter of law, a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it, such as reviewing the files of the other parties." Id. at 88 (emphasis supplied), citing Stuart Silver Assocs. V. Baco Dev. Corp., 245 A.D.2d 96, 98-99 (1st Dep't 1997); Orlando v. Kukielka, 40 A.D.3d 829, 832 (2d Dep't 2007)

(finding patently implausible the allegation that a sophisticated business person, in assuming a major proprietary interest in a commercial enterprise, and incurring a heavy financial obligation, did so solely on information provided by broker).  It is plain that Duravest, which allegedly spent a high seven-figure sum to acquire BMTS within a matter of weeks and quickly assumed responsibility for its management and operation, is a sophisticated investor.  Certainly, the Complaint does not (and could not) allege otherwise.

A close reading of the Complaint also reveals that, as in UST, the plaintiff is not alleged to have made use of the resources typically relied upon in due diligence – including the parties' own documents and the public record – or that it met its burden as a sophisticated investor of establishing justifiable reliance.  Notably:

- There is no allegation that plaintiff actually conducted due diligence;

- There is no allegation that plaintiff was denied access to any relevant BMTS information;

- With respect to many of the facts allegedly misrepresented, such as (1) intellectual property rights; (2) existing claims; and (3) the criminal histories of the Markolls, there is no allegation that any such material matters of public record and/or were not discoverable by a sophisticated investor conducting conventional due diligence.[9]

These facts alone warrant dismissal of the fraud and negligent misrepresentation claims.  See Congress Financial Corp. v. John Morrell & Co., 790 F. Supp. 459, 470 (S.D.N.Y. 1992) (plaintiff's access to target company's plants, personnel and documents warranted dismissal of fraud claims for failure to allege reasonable reliance, as a matter of law).

---

[9]  The Markoll's criminal history and BMTS's intellectual property rights are public record:   See http://www.fda.gov/ora/about/enf_story/archive/2001/ch6/oci6.htm.   This fact alone undermines the reasonable reliance element of Duravest's fraud claim. See Aaron Ferer & Sons, Ltd v. Chase Manhattan Bank, N.A., 731 F.2d 112, 123 (2d Cir. 1984) (no justifiable reliance where the information plaintiff claimed was concealed was a matter of public record).

The negligent misrepresentation claim is subject to dismissal for an additional reason as well, namely, Duravest has failed to allege that Viscardi owed any duty to Duravest to act with reasonable care. It is basic that a duty to act with reasonable care is an element of any negligent misrepresentation claim under New York law. <u>White v. Guarente</u>, 43 N.Y.2d 356, 363 (N.Y. 1977) (negligent misrepresentation "is not actionable unless expressed directly, with knowledge or notice that it will be acted upon, <u>to one to whom the author is bound by some relation of duty</u>, arising out of contract or otherwise, to act with care if he acts at all.") (emphasis supplied). In imposing a duty of care, "Courts have generally held that the parties must enjoy a relationship of trust and reliance closer than that of the ordinary buyer and seller, and an arm's length business relationship is not enough to create that relationship." <u>Goodman Mfg. Co. L.P. v. Raytheon Co.</u>, 1999 U.S. Dist. LEXIS 13418, *45-46 (S.D.N.Y. Aug. 31, 1999). For this additional reason, the negligent misrepresentation claim must be dismissed.

<p style="text-align:center"><strong>V.</strong></p>

<p style="text-align:center"><strong><u>THE CLAIM UNDER 15 U.S.C. § 77(<em>l</em>) MUST BE DISMISSED</u></strong></p>

Section 12 of the Securities Act of 1933 states that it is unlawful to (1) sell a security in violation of Section 5, or (2) offer or sell a security by means of a prospectus that includes an untrue statement. 15 U.S.C. § 77(*l*). However, this section of the Securities Act of 1933 only applies to public offerings of securities. <u>See</u> <u>Lewis v. Fresne</u>, 252 F.3d 352, 357 (5th Cir. 2001) (Section 12 of the 1933 Act does not apply to private transactions); <u>citing</u> <u>Gustafson v. Alloyd Co.</u>, 513 U.S. 561, 571 (1995); <u>see also</u> <u>Yung v. Lee</u>, 432 F.3d 142, 148 (2d Cir. 2005). Duravest and BMTS, two privately held companies, privately transacted for the shares of BMTS stock, and therefore, this claim should be dismissed pursuant to Rule 12(b)(6). <u>See</u> <u>Lewis</u>, 252 F.3d at 357 (a private transaction existed where seller issued a private placement memorandum,

<p style="text-align:center">23</p>

there was a private placement of stock through a private placement broker, and where buyer purchased a large share of the company's outstanding stock).

## VI.

## <u>THE BREACH OF CONTRACT AGAINST VISCARDI MUST BE DISMISSED</u>

Finally, Plaintiff also alleges a breach of contract claim against Viscardi. <u>See</u> Complaint at ¶¶ 190-194. However, the Complaint fails to allege (nor could it) that Viscardi and Duravest entered into a contract, oral or written. Accordingly, there is no basis for a breach of contract claim against Viscardi, and the claim must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Viscardi respectfully requests that the Complaint be dismissed as to Viscardi for lack of personal jurisdiction, under Rule 12(b)(2), for failure to state a claim pursuant to 12(b)(6), and for failure to plead fraud, securities fraud and negligent misrepresentation pursuant to Rule 9(b).

Dated: April 7, 2008

<div style="margin-left:40%">

Respectfully submitted,

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: <u>*/s/ Mark W. Lerner*</u>
    Mark W. Lerner
    Joshua A. Berman
    Henry B. Brownstein
    1633 Broadway
    New York, New York  10019
    (212) 506-1700

*Attorneys for Defendant Viscardi AG*

</div>

24