**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ x

DURAVEST, INC.

                Plaintiff,

VISCARDI AG, WOLLMUTH, MAHER &
DEUTSCH, LLP; MASON H. DRAKE, ESQ., BRUCE
O'DONNELL CPA, BRUCE O'DONNELL CPA/PFS
P.A., BIOMEDICAL CONSULTANT SL, RICHARD
MARKOLL and ERNESTINE BINDER MARKOLL,

                Defendants.

------------------------------------------------------------------ x

: No. 07 CIV 10590
:
:
: Hon. Jed Rakoff, U.S.D.J.
:
:
:
:
:
:
:
:
:
:

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**OF VISCARDI A.G.**

KASOWITZ, BENSON, TORRES
    & FRIEDMAN LLP
1633 Broadway
New York, New York  10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Mark W. Lerner, Esq.
Joshua A. Berman, Esq.
Henry B. Brownstein, Esq.

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS .......................................................................2

ARGUMENT............................................................................................4

I.    STANDARDS APPLICABLE TO THIS MOTION TO DISMISS........................4

II.   THE COURT LACKS PERSONAL JURISDICTION OVER VISCARDI ..........6

    A.   Facts Relating to Jurisdiction in New York.................................7

    B.   There Is No "Specific Jurisdiction" Over Viscardi .....................7

    C.   There Is No "General Jurisdiction" Over Viscardi........................8

III.  DURAVEST'S RICO CLAIM MUST BE DISMISSED .........................9

    A.   The RICO Claim Is Barred By The PSLRA...............................10

    B.   Plaintiff Fails Adequately To Plead Required Elements
        of The RICO Claim ...............................................................11

        1.   Duravest Fails Adequately To Plead The Existence
            Of An Enterprise.........................................................11

        2.   Duravest Fails To Allege That Viscardi Operated Or
            Managed The Enterprise...............................................13

        3.   Duravest Fails To Allege That Viscardi Engaged In A
            Pattern of Racketeering Activity ..................................14

IV.   THE COMMON LAW FRAUD, SECURITIES FRAUD AND
      NEGLIGENCE CLAIMS SHOULD BE DISMISSED .......................16

    A.   Duravest Fails To Plead Fraud Or Negligent Misrepresentation
        With Particularity .................................................................17

    B.   The Fraud And Negligent Misrepresentation Claims Must Be Also
        Dismissed Because Duravest Fails to Plead The Element of Justifiable
        Reliance ................................................................................21

V.    THE CLAIM UNDER 15 U.S.C. § 77(*l*) MUST BE DISMISSED.....................23

i

VI.    THE BREACH OF CONTRACT AGAINST VISCARDI MUST
       BE DISMISSED ................................................................................................24

CONCLUSION ................................................................................................................24

## TABLE OF AUTHORITIES

**Page**

**Cases**

131 Main Street Assoc. v. Manko, 897 F.Supp. 1507 (S.D.N.Y. 1995) .......................................13

Aaron Ferer & Sons, Ltd v. Chase Manhattan Bank, N.A., 731 F.2d 112 (2d Cir. 1984) ............22

ATSI Communications, Inc. v. The Shaar Fund, Ltd., 493 F.3d 87 (2d Cir. 2007).......................16

Azrielli v. Cohen Law Offices, 21 F.3d 512 (2d Cir. 1994)..............................................................13

Bald Eagle Area Sch. Dist. v. Keystone Financial, Inc., 189 F.3d 321 (3d Cir. 1999)................10

Bell Atlantic Corp. v. Twombley, 127 S.Ct. 1955 (2007)...................................................................5

Bialek v. Racal-Milgo, Inc., 545 F. Supp. 25  (S.D.N.Y. 1982) ......................................................4

Biofeedtrac, Inc. v. Kolinor Optical Enter. & Consultants, 832 F.Supp. 585 (E.D.N.Y. 1993) ...13

Blythe v. Deutsche Bank A.G., 399 F. Supp. 2d 274 (S.D.N.Y. 2005) .........................................10

Burton v. Ken-Crest Servs., Inc., 127 F.Supp.2d 673 (E.D.Pa. 2001) ..........................................10

Calder v. Jones, 465 U.S. 783 (U.S. 1984)........................................................................................6

Chaiken v.VV Publishing Corp. 119 F.3d 1018 (2d Cir. 1997)....................................................8, 9

Chamarac Properties, Inc. v. Pike, 1993 WL 427137 (S.D.N.Y. Oct. 19, 1993) ..........................13

Chavin v. McKelevy, 1999 U.S. App. LEXIS 15497 (2d Cir. Jul. 9, 1999) .................................17

Congress Financial Corp. v. John Morrell & Co., 790 F. Supp. 459 (S.D.N.Y. 1992)................22

Cosmas v. Hassett, 886 F.2d 8 (2d Cir. 1989)................................................................................17

Courteen Seed Co. v. Hong Kong & Shanghai Banking Corp., 245 N.Y. 377
    157 N.E. 272 (N.Y. 1927) ........................................................................................................20

De Falco v. Bernas, 244 F.3d at 306 (2d Cir. 2001)........................................................................15

Fezzani v. Bear, Stearns & Co., Inc., 2005 U.S. Dist. LEXIS 3266
    (S.D.N.Y. Mar. 2, 2005)...........................................................................................................11

Fiedler v. First City Bank of Houston 807 F.2d 315 (2d Cir. 1986) ...............................................7

First Nationwide Bank v. Gelt Funding Corp., 820 F.Supp. 89 (S.D.N.Y. 1983).............11, 12, 13

Gatz v. Ponsoldt, 297 F.Supp.2d 719 (D. Del. 2003) ..................................................................10

Gavish v. Revlon, Inc., 2004 U.S. Dist. LEXIS 19771 (S.D.N.Y. Sept. 30, 2004) .....................18

GICC Capital Corp. v. Tech, Financial Group, Inc., 67 F.3d 463 (2d Cir. 1995).........................15

Goodman Mfg. Co. L.P. v. Raytheon Co., 1999 U.S. Dist. LEXIS 13418
    (S.D.N.Y. Aug. 31, 1999)......................................................................................................23

Gustafson v. Alloyd Co., 513 U.S. 561 (1995) ...........................................................................23

Harsco Corp. v. Segui, 91 F.3d 337 (2d Cir. 1996).....................................................................16

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984)................................6, 7

Hernandez v. Coughlin, 18 F.3d 133 (2d Cir. 1994) .....................................................................5

IBT v. Carey, 163 F. Supp. 2d 271 (S.D.N.Y. 2001) ..................................................................15

In re Crude Oil Litigation, 2007 U.S. Dist. LEXIS 47902 (S.D.N.Y. June 28, 2007) .................19

In re Elevator Antitrust Litigation, 502 F.3d 47 (2nd Cir. 2007) ..................................................3

In re SmithKline Beecham Clinical Laboratories, Inc., 108 F.Supp.2d 84 (D.Conn. 1999).......14

