UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

DURAVEST, INC.

                    Plaintiff,

VISCARDI AG, WOLLMUTH, MAHER & DEUTSCH,
LLP; MASON H. DRAKE, ESQ., BRUCE O'DONNELL
CPA, BRUCE O'DONNELL CPA/PFS P.A.,
BIOMEDICAL CONSULTANT SL, RICHARD
MARKOLL and ERNESTINE BINDER MARKOLL,

                    Defendants.

---------------------------------------------------------------x

No. 07 CIV 10590

Hon. Jed Rakoff, U.S.D.J.

AFFIDAVIT OF
BARBARA THÄTIG

BARBARA THÄTIG hereby states, under penalty of perjury:

1. I am over eighteen years old and am competent to testify to the facts and matters set forth in this affidavit. I have reviewed the Complaint in this action, and unless otherwise indicated, have personal knowledge of the facts set forth herein. This affidavit does not contain all of the facts and circumstances known to me regarding this matter.

2. I am the General Counsel and Chief Operating Officer of defendant Viscardi AG (hereafter "Viscardi"). As such, I am responsible for Accounting and Controls, Administration, and Legal, Compliance and Regulatory Affairs at Viscardi. I joined Viscardi in 2000 and became General Counsel in 2002. I became Chief Operating Officer in July 2007. Prior to working at Viscardi, I was head of the legal and patent department of Max-Planck-Institute of Plasma Physics in Garching, Germany.

3. I respectfully submit this Affidavit in support of Viscardi's motion to dismiss the above-captioned Complaint for lack of personal jurisdiction over Viscardi. As set forth herein, neither Viscardi, nor the events described in this Complaint, had any connection to this forum.

4. At all times relevant to this motion, Viscardi was an independent investment bank with its sole office in Germany and which served small- and mid-capitalized European companies with advisory services for financing transactions and mergers and acquisitions. We focused on the technology, health care and life sciences, and certain other selected industries. We concentrated on growth financing, including private and public placements with institutional investors, hedge funds, family offices, venture capitalists and private equity investors in Europe.

5. Viscardi conducted its business in Europe. During all relevant times, including up to the filing of the Complaint, we had no operations or subsidiaries in New York, and occupied a single office located at Brienner Strasse 1, D-80333, in Munich, Germany.

6. At all times relevant to this motion BMTS, Inc. (hereafter "BMTS") was in the business of manufacturing, marketing and supporting medical devices designed to apply pulsed electrical signals (called "Pulsed Signal Therapy," or "PST") to damaged bone or connective tissue to promote healing.

7. In January 2005, BMTS's principal business operations were in Germany, where it had a wholly-owned subsidiary called BMTS, GmbH. At that time, BMTS mandated Viscardi to find a strategic partner to take over BMTS and roll out PST technology internationally. To that end, on February 1, 2005, Viscardi and BMTS executed an engagement letter in Munich, Germany (the "Engagement Letter"), setting forth that mandate. The Engagement Letter expired according to its terms on February 1, 2006. (A true and correct copy of the Engagement Letter is attached hereto as Exhibit A). I am not aware of BMTS engaging in any business activities in New York from at least the time of the mandate through the filing of this Complaint.

8. The work begun based on this mandate in 2005 was the first work Viscardi performed for BMTS. Pursuant to the mandate, Viscardi contacted 27 companies, of which

seven showed initial interest and none showed final interest. We did not contact any individuals in New York or speak with any prospective buyer of BMTS in New York.

9. On November 2, 2005, following the lack of interest described above, Viscardi formally suggested to BMTS that, in a change of strategy, it bring in a new Chief Executive Officer who was experienced in developing early stage companies and who would have a stake in the company (a so-called "buy-in manager"), along with new investors.

10. Viscardi did not contact any prospective buy-in manager or investors in New York. The buy-in manager recruited was Dr. Hans Rolf Käse of Germany.

11. With respect to an investor, in mid-November 2005, Viscardi's Chief Executive Officer, Wilhelm-Friedrich Göbel, described BMTS to fellow German Florian Homm, a sophisticated manager and shareholder of a publicly traded European hedge fund based in Majorca, Spain and listed on the London Stock Exchange, known as "Absolute Capital Management," or "ACM." Upon information and belief neither Mr. Homm nor ACM maintained any office in New York. Mr. Homm's researchers were located, upon information and belief, in Majorca.

