UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Docket No.: 07 CIV 10590

-----------------------------------------------------------x

DURAVEST, INC.,

Plaintiff,

-against-

**DECLARATION OF
BARRY JACOBS**

VISCARDI, AG; WOLLMUTH, MAHER &
DEUTSCH LLP.; MASON H. DRAKE,
ESQ.; BRUCE O'DONNELL, CPA/PFS, P.A.;
RICHARD MARKOLL, BIOMEDICAL
CONSULTANT SL; and ERNESTINE BINDER
MARKOLL;

-----------------------------------------------------------x

BARRY JACOBS, an attorney duly admitted to practice law in the State of New York, declares the following statements are true, subject to the penalties of perjury, pursuant to 28 U.S.C. 1746:

1.      I am an attorney duly licensed to practice before the United States District Court for the Southern District of New York.

2.      I am a member of the law firm of Abrams, Gorelick, Friedman & Jacobson, P.C., attorneys for the defendant Wollmuth Maher & Deutsch LLP and Mason H. Drake, Esq. ("WMD" and "Drake" separately), and, as such, am fully familiar with the facts and circumstances of this case.

3.     This Declaration is submitted in support of the Motion of WMD and Drake to dismiss plaintiff Duravest's single claim against them, as contained in the Fifth Cause of Action, pursuant to FRCP 12(b)(1) and 28 U.S.C. §1367.

4.     Attached hereto as Exhibit "A" is a true copy of plaintiff's Complaint.

5.     Attached hereto as Exhibit "B" is a true copy of the Amended Answer of WMD and Drake.

I declare under penalty of perjury pursuant to 28 U.S.C. 1746 that the foregoing is true and accurate.

Executed on:  New York,  New York
              April 7, 2008

_____
Barry Jacobs (BJ-0216)

Exhibit A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
DURAVEST, INC.,

                              Plaintiff,

              -against-

VISCARDI, AG; WOLLMUTH MAHER & DEUTSCH, LLP;
MASON H. DRAKE, ESQ., BRUCE O'DONNELL, CPA,
BRUCE O'DONNELL CPA/PFS, P.A., BIOMEDICAL
CONSULTANT SL, RICHARD MARKOLL, and
ERNESTINE BINDER MARKOLL,

                            Defendants.
------------------------------------------------------------------------x

**COMPLAINT AND
JURY DEMAND**

Docket No.: 07-Civ-10590(JR)

Plaintiff DURAVEST, INC., ("DURAVEST"), by and through its undersigned attorneys, RAS ASSOCIATES, PLLC, as and for its Complaint and Jury Demand against Defendants, VISCARDI, AG ("VISCARDI"), WOLLMUTH MAHER & DEUTSCH, LLP ("WOLLMUTH"), MASON H. DRAKE, ESQ. ("Attorney DRAKE"), BRUCE O'DONNELL, CPA and BRUCE O'DONNELL CPA/PFS, P.A. ("Accountant O'DONNELL"), BIOMEDICAL CONSULTANT SL ("MARKOLL CONSULTING"), RICHARD MARKOLL ("MR. MARKOLL"), and ERNESTINE BINDER MARKOLL ("MRS. MARKOLL"), sets forth and alleges as follows, upon information and belief:

### JURY DEMAND

1.     Plaintiff demands a trial by jury on all issues.

### NATURE OF ACTION AND SUBJECT MATTER JURISDICTION

2.     This action is for monetary damages associated with Plaintiff DURAVEST's majority purchase of shares of Bio-Magnetic Therapy Systems, INC. ("BMTS, INC.") between November 2005 and April 2006 ("Purchase"), which the Defendants knew or should have known were worthless or nearly worthless at the time of the Purchase; further damages arising from certain Defendants' wrongful transfer and conversion of post-purchase operating capital provided by DURAVEST and deposited with BMTS;

1

and damages arising from certain Defendants' post-Purchase breach of non-competition provisions in a consulting agreement.

3.     The sale of BMTS, INC. to DURAVEST was consummated by means of various transactions occurring between November 2005 and April 2006.

4.     At all relevant times herein, BMTS, INC. was and is a holding company wholly owned by Plaintiff DURAVEST, which was organized and formed pursuant to the laws of the State of Virginia.   BMTS, INC. was and is a foreign corporation duly authorized to transact business in the State of New York under the name "Bio-Medical Technologies, Inc.", and did conduct substantial business activities in the State of New York.

5.     At all relevant times herein, until conclusion of the Purchase, BMTS, INC. was a privately held corporation, with numerous New York State domiciled shareholders, including John Hall, Charlotte Hall, Fred Ferri, June Ferri, Bruce Heller, Sheila Heller, Sheryl Heller, Harvey Hellering, Richard Joseph, Nancy Kennaugh, Jeffry Ordover, Stanley Sher, Helen Sher, Stanley Sokol, Judith Sokol, Michael Speigel, Dean Yep, and Winnie Yep.

6.     As set forth below, DURAVEST was induced to and did complete the Purchase in reliance upon both the fraudulent, negligent, reckless, false, and otherwise wrongful representations and assertions made by Defendants VISCARDI, O'DONNELL, MARKOLL CONSULTING, MR. MARKOLL and MRS. MARKOLL; and due to the negligent and deficient advice, omissions, lack of proper advice, and deficient due diligence efforts of Defendants WOLLMUTH and DRAKE.

7.     Following the Purchase, beginning in December 2005 and through April 2006, the MARKOLL Defendants wrongfully transferred to themselves and converted a total of approximately Three Million Seventy Thousand Dollars ($3,070,000) in funds

2

which had been transferred by Plaintiff DURAVEST to the account of BMTS for the purposes of serving as operating capital for BMTS, thereby looting the company.

8.      Following the Purchase, Defendants MR. MARKOLL and MRS. MARKOLL also violated certain non-compete agreements with BMTS, thereby depriving Plaintiff DURAVEST of any reasonable opportunity to earn profits from its subsidiary.

9.      By and through the activities set forth herein, prior to and following the Purchase, between May 2005 and April 2006, Defendants O'DONNELL, MR. MARKOLL, and MRS. MARKOLL engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1961; 18 U.S.C. § 1962; and 18 U.S.C. § 1964(c).

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and 18 U.S.C. § 1964 (a) in that RICO claims arise under the laws of the United States.

## PARTIES AND VENUE

11.     Plaintiff DURAVEST is a corporation organized under the laws of the State of Florida, and is duly authorized and registered to transact business as a foreign corporation in New York County, in the State of New York.

12.     At all relevant times herein, Defendant VISCARDI, is and was a corporation organized under the laws of the Federal Republic of Germany, maintaining offices at Brienner Strasse 1, 80333 Munich, Germany.

13.     At all relevant times herein, Defendant VISCARDI was engaged in the business of promoting sales and acquisitions of companies as an investment bank.

14.     At all relevant times herein, Defendant VISCARDI engaged in the business of researching and analyzing private equity companies, and providing such research to third parties for profit and in connection with proposed and promoted transactions to acquire companies.

3

15.    At all relevant times herein, Defendant VISCARDI engaged in the business of financing the equity sales of companies.

16.    At all relevant times herein, Defendant VISCARDI engaged in the business of structuring sales of private equity companies to institutional investors and hedge funds.

17.    At all relevant times herein, Defendant VISCARDI derived fees as commissions for the sales of private equity firms, upon the conclusion of the sales of such companies.

18.    At all relevant times herein, Defendant VISCARDI conducted substantial business activities in the United States of America, and in the Southern District of New York.

19.    At all relevant times herein, Defendant VISCARDI solicited business in the United States of America, and in the Southern District of New York.

20.    At all relevant times herein, Defendant VISCARDI entered into contracts in the United States of America, and in the Southern District of New York.

21.    At all relevant times herein, Defendant VISCARDI derived substantial profits from the sale of companies with business activities in the United States of America, and in the Southern District of New York.

22.    At all relevant times herein, Defendant WOLLMUTH was and is a limited liability partnership engaged in the practice of law in the State of New York, with its principal place of business at 500 Fifth Avenue, New York, New York 10110.

23.    At all relevant times herein, Defendant DRAKE was and is an attorney admitted to the practice of law in the Courts of the State of New York.

24.    At all relevant times herein, DRAKE was a member of, and held an equity interest in, the WOLLMUTH firm.

25.    At all relevant times herein, DRAKE had authority to, and did, bind the WOLLMUTH firm to enter into an attorney-client relationship with DURAVEST.

4

26.    At all relevant times herein, Defendant DRAKE practiced law in relation to corporate matters, including corporate acquisitions, with clients doing business in the State of New York.

27.    At all relevant times herein, Defendants DRAKE and WOLLMUTH were retained to provide services to Plaintiff DURAVEST in connection with the acquisition and purchase of a majority stake in BMTS, INC.

28.    At all relevant times herein, Defendant O'DONNELL was and is a Certified Public Accountant licensed to provide accounting services as a CPA in the State of New York.

29.    At all relevant times herein, defendant O'DONNELL conducted the business of accounting by and through a professional association known as BRUCE O'DONNELL, CPA/PFS, P.A., in the State of New York.

30.    At all relevant times herein, defendant BRUCE O'DONNELL, CPA/PFS, P.A., was a sole proprietorship organized and existing under the laws of the State of Florida.

31.    At all relevant times herein, defendant BRUCE O'DONNELL, CPA/PFS, P.A., was a corporation organized and existing under the laws of the State of Florida.

32.    At all relevant times herein, defendant BRUCE O'DONNELL, CPA/PFS, P.A., was a foreign corporation licensed and registered to conduct business in the State of New York.

33.    At all relevant times herein, defendant BRUCE O'DONNELL, CPA/PFS, P.A., was a sole proprietorship organized and existing under the laws of the State of New York.

34.    At all relevant times herein, defendant BRUCE O'DONNELL, CPA/PFS, P.A., was a corporation organized and existing under the laws of the State of New York.

35.    At all relevant times herein, defendant O'DONNELL and his professional association known as BRUCE O'DONNELL, CPA/PFS, P.A., held themselves out as a firm that provided accounting services in the State of New York.

36.    At all relevant times herein, defendant O'DONNELL owned, managed, and controlled Defendant BRUCE O'DONNELL, CPA/PFS, P.A.

37.    At all relevant times herein, defendant O'DONNELL and his professional association known as BRUCE O'DONNELL, CPA/PFS, P.A., did have substantial clients and provide accounting services in the State of New York.

38.    At all relevant times herein, Defendant O'DONNELL provided accounting services for companies located in the State of New York, including BMTS' New York operations d/b/a "Bio-Mechanical Technologies, Inc."

39.    At all relevant times herein, MARKOLL CONSULTING was and is a foreign limited liability company organized and existing under the laws of the Kingdom of Spain, with offices at EL Greco 5, 07157 Puerto Andratx, Mallorca, Spain.

