```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
DURAVEST, INC.,                           :
                                          :
              Plaintiff,                  :    07 Civ. 10590 (JSR)
                                          :
         -v-                              :    MEMORANDUM ORDER
                                          :
VISCARDI, A.G., WOLLMUTH MAHER &          :
DEUTSCH, LLP, MASON H. DRAKE, ESQ.,       :
BRUCE O'DONNELL, CPA, BRUCE O'DONNELL     :
CPA/PFS, P.A., BIOMEDICAL CONSULTANTS     :
SL, RICHARD MARKOLL, and ERNESTINE        :
BINDER MARKOLL,                           :
                                          :
              Defendants.                 :
---------------------------------------- x
```

JED S. RAKOFF, U.S.D.J.

In this action arising from the 2005 purchase by plaintiff Duravest, Inc. ("Duravest") of Bio-Magnetic Therapy Systems, Inc. ("BMTS"), Duravest asserts eight causes of action against eight defendants, two of which, Bruce O'Donnell, CPA, and his company, Bruce O'Donnell CPA/PFS, P.A. (together, the "O'Donnell defendants"), provided accounting services to BMTS. The O'Donnell defendants now move to dismiss the four claims in which they are named, to wit, Count One, which alleges common law fraud; Count Two, which alleges substantive violations and conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)-(d); Count Four, which alleges breach of contract; and Count Eight, which alleges common law negligence.

The allegations of the Complaint as they pertain to the O'Donnell defendants may be briefly summarized as follows. BMTS was a company that developed and sold biomedical products using "Pulsed

Signal Technology," to which defendant Richard Markoll owned the intellectual property rights. Complaint and Jury Demand ("Compl.") ¶¶ 52, 74. Starting in 2000, the O'Donnell defendants served as accountants for both Markoll and BMTS. Id. ¶¶ 126-27. Through a series of transactions between November 2005 and April 2006, Duravest purchased BMTS from Markoll, his wife (co-defendant Ernestine Binder Markoll), and a company they controlled called Biomedical Consultant SL (also a defendant). Id. ¶ 2. In so doing, Duravest relied on, inter alia, "restatements" of BMTS's 2003 and 2004 income, prepared by the O'Donnell defendants, that contained "material omissions and/or misrepresentations" that made the company appear profitable when it in fact was not. Id. ¶¶ 82-83, 136. The O'Donnell defendants "knew or should have known [the restatements] to be substantially or totally misleading and/or false." Id. ¶ 132. Following the purchase, moreover, the O'Donnell defendants revealed, for the first time, the existence of "loans" that BMTS owed to the Markolls. Id. ¶ 86.

     Construing these allegations most favorably to plaintiff, the Court first considers the only federal-law claim against the O'Donnell defendants, i.e., the RICO claim. The provision of RICO upon which plaintiff grounds its RICO claim against the O'Donnell defendants, 18 U.S.C. § 1962(c), makes it unlawful for someone employed by or associated with an enterprise "to conduct or participate, directly or indirectly, in the conduct of [the]

enterprise's affairs" through a pattern of racketeering activity.[1] In Reves v. Ernst & Young, 507 U.S. 170, 177 (1993), which likewise involved outside accountants, the Supreme Court held that liability under this section is limited to those who have at least "some part in directing the enterprise's affairs," id. at 178-79, through the "operation or management of the enterprise itself," id. at 185.

    Here, the Complaint does not clearly allege what the "enterprise" is; but the parties' papers treat it as being BMTS and the Court will assume as much.[2] Even given that assumption, however, the Complaint fails to allege any facts that remotely suggest that the O'Donnell defendants had a role in managing or operating the alleged RICO enterprise. The Complaint alleges only that O'Donnell, an outside accountant who had a close relationship with Markoll, issued financial restatements that he "knew or should have known to be substantially or totally misleading and/or false." Compl. ¶ 132. In Reves itself, accountant misconduct of this kind, and worse, was held insufficient to establish RICO liability under § 1962(c). See Reves, 507 U.S. at 173-75, 186; see also Arthur Young & Co. v. Reves, 937 F.2d 1310, 1317 (8th Cir. 1991). Although Duravest contended

---

[1] The conspiracy claim under § 1962(d) is likewise predicated on a conspiracy to violate § 1962(c).

[2] If the enterprise were anything other than BMTS, such as "a group of individuals associated in fact although not a legal entity," 18 U.S.C. § 1961, the Complaint would have to plead the basis for such an enterprise, see, e.g., United States v. Turkette, 452 U.S. 576, 580-93 (1981); First Capital Asset Mgmt. v. Satinwood, Inc., 385 F.3d 159, 173 (2d Cir. 2004), and would be deficient for failing to do so. No such allegations appear in the instant Complaint.

3

(for the first time) at oral argument that O'Donnell's participation here was different in nature than that of the accountants in Reves in that O'Donnell helped Markoll conceive of the scheme and was involved from its inception, the Complaint alleges no facts to support these contentions; indeed, the Complaint alleges no misconduct on the part of the O'Donnell defendants until May 2005, id. ¶¶ 82-88, 132-39.