International Shoe Co. v. Washington, 326 U.S. 310 (1945)......................................................6, 8

Iqbal v. Hasty, 490 F.3d 143 (2d Cir. 2007)..................................................................................5

Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd., 205 F.Supp.2d 243 (S.D.N.Y. 2002).....10

Landoil v. Alexander & Alexander Services, 918 F.2d 1039 (2d Cir. 1990)..................................9

Lewis v. Fresne, 252 F.3d 352 (5th Cir. 2001)............................................................................23

Luce v. Edelstein, 802 F.2d 49 (2d Cir. 1986) ............................................................................17

Maddaloni Jewelers,Inc. v. Rolex Watch U.S.A., Inc., 354 F. Supp. 2d 293 (S.D.N.Y. 2004)....14

Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996) ....................4, 9

Mills v. Polar Molecular Corp., 12 F.3d 1170 (2d Cir. 1993)................................................17, 20

Moll v. U.S. Life Title Ins. Co., 654 F.Supp. 1012 (S.D.N.Y. 1987).....................................12, 11

Orlando v. Kukielka, 40 A.D. 3d 829 (2d Dep't 2007)................................................................21

PDK Labs, Inc. v. Friedlander, 103 F.3d 1105 (2d Cir. 1997)........................................6

Reves v. Ernst & Young, 507 U.S. 170 (1993) .....................................................13, 14

Robinson v. Overseas Military Sales Corp., 21 F.3d 502 (2d Cir. 1994).........................4

Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004) ..........................................................5

Saenger v. Presbyterian Church, 1997 U.S. Dist. LEXIS 19108
    (S.D.N.Y. Dec. 1, 1997) .......................................................................................19

Schenker v. Assicurazioni Generali, S.P.A. 2002 U.S. Dist. LEXIS 12845
    (S.D.N.Y. July 15, 2002) .......................................................................................4

Siemens Westinghouse Power Corp. v. Dick Corp., 293 F. Supp. 2d 336 (S.D.N.Y. 2003)........17

Serbian, et al. v. Amoskeag Bank Shares, Inc., et al., 24 F.3d 357 (1st Cir. 1994) ......................20

Shaffer v. Heitner, 433 U.S. 186 (1977).................................................................6, 6

Stone v. Travis, 2006 U.S. Dist. LEXIS 7739 (S.D.N.Y. 2006) ...........................16, 14

Stuart Silver Assocs. V. Baco Dev. Corp., 245 A.D.2d 96 (1st Dep't 1997)..................21

Tellis v. United States Fid. & Guar. Co., 826 F.2d 477 (7th Cir. 1992) .................14, 15

U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135 (2d Cir. 2001) ..................6

United States v. Coonan, 938 F.2d 1553 (2d Cir. 1991) ..............................................12

United States v. Turkette, 452 U.S. 576 (1981) ...........................................................11

UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney et al.,
    288 A.D.2d 87 (1st Dep't 2001) ......................................................................17, 21

White v. Guarente, 43 N.Y.2d 356 (N.Y. 1977).........................................................23

Yung v. Lee, 432 F.3d 142 (2d Cir. 2005) ...................................................................23

**Statutes**

15 U.S.C. § 77(*l*).........................................................................................................23

18 U.S.C. § 1964(c) ......................................................................................................10

Pub L. No. 104-67 § 107 ..............................................................................................10

**Rules**

Fed. R. Civ. P. 9(b)................................................................................................5

Fed. R. Civ. P. 12(b)(2) ........................................................................................1

CPLR § 302(a)(1) ............................................................................................6, 7

CPLR § 302(a)(3) ............................................................................................6, 8

## PRELIMINARY STATEMENT

Defendant Viscardi AG ("Viscardi") respectfully submits this memorandum of law in support of its Motion to Dismiss the Complaint of Plaintiff Duravest, Inc. ("Duravest") pursuant to Rules 12(b)(2), 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").[1]

The Complaint is defective as to Viscardi for multiple reasons. First, because Viscardi has not had minimum contacts with New York, it is not subject to personal jurisdiction in this court, and for that reason the entire Complaint should be dismissed against Viscardi. See Fed. R. Civ. P. 12(b)(2). Second, the Racketeering Influenced and Corrupt Organizations Act ("RICO") claim is barred by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and further fails because Duravest has failed to plead required elements of the claim, including (i) that a RICO "enterprise" existed, (ii) that Viscardi operated or managed the alleged enterprise, or (iii) that Viscardi engaged in a "pattern" of racketeering activity. Third, Duravest's claim under the Securities Act of 1933, 15 U.S.C. §77(*l*) (the "1933 Act"), fails because that section of the 1933 Act does not apply to transactions involving privately-held securities, such as those of BMTS. Fourth, Duravest's claims for negligent misrepresentation, common law fraud and securities fraud must be dismissed as to Viscardi because (i) they do not meet the particularity requirement of Fed. R. Civ. P. 9(b), and (ii) they fail to plead the required element of justifiable reliance. Fifth, and finally, the breach of contract claim fails because there was no contract between Viscardi and Duravest.

---

[1] This memorandum is supported by the Thätig Affidavit and the Declaration of Mark W. Lerner, Esq., dated April 7, 2008, which attaches the Complaint. Also, Viscardi agrees with and joins in the arguments made by Co-Defendants Bruce O'Donnell CPA and Bruce O'Donnell CPA/PFS, P.A. (collectively, the "O'Donnell Defendants") in their Motion To Dismiss (the "O'Donnell Br."). Finally, capitalized terms not separately defined in this memorandum have the meaning ascribed to them in the Complaint.

## STATEMENT OF FACTS

With respect to personal jurisdiction, the facts are principally set forth in the Affidavit of Barbara Thätig, the General Counsel and Chief Operating Officer of Viscardi, sworn to on April 7, 2008 ("Thätig Aff."), submitted herewith. In summary, the Thätig Aff. establishes that Viscardi was a small European investment bank with a European practice. It maintained a single office in Munich, Germany, from which it provided advisory services to small- and mid-capitalized European companies. At all relevant times, through the filing of the Complaint, Viscardi maintained no operations or subsidiaries in New York.

On January 2, 2005, in Munich, Viscardi and Richard Markoll ("Markoll"), the then-principal shareholder of BMTS, Inc. ("BMTS"), executed an engagement letter for Viscardi to seek the sale of BMTS, a company which conducted its business almost entirely in Germany and which had no business operations in New York. It approached no prospective buyers in New York. In mid-November 2005, Viscardi told the individual who controlled Duravest, Florian Homm, about BMTS and its availability. On November 22, 2005, Homm and Duravest's Chief Executive Officer Ogan Gurel met with Viscardi in Frankfurt, Germany to discuss the opportunity, and on November 25, 2005, in Frankfurt, Duravest signed a subscription agreement to purchase BMTS stock. Viscardi assembled a data-room for Duravest to conduct due diligence, at BMTS's offices, in Munich. Duravest, for its part, was a Chicago, Illinois-based company with no known presence in New York. Viscardi conducted no activities in New York in connection with the effort to sell BMTS generally or with respect to the eventual sale to Duravest specifically. Thätig Aff., ¶¶ 4-8, 10-14.Pursuant to the subscription agreement and other terms, Duravest acquired BMTS (hereinafter, the "Acquisition"). Id. ¶ 13.