12. Upon information and belief, Mr. Homm controlled the plaintiff Duravest, which was based in Chicago, Illinois and which, based on its SEC filings, held a single asset – a Canadian company named Estracure which ultimately failed when it did not win U.S. Food and Drug Administration approval for its main product, a coronary stent. Upon information and belief, Duravest maintains no offices, employees or operations in New York. At no time to my knowledge did we have any communications with Duravest related to the transaction involving BMTS in New York.

13. On November 22, 2005, shortly after the initial telephone contact between Mr. Göbel and Mr. Homm regarding BMTS, Viscardi representatives met with Mr. Homm and Duravest's CEO, Ogan Gurel, in a hotel in Frankfurt, Germany. Messrs. Homm and Gurel were informed that a "data-room" containing BMTS's documents and other information was set up for a due diligence investigation at BMTS's office in Munich (although to the best of my knowledge Messrs. Homm and Gurel elected not to visit it). Three days later, on November 25, 2005, at the same hotel in Frankfurt, Mr. Gurel executed a subscription agreement pursuant to which Duravest would purchase 14,062,500 shares of BMTS for $4.5 million.

14. In summary, neither Viscardi generally, nor this transaction specifically, have connections to New York which would justify the exercise of jurisdiction by this Court over Viscardi. For these reasons, therefore, and for the reasons stated in the accompanying Memorandum of Law, we respectfully request that the Court dismiss this action as to Viscardi.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

DATED: 07/04/2008
April 7th, 2008

_____
Notary Public

_____
Barbara Thätig

File No. __870 /K/2008/ASS__

I, the undersigned Notary Public, herewith certify that the signature, subscribed in my presence, is the true signature of

Mrs. Barbara T h ä t i g,
maiden name Hötzl,
born on 18th December 1971,
with business adress Brienner Str. 1, 80333 München,
identified by her German identity card.

Munich, this 7th Day of April 2008

(Seal)

Dr. Winfried Kössinger
Notary Public in Munich
(Commission does not expire)

# Exhibit A

Exhibit A



VISCARDI AG

AGREEMENT

between

**1. Bio-Magnetic Therapy Systems Inc.**
c/o Atty Martin P. Schaffer
Shulman, Rogers, Gandal, Pordy & Ecker, P.A.
11921 Rockville Pike, Third Floor
Rockville, MD 20852
Phone: 301-230-5207
Fax: 301-230-2891
U.S.A.

("BMTS")

**2. Tinnitus Signal Medizin & INFINOMED GmbH**
Kapellenweg 6
91371 Munich
Germany

("Tinnitus")

(Tinnitus, INFINOMED and BMTS hereinafter together the „COMPANIES")

**3. Dr. Richard Markoll**
Kapellenweg 6
81371 Munich
Germany

(the „Significant Shareholder")

and

**VISCARDI AG**
represented by Mr. F.W. Goebel
Brienner Strasse 1
80333 Munich
Germany

("VISCARDI")

I. Preamble

BMTS is engaged in the development, production and commercialization of proprietary technology based on a specific constellation of pulsed signals carried on extremely low frequency magnetic fields to treat osteoarthritis, sports-type injuries, and other degenerative joint and certain neurological disorders.

Tinnitus is engaged in the development, production and commercialization of therapeutic equipment for the indication "Morbus Tinnitus"

INFINOMED is a clinical entity that provides BMTS scientific and clinical data as well as demonstrates PST Technology to doctors, patients and the general public.

The Significant Shareholder together with the shareholders of 100% of the outstanding BMTS shares of stock hold all the shares in BMTS.

The COMPANIES together with the significant shareholder consider currently the sale of their businesses (hereinafter referred to as "Transaction").

II. Agreement

The following will confirm the understanding and agreement between VISCARDI represented by Mr. WF Goebel and the COMPANIES represented by Dr. R. Markoll pursuant to which VISCARDI has been engaged by the COMPANIES to act as the COMPANIES' exclusive financial advisor in connection with the Transaction. The provisions of this agreement shall apply accordingly, should the COMPANIES decide on an alternative transaction structure (e.g. a private placement or IPO).