40.    At all relevant times herein, MARKOLL CONSULTING was and is a foreign partnership organized and existing under the laws of the Kingdom of Spain, with offices at EL Greco 5, 07157 Puerto Andratx, Mallorca, Spain.

41.    At all relevant times herein, MARKOLL CONSULTING was and is a foreign corporation organized and existing under the laws of the Kingdom of Spain, with offices at EL Greco 5, 07157 Puerto Andratx, Mallorca, Spain.

42.    At all relevant times herein, MR. MARKOLL and MRS. MARKOLL were and are husband and wife.

43.    At all relevant times herein, Defendants MR. MARKOLL and MRS. MARKOLL, were and are members, shareholders and/or principals of MARKOLL CONSULTING.

44.    At all relevant times herein, Defendant MARKOLL CONSULTING provided consulting services to BMTS, INC.

6

45.    At all relevant times herein, Defendant MARKOLL CONSULTING provided consulting services to companies which were authorized to do business, and did business, in the State of New York, including BMTS, INC. d/b/a Bio-Medical Technologies, Inc.

46.    At all relevant times herein, Defendants MR. MARKOLL and MRS. MARKOLL are and were residents of the State of Florida, maintaining a residence at 224 Datura St Ste 909, West Palm Beach Fl 33401-5624.

47.    At all relevant times herein, Defendants MR. MARKOLL and MRS. MARKOLL were officers of BMTS, INC.,

48.    At all relevant times herein, Defendants MR. MARKOLL and MRS. MARKOLL conducted business under the name Bio-Medical Technologies, Inc., in the State of New York in Melville, County of Suffolk.

49.    This Court has pendent jurisdiction over the state common law claims asserted herein in that such claims are so related to the RICO claims that they form part of the same case or controversy.

50.    Venue is predicated on 28 U.S.C. §§1391 (b) (2) and (d) in that a substantial part of the events or omissions giving rise to the claim occurred in this district. In addition, pursuant to 18 U.S.C. 1965(a) and (b), venue is proper in this district as defendants transacted their affairs in this district and the ends of justice require that the defendants be brought before this Court.

**FACTUAL BACKGROUND**

**BMTS Corporate Pedigree**

51.    At all relevant times herein, non-party BMTS, INC. is and was a corporation organized and existing pursuant to the laws of the State of Florida, and duly authorized and registered to do business as "Bio-Medical Technologies, Inc." in the State of New York.

7

52.     BMTS was founded in or about 1991 by Defendant RICHARD MARKOLL, who became and remained its Chief Executive Officer from the time BMTS was founded, up to and including January 2007.

53.     At all relevant times herein, BMTS, INC. individually and d/b/a "Bio-Medical Technologies, Inc." engaged in substantial business activities in the State of New York.

54.     At all relevant times herein, BMTS, INC. made sales of its biomechanical products and services in the State of New York, maintaining offices in Melville, County of Suffolk.

55.     At all times prior to the Purchase, and up until the time the Purchase was consummated between November 2005 and April 2006, Defendant MR. MARKOLL maintained a majority shareholder stake in BMTS, INC.

56.     At all times prior to the Purchase, and up until the time the Purchase was consummated between November 2005 and April 2006, Defendant MR. MARKOLL and MRS. MARKOLL maintained a majority shareholder stake in MARKOLL CONSULTING, and participated in and controlled its activities.

57.     At all relevant times following the Purchase, MARKOLL CONSULTING acted as a financial conduit for the illicit receipt of operating capital monies wrongfully transferred out of BMTS, INC.

58.     At all relevant times herein, BMTS, INC. acted as a holding company for wholly owned subsidiaries, including BMTS, GmbH and its subsidiaries.

59.     At all relevant times herein, between November 2005 and January 2007, Defendant MR. MARKOLL was the Chief Executive Officer of BMTS, INC., with signing authority on one or more BMTS, GmbH bank accounts at Deutsche Bank, in Munich, Federal Republic of Germany.

60.     At all times hereinafter mentioned, Defendant ERNESTINE MARKOLL was a shareholder in, was employed by, and participated in, the management of BMTS, INC.

61.    At all times hereinafter mentioned, the BMTS INC.'s business model, reputation, and business prospects, were tied to the business and personal reputations, and consulting services, of the MARKOLL Defendants.

62.    At all relevant times herein, BMTS, INC. d/b/a Bio-Medical Technologies, Inc., operated a clinic in Melville, County of Suffolk, New York, for the ostensible treatment of various maladies with magnetic "Pulsed Signal Technology" ("PST").

63.    At all relevant times herein, BMTS, INC. was the sole owner of BMTS, GmbH, a corporation organized and existing under the laws of the Republic of Germany.

64.    At all relevant times herein, BMTS, GmbH was engaged in the business of selling and licensing magnetic medical devices to the medical community, for the ostensible treatment of various maladies with PST.

**Certain Defendants' Wrongful Pre-Purchase Representations**

**A.      Individual Professional Backgrounds and Criminal History**

65.    At all relevant times herein, Defendant MR. MARKOLL held himself out as a medical doctor ("M.D.") licensed to practice medicine.

66.    At all relevant times herein, Defendant MR. MARKOLL held himself out as a medical doctor ("M.D.") authorized to practice medicine in all or portions of the United States.

67.    Defendant MR. MARKOLL has never been licensed to practice medicine in any State of the United States.

68.    At all times hereinafter mentioned, and prior to the Purchase, the MARKOLL Defendants held themselves out to be biomedical researchers in good standing and with honorable reputations in the medical and/or medical research community.

9

Case 1:07-cv-10590-JSR     Document 15-2     Filed 02/11/2008     Page 11 of 34

69.    Prior to the Purchase, on or about May 18, 2001, in U.S. District Court, District of Connecticut, RICHARD MARKOLL plead guilty to, or was convicted of, violations of the Food, Drug, and Cosmetic Act and mail fraud.

70.    The aforesaid guilty plea or conviction of MR. MARKOLL concerned violations of Title 18 U.S.C. § 371 - Conspiracy, and Title 21 U.S.C. § 331(q)(1)(A), 333(a)(2), 360j(g) - failure or refusal to comply (with the intent to defraud) with any requirement prescribed under Title 21 U.S.C. § 360j(g).

71.    Prior to the Purchase, on or about May 18, 2001 MRS. MARKOLL plead guilty to, or was convicted of, misdemeanor violations of Title 18 U.S.C. § 371 - Conspiracy, and Title 21 U.S.C. § 331(q)(1)(A), 333(a)(1), 360j(g) - failure or refusal to comply with any requirement prescribed under Title 21 U.S.C. § 360j(g).

72.    At all relevant times herein, and since the dates of said convictions to the present, the MARKOLL Defendants have fraudulently concealed the true nature of their criminal convictions, as well as the effects of same upon the continuing viability and profitability of BMTS, INC. and other businesses that they have used to market biomagnetic therapy products.

73.    The MARKOLL Defendants failed to disclose and/or concealed their aforementioned criminal convictions and/or guilty pleas from DURAVEST prior to the Purchase.

**B.     BMTS Intellectual Property "Rights"**

74.    At all times hereinafter mentioned, MR. MARKOLL held himself out as the inventor, author, proprietor, and owner of certain intellectual property used as the basis for various Pulsed Signal Technology ("PST") products which he represented as useful, marketable, and profitable, to treat various maladies in humans, including osteoarthritis, tinnitus, fibromyalgia, and muscle injuries; and similar and other maladies in animals.

10

75.     Unbeknownst to Plaintiff DURAVEST at the time of the Purchase, Defendants MR. and MRS. MARKOLL were aware of various competing third party claims over the intellectual property rights of the aforementioned PST products that existed on and prior to the Purchase ("adverse intellectual property claims").

76.     Prior to the Purchase, Defendants MR. and MRS. MARKOLL concealed and/or failed to disclose one or more previously asserted competing claims to PST Technology, which were in derogation of BMTS' rights to own or use such technology on an exclusive or protectable basis.

77.     At all times hereinafter mentioned, the competing claims for the aforesaid intellectual property rights surrounding PST technology adversely affected and impacted both the inherent value and future business prospects of BMTS, and its ability to operate as a going concern.

78.     Unbeknownst to Plaintifff DURAVEST at the time of the Purchase, MR. MARKOLL was aware that there was limited or no legal, protectable, or recognized registration for the "technology" which formed the basis for the aforementioned PST products that existed on and prior to the Purchase ("adverse intellectual property claims").

79.     At all times hereinafter mentioned, the failure to have protectable and recognized legal registration for PST technology adversely affected and impacted both the inherent value of BMTS, and its ability to operate as a going concern.

C.     **Clinical Studies and Results**

80.     At all times hereinafter mentioned, the MARKOLL Defendants and Defendant VISCARDI negligently, fraudulently and inaccurately misrepresented to Plaintifff DURAVEST that the MARKOLL Defendants had participated in and conducted clinical trials of PST technology, and that such clinical trials proved and showed that PST Technology was effective for the purposes marketed by BMTS prior to the purchase.

81.     Unbeknownst to Plaintiff DURAVEST, there were virtually no reliable clinical studies or clinical study results for PST Technology in existence prior to the Purchase.

11

**D.      BMTS Operating Income**

82.      Prior to the Purchase, on or about May 31, 2005, Defendants O'DONNELL , MR. MARKOLL, and MRS. MARKOLL intentionally and/or negligently and/or recklessly misrepresented BMTS to be profitable insofar as its operating income was restated for 2003 to as to represent that such income exceeded its 2003 operating expenses.

83.      Prior to the Purchase, on or about May 31, 2005, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI intentionally and/or negligently and/or recklessly misrepresented BMTS to be profitable insofar as its operating income for 2004 in that they represented that such income exceeded its 2004 operating expenses.

84.      The aforestated pre-Purchase representations by the O'DONNELL Defendants, The MARKOLL Defendants, and Defendant VISCARDI that BMTS had earned operating income in fiscal years 2003 and/or 2004 income were without reasonable basis in fact, and these Defendants knew or should have known that such representations were without reasonable basis, contrary to General Accounting Principles ("GAP"), and/or were outright false.

85.      Following the Purchase, on or about April 2006, the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI's, receipt of substantial fees, proceeds, and/or commissions from the Purchase, the O'DONNELL Defendants, and the MARKOLL Defendants, restated 2005 pre-Purchase operating income and expenses for BMTS, so as to disclose for the first time that the company's operating income did not exceed operating expenses, and that BMTS was therefore not profitable dating back to the Purchase date.

**E.      Loans Claimed from BMTS**

86.      Following the Purchase, on or about April 2006, and the O'DONNELL, MARKOLL Defendants, and VISCARDI's receipt of substantial fees, proceeds, and/or commissions from the Purchase, the O'DONNELL Defendants, and the MARKOLL Defendants, for the first time, claimed the existence of "loans" due and payable from BMTS, INC. to the MARKOLL Defendants.