Independently, the RICO claim against the O'Donnell defendants is deficient because it fails to allege a "pattern of racketeering activity." To establish a pattern of racketeering activity under RICO, a plaintiff must show (1) that the defendant committed at least two acts of racketeering activity in a 10 year period; (2) that the predicate acts of racketeering activity are related; and (3) that they amount to or pose a threat of continued criminal activity. Cofacredit, S.A. v. Windsor Plumbing Supply Co., 187 F.3d 229, 242 (2d Cir. 1999). "The continuity prong of a RICO pattern 'is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" United States v. Diaz, 176 F.3d 52, 93 (2d Cir. 1999) (citing H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 241 (1989)).

The allegations in the Complaint do not support either a closed-ended or an open-ended pattern of activity so far as the O'Donnell defendants are concerned. "Closed-ended continuity is demonstrated by predicate acts that amount to continued criminal activity, by a particular defendant. To satisfy closed-ended continuity, the plaintiff must prove a series of related predicates

4

extending over a substantial period of time." Cofacredit, 187 F.3d at 242. Since the Supreme Court clarified the standard for establishing a "pattern" under RICO in H.J. Inc., 492 U.S. 229, the Second Circuit "has never held a period of less than two years to constitute a substantial period of time." Cofacredit, 187 F.3d at 242. "Although we have not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity, particularly where '[t]he activities alleged involved only a handful of participants' and do not involve a 'complex, multi-faceted conspiracy.'" Spool v. World Child Int'l Adoption Agency, No. 06 Civ. 5698, 2008 U.S. App. LEXIS 5691, at *13-14 (2d Cir. March 18, 2008) (quoting GICC Capital Corp. v. Technology Fin. Group, 67 F.3d 463, 468 (2d Cir. 1995)).

Here, the primary wrongdoing that the Complaint alleges that the O'Donnell defendants committed is issuing false income restatements in May 2005, see Compl. ¶¶ 133-34, and false representations about those statements in November 2005, see Compl. ¶ 150, but there is also a suggestion of misconduct in the allegation that the O'Donnell defendants, in April 2006, for the first time revealed the existence of loans payable to the Markoll defendants, see Compl. ¶ 85. Thus, reading the Complaint liberally, the "pattern" of racketeering activity by the O'Donnell defendants (either by themselves or in conspiracy with others) extended, at most, from May 2005 to April 2006, a period of 13 months. As this period is far shorter than two years, and the alleged racketeering

5

activity "involved only a handful of participants" and did not involve a "complex, multi-faceted conspiracy," no closed-ended continuous period of racketeering activity has been pleaded. Spool, 2008 U.S. App. LEXIS 5691, at *14 (internal quotation marks omitted).

The Complaint similarly fails to allege an open-ended continuous pattern of racketeering activity. "To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." Cofacredit, 187 F.3d at 242. Since, as noted, the only plausible reading of the Complaint is that the enterprise was BMTS, there is no basis for the allegation that "[t]here is a substantial threat that the Enterprise's racketeering activities will continue," Compl. ¶ 182, since, as a result of the purchase, BMTS is now under the control of plaintiff itself.

Finally, the parties' papers make evident that plaintiff can not remotely cure the foregoing multiple deficiencies through a re-pleading. Accordingly, the RICO count against the O'Donnell defendants is dismissed with prejudice.

The Court turns to the three state-law claims against the O'Donnell defendants. Plainly, the breach of contract claim must be dismissed, as the complaint does not allege that either O'Donnell defendant was a party to any contract that was breached.[3] See

---

[3] Rather, Count Four of the Complaint focuses on the purchase contract between plaintiff and the Markolls, to which O'Donnell was not a party.

6

Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004) (stating that a viable claim for breach of contract under New York law requires, inter alia, the existence of an agreement).

This dismissal leaves only the claims for fraud and negligence. Although the O'Donnell defendants' cursory arguments for dismissal of these claims are unpersuasive, they go on to suggest that the Court decline to exercise supplemental jurisdiction over these state law claims if no federal claim against the O'Donnell defendants remains. However, as the O'Donnell defendants also suggest, at this stage it may be prudent to defer ruling on whether to exercise such supplemental jurisdiction over the O'Donnell defendants until after the Court has determined whether federal claims will proceed against any of the other defendants. The Court agrees with the latter suggestion.

In sum, the Court (a) grants the O'Donnell defendants' motion to dismiss Counts Two (RICO) and Four (breach of contract), with prejudice; (b) denies the O'Donnell defendants' motion to dismiss Counts One (fraud) and Eight (negligence) for failure to state a claim; and (c) defers ruling on the O'Donnell defendants' motion to dismiss Counts One and Eight for lack of appropriate supplemental jurisdiction.

SO ORDERED.

Dated: New York, NY
April 11, 2008

JED S. RAKOFF, U.S.D.J.