The factual allegations in the Complaint relating to Viscardi, which, for purposes of Viscardi's motion under Fed. R. Civ. P. 12(b)(6), must be taken as true, are as follows: BMTS

was founded in 1991 by Markoll who, until the time it was purchased, controlled BMTS as its majority shareholder.  BMTS, a Florida corporation, was the sole owner of BMTS, GmbH, a German corporation engaged in the business of selling and licensing medical devices for the treatment of patients, with Pulsed Signal Technology ("PST").  Complaint ¶¶ 52, 55, 63-64.

From "in and prior to the year 2000 up through and including December 2005," the Complaint alleges, Viscardi maintained BMTS and Richard and Ernestine Markoll (the "Markolls") as a clients.  During that time period, "Viscardi compiled and disseminated corporate information" regarding BMTS and engaged in an unsuccessful attempt to find a purchaser for BMTS.  Complaint ¶¶ 106-111.  To that end, Viscardi made presentations falsely portraying, *inter alia*, BMTS's value, profitability, intellectual property rights and technology in a positive light, knowing that such representations were false.  Complaint ¶ 112.  Viscardi also made a presentation to plaintiff, who relied on the information presented in purchasing BMTS.  Complaint ¶ 115-16.  However, Viscardi knew or should have known that its representations regarding the value of BMTS were "false or substantially false"; that BMTS was of little or no value as a going concern; that BMTS held little or no protectable intellectual property interests; there were "little or no clinical studies" to support the product; and that the personal reputation of the key officer, Markoll, was tainted by a criminal conviction.  Complaint ¶ 117.

In addition, on November 28, 2005, Viscardi, along with the Markolls and the defendant accountants, sent a letter to plaintiff containing certain material misrepresentations and omissions, including, *inter alia*, that it denied the existence of related party transactions, confirmed the accuracy of false financial statements, and claimed there were no known litigation claims against BMTS.  Complaint ¶ 150.

3

Duravest then made a series of payments amounting to millions of dollars during November 2005 through January 2006 by which it acquired BMTS. Complaint ¶¶ 157-161. Of the funds paid by Duravest, some $3,070,000 were subsequently wrongfully transferred by Markoll out of BMTS's accounts and into his own personal bank accounts. Complaint ¶¶ 96-101. Markoll also failed to transfer certain intellectual property rights to Duravest, and Markoll violated a non-competition agreement. Complaint ¶¶ 94, 102-105.

Based on foregoing, Duravest alleges eight causes of action, of which Viscardi is named in six. The first, sixth and seventh causes of action allege common law fraud and two types of federal securities fraud, respectively. The second cause of action makes claims under the federal RICO statute, 18 U.S.C. § 1962(c) and (d). The fourth cause of action alleges breach of contract. And the eighth cause of action alleges negligent misrepresentation. (Viscardi is not named in the third claim against the Markolls for conversion, nor in the fifth claim against lawyers for malpractice.)

For the reasons that follow, all of the claims against Viscardi should be dismissed.

## ARGUMENT

### I.

### STANDARDS APPLICABLE TO THIS MOTION TO DISMISS

On a motion to dismiss for lack of personal jurisdiction pursuant to F.R.C.P. 12(b)(2), the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2d Cir. 1996); Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994). In addressing a motion under Rule 12(b)(2), the Court may consider affidavit evidence refuting jurisdictional allegations in the Complaint. See Bialek v. Racal-Milgo, Inc., 545 F. Supp. 25. 33 (S.D.N.Y. 1982); Schenker v. Assicurazioni Generali, S.P.A. 2002 U.S. Dist. LEXIS 12845, *12 (S.D.N.Y. July

15, 2002) (defendant entitled to rebut unsupported jurisdictional allegations in the complaint with "direct, highly specific, testimonial evidence regarding an essential fact to jurisdiction.").

In reviewing a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), the Court must accept all the allegations in the Complaint as true. See Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). With respect to this "notice pleading" standard, however, the Supreme Court has recently explained that although a Complaint need not contain a detailed set of factual allegations in order to survive a motion to dismiss, a "formulaic recitation of the elements of a cause of action," is not sufficient, and the complaint must set forth "enough facts to state a claim to relief that is plausible on it face." Bell Atlantic Corp. v. Twombley, 127 S.Ct. 1955, 1964-65 (2007); Iqbal v. Hasty, 490 F.3d 143, 155 (2d Cir. 2007) (recognizing that, in Twombley, the Supreme Court's reasoning "indicated that it intended to make some alteration in the regime of pure notice pleading that had prevailed in the federal courts ever since Conley v. Gibson was decided half a century ago.") (internal citation omitted).

In considering Duravest's claims for common law fraud, securities fraud under Rule 10b-5, and negligent misrepresentation, the Court must ensure that the allegations in the Complaint meet the heightened pleading requirements of Fed. R. Civ. P. 9(b). See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004) ("the particularity requirement of Rule 9(b) applies to securities fraud claims brought under Section 10(b) and Rule 10b-5.").

Pursuant to the foregoing standards, Viscardi respectfully submits that it is entitled to an Order dismissing the Complaint as to Viscardi.

## II.

## THE COURT LACKS PERSONAL JURISDICTION OVER VISCARDI

The Complaint must be dismissed as to Viscardi because Viscardi is not subject to personal jurisdiction in New York under its "long-arm statute," Section 302 of the New York Civil Practice Law and Rules ("CPLR"), or the Due Process Clause of the Fourteenth Amendment.[2]

Under CPLR § 302, personal jurisdiction may be asserted over a non-resident defendant if either: (a) the defendant "transacts business" in New York and the claim against the defendant arises out of activity conducted in New York, see CPLR § 302(a)(1); or (b) the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." See CPLR § 302(a)(3)(i). As set forth infra, neither of those circumstances exists here.

The Due Process Clause of the Fourteenth Amendment prohibits the exercise of personal jurisdiction over a nonresident corporate defendant unless that defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Calder v. Jones, 465 U.S. 783, 788 (1984); International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 241 F.3d 135, 152 (2d Cir. 2001).  The Supreme Court has held that the "minimum contacts" requirement is satisfied when either (i) a defendant's activities in the forum state in general are sufficiently pervasive that it is subject to so-called "general jurisdiction" there, see id. (describing "general personal jurisdiction"); or (ii) the legal controversy itself "is related to or 'arises out of' a defendant's contacts with the forum."  Helicopteros Nacionales de

---

[2] In diversity or federal question cases the court must look first to the long-arm statute of the forum state, in this instance, New York.  See PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).

Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984) (describing "specific personal jurisdiction"), citing Shaffer v. Heitner, 433 U.S. 186 (1977). None of these standards is met in this case.