1. Services of VISCARDI

VISCARDI will provide the following services hereby requested by the COMPANIES:

- develop an information memorandum, which will describe the COMPANIES' structure, products, markets, financials and future perspectives which shall be made available to prospective investors/acquirers;

- identify prospective investors/acquirers;

- assist and take the lead in the screening and analysis of prospective investors/acquirers regarding their "strategic fit";

- provide advice with respect to initiating discussions and negotiations with prospective investors/acquirers and, as requested herewith by the COMPANIES, participate in such discussions and negotiations relating to the Transaction;

- provide advice with respect to the pricing, financing, structure and form of the Transaction;

- coordinate the discussions and negotiations towards the completion of a "Letter of Intent" and a final participation- / purchase agreement as well as the closing of the Transaction.

## 2. Participation of the COMPANIES

The successful completion of the Transaction requires the effective and timely fulfilment of the COMPANIES' participation requirements with the effective guidance of VISCARDI, including:

- disclosure of all necessary information, which is important for the evaluation of the COMPANIES businesses and strategic objectives;

- execution of all necessary measures, decisions, consents, resolutions, legal and formal requirements.

## 3. Fees

### a) Retainer Fee

As compensation for the services performed hereunder, the COMPANIES shall pay VISCARDI as joint and several debtors a Retainer Fee of € 5,000.00 per month plus applicable value added taxes for a period of six months. The first Retainer Fee is due and payable upon signature of this Agreement, the remaining Retainer Fees at the beginning of each month. No other Retainer Fee is applicable.

All Retainer Fees paid will be credited towards the amount of any Transaction Fee.

### b) Transaction Fee

Should new and/or old shares in the COMPANIES be placed and/or should the COMPANIES sell an interest in the COMPANIES business or in the business of any affiliated company (in particular BMTS GmbH and Signal Medizin Vertriebs GmbH), including, without limitation, a sale or exchange of capital stock or assets, a lease of assets with or without a purchase option, a merger, consolidation or reorganization, a tender or exchange offer, a leveraged buy-out, a repurchase transaction, the formation of a joint venture, partnership, or any similar transaction during the period that VISCARDI is engaged, VISCARDI shall receive as compensation for the services performed hereunder a Transaction Fee of

- 5% of the Transaction Consideration up to € 22.5 MM, plus

- 10 % of the Transaction Consideration exceeding € 22.5 MM

plus applicable value added taxes.

Transaction Consideration is the aggregate maximum value, whether in cash, securities (including options, warrants and similar securities), assumption of any debt, liabilities, obligations, loans, commitments, interests, payables, property, assets and services paid, payable or otherwise assumed directly in connection with the Transaction.

Debtors of the Transaction Fee in accordance with this provision are

- BMTS in case of a Transaction with respect to BMTS (in case of a sale of old shares BMTS will – if appropriate – deduct the Transaction Fee from the Transaction Consideration),

- Tinnitus in case of a Transaction with respect to Tinnitus,

- INFINOMED in case of a Transaction with regard to INFINOMED.

The Transaction Fee is due and payable upon the Closing of the Transaction (= signature of the relevant Transaction documents) and payment of the Transaction Consideration. In case of a pro-rata payment of the Transaction Consideration, the Transaction Fee accounts for the pro-rata payment only.

c) Residual Period

The provisions of sec. 3 b) of this Agreement shall also apply should a Transaction occur during a period of 12 months after the earlier of (i) the date of the expiration of VISCARDI's engagement or (ii) the date of the termination of VISCARDI's engagement ("Residual Period") provided, however, that the investor/acquirer has been identified by VISCARDI in accordance with sec. 1 of this Agreement.

4. Expenses

The COMPANIES shall reimburse VISCARDI upon closing of the transaction for its reasonable out of pocket expenses plus applicable value added taxes (including without limitation all legal, tax, consultant, information, presentation, shipping, communication, secretarial, road show and travel expenses) incurred or accrued during the period of or in connection with the engagement as specifically agreed upon and confirmed in writing by VISCARDI & Dr. R. Markoll.

5. Term of Engagement

The term of VISCARDI's engagement shall be 12 months from the date hereof, unless extended. Either the COMPANIES jointly or VISCARDI may terminate VISCARDI's engagement by giving the other party at least 4 weeks prior written notice by the end of the month.