87.     The aforementioned loans to BMTS, INC. were not and have never been documented in amount, date, terms, or otherwise.

88.     The O'DONNELL and MARKOLL Defendants' claims of loans due and payable to the MARKOLL Defendants from BMTS were and are a pretext for the looting of BMTS' operating capital provided by DURAVEST, by means of money wire transfers to the MARKOLL Defendants, in the guise "loan repayments."

**F.     Use of Telephone and Wire Services**

89.     On or about November 28, 2005, the MARKOLL Defendants and Defendant VISCARDI caused a correspondence to be sent to Plaintiff DURAVEST by fax, which contained fraudulent material omissions and misrepresentations as to: the financial condition of BMTS, INC., the stated "lack" of related party transactions between BMTS. INC. and the MARKOLL Defendants in the relevant time period; the "lack" of claims against BMTS, INC., and otherwise materially misrepresented significant elements of the business, financial condition, and future business prospects of BMTS, INC.

90.     Prior to the Purchase, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI, caused 2003, 2004 and 2005 financial statements of BMTS. INC. to be issued and disseminated via the mails across state lines and/or faxed across state lines, containing material misrepresentations and/or omissions regarding significant elements of the business, financial condition, and future business prospects of BMTS, INC.

91.     The foregoing material misrepresentations and omissions supported previous oral and written representations, misrepresentations, and omissions made by the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI, regarding significant elements of the business, financial condition, and future business prospects of BMTS, INC.

<u>Certain Defendants' Wrongful Post-Purchase Acts</u>

**A.    Failure to Transfer ,and Misuse of , Intellectual Property Rights**

92.    As a part of and partial consideration for, the Purchase, the MARKOLL Defendants agreed to transfer any and all intellectual property rights previously used by BMTS, INC. , to BMTS, INC., for the use of BMTS, INC. in the conduct of its regular business thereafter.

93.    Following the Purchase, Plaintiff requested that the MARKOLL Defendants formally transfer their intellectual property rights by written agreement.

94.    The MARKOLL Defendants have failed to execute any document to transfer any intellectual property rights to BMTS, INC. which were previously used by BMTS, INC. and/or its subsidiares prior to the Purchase, and which were intended to be, and were, part of the Purchase.

95.    At all relevant times herein, the MARKOLL Defendants have and continue to diminish the value of the intellectual property rights which were promised to and purchased by Plaintiff Duravest as part of the Purchase, by fraudulently continuing to resell those rights to unrelated third parties without permission.

**B.    Conversion of Transferred Purchase Monies**

96.    To accomplish the aforesaid share purchase, and provide operating capital to the company, Plaintiff DURAVEST transferred approximately One and One Half Million Dollars ($1,5000,000) to BMTS , GmbH, at a Deutsche Bank branch located at Promenadeplatz 15, 80333 Munich, Federal Republic of Germany, on or about December 1, 2005.

97.    Two days after the transfer of the One and One half Million Dollars ($1,500,000), on or about December 2, 2005, unbeknownst at the time to Plaintiff Duravest, the MARKOLL Defendants transferred the entire One and One Half Million Dollars ($1,5000,000) to an account maintained and controlled by one or more of the MARKOLL DEFENDANTS, jointly and severally.

98.    Following the Purchase, between December 2005 and April 2006, the MARKOLL Defendants made several other monetary transfers from corporate accounts intended to hold

operating capital, which had been funded by Plaintiff DURAVEST, and which were held by and for the benefit BMTS, GmbH, to accounts controlled by one or more of the MARKOLL Defendants, for amounts totaling an additional One Million Five Hundred Seventy Thousand Dollars ($1,570,000) for, *inter alia*, "loan repayments" and "deferred compensation."

99.     That prior to the Purchase, the MARKOLL Defendants failed to disclose any claimed debts owed to them by BMTS, GmbH, nor did they produce any loan documents to Plaintiff in support of, or explaining or justifying, any such loan amounts.

100.     That prior to the Purchase, the MARKOLL Defendants failed to provide any payroll documentation in support of any claimed "deferred compensation" owed to them, nor any reason why any claimed "deferred" compensation had been previously deferred and would be owing to them following the Purchase.

101.     That the MARKOLL Defendants were not and are not entitled to the aforesaid monies that they transferred to themselves, out of BMTS, GmbH, totaling approximately three million dollars ($3,000,000).

**D.     Violation of Non-Competition Agreements**

102.     On or about December 29, 2005, Defendants RICHARD MARKOLL individually and on behalf of MARKOLL CONSULTING, represented that they entered into a Consulting Agreement with BMTS, INC., and that they were bound by such Agreement at all times while the MARKOLL Defendants continued to perform services for BMTS, INC. following the Purchase, and for a period of time of at least two years following the conclusion of the Purchase.

103.     That the aforesaid Agreement is today in full force and effect.

104.     Unbeknownst to Plaintiff DURAVEST, at the time of or shortly following the completion of the Purchase, the MARKOLL Defendants conspired to, and/or otherwise did, violate the aforesaid non-competition provisions of the aforesaid Agreement, in that they have contacted and spoken to third party competitors of BMTS, INC. and BMTS, GmbH, in an attempt to provide know-how, illicit

licensing of technology, assistance, and business advice to such competitors for profit, in the areas of business that BMTS, INC. and BMTS, GmbH were and are engaged in.

105.    That since the Purchase, the MARKOLL Defendants have or have agreed to receive value from BMTS, INC.'s and/or BMTS, GmbH's competitors for their know-how, intellectual property, client lists, and other items and property that are covered by the non-compete agreements that the MARKOLL Defendants entered into with BMTS, INC. prior to the Purchase and/or the Purchase agreements themselves.

**VISCARDI**

106.    In and prior to the year 2000, and up through and including December of 2005, VISCARDI maintained BMTS, INC. as a client.

107.    In and prior to the year 2000, and up through and including December of 2005, VISCARDI maintained MR. MARKOLL and MRS. MARKOLL as clients.

108.    Beginning in and prior to November 2005, Defendant VISCARDI, by and through its staff, did hold itself out to Plaintiff DURAVEST and the general public as investment bankers and venture capital experts experienced in all aspects of advising, evaluating, and counseling clients in relation to, reputable corporate acquisitions of companies large and small.

109.    Beginning in or prior to the year 2000, and continuously through April of 2006, VISCARDI compiled and disseminated corporate information, data, and research on BMTS, INC. individually and d/b/a Bio-Medical Technologies, Inc., and their subsidiaries.

110.    In or prior to the year 2000, and up through and including 2004, VISCARDI engaged in unsuccessful efforts to find a purchaser for BMTS, INC.

111.    From the year 2000, and up through and including December of 2005, VISCARDI made various presentations to prospective purchasers in an effort to find a purchaser for BMTS, INC.

112.    The aforesaid presentations put forth BMTS, INC. and its subsidiaries as a going concern with significant value and upside potential, based on representations regarding the protectability and usefulness of its technology, which VISCARDI knew or had reason to know were totally or substantially false.

113.    In the year 2005, VISCARDI marketed the sale of BMTS, INC. to DURAVEST, ultimately resulting in the sale of all or substantially all of BMTS, INC. to DURAVEST.

114.    Prior to the Purchase, VISCARDI drafted and created presentation materials for the sale of BMTS, INC.

115.    Prior to the Purchase, VISACARDI gave one or more presentations regarding the actual earnings, clients, value, good will, profitability, and valuation of BMTS, INC. as a company and going concern.

116.    Prior to the Purchase, DURAVEST relied on VISCARDI's presentations in evaluating the suitability of BMTS, INC. for purchase and in evaluating its value, good will, profitability, and valuation as a going concern.

117.    Prior to the Purchase, VSCARDI knew or should have known that its presentation, documentation, and representations regarding the value and valuation were false or substantially false in that BMTS, INC. was of little or no value as a going concern; in that BMTS, INC. held little or no protectable intellectual property interests; in that its profitability, if any, was declining prior to the Purchase so as to render it a money-losing enterprise at or shortly after the Purchase; in that there were little or no clinical studies which supported the business products sold by BMTS, INC. and its subsidiaries at the time of Purchase; and in that the professional reputations of certain key officers of BMTS, INC. at the time of Purchase were tainted by criminal convictions which would and did affect the reputation of the company.

17

118.     The aforesaid fraudulent statements, fraudulent omissions, fraudulent misstatements, and the conspiracies to commit same, were performed via the mails and/or telephone lines, in violation of 18 U.S.C. §§ 1341 and/or 1343.

**Wollmuth**

119.     Beginning in and prior to November 2005, Defendant WOLLMUTH, by and through DRAKE and other attorneys and staff, did act as attorneys for Plaintiff DURAVEST.

120.     Beginning in and prior to November 2005, Defendant WOLLMUTH, by and through DRAKE and other attorneys and staff, did hold themselves out to Plaintiff DURAVEST and the general public as attorneys experienced in all aspects of advising, evaluating, and counseling clients in relation to, corporate acquisitions of companies large and small.

121.     Beginning in and prior to November 2005, Defendant WOLLMUTH, by and through DRAKE and other attorneys and staff, reviewed and prepared documents by which DURAVEST accomplished and agreed to accomplish the Purchase.

122.     Prior to the Purchase, WOLLMUTH and DRAKE, were retained to provide the benefit of their experience to advise and counsel Plaintiff in connection with the Purchase.

123.     At all relevant times herein, prior to the Purchase, WOLLMUTH and DRAKE were retained and expected to, inter alia, review the suitability of BMTS, INC. for purchase.

124.     At all relevant times herein, prior to the Purchase, WOLLMUTH and DRAKE were retained and expected to, inter alia, perform due diligence to review the suitability of BMTS, INC. for purchase.

125.     At all relevant times herein, prior to the Purchase, WOLLMUTH and DRAKE were retained and expected to, inter alia, draft proper agreements to assist Plaintiff in protecting its financial and legal interests in connection with and following the Purchase.

**O'Donnell Defendants**

126.    In and prior to the year 2000, and up through and including December of 2005, the O'Donnell Defendants maintained BMTS, INC. as a client for bookkeeping, auditing, tax, and accounting services.

127.    In and prior to the year 2000, and up through and including December of 2005, the O'DONNELL Defendants maintained MR. MARKOLL and MRS. MARKOLL as clients for bookkeeping, auditing, tax, and accounting services provided to BMTS, INC.

128.    In and prior to the year 2000, and up through and including December of 2005, the O'DONNELL Defendants maintained BMTS, INC. and the MARKOLL defendants as personal clients for bookkeeping, auditing, tax, and accounting services provided to them individually.