### A.    Facts Relating to Jurisdiction in New York

The facts with respect to the jurisdictional analysis under both CPLR § 302 and the Due Process Clause are set forth in the Thätig Affidavit and may be summarized as follows: (i) Viscardi is a small Munich-based German investment bank with no offices in New York, see Thätig Aff. ¶¶ 4-5; (ii) Viscardi conducts its business in Europe and, through the filing of the Complaint, had no operations or subsidiaries in New York, see id.; (iii) in connection with the Acquisition, Viscardi did not travel to New York, participate in any meetings in New York or send any materials to New York, see id. ¶¶ 7, 9-11, 14, 15; (iv) all contacts between Viscardi and any representative of Duravest occurred in Germany, see id. ¶¶ 11, 14; (v) Duravest likewise maintains no offices, employees or operations in New York, see id. ¶ 13; and (vi) BMTS's main operating subsidiary – BMTS GmbH – was located in Germany, see id. ¶ 8.

### B.    There Is No "Specific Jurisdiction" Over Viscardi

Specific jurisdiction exists under CPLR § 302 when (a) the defendant "transacts business" in New York and the claim against the defendant arises out of activity conducted in New York, see CPLR § 302(a)(1) (emphasis added); Fiedler v. First City Bank of Houston, 807 F.2d 315, 317 (2d Cir. 1986). In turn, Due Process is satisfied when specific jurisdiction is asserted over a defendant in a lawsuit that itself "is related to or 'arises out of' a defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. at 414 n.8.

Here, although Duravest incorrectly alleges that Viscardi "transacts business" in New York, a close reading of the Complaint reveals that Duravest has failed to allege that Viscardi

committed even a single act in New York with respect to the Acquisition. In contrast, as set forth in the Thätig Affidavit, Viscardi collected all necessary materials to analyze and market BMTS in Germany, and approached all prospective purchasers in Europe. See Thätig Aff., ¶¶ 7, 9-11, 14, 15. Viscardi's interactions with representatives of Duravest – the ultimate purchaser – were entirely in Germany. Id., ¶¶ 11, 14. The BMTS "data room" that Viscardi set up for Duravest to review was located in Munich, Germany. Id., ¶ 14. And Duravest executed the Subscription Agreement for the Acquisition in Germany. Id.[3]

In sum, there is no basis for asserting personal jurisdiction over Viscardi under CPLR § 302(a)(1) or on a theory of "specific jurisdiction" under federal law.

### C.    There Is No "General Jurisdiction" Over Viscardi

There is also no basis for asserting jurisdiction over Viscardi on a theory of "general jurisdiction." Under CPLR § 302(c)(i), general jurisdiction over a non-resident defendant exists where the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." See CPLR § 302(a)(3)(i). Under the Supreme Court's precedents interpreting the Fourteenth Amendment's Due Process Clause, general jurisdiction exists when "a defendant's activities in the forum state in general are sufficiently pervasive." International Shoe, supra, at 318.

The Second Circuit's decision in Chaiken v. VV Publishing Corp. 119 F.3d 1018 (2d Cir. 1997) is instructive with respect to the degree of "pervasive" business activities that a defendant must perform in a forum state to justify the assertion of general jurisdiction. In Chaiken, the

---

[3] Notably, the Complaint fails to allege that any financial consequence or injury occurred in New York. The company sold, *i.e.*, BMTS, was a Florida corporation with its main operating subsidiary based in Munich, Germany, and the purchaser, *i.e.*, Duravest, is a Virginia corporation based in Chicago, Illinois. Thätig Aff. ¶ 8. Duravest itself has no offices or operations in New York, and any financial injury it may have suffered was suffered in Illinois, where it is based, or Virginia, where it is incorporated. Id. ¶ 14.

plaintiff sued an Israeli newspaper for defamation. The newspaper had a regular weekly circula-tion of 183 copies in the forum state, generating annual revenue of $21,000, and the defendant sought to predicate general jurisdiction upon these facts. See id. Nevertheless, the Court found that the defendant's business activities were not sufficiently "systematic and pervasive" to permit general jurisdiction, and dismissed the complaint. See id. at 1029.

Far from rising even to this minimal level, Viscardi had no operations in New York during all relevant times up to the filing of this Complaint, i.e., the applicable time period for the jurisdictional analysis, see Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 569 (2d Cir. 1996), let alone operations that were so "regular and systematic" that Due Process would permit jurisdiction to be asserted over Viscardi in the absence of grounds for specific jurisdiction in New York. See Landoil v. Alexander & Alexander Services, 918 F.2d 1039, 1042 (2d Cir. 1990) (dismissing complaint pursuant to Rule 12(b)(2) because defendants were not incorporated in, or licensed to do business in, New York; defendants had no employees within the state; defendants did not maintain offices, bank accounts, telephone listings, or mailing addresses in New York, and held no real property in the state). Accordingly, this Complaint should be dismissed in its entirety as to Viscardi.

## III.

## DURAVEST'S RICO CLAIM MUST BE DISMISSED

Duravest's RICO claim should also be dismissed pursuant to F.R.C.P. 12(b)(6), for failure to state a claim because it is barred by the Private Securities Litigation Reform Act of 1995 ("PSLRA") and because the allegations fail to support multiple elements of RICO.

A.    **The RICO Claim Is Barred By The PSLRA**

Section 107 of the PSLRA expressly amended the federal RICO statute to <u>remove</u> securities fraud as a predicate act. <u>See</u> Pub. L. No. 104-67 § 107. Following the amendment, which became effective on December 22, 1995, the RICO statute reads:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States District Court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, <u>except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.</u>

18 U.S.C. § 1964(c) (emphasis supplied). This bar operates to preclude RICO claims based on securities fraud regardless of how they are nominally pled. The purpose of the PSLRA amendment was not only to bar RICO actions expressly predicated on alleged acts of securities fraud, "but also to prevent a plaintiff from pleading other specified offenses, such as mail or wire fraud, as predicate action under civil RICO, if such offenses are based on conduct that would have been actionable as securities fraud." <u>Bald Eagle Area Sch. Dist. v. Keystone Financial, Inc.</u>, 189 F.3d 321, 327 (3d Cir. 1999) (internal quotations omitted). <u>See also</u> <u>Blythe v. Deutsche Bank A.G.</u>, 399 F. Supp. 2d 274, 282 (S.D.N.Y. 2005) ("a plaintiff cannot avoid the RICO Amendment's bar by pleading mail fraud, wire fraud and bank fraud as predicate offenses in a civil RICO action if the conduct giving rise to those predicate offenses amounts to securities fraud. Allowing such surgical presentation of the cause of action [ ] would undermine the congressional intent behind the RICO Amendment") (Scheindlin, J.).[4]

---

[4] <u>See also</u> <u>Gatz v. Ponsoldt</u>, 297 F.Supp.2d 719, 730 (D. Del. 2003) ("[P]laintiff cannot circumvent the PSLRA's exclusion of securities fraud as a RICO predicate act through artful pleading."); <u>Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.</u>, 205 F.Supp.2d 243, 248 (S.D.N.Y. 2002) (Sweet, J.) ("In amending RICO, Congress was clear in stating that the PSLRA 'was meant to eliminate the possibility that litigants might frame their securities claims under a mail or wire fraud claim.'"); <u>Burton v. Ken-Crest Servs.</u>, Inc., 127 F.Supp.2d 673, 677 (E.D.Pa. 2001) ("Plaintiff cannot magically revive his claim by picking out discrete details of his allegations and then claiming that they are not actionable as securities fraud.").