6. Exclusivity

During the term of VISCARDI's engagement, the COMPANIES and the Significant Shareholder shall not mandate a third party with respect to financial advisory services which coincide with VISCARDI's engagement. Should a third party directly or indirectly contact the COMPANIES or the Significant Shareholder regarding matters relating to VISCARDI's engagement, they are obliged to inform VISCARDI about such matters. VISCARDI and the COMPANIES or the Significant Shareholder shall then enter consultations regarding the procedure.

## 7. Rights

Any advice, written or oral, provided by VISCARDI hereunder is solely for the information and assistance of the Management, Board of Directors and shareholders of the COMPANIES and is not to be used or circulated for any other purpose without the prior written consent of VISCARDI, which consent shall not be unreasonably withheld. Except for material provided to VISCARDI by the COMPANIES The materials developed by VISCARDI in the course of this engagement shall be used by the COMPANIES, the Board of Directors; Supervisory Board and the Significant Shareholder only in connection with the Transaction. VISCARDI's intellectual property rights remain unaffected. A list of the materials developed, indicating who developed it, will be kept informally by both parties.

## 8. Confidentiality

VISCARDI, its employees and any third parties mandated by VISCARDI, if any, will keep all information relating to this engagement (e.g., information about business operations, financials, management, co-operations and strategy) confidential. This confidentiality provision will survive the term of this Agreement. The COMPANIES and related third parties will keep information relating to the engagement confidential and will not disclose or distribute any information and documents of VISCARDI to third parties without the prior written consent of VISCARDI. VISCARDI shall not use any information that was acquired during the engagement in a way that is adverse to the interests of the COMPANIES.

## 9. Indemnification

VISCARDI provides its services relating to the engagement hereunder on a "best effort" basis. No guarantee or other kind of undertaking can be given for the successful completion of the Transaction and VISCARDI's advise might not favour the completion of the Transaction, should market conditions or other extraordinary economic or political events make a successful completion unlikely, impossible or inappropriate. VISCARDI will perform its duties under the engagement with the necessary care, confidentiality and diligence. This sec. 9. "Indemnification" is mutual for all parties.

VISCARDI is only liable for gross negligence or wilful misconduct with the exception of personnel injuries or injuries to health or life and with exception of fundamental contractual duties.

VISCARDI will rely on the accurateness, completeness and reasonableness of all information (including without limitation any financial, legal and other information) provided, or caused to be provided to VISCARDI in connection with the engagement and will not be responsible for the independent verification. The COMPANIES will notify VISCARDI about any changes that may be material in any information related to the engagement.

01.02.2005 10:16                              5



The COMPANIES agree to indemnify VISCARDI and/or its employees and representatives ("Indemnified Parties") and hold each of them harmless against any "Liabilities" (including without limitation any damages, proceedings, expenses, inquiries or threats thereof) to which the Indemnified Parties may become subject in connection with the engagement. In the case of any actions brought against the Indemnified Parties, VISCARDI shall promptly notify the COMPANIES in writing and the COMPANIES shall promptly assume the defence thereof, including the employment of counsel reasonably satisfactory to VISCARDI and payment of all necessary fees and expenses. The indemnified party shall not settle any claims without the prior written consent of the other. Indemnification of VISCARDI excludes losses due to their gross negligence or wilful misconduct.

## 10. Exclusion

Legal advice and tax advice are not part of the engagement.

## 11. Headings

All Headings used in the context of this Agreement are for structuring purposes only and shall not be taken into account for interpretation.

## 12. Written Form

This Agreement constitutes the exclusive agreement between both parties and may not be amended or modified except in writing. Written form shall also be required for a waiver of this provision.

## 13. Jurisdiction

This contract shall be solely governed by and construed in accordance with the laws of the Federal Republic of Germany.

## 14. Safeguarding Provision

Any provision of this Agreement, which is false or invalid in its entirety or in part does not affect the correctness or validity of any other provision of this Agreement. The false or invalid provision shall be replaced with a provision that comes closest to the intended meaning of the provision both parties would have agreed to if they had thought about the subject.

Munich, dated 01.02.05                                    Munich, dated 01.02.05

_____                           _____
Bio-Magnetic Therapy Systems Inc.                         Viscardi AG

Munich, dated 01.02.05                                    Munich, dated 01.02.05

_____                           _____
Tinnitus Signal Medizin & INFINOMED GmbH                  Dr. Richard Markoll

01.02.2005 10:16                        6