129.    In and prior to the year 2000, and up through and including December of 2005, the O'DONNELL Defendants periodically communicated with the MARKOLL Defendants for the purposes of obtaining representations of management regarding the financial condition of BMTS, INC.

130.    In and prior to the year 2000, and up through and including December of 2005, the O'DONNELL Defendants periodically communicated with the MARKOLL Defendants for the purposes of obtaining representations regarding the their personal financial condition, for the purposes of determining their personal taxable income, liabilities and write-offs, including taxable income from BMTS, INC.

131.    Beginning in or prior to the year 2000, and continuously through April of 2006, the O'DONNELL Defendants compiled corporate information, data, and research on BMTS, INC., individually and d/b/a Bio-Medical Technologies, Inc.

132.    In and prior to May of 2005, the O'DONNELL Defendants fraudulently, negligently, carelessly, and/or recklessly issued "restated" financial statements for BMTS, INC. which, by virtue of their

contact and relation with BMTS, INC. and its principals, they knew or should have known to be substantially or totally misleading and/or false.

133.    In and prior to May of 2005, the O'DONNELL Defendants conspired with the MARKOLL Defendants to issue "restated" financial statements for BMTS, INC. which, by virtue of their contact and relation with BMTS, INC. and its principals, they knew or should have known to be substantially or totally misleading and/or false.

134.    The "restated" financial statements for BMTS, INC. issued in May 2005 contained material omissions in that certain of the items booked as "liabilities" on behalf of the company were linked to related party transactions that were not stated to be such in the statements.

135.    Prior to the Purchase, the O'DONNELL Defendants knew or should have known that there were none or insufficient proofs for many of the items listed on the financial statements.

136.    Prior to the Purchase, the O'DONNELL Defendants disseminated the "restated" financial statements that they had issued for BMTS, INC. in May 2005, to the Plaintiff DURAVEST, knowing or with reason to know that such financial statements contained material omissions and/or misrepresentations which caused them to be completely or substantially false.

137.    The dissemination of the aforesaid "restated" financial statements was performed via the mails and/or telephone lines, in violation of 18 U.S.C. §§ 1341 and/or 1343.

138.    Prior to the Purchase, the O'DONNELL Defendants knew or had reason to know that BMTS, INC. was being offered or evaluated for sale to third parties, and that such third parties would or did rely on the FY2004 financial Statement issued by the O'DONNELL Defendants in or about May 2005 for information as to the financial condition of BMTS, INC. as of the time of the Purchase.

139.    The aforesaid fraudulent statements, fraudulent omissions, fraudulent misstatements, and the conspiracies to commit same, were performed via the mails and/or telephone lines, in violation of 18 U.S.C. §§ 1341 and/or 1343.

**Markoll Defendants**

140.    At all relevant times herein, prior to the Purchase and up until April 2006, the MARKOLL Defendants managed, had controlling equity interest in, and otherwise controlled BMTS, INC.

141.    At all relevant times herein, prior to the Purchase and up until April 2006, the MARKOLL Defendants were aware of the true financial condition of BMTS, INC., including its lack of viability as a going concern.

142.    At all relevant times herein, prior to the Purchase and up until April 2006, the MARKOLL Defendants failed to disclose the true financial condition of BMTS, INC., including its lack of viability as a going concern.

143.    At all relevant times herein, prior to the Purchase and up until April 2006, the MARKOLL Defendants were aware of the lack of suitable clinical studies which would support the effectiveness of bio-magnetic therapies and treatments sold by BMTS, INC.

144.    At all relevant times herein, prior to the Purchase and up until April 2006, the MARKOLL Defendants failed to disclose the lack of suitable clinical studies which would support the effectiveness of bio-magnetic therapies and treatments sold by BMTS, INC.

145.    At all relevant times herein, prior to the Purchase and up until April 2006, the MARKOLL Defendants conspired amongst themselves, and with other defendants herein, to conceal the lack of suitable clinical studies which would support the effectiveness of bio-magnetic therapies and treatments sold by BMTS, INC.

146.    The lack of positive and available clinical studies affected the viability and value of BMTS, INC. as a going concern.

147.    At all relevant times herein, prior to the Purchase and up until April 2006, the MARKOLL Defendants conspired amongst themselves, and with other defendants herein, to conceal the true financial condition of BMTS, INC.

148.    The true financial picture of BMTS, INC. would have substantially diminished or extinguished its value as a going concern.

149.    At all relevant times herein, prior to the Purchase, the MARKOLL Defendants represented to DURAVEST that they had not entered into any "related party transactions" with BMTS, INC., that were not specifically reflected in the financial statements thereof.

150.    On or about November 28, 2005, the O'DONNELL and MARKOLL Defendants, and defendant VISCARDI caused a letter to be sent to Plaintiff DURAVEST, containing representations which were fraudulent and/or reckless and/or negligent, in that they, amongst other things, denied related party transactions prior to the Purchase; they stood by the "accuracy" of knowingly false financial statements relating to BMTS, INC.; they misrepresented that there were no known litigation or claims against BMTS, INC. at the time of such letter; and they misrepresented the intentions of the MARKOLL Defendants, as members of BMTS, INC. management following the Purchase, to preserve funds received from Plaintiff DURAVEST in the Purchase as operating capital for BMTS, INC. following the Purchase.

151.    The MARKOLL Defendants knew or should have known that their pre-Purchase representations to DURAVEST with regard to related party transactions by and between themselves and BMTS, INC. were false.

152.    Following the Purchase, in 2006, the MARKOLL Defendants represented the existence of approximately Six Hundred Thousand Dollars ($600,000) in loans outstanding and payable to them by BMTS, INC., most or all of which they knew to have been fraudulent and never previously disclosed or documented as loans to the MARKOLL Defendants.

153.    Prior to the Purchase by DURAVEST, the MARKOLL Defendants never disclosed or documented debts in the amount of Six Hundred Thousand Dollars ($600,000) allegedly owed to them by BMTS, INC.

154. The foregoing alleged debt later claimed by the MARKOLL Defendants as owing from BMTS, INC. following the Purchase was a material and fraudulent omission and misrepresentation in connection with the Purchase.

155. The MARKOLL Defendants' claim of being owed Six Hundred Thousand Dollars ($600,000) was part and parcel of a fraudulent scheme to serve as a pretext for conversion of post-Purchase conversion of operating capital provided by plaintiff DURAVEST for their won exclusive use and enjoyment.

156. The aforesaid fraudulent statements, fraudulent omissions, fraudulent misstatements, and the conspiracies to commit same, were performed via the mails and/or telephone lines, in violation of 18 U.S.C. §§ 1341 and/or 1343.

**Damages Resulting Directly From Purchase**

157. To provide operating capital to the company as part of the Purchase, between November and December Of 2005, DURAVEST purchased all then-authorized shares of BMTS, INC. and transferred approximately One Million Five Hundred Thousand Euros (then worth approximately One Million Eight Hundred twenty Four Thousand Dollars $1,824,000) to BMTS, GmbH account(s) in Deutsche bank, Munich, Federal Republic of Germany.

158. Following a Special Meeting of the Board of Directors of BMTS, GmbH in December 2005, an additional 2.65 million shares were authorized and issued by BMTS, GmbH.

159. To provide additional working capital for BMTS, INC., Plaintiff DURAVEST paid an additional Two Million Six Hundred Seventy Six Thousand Dollars ($2,676,000) for the aforesaid additional 2.65 million shares of BMTS, GmbH by transfer to BMTS, GmbH account(s) in January 2006.

160. In November 2005, Plaintiff DURAVEST paid Eight Hundred Thousand Dollars ($800,000) to Defendant MR. MARKOLL, based on the MARKOLL Defendants' representations as to the value of BMTS, INC., its business prospects, intellectual property rights and assets, the contemplated transfer of

the MARKOLL Defendants' intellectual property rights and assets, and the skills and reputation of its management, all of which were mostly or substantially untrue.

161.    In or about November 2005, Plaintiff DURAVEST paid approximately One Million Two Hundred Thousand Dollars ($1,2000,000) to existing shareholders of BMTS, INC. for their shares, based on the MARKOLL Defendants' representations as to the value of BMTS, INC., its business prospects, intellectual property rights and assets, the contemplated transfer of the MARKOLL Defendants' intellectual property rights and assets, and the skills and reputation of its management, all of which were mostly or substantially untrue.

### AS AND FOR A FIRST CAUSE OF ACTION
### FOR COMMON LAW FRAUD

162.    Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "161" above, as if fully set forth at length herein.

163.    The foregoing matters concealed from Plaintiff were material to the value, or lack thereof, of the Purchase.

164.    The foregoing misrepresentations made by the MARKOLL Defendants, the O'DONNELL Defendants, and VISCARDI, were material to the value, or lack thereof, of the Purchase.

165.    By means of the foregoing pre-Purchase material misrepresentations, but-for which the Purchase would not have been made, and which resulted in the Purchase, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI committed a fraud at common law which damaged Plaintiff DURAVEST.

166.    By means of the foregoing post-Purchase misrepresentations as to the existence of pre-Purchase loans and deferred compensation "debts" owed to the MARKOLL Defendants, and which ultimately resulted in monetary transfers to the MARKOLL Defendants, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI committed a fraud at common law which damaged Plaintiff DURAVEST.

167.    At the time of the Purchase, plaintiff justifiably relied upon the oral representations made by the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI.

168.    Following the Purchase, during the time period that the MARKOLL Defendants held positions of management at BMTS, INC., plaintiff justifiably relied upon the oral representations made by the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI.

169.    Plaintiff was induced to enter into the Purchase based upon the material omissions and misrepresentations of the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI, and would not have entered into the Purchase were it not for such misrepresentations and omissions.

170.    As a result, the O'DONNELL Defendants, the MARKOLL Defendants, and VISCARDI, are liable to DURAVEST for damages therefor, in the amount of Nine Million Five Hundred Thousand Dollars ($9,500,000), plus costs, attorneys' fees, and interest from the dates of omission and commission thereof.

### AS AND FOR A SECOND CAUSE OF ACTION
#### ALLEGING THE EXISTENCE OF A CRIMINAL ENTERPRISE
#### AND DAMAGE THEREFROM IN VIOLATION OF 18 U.S.C. §1962(c) and (d)

171.    Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "170" above, as if fully set forth at length herein.

172.    The foregoing fraudulent representations and misrepresentations were and have been carried out by the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISACRDI, by means of the international and interstate telephone calls and international and interstate faxed correspondences, thereby constituting acts of fraud committed in interstate commerce.

173.    The foregoing fraudulent and unauthorized monetary transfers were ordered and performed by means of interstate money wires and telephone calls, constituting acts of conversion

committed by and through interstate and international commerce, and affect interstate and international commerce within the meaning of 18 U.S.C. § 1962(c) and (d).

174.     The foregoing fraudulent and unauthorized monetary transfers were in violation of 18 U.S.C. §§ 1341 and/or 1343.