Here, there is no legitimate question as to whether Viscardi's alleged conduct *could* have been pled as securities fraud. It *was* pled as securities fraud. See Complaint ¶ 206 (asserting claim under Rule 10b-5 based on same conduct underlying the RICO claim). The only conduct that Duravest alleges as to Viscardi is that Viscardi made misrepresentations in connection with its efforts to bring about a sale of BMTS's securities. Where a RICO claim and a securities fraud claim purport to rely on the same alleged conduct, the RICO claim is barred per se by the PSLRA. See Fezzani v. Bear, Stearns & Co., Inc., 2005 U.S. Dist. LEXIS 3266, *18 (S.D.N.Y. Mar. 2, 2005) (RICO claim dismissed where plaintiff relied on the same factual allegations to support securities fraud and RICO claims).

### B. Plaintiff Fails Adequately To Plead Required Elements of The RICO Claim

Duravest's RICO claim is also subject to dismissal because Duravest has failed to plead facts sufficient to establish (1) that a RICO "enterprise" existed; (2) that Viscardi participated in the "management or direction" of such enterprise; or (3) that Viscardi engaged in a "pattern" of RICO activity.

#### 1. Duravest Fails Adequately To Plead The Existence Of An Enterprise

Under the RICO statute, Duravest must plead that Viscardi participated in an "enterprise."[5] The enterprise element is proved "by evidence of an ongoing organization, formal or informal, and by any evidence that the various associates function as a continuing unit," United States v. Turkette, 452 U.S. 576, 583 (1981). The complaint must allege "hierarchy, organization, and activities" of an association-in-fact to determine whether "its members functioned as a unit." First Nationwide Bank v. Gelt Funding Corp., 820 F. Supp. 89, 98

---

[5] The statute defines an "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

(S.D.N.Y. 1983), quoting United States v. Coonan, 938 F.2d 1553, 1560-61 (2d Cir. 1991). See also Moll v. U.S. Life Title Ins. Co., 654 F. Supp. 1012, 1031 (S.D.N.Y. 1987) (collecting cases).

The instant Complaint is bare-bones regarding the enterprise element, and confusing. It alleges on the one hand that the enterprise is BMTS. But, it also alleges participation by the accountants, the bankers, BMTS's shareholders, and BMTS in what may be a sort of association-in-fact of those entities, stating:

> At all relevant times herein, and by means of the foregoing activities, the O'DONNELL Defendants, the MARKOLL Defendants and Defendant VISCARDI, by means of their collective participation therein, constituted "persons," and collectively controlled BMTS, Inc. (rendering it an "enterprise" within the meaning of 18 U.S.C. § 1962(c) and (d) . . . ."

Complaint ¶ 177 (emphasis supplied). The deficiency of this formulation is clear from the case law because it fails to describe the nature of each party's role in the enterprise. For example, the complaint in Moll, supra, alleged that members of an "enterprise" took kickbacks in exchange for real estate settlement services, but failed to "specify how these members joined together as a group to achieve these purposes" or include "factual allegations regarding the continuity of structure or personnel of this group," and on that basis the court dismissed the complaint. Moll, 654 F. Supp. at 1032. Likewise in First Nationwide Bank, the court dismissed a RICO claim brought by a bank against a mortgage broker and a group of borrowers based on their overstating property values, finding that the complaint lacked sufficient facts concerning the structure and operation of the enterprise. The allegation was:

> [A]t various times as early as 1985, and possibly earlier, through at least 1990, Gelt . . . and all the other defendants were associated in fact for the common purpose, among others, of defrauding First Nationwide through the loan transactions described in this complaint and other means. This association in fact was an "enterprise" (the "Borrower Enterprise") . . . .

Id. at 98. The court rejected the sufficiency of this pleading, stating:

> Plaintiff has not specified how all defendants, including various borrowers, joined together as a group to perpetrate the frauds alleged in the Amended Complaint. Plaintiff has not pleaded any facts regarding the continuity of structure or personnel of the "Borrower Enterprise." Plaintiff merely asserts that for over six years defendants shared common fraudulent purposes and plans.

Id. Duravest's complaint does no more than this to describe and support the claim that a RICO enterprise existed, mandating on that basis alone dismissal of the RICO cause of action.

    2.    **Duravest Fails To Allege That Viscardi Operated Or Managed The Enterprise**

The RICO claim also fails for failure to allege that Viscardi <u>operated or managed</u> the enterprise, which it could do either by pleading that it had "a formal position in the enterprise or had *some* part in directing the enterprise's affairs." <u>Reves v. Ernst & Young</u>, 507 U.S. 170, 179 (1993) (emphasis in original). The Complaint <u>does</u> allege "operation and management" with respect to the Markoll Defendants, Complaint ¶177, but is bereft of such allegations against Viscardi, which functioned as BMTS's outside investment banker.

Applying the <u>Reves</u> test, courts have routinely found similar allegations against outside advisors to be insufficient to implicate a RICO defendant in the "management or operation" of a RICO enterprise. <u>See</u>, <u>e.g.</u>, <u>Azrielli v. Cohen Law Offices</u>, 21 F.3d 512, 521-22 (2d Cir. 1994) (defendant's alleged provision of legal services related to fraudulent real estate transaction did not constitute "management" of the alleged RICO enterprise); <u>131 Main Street Assoc. v. Manko</u>, 897 F. Supp. 1507, 1527 (S.D.N.Y. 1995) ("operation-or-management rule is intended to spare from RICO liability true enterprise outsiders"); <u>Biofeedtrac, Inc. v. Kolinor Optical Enter. & Consultants</u>, 832 F. Supp. 585, 593 (E.D.N.Y. 1993) ("[E]ven when professionals go beyond their customary role, they will not be deemed to have participated in the 'operation or management' of the enterprise itself."); <u>Chamarac Properties, Inc. v. Pike</u>, 1993 WL 427137, *3

(S.D.N.Y. Oct. 19, 1993) (accounting firm's professional misconduct and assumption of limited management responsibilities was insufficient to allege operation or management).