175.     The aforementioned November 28, 2005 correspondence, the FY2004 BMTS, INC. financial statement, the pre-Purchase sale presentations, and the post-Purchase monetary transfers totaling approximately Three Million Dollars ($3,000,000), constituted acts of fraud committed by and through interstate and international commerce, and affected interstate and international commerce within the meaning of 18 U.S.C. § 1962(c) and (d).

176.     The defendants conspired and operated the Enterprise knowingly and intentionally to defraud Plaintiff DURAVEST and others.

177.     At all relevant times herein, and by means of the foregoing activities, the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI, by means of their individual and collective participation therein, constituted "persons," and collectively controlled BMTS, INC. (rendering it an "enterprise" within the meaning of 18 U.S.C. §1962(c) and (d), up to the time of its purchase by Plaintiff when the MARKOLL DEFENDANTS relinquished day- to-day control over it, and during that time engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d).

178.     The MARKOLL Defendants, the O'DONNELL Defendants, and VISCARDI, each, jointly and severally, as set forth above, participated in conducting the affairs of the enterprise, in violation of 18 U.S.C. § 1962(c) and (d).

179.     By means of the foregoing, and In violation of 18 U.S.C. § 1962(d), the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI, conspired to engage in a pattern of racketeering activity, as set forth above.

180.    The numerous and fraudulent acts of the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI, jointly and severally, constitute a pattern of racketeering activity affecting interstate commerce within the meaning of 18 U.S.C. § 1961(5) in that said illegal acts have a relationship to each other by reason of having similar objects, methods of commission, common victims, and similar means of transmission.

181.    At all relevant times herein, the O'DONNELL and MARKOLL Defendants, and Defendant VISCARDI, continue to attempt to market and sell the same biomagnetic technologies that were to have been acquired by Plaintiff DURAVEST and the rights to which were to be turned over to Plaintiff DURAVEST as part of the Purchase.

182.    There is a substantial threat that the Enterprise's racketeering activities will continue, as Defendants continue active in the business of selling biomagnetic therapies, including the fraudulent reselling of biomagnetic technologies which were sold to Plaintiff Duravest as part of the Purchase. The racketeering activities associated with the Enterprise constitute defendants' ordinary method of doing business.

183.    By reason of the aforementioned racketeering Enterprise activities, defendants' ability to defraud Plaintiff DURAVEST was enhanced because the illegal operation of the Enterprise facilitated the fraud and aided its concealment, thereby damaging Plaintiff in its business and property.

184.    By means of the foregoing, the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI damaged Plaintiff DURAVEST.

185.    As a result, the O'DONNELL Defendants, the MARKOLL Defendants, and defendant VISCARDI are liable to DURAVEST pursuant to 18 U.S.C. §1964(c) for treble its actual damages therefor,

in the amount of Twenty Eight Million, Five Hundred Thousand Dollars ($28,500,000), plus costs, attorneys' fees, and interest from the dates of omission and commission thereof.

### AS AND FOR A THIRD CAUSE OF ACTION FOR CONVERSION

186.    Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "185" above, as if fully set forth at length herein.

187.    The aforesaid post-Purchase monetary transfers by the MARKOLL Defendants constituted conversion, as they are were not made with any legitimate business purpose.

188.    By means of the foregoing, the MARKOLL Defendants damaged Plaintiff DURAVEST.

189.    As a result, the MARKOLL Defendants are liable to DURAVEST for its actual damages therefor, in the amount of Three Million Seventy Thousand Dollars ($3,070,000), plus costs, attorneys' fees, and interest from the dates of omission and commission thereof.

### AS AND FOR A FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT

190.    Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "189" above, as if fully set forth at length herein.

191.    The MARKOLL Defendants' aforementioned contacts with, and aid to, competitors of BMTS, INC. following the Purchase violated the terms and provisions of MR. MARKOLL's terms of employment with BMTS, INC., as set forth in a December 29, 2005 Consulting Agreement.

192.    By means of the concerted actions of the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI leading up to the Purchase, the terms and conditions of the Purchase were violated, constituting a breach of contract.

193.    By means of the foregoing, the MARKOLL Defendants damaged Plaintiff DURAVEST.

194.    As a result, the O'DONNELL Defendants, the MARKOLL Defendants, and Defendant VISCARDI are liable to DURAVEST for damages in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000); plus costs, attorneys' fees, and interest from the dates of omission and commission thereof.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR PROFESSIONAL MALPRACTICE

195.     Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "194" above, as if fully set forth at length herein.

196.     That prior to the Purchase, Defendants DRAKE and WOLLMUTH, as legal counsel, were retained to, but failed to provide and/or render, reasonable and proper and sufficient advice, counsel, and perform proper due diligence, in relation to the Purchase.

197.     That prior to the Purchase, Defendants DRAKE and WOLLMUTH, as legal counsel, were retained to, but failed to provide and/or render, reasonable and proper and sufficient advice, counsel, and perform proper due diligence, so as to warn and advise Plaintiff DURAVEST of the significant shortcomings, financial risk of the Purchase.

198.     That prior to the Purchase, Defendants DRAKE and WOLLMUTH, as legal counsel, were retained to, but failed to provide and/or render, reasonable and proper and sufficient advice, counsel, and perform proper due diligence, in relation to; the lack of legal protection, protectability, and verification of claimed "intellectual property" that was to be part and parcel of the Purchase.

199.     That prior to the Purchase, Defendants DRAKE and WOLLMUTH, as legal counsel, were retained to, but failed to provide and/or render, reasonable and proper and sufficient advice, counsel, and perform proper due diligence, in relation to; the claimed lack of adverse legal claims and suits then existing and/or then noticed and/or contemplated against BMTS, which adversely affected the value of BMTS, INC. prior to and following the Purchase.

200.     That prior to the Purchase, Defendants DRAKE and WOLLMUTH, as legal counsel, were retained to, but failed to provide and/or render, reasonable and proper and sufficient advice, counsel, and draft sufficient and proper documentation to ensure the enforceability, sufficiency, and specificity or pre-Purchase representations by the former principals and sellers of BMTS, INC., so as to provide reasonable legal protection to Plaintiff DURAVEST in areas material to the value of BMTS, INC. as a going concern.

201.    By means of the foregoing, the Defendants WOLLMUTH and DRAKE damaged Plaintiff DURAVEST.

202.    As a result, Defendants WOLLMUTH and DRAKE are liable to DURAVEST for damages in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000).

### AS AND FOR A SIXTH CAUSE OF ACTION FOR
### LIABILITY BASED ON VIOLATION OF 15 U.S.C. §78(J)

203.    Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "202" above, as if fully set forth at length herein.

204.    That the foregoing misrepresentations were made by use of the mails, wire and telephone lines, in violation of 18 U.S.C. §§ 1341 and 1343.

205.    That based on the foregoing acts and representations, Plaintiff purchased shares in BMTS, INC.

206.    That by means of the foregoing acts and representations, the MARKOLL Defendants and Defendant VISCARDI violated the Securities and Exchange Act of 1934, Rule 10(b)(5) promulgated thereunder.

207.    That the foregoing acts and misrepresentations hid the real and reasonable value of BMTS, INC., which was far less than the value professed by the MARKOLL Defendants, Defendant VISCARDI, and the O'DONNELL Defendants, and rendered the investment a total or substantial loss.

208.    That by reason of the foregoing, the MARKOLL Defendants and Defendant VISCARDI are liable for said conduct pursuant to the provisions of Section 20(a) of the 1934 Securities and Exchange Act in that they offered and sold to Plaintiff securities within the meaning of the Federal Securities Laws by the use of instrumentalities and communication in interstate and foreign commerce whereby (a) they employed a device, scheme or artifice to defraud the plaintiff; (b) they made untrue statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

and (c) they engaged in transactions, practices, and a course of business which operated as a fraud or deceit upon Plaintiff.

209.    As a result, the MARKOLL Defendants and Defendant VISCARDI are liable to DURAVEST for damages in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000).

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR
## LIABILITY BASED ON VIOLATION OF 15 U.S.C. §77(l)

210.    Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "209" above, as if fully set forth at length herein.

211.    The Defendants' conduct hereinbefore set forth constituted an offer to sell securities pursuant to 15 U.S.C. §77(l) and the Securities and Exchange Act of 1933 §12(2).

212.    The Defendants' conduct hereinbefore set forth constituted a sale of securities pursuant to 15 U.S.C. §77(l) and the Securities and Exchange Act of 1933 §12(2).

213.    The foregoing representations and misrepresentations of the Defendants contained untrue statements of material facts and/or omitted material facts necessary to make them substantially or reasonably true.

214.    The foregoing representations and misrepresentations of the Defendants were made by means of oral and written communications in interstate commerce, including but not limited to the mails.

215.    Plaintiff reasonably relied on the aforementioned representations and communications of the Defendants.

216.    The foregoing representations and misrepresentations of the Defendants were in violation of 15 U.S.C. §77(l).

217.    As a result of the foregoing, the reasonable share value of BMTS, INC. shares has depreciated .

218.    As a result, the MARKOLL Defendants and Defendant VISCARDI are liable to DURAVEST for damages in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000).

## AS AND FOR A EIGHTH CAUSE OF ACTION FOR
## COMMON LAW NEGLIGENCE

219.    Plaintiff repeats and reiterates each and every allegation in the paragraphs numbered "1" through and including "218" above, as if fully set forth at length herein.

220.    That prior to the Purchase, Defendants had a duty to Plaintiff to reasonably and accurately portray the financial value, financial prospects, liabilities and prospective liabilities, accounts payable and accounts receivable of BMTS, INC.

221.    That by means of the foregoing acts, representations, and/or negligent misrepresentations, Defendants breached their duty to reasonably and accurately portray the financial value, financial prospects, good will value, liabilities and prospective liabilities, accounts payable and accounts receivable of BMTS, INC. prior to the Purchase.

222.    That by means of the foregoing acts, representations, and/or negligent misrepresentations, Defendants negligently induced and/or caused Plaintiff DURAVEST to consummate the Purchase.

223.    By means of the foregoing, the Defendants damaged Plaintiff DURAVEST.

224.    As a result, the MARKOLL Defendants, Defendant VISCARDI, and the O'DONNELL Defendants are liable to DURAVEST for damages in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000).