The Complaint's conclusory assertion that Viscardi, together with the Markoll and O'Donnell defendants, "collectively controlled" BMTS, Complaint ¶ 177, lacks averments of facts or substance supporting that conclusion. The Complaint asserts that Viscardi was engaged as professional advisor to sell BMTS, but does not set forth how Viscardi managed or operated BMTS in any way. Complaint ¶¶ 109-116. Merely alleging a legal conclusion that is supported by no factual allegations is insufficient to plead "operation or management." In re SmithKline Beecham Clinical Laboratories, Inc., 108 F.Supp.2d 84, 99 (D.Conn. 1999) ("To satisfy the operation or management test, a plaintiff must allege facts sufficient to establish that a RICO defendant 'ha[d] some part in directing the enterprise's affairs.'") (emphasis supplied), quoting, Reves, supra, at 179. These allegations, are insufficient to satisfy this RICO element.

3.   Duravest Fails To Allege That Viscardi
      Engaged In A Pattern of Racketeering Activity

Duravest has also failed to allege a pattern of racketeering activity both because it alleges only a single predicate act against Viscardi and because the Complaint fails to establish the continuity necessary to constitute a pattern.

It is well-settled that "steps" towards completing a racketeering activity are considered one predicate act. Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc., 354 F. Supp. 2d 293, 303 (S.D.N.Y. 2004) ("a completed act of extortion along with the intermediate steps toward completion of that act constitute one predicate act, not multiple acts"). The Complaint alleges a single fraudulent scheme (to induce Duravest to purchase BMTS) advanced by a number of false oral or written statements. Tellis v. United States Fid. & Guar. Co., 826 F.2d 477 (7th Cir. 1992), resulting in dismissal of a RICO claim where only a single scheme was alleged, is

illustrative. There, the complaint alleged a series of mailings intended to defraud plaintiff and extort from him certain compensation. Despite that a series of multiple fraudulent mailings was pled, the Seventh Circuit dismissed the RICO claim finding a failure to plead at least two predicate acts. Specifically, the court held that because the acts of mail fraud were part of a single fraudulent scheme, involved only a single victim, and inflicted a single injury, that they constituted a single predicate act, and not a pattern. Id. at 479. Here, too, the Complaint alleges a single scheme with one victim which suffered a single injury.

Moreover, in order to establish that Viscardi engaged in a pattern of racketeering activity, it must allege, in the absence of a continuing threat, that Viscardi did so for a "substantial period," which the Second Circuit has held must be at least two years.[6] The relevant inquiry focuses on when a particular defendant committed the predicate acts to determine the duration of that defendant's predicate activity. See De Falco v. Bernas, 244 F.3d at 306, 322 n. 22 (2d Cir. 2001) ("[R]egardless of the point in time at which the plaintiffs allege the overall extortion began, to determine whether the plaintiffs satisfied the requisite period of closed-ended continuity for the Bernas defendants, the duration of the pattern of racketeering activity must be measured by the RICO predicate acts that the jury found the Bernas defendants committed."). Furthermore, the duration of a pattern of racketeering is measured by when RICO predicate acts are committed. See GICC Capital Corp. v. Tech. Financial Group, Inc., 67 F.3d 463, 467 (2d Cir. 1995) ("Because [plaintiff] does not allege any racketeering activity in connection with the

---

[6] The Complaint does not allege facts which would support a claim of an "open-ended" pattern, which requires that "[t]here is a substantial threat that the Enterprise's racketeering activities will continue . . . and that the racketeering activities associated with the Enterprise constitute defendants' ordinary method of doing business." De Falco v. Bernas, 224 F.3d at 323. Here, the allegations that post-date the December 2005 Acquisition are several money transfers by Richard Markoll ending April 2006 (which are not attributed to Viscardi, and which did not prompt plaintiff to name Viscardi in the "conversion" cause of action) and Markoll's alleged violation of his non-competition agreement. This is hardly racketeering activity, and does not involve Viscardi. And, as the O'Donnell defendants pointed out in their motion to dismiss, the enterprise, BMTS, was owned and controlled by plaintiff after the Acquisition in December 2005.

individual [defendants'] takeover, the takeover cannot form the starting point of defendants' pattern of racketeering."); <u>IBT v. Carey</u>, 163 F. Supp. 2d 271, 281 (S.D.N.Y 2001) ("Acts that do not constitute predicate racketeering activity are not included in the calculation for determining continuity.").

Here, although with a broad brush the Complaint asserts that Viscardi's conduct dates back to the year 2000, it does not even attempt to allege specific acts against Viscardi until the time of the BMTS Acquisition in late 2005 (and even then fails, as set forth in Point IV(A) below to plead such acts in conformity with Rule 9(b), Fed. R. Civ. P.). Moreover, as set forth in Point III(A) above, the conduct associated with the sale of BMTS stock to Duravest (Viscardi's only role) does not qualify as racketeering activity under RICO due to preemption by the PSLRA. Given the short period of time for which acts by Viscardi are pled, the defects in the pleading of such acts, and the prohibition against relying on securities fraud for predicate acts, this Complaint fails to plead a pattern of racketeering activity for RICO purposes.

For all of the above reasons, therefore, the RICO claim should be dismissed.

## IV.

### THE COMMON LAW FRAUD, SECURITIES FRAUD AND NEGLIGENCE CLAIMS SHOULD BE DISMISSED

In addition to the fatal defect in the § 77(*l*) securities fraud claim pled in the Seventh Cause of Action (<u>see</u> Point V <u>infra</u>), Duravest's claim against Viscardi for common law fraud (First Cause of Action), both federal securities fraud claims (Sixth and Seventh Causes of Action), and negligent misrepresentation (Eight Cause of Action) are further deficient for two reasons. First, the Complaint fails to satisfy the heightened pleading requirements for fraud – including federal securities fraud – and negligent misrepresentation under Rule 9(b), Fed R. Civ. P. <u>See</u> <u>ATSI Communications, Inc. v. The Shaar Fund, Ltd.</u>, 493 F.3d 87, 99 (2d Cir. 2007)

("Securities fraud claims are subject to heightened pleading requirements . . . ."); <u>Stone v. Travis</u>, 2006 U.S. Dist. LEXIS 7739, *2-4 (S.D.N.Y. 2006); <u>Harsco Corp. v. Segui</u>, 91 F.3d 337, 348 (2d Cir. 1996) (negligent misrepresentation claim dismissed for failure to meet particularity standard of Rule 9(b)); <u>Siemens Westinghouse Power Corp. v. Dick Corp.</u>, 293 F. Supp. 2d 336, 343 (S.D.N.Y. 2003) (claim for negligent misrepresentation must "adequately specify the statements it claims were false or misleading . . . state when and where the statements were made, and identify those responsible for the statements."). Second, the Complaint fails to allege the element of justifiable reliance required for fraud and negligent misrepresentation claims.[7]

### A.    Duravest Fails To Plead Fraud Or Negligent Misrepresentation With Particularity

Under Rule 9(b), Fed. R. Civ. P., a securities fraud or negligent misrepresentation complaint based on alleged misstatements must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. <u>Mills v. Polar Molecular Corp.</u>, 12 F.3d 1170, 1175 (2d Cir. 1993) (fraud); <u>Cosmas v. Hassett</u>, 886 F.2d 8, 11 (2d Cir. 1989) (negligent misrepresentation). Allegations that are conclusory or unsupported by factual assertions are insufficient. <u>Luce v. Edelstein</u>, 802 F.2d 49, 54 (2d Cir. 1986).