WHEREFORE, Plaintiff DURAVEST demands judgment against defendants, jointly and severally: on the First Cause of Action, in the amount of Nine Million Five Hundred Thousand Dollars ($9,500,000), plus costs, attorneys' fees, and interest from the dates of omission and commission thereof; on the Second Cause of Action, in the amount of Twenty Eight Million, Five Hundred Thousand Dollars ($28,500,000), plus costs, attorneys' fees, and interest from the dates of

32

omission and commission thereof; on the Third Cause of Action, in the amount of Three Million

Seventy Thousand Dollars ($3,070,000), plus costs, attorneys' fees, and interest from the dates of

omission and commission thereof; on the Fourth Cause of Action, in the amount of Twelve Million

Five Hundred Thousand Dollars ($12,500,000); plus costs, attorneys' fees, and interest from the dates of

omission and commission thereof; on the Fifth Cause of Action, in the amount of Twelve Million

Five Hundred Thousand Dollars ($12,500,000); and on the Sixth Cause of Action, in the amount of

Twelve Million Five Hundred Thousand Dollars ($12,500,000); on the Seventh Cause of Action, in the

amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000); and on the Eighth Cause of

Action, in the amount of Twelve Million Five Hundred Thousand Dollars ($12,500,000).

Dated:          White Plains, New York
                November 21, 2007

                                    Respectfully submitted,

                                    RAS ASSOCIATES, PLLC
                                    Attorneys for Plaintiff
                                    Ten Bank Street
                                    White Plains, N.Y. 10606
                                    (914) 289-2909

                                    By:_____s/LFR_____
                                        Luis F. Ras (LFR 9989)

Exhibit B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x

DURAVEST, INC.,

Docket No.: 07 CIV 10590 (JSR)

                   Plaintiff,

ANSWER AND
CROSS-CLAIMS

   -against-

VISCARDI, AG; WOLLMUTH MAHER &
DEUTSCH, LLP.; MASON H. DRAKE,
ESQ.; BRUCE O'DONNELL, CPA,
BRUCE O'DONNELL CPA/PFS,
P.A., BIOMEDICAL CONSULTANT SL,
RICHARD MARKOLL, and
ERNESTINE BINDER MARKOLL,

DEFENDANTS DEMAND
TRIAL BY JURY

                   Defendants.

------------------------------------------------------x

Defendants WOLLMUTH MAHER & DEUTSCH LLP

("WOLLMUTH") and MASON H. DRAKE, ESQ. ("DRAKE"), by their attorneys,

ABRAMS, GORELICK, FRIEDMAN & JACOBSON, P.C., as and for their Answer and

Cross-Claims to plaintiff's Complaint allege, upon information and belief, as follows:

<u>JURY DEMAND</u>

       1.     Neither admits nor denies each and every allegation set forth in

paragraph "1" of the Complaint as no response is required to an allegation demanding a

jury trial.

<u>NATURE OF ACTION AND SUBJECT MATTER JURISDICTION</u>

       2.     Deny each and every allegation set forth in paragraph "2" of the

Complaint.

3.     Deny each and every allegation set forth in paragraph "3" of the Complaint and refer to the contents of the documents.

4.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "4" of the Complaint.

5     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "5" of the Complaint.

6.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation contained in paragraph "6" of the Complaint, except deny each and every allegation set forth in paragraph "6" of the Complaint concerning WOLLMUTH and DRAKE.

7.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "7" of the Complaint.

8.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "8" of the Complaint.

9.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "9" of the Complaint.

10.     Deny each and every allegation set forth in paragraph "10" of the Complaint and refer all questions of law to the Court.

PARTIES AND VENUE

11.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "11" of the Complaint.

12.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "12" of the Complaint.

13.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "13" of the Complaint.

14.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "14" of the Complaint.

15    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "15" of the Complaint.

16.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "16" of the Complaint.

17.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "17" of the Complaint.

18.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "18" of the Complaint.

19.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "19" of the Complaint.

20.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "20" of the Complaint.

21.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "21" of the Complaint.

22.    Admit the allegations contained in paragraph "22" of the Complaint.

22.    Admit the allegations contained in paragraph "23" of the Complaint.

24.    Deny each and every allegation set forth in paragraph "24" of the Complaint, except admit that at all relevant times, DRAKE was a contract partner employee at the WOLLMUTH firm but held no equity interest.

25.    Deny each and every allegation set forth in paragraph "25" of the Complaint, except admit that at times, DRAKE and WOLLMUTH did perform certain legal services for DURAVEST.

26.    Deny each and every allegation set forth in paragraph "26" of the Complaint, except admit that at times, DRAKE did perform certain legal services for DURAVEST.

27.    Deny each and every allegation set forth in paragraph "27" of the Complaint, except admit that at times, DRAKE and WOLLMUTH performed certain legal services for DURAVEST.

28.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "28" of the Complaint.

29.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "29" of the Complaint.

30.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "30" of the Complaint.

31.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "31" of the Complaint.

32.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "32" of the Complaint.

33.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "33" of the Complaint.

34.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "34" of the Complaint.

35.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "35" of the Complaint.

36.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "36" of the Complaint.

37.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "37" of the Complaint.

38.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "38" of the Complaint.

39.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "39" of the Complaint.

40.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "40" of the Complaint.

41.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "41" of the Complaint.

42.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "42" of the Complaint.

43.     Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "43" of the Complaint.

44.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "44" of the Complaint.

45.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "45" of the Complaint.

46.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "46" of the Complaint.

47.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "47" of the Complaint.

48.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "48" of the Complaint.

49.    Deny each and every allegation set forth in paragraph "49" of the Complaint and refers all questions of law to the Court.

50.    Deny each and every allegation set forth in paragraph "50" of the Complaint and refer all questions of law to the Court.

<u>FACTUAL BACKGROUND</u>

<u>BMTS Corporate Pedigree</u>

51.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "51" of the Complaint.

52.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "52" of the Complaint.

53.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "53" of the Complaint.

54.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "54" of the Complaint.

55.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "55" of the Complaint.

56.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "56" of the Complaint.

57.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "57 of the Complaint.

58.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "58" of the Complaint.

59.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "59" of the Complaint.

60.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "60" of the Complaint.

61.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "61" of the Complaint.

62.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "62" of the Complaint.

63.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "63" of the Complaint.

64.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "64" of the Complaint.

<u>Certain Defendants' Wrongful Pre-Purchase Representations</u>

A.    Individual Professional Backgrounds and Criminal History

65.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "65" of the Complaint.

66.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "66" of the Complaint.

67.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "67" of the Complaint.

68.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "68" of the Complaint.

69.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "69" of the Complaint.

70.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "70" of the Complaint.

71.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "71" of the Complaint.

72.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "72" of the Complaint.

73.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "73" of the Complaint.

B.    BMTS Intellectual Property "Rights"

74.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "74" of the Complaint.

75.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "75" of the Complaint.

76.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "76" of the Complaint.

77.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "77" of the Complaint.

78.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "78" of the Complaint.

79.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "79" of the Complaint.

C.    Clinical Studies and Results

80.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "80" of the Complaint.

81.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "81" of the Complaint.

D.    BMTS Operating Income

82.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "82" of the Complaint.

83.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "83" of the Complaint.

84.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "84" of the Complaint.

85.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "85" of the Complaint.

E.    Loans Claimed from BMTS

86.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "86" of the Complaint.

87.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "87" of the Complaint.

88.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "88" of the Complaint.

F.    Use of Telephone and Wire Services

89.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "89" of the Complaint.

90.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "90" of the Complaint.

91.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "91" of the Complaint.

<u>Certain Defendants' Wrongful Post-Purchase Acts</u>

A.    Failure to Transfer, and Misuse of, Intellectual Property Rights

92.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "92" of the Complaint.

93.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "93" of the Complaint.

94.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "94" of the Complaint.

95.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "95" of the Complaint.

B.    Conversion of Transferred Purchase Monies

96.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "96" of the Complaint.

97.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "97" of the Complaint.

98.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "98" of the Complaint.

99.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "99" of the Complaint.

100.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "100" of the Complaint.

101.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "101" of the Complaint.

D.    Violation of Non-Competition Agreements

102.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "102" of the Complaint.

103.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "103" of the Complaint.

104.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "104" of the Complaint.

105.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "105" of the Complaint.

<u>VISCARDI</u>

106.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "106" of the Complaint.

107.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "107" of the Complaint.

108.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "108" of the Complaint.

109.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "109" of the Complaint.

110.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "110" of the Complaint.

111.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "111" of the Complaint.

112.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "112" of the Complaint.

113.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "113" of the Complaint.

114.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "114" of the Complaint.

115.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "115" of the Complaint.

116.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "116" of the Complaint.

117.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "117" of the Complaint.

118.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "118" of the Complaint.

Wollmuth

119.    Deny each and every allegation set forth in paragraph "119" of the Complaint, except admit that, at times, WOLLMUTH and DRAKE did provide certain legal services to plaintiff.

120.    Deny each and every allegation set forth in paragraph "120" of the Complaint, except admit that WOLLMUTH and DRAKE were attorneys licensed to practice law in New York, whose practice included corporate matters.

121.    Deny each and every allegation set forth in paragraph "121" of the Complaint, except admit that, at times, WOLLMUTH and DRAKE did provide certain legal services to plaintiff.

122.    Deny each and every allegation set forth in paragraph "122" of the Complaint, except admit that, at times, WOLLMUTH and DRAKE did provide certain legal services to plaintiff.

123.    Deny each and every allegation set forth in paragraph "123" of the Complaint.

124.    Deny each and every allegation set forth in paragraph "124" of the Complaint.

125.    Deny each and every allegation set forth in paragraph "125" of the Complaint, except admit that, at times, WOLLMUTH and DRAKE did provide certain legal services to plaintiff.

O'Donnell Defendants

126.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "126" of the Complaint.

127.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "127" of the Complaint.

128.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "128" of the Complaint.

129.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "129" of the Complaint.

130.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "130" of the Complaint.

131.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "131" of the Complaint.

132.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "132" of the Complaint.

133.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "133" of the Complaint.

134.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "134" of the Complaint.

135.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "135" of the Complaint.

136.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "136" of the Complaint.

137.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "137" of the Complaint.

138.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "138" of the Complaint.

139.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "139" of the Complaint.

<u>Markoll Defendants</u>

140.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "140" of the Complaint.

141.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "141" of the Complaint.

142.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "142" of the Complaint.

143.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "143" of the Complaint.

144.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "144" of the Complaint.

145.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "145" of the Complaint.

146.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "146" of the Complaint.

147.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "147" of the Complaint.

148.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "148" of the Complaint.

149.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "149" of the Complaint.

150.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "150" of the Complaint.

151.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "151" of the Complaint.

152.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "152" of the Complaint.

153.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "153" of the Complaint.

154.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "154" of the Complaint.

155.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "155" of the Complaint.

156.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "156" of the Complaint.

<u>Damages Resulting Directly From Purchase</u>

157.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "157" of the Complaint and respectfully refer the Court to the documents memorializing the transaction.

158.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "158" of the Complaint and respectfully refer the Court to the documents memorializing the transaction.

159.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "159" of the Complaint and respectfully refer the Court to the documents memorializing the transaction.

160.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "160" of the Complaint and respectfully refer the Court to the documents memorializing the transaction.