Duravest's vague and conclusory allegations against Viscardi fall far short of Rule 9(b)'s standard. Throughout the Complaint, Duravest vaguely alleges that false statements were made but fails to supply the specific statement, the speaker, the date or the location the statement was made. Throughout the Complaint, Duravest attributes false statements to groups of some or all

---

[7] The elements of common law fraud and securities fraud are the same, namely, false representation, scienter, materiality, justifiable reliance, and damage. <u>Congress Financial Corp. v. John Morrell & Co.</u>, 790 F. Supp. 459, 469 (S.D.N.Y. 1992) (common law fraud); <u>Chavin v. McKelevy</u>, 1999 U.S. App. LEXIS 15497, *4 (2d Cir. Jul. 9, 1999) (securities fraud). The element of justifiable reliance applies in equal measure to claims for negligent misrepresentation. <u>UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney et al.</u>, 288 A.D.2d 87, 88 (1st Dep't 2001).

of the defendants in the case, typically, the Markolls, the O'Donnell Defendants, and Viscardi, without specifying who or which made the statement. Throughout the Complaint, it alleges generally a subject matter of an alleged misrepresentation – such as "profitability" or "that . . . Defendants . . . had participated in clinical trials," without specifying the specific false statement made and who made it. The few efforts at specificity Duravest does attempt – by alluding to BMTS's financial statements and to a letter dated November 28, 2005 from Richard Markoll – do not cure these glaring defects – because merely identifying these lengthy documents still remains insufficiently particular to satisfy Rule 9(b) and because the Complaint's fraud allegations are broader than those documents.[8] An examination of the allegations is instructive.

For example, paragraph 83 of the Complaint states:

> 83.    Prior to the Purchase, on or about May 31, 2005, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI intentionally and/or negligently and/or recklessly misrepresented BMTS to be profitable insofar as its income exceeded its 2004 operating expenses,

and paragraph 90 further alleges that the 2003, 2004 and 2005 financial statements "contained material misrepresentations and/or material omissions regarding significant elements of the business, financial condition, and future business prospects of BMTS, INC." These allegations fail to specify which statement or statements in the financials is false (*i.e.*, income, operating expenses, both, neither, or simply a conclusion expressed in the document), and further fails to specify, as it should, the amount of any overstatement alleged. See Gavish v. Revlon, Inc., 2004 U.S. Dist. LEXIS 19771, *48 (S.D.N.Y. Sept. 30, 2004) ("[A]lthough there is no numerical benchmark for assessing the materiality of misstatements in financial reports defendants . . . are still entitled to be appraised of the approximate amount of overstatement involved.") Paragraph

---

[8] We do not believe this lack of particularity was inadvertent; rather, we believe that the repleading of this Complaint as to Viscardi will either be impossible or will crystallize the issues for factual inquiry and render the Complaint readily dismissable on summary judgment with reference to plain evidence.

84's allegation that the financials were inconsistent with GAAP, without further elaboration, are also insufficient under 9(b).  Id. at *49 (general allegations that defendant did not comply with GAAP inadequate to satisfy the particularity requirement of 9(b)).

Paragraphs 80 and 81 regarding prior clinical trials of the PST technology allege only that:

> 80.     At all times hereafter mentioned, the MARKOLL Defendants and Defendant VISCARDI negligently, fraudulently and inaccurately misrepresented to Plaintiff DURAVEST that the MARKOLL Defendants had participated in and conducted clinical trials of PST technology and that such clinical trials proved and showed that PST technology was effective for the purposes marketed by BMTS prior to the purchase.

> 81.     Unbeknownst to Plaintiff Duravest, there were virtually no reliable clinical study results for PST technology in existence prior to the Purchase.

The failure to specify a date on which any such representations were made, along with who made the statements and what they were exactly, is fatal to this claim.  Duravest also fails to identify a single clinical study that Viscardi allegedly told Duravest was conducted which was not, in fact, conducted as described to Duravest prior to the sale.  Saenger v. Presbyterian Church, 1997 U.S. Dist. LEXIS 19108, *15 (S.D.N.Y. Dec. 1, 1997) (Rule 9(b) not satisfied where complaint failed to state the date on which fraudulent statements made).

The lumping together of all defendants and attributing fraudulent statements collectively – which the Complaint does with respect to virtually all of the fraud allegations – has also prompted courts to dismiss claims under Rule 9(b).  In re Crude Oil Litigation, 2007 U.S. Dist. LEXIS 47902, *19 (S.D.N.Y. June 28, 2007) ("In the situation where multiple defendants are alleged to have committed fraud, the complaint must specifically allege fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement.").

Paragraph 89, which references a specific letter, fares no better.  It states:

> 89.     On or about November 28, 2005, the MARKOLL Defendants and Defendant VISCARDI caused a correspondence to be sent to Plaintiff DURAVEST by fax, which contained fraudulent material omissions and misrepresentations as to:  the financial condition of BMTS, Inc., the stated "lack" of related party transactions between BMTS INC., and the MARKOLL Defendants in the relevant time period; the "lack" of claims against BMTS, INC., and otherwise materially misrepresented significant elements of the business, financial condition and future business prospects of BMTS, Inc.

Plaintiff fails to specify which written statements in the November 28, 2005 letter are false.  Generalized references to BMTS's "financial condition" or "significant elements" of BMTS' "business, financial condition and future business prospects" do not inform Viscardi what statements are alleged to be false statements.  Likewise, Plaintiff fails to identify what "related party transactions" were omitted or which "claims" were omitted.  See Serbian, et al. v. Amoskeag Bank Shares, Inc., et al., 24 F.3d 357, 362 (1st Cir. 1994) (plaintiff failed to adequately plead falsity when it offered no information about the general health of the company's loan portfolio, and failed to cite any specific loans that were in trouble); Mills, supra, at 1175 (plaintiff must specify what was false and why it was false).  Without such specificity, it is impossible to determine if the alleged omission or false statement occurred, and, if it did, whether it was material or immaterial.

Finally, paragraph 111 alleges that from the year 2000 "through and including December of 2005," Viscardi made various presentations to prospective purchasers of BMTS, and paragraph 112 states that such "presentations put forth BMTS, INC. and its subsidiaries as a going concern with significant value and upside potential, based on representations regarding the protectability and usefulness of its technology . . .."  As with the other fraud allegations, this one fails, with respect to the alleged "presentations," to specify the specific false statements allegedly made, who made them, or where or when they were made, all of which are required.

20

For all of these reasons, therefore, Duravest's fraud and negligent misrepresentation claims should be dismissed.