161.    Deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "161" of the Complaint and respectfully refer the Court to the documents memorializing the transaction.

**AS AND FOR AN ANSWER TO THE FIRST CAUSE OF ACTION**
<u>FOR COMMON LAW FRAUD</u>

162.    Repeat, reiterate and reallege each and every response to paragraphs "1" through "161", inclusive, of the Complaint in answer to paragraph "162" of the Complaint, with the same force and effect as if fully set forth herein.

163.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "163" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these

18

answering defendants deny each and every allegation set forth in paragraph "163" of the Complaint.

164.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "164" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "164" of the Complaint.

165.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "165" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "165" of the Complaint.

166.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "166" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "166" of the Complaint.

167.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "167" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "167" of the Complaint.

19

168.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "168" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "168" of the Complaint.

169.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "169" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "169" of the Complaint.

170.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "170" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "170" of the Complaint.

AS AND FOR AN ANSWER TO THE SECOND CAUSE OF ACTION
ALLEGING THE EXISTENCE OF A CRIMINAL ENTERPRISE
AND DAMAGE THEREFROM IN VIOLATION OF 18 U.S.C. §1962(c) and (d)

171.    Repeat, reiterate and reallege each and every response to paragraphs "1" through "170", inclusive, of the Complaint in answer to paragraph "171" of the Complaint, with the same force and effect as if fully set forth herein.

172.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "171" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these

20

answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "172" of the Complaint.

173.     These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "173" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "173" of the Complaint and refer all questions of law to the Court.

174.     These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "174" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "174" of the Complaint and refer all questions of law to the Court.

175.     These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "175" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "175" of the Complaint and refer all questions of law to the Court.

176.     These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "176" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these

21

answering defendants deny each and every allegation set forth in paragraph "176" of the Complaint.

177.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "177" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "177" of the Complaint and refer all questions of law to the Court.

178.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "178" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "178" of the Complaint and refer all questions of law to the Court.

179.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "179" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "179" of the Complaint and refer all questions of law to the Court.

180.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "180" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these

answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "180" of the Complaint and refer all questions of law to the Court.

181.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "181" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "181" of the Complaint.

182.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "182" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "182" of the Complaint.

183.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "183" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraph "183" of the Complaint.

184.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "184" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "184" of the Complaint.

185.     These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "185" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "185" of the Complaint and refer all questions of law to the Court.

### AS AND FOR AN ANSWER TO THE THIRD CAUSE OF ACTION
### FOR CONVERSION

186.     Repeat, reiterate and reallege each and every response to paragraphs "1" through "185", inclusive, of the Complaint in answer to paragraph "186" of the Complaint, with the same force and effect as if fully set forth herein.

187.     These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "187" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "187" of the Complaint.

188.     These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "188" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "188" of the Complaint.

189.     These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "189" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these

answering defendants deny knowledge or information sufficient to form a belief as to the

truth of each and every allegation set forth in paragraph "189" of the Complaint.

AS AND FOR AN ANSWER TO THE FOURTH CAUSE OF ACTION<br>FOR BREACH OF CONTRACT

190.    Repeat, reiterate and reallege each and every response to

paragraphs "1" through "189", inclusive, of the Complaint in answer to paragraph "190"

of the Complaint, with the same force and effect as if fully set forth herein.

191.    These answering defendants neither admit nor deny the truth of the

allegations contained in paragraph "191" because the allegations do not make any claims

against WOLLMUTH and DRAKE.  To the extent a response is required, these

answering defendants deny knowledge or information sufficient to form a belief as to the

truth of each and every allegation set forth in paragraph "191" of the Complaint.

192.    These answering defendants neither admit nor deny the truth of the

allegations contained in paragraph "192" because the allegations do not make any claims

against WOLLMUTH and DRAKE.  To the extent a response is required, these

answering defendants deny knowledge or information sufficient to form a belief as to the

truth of each and every allegation set forth in paragraph "192" of the Complaint.

193.    These answering defendants neither admit nor deny the truth of the

allegations contained in paragraph "193" because the allegations do not make any claims

against WOLLMUTH and DRAKE.  To the extent a response is required, these

answering defendants deny knowledge or information sufficient to form a belief as to the

truth of each and every allegation set forth in paragraph "193" of the Complaint.

194.    These answering defendants neither admit nor deny the truth of the

allegations contained in paragraph "194" because the allegations do not make any claims

against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "194" of the Complaint.

### AS AND FOR AN ANSWER TO THE FIFTH CAUSE OF ACTION
### FOR PROFESSIONAL MALPRACTICE

195.    Repeat, reiterate and reallege each and every response to paragraphs "1" through "194", inclusive, of the Complaint in answer to paragraph "195" of the Complaint, with the same force and effect as if fully set forth herein.

196.    Deny each and every allegation set forth in paragraph "196" of the Complaint.

197.    Deny each and every allegation set forth in paragraph "197" of the Complaint.

198.    Deny each and every allegation set forth in paragraph "198" of the Complaint.

199.    Deny each and every allegation set forth in paragraph "199" of the Complaint.

200.    Deny each and every allegation set forth in paragraph "200" of the Complaint.

201.    Deny each and every allegation set forth in paragraph "201" of the Complaint.

202.    Deny each and every allegation set forth in paragraph "202" of the Complaint.

AS AND FOR AN ANSWER TO THE SIXTH CAUSE OF ACTION
FOR LIABILITY BASED ON VIOLATION OF 15 U.S.C. §78(J)

203.    Repeat, reiterate and reallege each and every response to

paragraphs "1" through "202", inclusive, of the Complaint in answer to paragraph "203"

of the Complaint, with the same force and effect as if fully set forth herein.

204.    These answering defendants neither admit nor deny the truth of the

allegations contained in paragraph "204" because the allegations do not make any claims

against WOLLMUTH and DRAKE.  To the extent a response is required, these

answering defendants deny knowledge or information sufficient to form a belief as to the

truth of each and every allegation set forth in paragraph "204" of the Complaint and refer

all questions of law to the Court.

205.    These answering defendants neither admit nor deny the truth of the

allegations contained in paragraph "205" because the allegations do not make any claims

against WOLLMUTH and DRAKE.  To the extent a response is required, these

answering defendants deny knowledge or information sufficient to form a belief as to the

truth of each and every allegation set forth in paragraph "205" of the Complaint.

206.    These answering defendants neither admit nor deny the truth of the

allegations contained in paragraph "206" because the allegations do not make any claims

against WOLLMUTH and DRAKE.  To the extent a response is required, these

answering defendants deny knowledge or information sufficient to form a belief as to the

truth of each and every allegation set forth in paragraph "206" of the Complaint and refer

all questions of law to the Court.

207.    These answering defendants neither admit nor deny the truth of the

allegations contained in paragraph "207" because the allegations do not make any claims

27

against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "207" of the Complaint.

208.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "208" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "208" of the Complaint and refer all questions of law to the Court.

209.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "209" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "209" of the Complaint.

### AS AND FOR A SEVENTH CAUSE OF ACTION FOR
### LIABILITY BASED ON VIOLATION OF 15 U.S.C. §77(1)

210.    Repeat, reiterate and reallege each and every response to paragraphs "1" through "209", inclusive, of the Complaint in answer to paragraph "210" of the Complaint, with the same force and effect as if fully set forth herein.

211.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "211" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraph "211" of the Complaint and refer all questions of law to the Court.

28

212.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "212" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraph "212" of the Complaint and refer all questions of law to the Court.

213.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "213" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraph "213" of the Complaint.

214.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "214" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraph "214" of the Complaint.

215.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "215" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraph "215" of the Complaint.

216.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "216" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these

answering defendants deny each and every allegation set forth in paragraph "216" of the Complaint and refer all questions of law to the Court.

217.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "217" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "217" of the Complaint.

218.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "218" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraph "218" of the Complaint.

AS AND FOR AN ANSWER TO THE EIGHTH CAUSE OF ACTION
FOR COMMON LAW NEGLIGENCE

219.    Repeat, reiterate and reallege each and every response to paragraphs "1" through "218", inclusive, of the Complaint in answer to paragraph "219" of the Complaint, with the same force and effect as if fully set forth herein.

220.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "220" because the allegations do not make any claims against WOLLMUTH and DRAKE.  To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraph "220" of the Complaint and refer all questions of law to the Court.

221.    These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "221" because the allegations do not make any claims

against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraphs "221" of the Complaint.

222.   These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "222" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraphs "222" of the Complaint.

223.   These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "223" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny each and every allegation set forth in paragraphs "223" of the Complaint.

224.   These answering defendants neither admit nor deny the truth of the allegations contained in paragraph "224" because the allegations do not make any claims against WOLLMUTH and DRAKE. To the extent a response is required, these answering defendants deny knowledge or information sufficient to form a belief as to the truth of each and every allegation set forth in paragraphs "224" of the Complaint.

### AS AND FOR A FIRST DEFENSE

225.    This Court lacks subject matter jurisdiction over this matter, and as a result, this Court should not exercise supplemental jurisdiction over the claims asserted against these answering defendants.

### AS AND FOR A SECOND DEFENSE

226.    At the time that these answering defendants were contacted in connection with DURAVEST's proposed acquisition of BMTS, a Subscription Agreement that outlined the key terms of the acquisition had already been prepared by others.

### AS AND FOR A THIRD DEFENSE

227.    At the time these answering defendants were first substantively contacted in connection with DURAVEST's proposed acquisition of BMTS, a Subscription Agreement which outlined the key terms of the agreement, prepared by others, had been signed on November 25, 2005, by Ogan Gurel, M.D., on behalf of DURAVEST, and by RICHARD MARKOLL, M.D., on behalf of BMTS.

### AS AND FOR A FOURTH DEFENSE

228.    Prior to the signing of the Subscription Agreement, due diligence regarding the transaction and an analysis of the transaction, had been completed by others.

### AS AND FOR A FIFTH DEFENSE

229.    Paragraph 4 of the signed Subscription Agreement is entitled "Representations," and includes representations and warranties of Subscriber DURAVEST with regard to its independent investigation and analysis of the investment

32

in BMTS.  Paragraph 4(a) of the signed Subscription Agreement is entitled "Analysis of

Investment".  Those sections, together, state as follows:

> "4.      Representations

> In connection with the Subscriber's subscription for Shares and becoming a holder of Shares, the Subscriber hereby represents, warrants, acknowledges, covenants and agrees as follows:

>> a.     Analysis of Investment.  The undersigned has (i) analyzed and reviewed the investment, and (ii) had an opportunity to ask questions of and receive answers from BMTS officers and directors concerning subscription, and to obtain any additional information which BMTS possesses or can acquire that is necessary to verify the accuracy of the information furnished.  In particular, the Subscriber acknowledges and agrees that the. Subscriber has been given access to, or has been furnished with, all material books and records of BMTS and all material contracts and documents. All questions have been answered, and all additional information has been provided, all to the full satisfaction of the undersigned."