**B.    The Fraud And Negligent Misrepresentation Claims**
**Must Be Also Dismissed Because Duravest Fails**
**to Plead The Element of Justifiable Reliance**

These claims also fail because the allegations do not make out the required element of reasonable reliance.  In a nutshell, the Complaint cannot survive its failure to establish that Duravest conducted any due diligence or any use of public information, which as a sophisticated party it must before a court will consider justifiable its reliance on the mere statements of other parties.

UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney et al., 288 A.D.2d 87 (1st Dep't 2001) is instructive.  In the UST case, plaintiff UST purchased stock in AbTox, a company that had previously engaged the defendant investment bank ("Salomon") to advise it in connection with a debt-offering.  Following the closing, UST learned, apparently for the first time, that AbTox's sole product – a medical sterilizer – had not been cleared for marketing by the FDA.  AbTox subsequently filed for bankruptcy and UST lost the value of its investment.

UST sued Salomon alleging it fraudulently failed to inform it of this material fact.  The trial court dismissed the complaint, reasoning that this sophisticated plaintiff had not acted reasonably as a matter of law in relying solely on Salomon's representations without performing its own due diligence.  Affirming the dismissal, the First Department expressly held: "As a matter of law, a sophisticated plaintiff cannot establish that it entered into an arm's length transaction in justifiable reliance on alleged misrepresentations if that plaintiff failed to make use of the means of verification that were available to it, such as reviewing the files of the other parties." Id. at 88 (emphasis supplied), citing Stuart Silver Assocs. V. Baco Dev. Corp., 245 A.D.2d 96, 98-99 (1st Dep't 1997); Orlando v. Kukielka, 40 A.D.3d 829, 832 (2d Dep't 2007)

(finding patently implausible the allegation that a sophisticated business person, in assuming a major proprietary interest in a commercial enterprise, and incurring a heavy financial obligation, did so solely on information provided by broker).  It is plain that Duravest, which allegedly spent a high seven-figure sum to acquire BMTS within a matter of weeks and quickly assumed responsibility for its management and operation, is a sophisticated investor.  Certainly, the Complaint does not (and could not) allege otherwise.

A close reading of the Complaint also reveals that, as in <u>UST</u>, the plaintiff is not alleged to have made use of the resources typically relied upon in due diligence – including the parties' own documents and the public record – or that it met its burden as a sophisticated investor of establishing justifiable reliance.  Notably:

- There is no allegation that plaintiff actually conducted due diligence;

- There is no allegation that plaintiff was denied access to any relevant BMTS information;

- With respect to many of the facts allegedly misrepresented, such as (1) intellectual property rights; (2) existing claims; and (3) the criminal histories of the Markolls, there is no allegation that any such material matters of public record and/or were not discoverable by a sophisticated investor conducting conventional due diligence.[9]

These facts alone warrant dismissal of the fraud and negligent misrepresentation claims.  <u>See</u> <u>Congress Financial Corp. v. John Morrell & Co.</u>, 790 F. Supp. 459, 470 (S.D.N.Y. 1992) (plaintiff's access to target company's plants, personnel and documents warranted dismissal of fraud claims for failure to allege reasonable reliance, as a matter of law).

_____

[9]  The Markoll's criminal history and BMTS's intellectual property rights are public record:  <u>See</u> <u>http://www.fda.gov/ora/about/enf_story/archive/2001/ch6/oci6.htm</u>.  This fact alone undermines the reasonable reliance element of Duravest's fraud claim. <u>See Aaron Ferer & Sons, Ltd v. Chase Manhattan Bank, N.A.</u>, 731 F.2d 112, 123 (2d Cir. 1984) (no justifiable reliance where the information plaintiff claimed was concealed was a matter of public record).

The negligent misrepresentation claim is subject to dismissal for an additional reason as well, namely, Duravest has failed to allege that Viscardi owed any duty to Duravest to act with reasonable care. It is basic that a duty to act with reasonable care is an element of any negligent misrepresentation claim under New York law. <u>White v. Guarente</u>, 43 N.Y.2d 356, 363 (N.Y. 1977) (negligent misrepresentation "is not actionable unless expressed directly, with knowledge or notice that it will be acted upon, <u>to one to whom the author is bound by some relation of duty</u>, arising out of contract or otherwise, to act with care if he acts at all.") (emphasis supplied). In imposing a duty of care, "Courts have generally held that the parties must enjoy a relationship of trust and reliance closer than that of the ordinary buyer and seller, and an arm's length business relationship is not enough to create that relationship." <u>Goodman Mfg. Co. L.P. v. Raytheon Co.</u>, 1999 U.S. Dist. LEXIS 13418, *45-46 (S.D.N.Y. Aug. 31, 1999). For this additional reason, the negligent misrepresentation claim must be dismissed.

V.

## <u>THE CLAIM UNDER 15 U.S.C. § 77(*l*) MUST BE DISMISSED</u>

Section 12 of the Securities Act of 1933 states that it is unlawful to (1) sell a security in violation of Section 5, or (2) offer or sell a security by means of a prospectus that includes an untrue statement. 15 U.S.C. § 77(*l*). However, this section of the Securities Act of 1933 only applies to public offerings of securities. <u>See Lewis v. Fresne</u>, 252 F.3d 352, 357 (5th Cir. 2001) (Section 12 of the 1933 Act does not apply to private transactions); <u>citing Gustafson v. Alloyd Co.</u>, 513 U.S. 561, 571 (1995); <u>see also Yung v. Lee</u>, 432 F.3d 142, 148 (2d Cir. 2005). Duravest and BMTS, two privately held companies, privately transacted for the shares of BMTS stock, and therefore, this claim should be dismissed pursuant to Rule 12(b)(6). <u>See Lewis</u>, 252 F.3d at 357 (a private transaction existed where seller issued a private placement memorandum,

there was a private placement of stock through a private placement broker, and where buyer purchased a large share of the company's outstanding stock).

## VI.

## THE BREACH OF CONTRACT AGAINST VISCARDI MUST BE DISMISSED

Finally, Plaintiff also alleges a breach of contract claim against Viscardi.  See Complaint at ¶¶ 190-194.  However, the Complaint fails to allege (nor could it) that Viscardi and Duravest entered into a contract, oral or written.  Accordingly, there is no basis for a breach of contract claim against Viscardi, and the claim must be dismissed.

## CONCLUSION

For the foregoing reasons, Viscardi respectfully requests that the Complaint be dismissed as to Viscardi for lack of personal jurisdiction, under Rule 12(b)(2), for failure to state a claim pursuant to 12(b)(6), and for failure to plead fraud, securities fraud and negligent misrepresentation pursuant to Rule 9(b).

Dated:  April 7, 2008

Respectfully submitted,

KASOWITZ, BENSON, TORRES
& FRIEDMAN LLP

By: */s/ Mark W. Lerner*
    Mark W. Lerner
    Joshua A. Berman
    Henry B. Brownstein
    1633 Broadway
    New York, New York  10019
    (212) 506-1700

*Attorneys for Defendant Viscardi AG*

24