In addition, paragraph 4(i) of the Subscription Agreement, entitled "Risk

of Loss," contains the following representation and warranty of plaintiff Subscriber

DURAVEST:

> "The Subscriber recognizes that an investment in the Shares is highly speculative and involves a substantial risk of loss of the entire investment, and involves significant and material risks."

<u>AS AND FOR A SIXTH DEFENSE</u>

230.      Based on the representation in the Subscription Agreement, set

forth in the immediately preceding affirmative defense, these answering defendants were

justified in relying on those Representations, e.g., that due diligence had been performed

by others, prior to the execution of the Subscription Agreement.

33

<u>AS AND FOR A SEVENTH DEFENSE</u>

231.    These answering defendants also had been advised by and had

relied upon statements made by Ogan Gurel of DURAVEST that due diligence has been

completed by VISCARDI.

<u>AS AND FOR AN EIGHTH DEFENSE</u>

232.    After review of the signed subscription agreement, which

contained no representations from BMTS to DURAVEST, DRAKE counseled

DURAVEST to secure Representations and Warranties from BMTS.  In furtherance of

that counsel, DRAKE forwarded an e-mail to Martin Schaffer, Esq. of the law firm of

Shulman, Rogers, Gandal, Pordy and Ecker, P.A., counsel for BMTS, requesting

Representations and Warranties to DURAVEST.  That e-mail, dated November 28, 2005,

3:40 p.m. (CST), provided the following:

> "Martin – I'm a lawyer representing Duravest and only just had a
> chance after the Thanksgiving holiday to review the Subscription
> Agreement in any detail.  From a due diligence perspective, it does
> not contain the usual reps and warranties I would expect from an
> issuer such as existence, authorization, no conflicts, capitalization,
> absence of litigation, financials, etc.  I do not propose making these
> onerous but I do think it necessary that we either amend the
> Subscription Agreement to contain them or fashion a side letter to
> the Subscription Agreement.
>
> Please let me know if this is acceptable to you and I'll draft a set of
> the relevant provisions.
>
> Best regards,
>
> Max Drake"

<u>AS AND FOR A NINTH DEFENSE</u>

233.     Upon receipt of the e-mail, referred to in the immediately
preceding affirmative defense, counsel for BMTS responded by e-mail dated November
28, 2005 2:49 p.m. (EST).  The responding e-mail constitutes an admission that due
diligence for the proposed acquisition had been completed by the VISCARDI GROUP.
The e-mail provided:

> "Max,
>
> I did not include those reps or warranties because Viscardi Group
> had already undertaken that review.  Nonetheless, if you are
> suggesting some basic reps and it will help to move this transaction
> along, I am sure we can reach an agreement.  Please send me your
> proposal."

The foregoing reliance on VISCARDI by plaintiff DURAVEST with respect to the due
diligence analysis of BMTS was independently confirmed orally to DRAKE by Dr. Ogan
Gurel, CEO of DURAVEST, and certain legal due diligence due diligence documents of
BMTS being in the possession of and transmitted to DRAKE by VISCARDI and its in-
house lawyer.

<u>AS AND FOR A TENTH DEFENSE</u>

234.     When DURAVEST initially contacted WOLLMUTH and
DRAKE, DURAVEST directed that WOLLMUTH and DRAKE work solely to draft the
promissory notes necessary to provide for the financing of the proposed acquisition.  Said
promissory notes were prepared by DRAKE on November 28, 2005.

<u>AS AND FOR AN ELEVENTH DEFENSE</u>

235.     The defendants WOLLMUTH and DRAKE have not breached
any duty that they may have owed to plaintiff DURAVEST.

35

<u>AS AND FOR A TWELFTH DEFENSE</u>

236.    There were no actual or ascertainable damages sustained by plaintiff DURAVEST proximately caused by the conduct of the defendants WOLLMUTH and DRAKE.

<u>AS AND FOR A THIRTEENTH DEFENSE</u>

237.    Plaintiff DURAVEST is unable to establish that but for the alleged professional negligence of WOLLMUTH and DRAKE, it would not have sustained actual or ascertainable damages and/or that, the result would have been more favorable to it.

**<u>AS AND FOR A FOURTEENTH DEFENSE</u>**

238.    That if the accident, injuries and damages occurred as alleged by DURAVEST in its Complaint, said injuries and/or damages were, in whole or in part, attributable to the culpable conduct of DURAVEST including, but not limited to, negligence, carelessness, recklessness and/or assumption of risk.

239.    By reason of the foregoing, this answering defendants demand that any damages recovered or any judgment recovered by plaintiff against said defendants be reduced accordingly, pursuant to the common law and CPLR § 1411, in the proportion which the culpable conduct attributable to plaintiff bears to the culpable conduct, if any, of said defendant.

<u>AS AND FOR A FIFTEENTH DEFENSE</u>

240.    Plaintiff's Complaint fails to state a cause of action upon which relief may be granted against these answering defendants.

**<u>AS AND FOR A SIXTEENTH DEFENSE</u>**

36

Case 1:07-cv-10590-JSR     Document 15-3     Filed 02/11/2008     Page 38 of 43

241.    That, to the extent that the alleged damages and/or injuries of plaintiff, if any, were caused or contributed to, in whole or in part, by intervening and superseding causative factors, the claims of plaintiff against this answering defendants should be barred.

### AS AND FOR A SEVENTEENTH DEFENSE

242.    Pursuant to the limited liability provisions of § 1601 of the Civil Practice Law and Rules, these answering defendants' liability, if any, shall be limited to their respective equitable share of the total liability.

### AS AND FOR AN EIGHTEENTH DEFENSE

243.    If the plaintiff was damaged as alleged in its Complaint, which damages are expressly denied, then such damages were the result, in whole or in part, of the conduct of the plaintiff and/or others over whom the answering defendants exercised no influence or control and to the extent that the answering defendants may be liable to the plaintiff, such liability should be in proportion to the percentage that the answering defendants' conduct relates to the conduct of the plaintiff and/or others in causing the damage, and apportioned pursuant to Articles 14 and 16 of the CPLR.

### AS AND FOR A NINETEENTH DEFENSE

244.    Plaintiff DURAVEST has failed to take the necessary steps to mitigate their damages.

### AS AND FOR A TWENTIETH DEFENSE

245.    The damages which plaintiff claims to have sustained were not reasonably foreseeable to these answering defendants.

246.    These answering defendants reserve their rights to assert additional

defenses as they arise during this litigation.

## AS AND FOR A FIRST CROSS-CLAIM
### AGAINST VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL

247.    That if the plaintiff was caused to sustain injuries and/or damages at the time and place and in the manner set forth in the plaintiff's Complaint through any carelessness, recklessness, negligence, acts, omissions, and/or breaches of duty and/or warranty and/or contract and/or statute, other than the plaintiff's own negligence, carelessness, recklessness, or other culpable conduct, said damages were sustained by reason of the carelessness, recklessness, negligence and/or affirmative acts of omission and commission including, but not limited to, breach of contract, and/or warranty and/or statute by the co-defendants, VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL, their agents, servants and/or employees, without any negligence or other culpable conduct on the part of the answering defendant contributing thereto.

248.    That by reason of the foregoing, the answering defendants will not be liable to the plaintiff or the co-defendants in the event and in the amount of recovery herein by the plaintiff, and the answering defendants are entitled to indemnification from the co-defendants, VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL.

## AS AND FOR A SECOND CROSS-CLAIM
### AGAINST VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL

249.    That if the plaintiff was caused to sustain injuries and/or damages at the time and place and in the manner set forth in the plaintiff's Complaint through any carelessness, recklessness, negligence, acts, omissions, and/or breaches of duty and/or warranty and/or contract and/or statute, or other culpable conduct, other than the plaintiff's own negligence, carelessness, recklessness, or other culpable conduct, and if plaintiff should recover a verdict or judgment against the answering defendant, they will be damaged thereby, and such injuries or damages and verdict or judgment will have been brought about, cause and sustained by reason of the active and/or primary and/or affirmative carelessness, recklessness, negligence, culpable conduct and/or affirmative acts of omission and commission including, but not limited to, breach of contract, and/or warranty and/or statute and/or wrongdoing by the co-defendants, VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL, their agents, servants and/or employees, without any negligence on the part of the answering defendant contributing thereto or with the negligence, if any, on the part of the answering defendant, which is specifically denied, being merely passive, secondary and/or derivative in nature. By reason of the foregoing, the answering defendants are entitled to indemnification by said co-defendants, VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL.

250.    By reason of the foregoing, if plaintiff recovers any verdict or judgment against the answering defendants, the co-defendants, VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL, will be liable to the answering defendant under the doctrine of apportionment, contribution and/or indemnification for the full amount of any verdict and judgment, or for a proportionment share thereof, that plaintiff may recover against or from the answering defendant, including, but not limited to, the costs of investigation and attorneys' fees and disbursements incurred in the defense of this action and the prosecution of this cross-claim, and the answering defendant will not be liable to the co-defendants, VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL, in the event and in the amount of any recovery herein by the plaintiff.

WHEREFORE, the answering defendants, WOLLMUTH MAHER & DEUTSCH LLP and MASON H. DRAKE, ESQ., demand judgment dismissing the Complaint as to them, together with the costs and disbursements of this action, or, in the alternative, demand that the ultimate rights of the plaintiff, answering defendants, and co-defendants, VISCARDI, AG, BRUCE O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL, be determined in this action with regard to all claims, and cross-claims and that the answering defendants have judgment over and against the plaintiff, and the co-defendants, VISCARDI, AG, BRUCE O'DONNELL,

41

CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL CONSULTANT SL,

RICHARD MARKOLL and ERNESTINE BINDER MARKOLL, each of them, in the

proportion that each of their culpable conduct bears to the entire culpable conduct

involved in the occurrence, and have judgment over and against, and indemnity from the

plaintiff, DURAVEST, INC. and the co-defendants, VISCARDI, AG, BRUCE

O'DONNELL, CPA, BRUCE O'DONNELL, CPA/PFS, P.A. BIOMEDICAL

CONSULTANT SL, RICHARD MARKOLL and ERNESTINE BINDER MARKOLL,

together with the costs and disbursements of this action, and with such other relief as this

Court deems just and proper.

Dated: New York, New York
       February 1, 2008

> ABRAMS, GORELICK, FRIEDMAN &
> JACOBSON, P.C.
> Attorneys for Defendant
> Wollmuth Maher & Deutsch LLP
> and Mason H. Drake, Esq.
>
> By:_____
>       Barry Jacobs (BJ-0216)
> One Battery Park Plaza – 4th Floor
> New York, New York  10004
> (212) 422-1200