UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
DURAVEST, INC.,

                              Plaintiff,          **DECLARATION IN OPPOSITION
TO MOTIONS OF DEFENDANTS
VISCARDI, WMD, and DRAKE**

               -against-

VISCARDI, AG; WOLLMUTH MAHER & DEUTSCH, LLP;    Docket No.:  07-Civ-10590(JR)
MASON H. DRAKE, ESQ., BRUCE O'DONNELL, CPA,
BRUCE O'DONNELL CPA/PFS, P.A., BIOMEDICAL
CONSULTANT SL, RICHARD MARKOLL, and
ERNESTINE BINDER MARKOLL,

                           Defendants.
------------------------------------------------------------------------x

       LUIS F. RAS, an attorney duly admitted to practice law in the Courts of the

State of New York and the federal district court for the Southern District of New

York, states as follows under the penalties of perjury:

       1.      I am a member of the firm of RAS ASSOCIATES, PLLC, attorneys for

Plaintiff in the above captioned matter.

       2.      As counsel of record in this matter, I am familiar the facts and

circumstances of the claims.

       3.      This Declaration is submitted in Opposition to the Motion of

investment bank, deal broker, and financial promoter Defendant VISCARDI, A.G.

("VISCARDI"), and Defendants WOLLMUTH MAHER & DEUTSCH ("WMD") and

MASON DRAKE ("DRAKE").  VISCARDI's motion argues for dismissal of most of the

claims against it based on assertions that this Court lacks personal jurisdiction

over it, and based on the sufficiency of the Complaint.  WMD and DRAKE's

motion does not challenge the sufficiency of the Complaint, nor personal

jurisdiction, but rather ask this court to compartmentalize those claims against

them, which are inextricably ties to those against other Defendants, in State

1

Court.

4.      For the reasons set forth below, VISCARDI's motion must be denied in its entirety because it is subject to personal jurisdiction in this Court, and the claims asserted against it should be allowed to proceed through a full and fair discovery process.  Each aspect of VISCARDI's motion, and the reasons it must be denied, are discussed, *seriatim*, below.

**THIS COURT HAS PERSONAL JURISDICTION OVER VISCARDI**

**Summary**

5.      As discussed in further detail below, this Court **can** exercise general personal jurisdiction over VISCARDI pursuant to CPLR 301, since VISCARDI "transacts business" in New York.  As discussed below and in the accompanying Memorandum of Law, VISCARDI does business in New York by and through none other than its CEO Friedrich-Wilhelm Gobel, who maintains a permanent presence in the City and State of New York in the form of an office and telephone number just south of this courthouse.  Mr. Gobel's presence is not only clearly intended for the conduct of investment banking business to VISCARDI, but also conducted through a New York incorporated broker-dealer.  VISCARDI is also subject to personal jurisdiction in this matter pursuant to CPLR 302(a)(1) because it is undisputed that VISCARDI contracted to represent, market, and promote Bio-Magnetic Therapy Systems, INC. ("BMTS, INC.") for sale in the United States; and, as will be shown below, BMTS was a company that both conducted substantial business activities in the State of New York, and who had a majority of its shareholders that were New York domiciliaries.   Accordingly, at all times relevant herein:

- BMTS clearly transacted business in New York, and VISCARDI's brokering for sale and representation of such a company constitutes a New York business transaction;

- The claims against VISCARDI, because they involve VISCARDI's role in the improper promotion and sale of a company [ie. BMTS] with substantial business activities and a majority of its shareholders in New York [who improperly profited from the sale]; properly arise out of activity conducted in New York.

**VISCARDI and Its CEO Regularly Solicit**
**Business in New York**

6.    In what can only be described as a galling irony, and though VISCARDI has managed to avoid mentioning it in this litigation, VISCARDI's Chief Executive: Friedrich-Wilhelm Gobel, regularly conducts investment banking business in New York and maintains a New York address and telephone number right down the road from this courthouse, at 111 Broadway, New York, New York **(Exhibit "A")**!

7.    Far from being separate and distinct from his VISCARDI business, Mr. Gobel's investment "Team Leader" banking presence leverages his position with VISCARDI, as it appears clearly intended to help him find and recruit further deals for VISCARDI.  The web page with his biographical details **(Exhibit "A")** describing him as the "Team Leader:  Investment Banking" **includes a link to the VISCARDI corporate website**, and promotes VISCARDI itself.

8.    To add to the Gotham storyline, the New York business that VISCARDI's CEO uses to promote both himself and his firm – The Schubert Group, LLC, does business through a broker-dealer[1] that is also a New York corporation –

---

[1] See Exhibit A, page entitled "Capital  Markets" where The Schubert Group, LLC, describes that it transacts business through its "partner broker/dealer SGI, LLC."  This is a New York LLC formed in New York County that is headquartered out of the same office at 111 Broadway, New York, New York.

SGI, LLC – based out of the same office at 111 Broadway, New York, New York 10006 **(Exhibit "B")**.

9.     Equally absent from VISCARDI's papers, VISCARDI's Chief Executive Officer himself highlights his connections in New York in his VISCARDI biography **(Exhibit "C" hereto)**.   He indicates that he was a partner at Cowen & Company New York, and the Managing Director of Hypo Securities, Inc., New York. Perhaps this is why VISCARDI chose not to "support" their motion with his affidavit.

10.     VISCARDI also counts its co-founder and Managing Director, Ludwig Felber, who not coincidentally heads VISCARDI's health care and life sciences unit,[2] as someone with a New York pedigree.  He, along with Mr. Gobel, is described as having been "active …in New York." **(Exhibit "D")**

11.     Upon information and belief, VISCARDI learned of the within New York lawsuit only days after it was filed, and months before they were served in Germany, by advice from local counsel who appear to have had an existing established relationship with VISCARDI management, and were looking out for its interests.    This is hardly the presence of a German-only concern, and merits further scrutiny through testimony should the Court be inclined to do anything other than set aside VISCARDI's personal jurisdiction arguments outright.

**BMTS Had Substantial Business Activities in New York**

12.     Despite Ms. Thatig's "lack of knowledge" about BMTS' long history with business in New York, it is beyond question that BMTS was formed in Virginia in 1991 **(Exhibit "E" hereto)**, and almost immediately, while in its corporate

---

[2] We respectfully point out that the crux of this case involves the sale of BMTS, a biotechnology firm.

infancy in 1992 no more than seven months following its formation, began substantial operations in New York by registering to do business here **(Exhibit "E" hereto)** in the County of Suffolk.

13.     It is no coincidence that the BMTS New York business registration was in the County of Suffolk, since its principal customers hailed from there.  One month after BMTS registered to do business in Suffolk County, in June 1992, another Suffolk County based concern [now known to belong to customer/business associate Dr. Eugene Heller],[3] Magnetic Treatment Medical Services, P.C. **(Exhibit "F" hereto)**, was also formed as a New York corporation incorporated in the County of Suffolk, and based out of Huntington, Long Island. Thus, BMTS' presence and business in New York goes back as far as 1992.

14.     As confirmed in the annexed Affidavit of Duravest CEO Hendrik Hammje, VISCARDI CEO Goebel has significant history doing business in New York, and New York business contacts.  He also confirms that BMTS conducted significant business in New York, as demonstrated by the liabilities it is claimed to have incurred in New York, that have given rise to litigations in New York.  These liabilities – stemming from business in New York – have been claimed to be in excess of Seven Hundred Eighty Five Thousand Dollars ($785,000.00).

15.     As a result of its substantial business activities in New York, BMTS has been previously sued in New York, giving rise to liability claims which were fraudulently underreported at the time of Plaintiff's purchase of VISCARDI-represented BMTS.  These were stated to be in the amount of only $475,000.00 in a May 31, 2005 issued Financial Statement "compiled" by the O'DONNELL

---

[3] Mr. Heller is also believed to be a family relation of several of the BMTS shareholders.  See ¶ 17, *infra*.

Defendants **(Exhibit "G" hereto, footnote 12)**, and only one year later [following the Plaintiff's purchase of BMTS] said to be worth $650,000.00 **(Exhibit "H" hereto, footnote 12)**.

16.     VISCARDI was no doubt aware of the foregoing liability claims, and the New York business activities which gave rise to same, since it arranged for the exchange of the misleading and fraudulent financial documents with Plaintiff.   Indeed, BMTS still faces claims of liabilities associated with such business **(Exhibit "I" hereto).**

17.     Given such a strong New York connection, it comes as no surprise that BMTS, a closely held corporation, had no less than eighteen (18) New York domiciled shareholders at the time of purchase, as follows:

- John Hall, Charlotte Hall,
- Fred Ferri, June Ferri,
- Bruce Heller, Sheila Heller,
- Sheryl Heller,
- Harvey Hellering,
- Richard Joseph,
- Nancy Kennaugh,
- Jeffry Ordover,
- Stanley Sher, Helen Sher,
- Stanley Sokol, Judith Sokol,
- Michael Speigel,
- Dean Yep, and Winnie Yep.

See Share Subscription agreements attached as **Exhibit "J."**

18.    Indeed, the very purchase transaction that VISCARDI was charged with procuring was only accomplished by means of subscription agreements with these private individual shareholders, all domiciled in New York (share subscription agreements attached as **Exhibit "J" hereto**).

**By Representing BMTS, VISCARDI Agreed to Do Business in New York**

19.    By virtue of the foregoing, it stands to reason that VISCARDI was familiar with the financial situation, actual and prospective liabilities, adverse claims against, and earnings prospects of BMTS, as a company that VISCARDI "analyzed," "reported on," and which it recommended for purchase and marketed to third parties. Accordingly, Plaintiff respectfully submits that VISCARDI's representation of BMTS was a conscious decision to play a central role in a business sale transaction that clearly involved the New York market. This is the very definition of a purposeful activity that should fairly subject VISCARDI to personal jurisdiction in New York on a case that arises out of that transaction.

20.    VISCARDI concedes that it was under contract and agreed to market the entirety of BMTS' operations for sale to third parties from at least as far back as January of 2005 [Thatig Affidavit, 7]. Though Ms. Thatig carefully fails to mention same, VISCARDI has always been keenly aware throughout its relationship with BMTS, that BMTS had very significant operations in the United States and *was looking to expand them* through its numerous United States subsidiaries.

21.    While Ms. Thatig's Affidavit only vaguely [at ¶ 7] alludes to BMTS' mandate that VISCARDI "find a strategic partner to take over BMTS and roll out PST technology internationally," VISCARDI's own marketing reports for BMTS are

unwittingly far more straightforward in their description of BMTS as an international company with significant operations in the United States (See June 2005 Report attached as **Exhibit "C" to Hammje Affidavit**).  VISCARDI's 2005 Report describes BMTS as:

"*a leading German-US based medical technology enterprise*"

[Hammje Affidavit Exhibit "C", p. 2].  Thus, at the time of VISCARDI's involvement with BMTS, BMTS was not only "involved" in business in the United States, but also positioned as a company whose U.S.-based operations were arguably as significant as its German operations.

22.    The same VISCARDI report [**Exhibit "C" to Hammje Affidavit**] also prominently mentions an alleged United States Food and Drug Administration approval of certain BMTS processes.  Currently, VISCARDI's website promotes a report on American capital markets **(Exhibit "K")**.

**The VISCARDI-Brokered Deal Was Processed By New York Professionals**

23.    Not surprisingly, the VISCARDI-promoted and brokered deal itself was consummated with the questionable "help" and services of both a Certified Public Accountant who was licensed in New York [Defendant Bruce O'DONNELL], a law firm with offices in New York [Defendant Wollmuth, Maher & Deutsch], and a New York admitted attorney [Defendant MASON DRAKE].

**THE COMPLAINT PLEADS PROPER FEDERAL SECURITIES FRAUD, NEGLIGENCE, NEGLIGENT MISREPRESENTATION, AND COMMON LAW FRAUD CLAIMS AGAINST VISCARDI**

24.    As concerns the sufficiency of the Complaint as it has been plead, Defendant VISCARDI's within Motion must also be denied, as its contentions regarding the sufficiency of Plaintiff's Complaint and Jury Demand

("Complaint") are without merit.  Several of the arguments are more properly characterized as simple denials of the facts Plaintiff alleges, and such disputes should be left for another time in this litigation after a full and fair exchange of discovery.  The arguments of Plaintiff are set forth in the accompanying Memorandum of Law.

25.    The moving Defendants' overall contentions that the Complaint is in any way incomplete, non-specific, or insufficient are curious in that their motion papers demonstrate that they are aware of the crux of Plaintiff's claims against them. That they participated in the operation of a criminal enterprise by fraudulently issuing financial statements that they knew or should have known to be substantially and materially false [¶ 82-84, 126-139, 141, 142, 147-150, 163, 207].

26.    Curiously, VISCARDI's motion does not deny that they were marketing and promoting BMTS in the year 2005, when they issued the 'restated' financial statement for fiscal 2003.  Like the O'Donnell Defendants, VISCARDI does not comment on the financial statements previously submitted to this court which show BMTS to have been "profitable" only at the time Plaintiff was considering it for purchase.

27.    It is significant that VISCARDI is concededly an **investment banking firm** that was under contract to learn about, report on, promote, expand, and find "strategic partners" that could be buyers for BMTS.  See contract attached as Exhibit A" to Thatig Affidavit, and analysis report attached as **Exhibit "C"** to Hammje Affidavit.  This demonstrates that apart as part of procuring the sale of BMTS, VISCARDI was paid to get to know the company and its activities in detail.

28.    In sum, Plaintiff has set forth a *prima facie* case against Defendant

VISACRDI, which should be decided on its merits following proper exchange of discovery.  To the extent that arguments have been previously made and decided by this Court relative to the sufficiency of Plaintiff's claims sounding in common law negligence, fraud, and negligent misrepresentation, Plaintiff respectfully submits that these same types of arguments must again be rejected. With respect to the sufficiency of Plaintiff's pleading of claims sounding in the violation of the 1934 Securities Act §10(b), VISCARDI's quarrel with the pleadings is similarly unpersuasive.

29.    Plaintiff does not assert any breach of contract claim against Defendant VISCARDI.   It is also prepared to withdraw its RICO claim as against VISCARDI only, so as to more consistently proceed with the Securities Act claims against it.

30.    Defendants WMD and DRAKE's Motion, apparently based on their desire to avoid joint discovery with the other defendants and the rigors of the expected discovery timeline anticipated by this Court, should also be denied.  It is proper and fair for the claims against these defendants to be litigated together with Plaintiff's claims against the others, as the sufficiency and appropriateness of these Defendants' former legal representation of Plaintiff are inextricably intertwined with the claims against the other defendants.

31.    We respectfully refer the Court to the annexed Exhibits and Plaintiff's accompanying Memorandum of Law, which sets forth a more complete summary of relevant facts.  Defendants' Motions must otherwise be denied for the reasons set forth above, and in the Memorandum of Law.

WHEREFORE, Plaintiff respectfully requests that the Defendants' within

Motions be denied in their entirety, together with such other and further relief as

this Court may deem just and proper.

Dated:        White Plains, New York
              April 27, 2008


                                          ____s/LFR_____
                                          Luis F. Ras

# THE SCHUBERT GROUP, LLC.
### A GLOBAL MANAGEMENT FIRM



## MR. FRIEDRICH-WILHELM GÖBEL
## Team Leader: Investment Banking

Mr. Göbel is CEO and the Senior Partner of VISCARDI GROUP. He heads the financial advisory services and merchant banking operations of VISCARDI. Mr. Göbel supervises the development and execution of all transactions and investments on behalf of VISCARDI. Additionally, he is responsible for all relationships within the VISCARDI network, venture capital and private equity firms, banks and regulators.

Prior to VISCARDI, Mr. Göbel was a Managing Director of the US investment bank SG Cowen, one of the most successful specialized banks in the fields of technology and health care.

In 1997, Mr. Göbel prepared the opening of the German subsidiary in Munich, which he headed for two years. In the years 1996 – 1999 Mr. Göbel was responsible for many high profile German and US/German capital market transactions including transactions in the "location based entertainment industry". Before joining Cowen & Co., Mr. Göbel was responsible for the US investment banking activities of Bayerische Hypotheken- und Wechsel-Bank. During his tenure at Hypo Securities Inc., New York, the company successfully positioned itself in the US market.

From 1985 to 1993 Mr. Göbel held different positions within Bayerische Hypotheken- und Wechsel-Bank where he among other responsibilities was involved in many corporate and real estate financing transactions.

Mr. Göbel received his MBA from EAP – European School of Management, Paris-Oxford-Berlin, from which he graduated in 1987. He is a member of various advisory and supervisory boards of German and US technology and health care companies.

© 2007 The Schubert Group, LLC.

THE SCHUBERT GROUP, LLC.
A GLOBAL MANAGEMENT FIRM

Home | Contact



## Contact Us

**The Schubert Group, LLC.**
111 Broadway, 12th Floor
New York, NY 10006

Phone Number: (917) 338-0622

© 2007 The Schubert Group, LLC.

THE SCHUBERT GROUP, LLC.
A GLOBAL MANAGEMENT FIRM

Home | Contact



## Capital Markets

Through our partner broker/dealer, SGI LLC, The Schubert Group assists our clients in the area of capital raise, debt placement and other funding vehicles. With our help, companies are allowed to expand, grow and create unmatched products or services BEFORE having to expose themselves to the greater capital markets. This method can guarantee that our clients receive more favorable terms when it is time to raise capital.

**Political Activities>>**

© 2007 The Schubert Group, LLC.

# NYS Department of State
## Division of Corporations
# Entity Information

**Selected Entity Name:** SGI, LLC

### Selected Entity Status Information

**Current Entity Name:** SGI, LLC

**Initial DOS Filing Date:** MARCH 25, 1998

**County:** NEW YORK

**Jurisdiction:** NEW YORK

**Entity Type:** DOMESTIC LIMITED LIABILITY COMPANY

**Current Entity Status:** ACTIVE

### Selected Entity Address Information

**DOS Process** (Address to which DOS will mail process if accepted on behalf of the entity)

SGI, LLC

WALTER B. SCHUBERT, JR.

111 BROADWAY, 12TH FL

NEW YORK, NEW YORK, 10006

**Registered Agent**

NONE

**NOTE:** New York State does not issue organizational identification numbers.

Search Results    New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

VISCARDI - Viscardi, Viscardi AG, Munich, Corporate Finance, investment banking, research, financi...e, advisory, fairness opinion, private placement, capital markets, early stage, financ: Management

Case 1:07-cv-10590-JSR    Document 42-4    Filed 04/28/2008    Page 1 of 1





Home   **About VISCARDI**   Business Areas   Sectors   Transactions   Information Center   Career   Contact

Management

Banking

Research

Sales/Brokerage

Background

search



### Friedrich-Wilhelm Göbel

Chief Executive Officer

Friedrich-Wilhelm Göbel is the founder and Chief Executive Officer of VISCARDI AG. He is responsible for all client related activities, Research and Brokerage/Sales. Furthermore he is responsible for the strategic development of the VISCARDI Group.

Prior to starting VISCARDI Friedrich-Wilhelm Göbel was a Partner at Cowen & Company (later SG Cowen) New York. He was responsible for building the European Corporate Finance practice of Cowen & Company. Before joining Cowen & Company Friedrich-Wilhelm Göbel was the Managing Director of Hypo Securities Inc., New York, the US broker dealer of Bayerische Hypotheken - und Wechsel - Bank. Prior to building and running Hypo Securities he held several positions at Hypo Bank in Germany.

Mr. Göbel received his Diplôme des Grandes Ecoles from EAP – European School of Management, Paris-Oxford-Berlin, from which he graduated in 1987.

VISCARDI - Viscardi, Viscardi AG, Munich, Corporate Finance, investment banking, research, financi...side, advisory, fairness opinion, private placement, capital markets, early stage, financ: Banking

 

Home   **About VISCARDI**   Business Areas   Sectors   Transactions   Information Center   Career   Contact

Management

Banking

Research

Sales/Brokerage

Background

search



# Ludwig Felber

Managing Director

Mr. Felber is a co-founder and Managing Director of VISCARDI. He heads VISCARDI's Health Care/Life Sciences team specialising in mergers & acquisitions, private placements and IPO advisory within the following healthcare sectors: biotechnology, pharmaceuticals, medical technology and health care services.

Prior to VISCARDI, Mr. Felber headed SG Cowen's healthcare investment banking efforts in the German speaking countries as Vice President. Prior to SG Cowen, he was healthcare specialist of HYPO Bank's M&A subsidiary being active in Munich and New York. Previously, Mr. Felber worked for Lehman Brothers in Frankfurt and London as well as for investment banks in New York and Tokyo.

Mr. Felber studied Business Administration majoring in Law at the University of Oldenburg and received his MBA from Wake Forest University in the United States.

**Commonwealth
of Virginia**



**State
Corporation
Commission**

Enter

Signoff

Help

Print

```
WEB#734                           CIS                        04/
TCP00008   CISM0180        CORPORATE DATA INQUIRY             20:

    CORP ID:  0382065 - 1   STATUS: 10  TERM(AUTO AR/$)  STATUS DATE:
    CORP NAME:  Bio-Magnetic Therapy Systems, Inc.


DATE OF CERTIFICATE:  10/04/1991 PERIOD OF DURATION:          INDUSTRY
STATE OF INCORPORATION:  VA VIRGINIA        STOCK INDICATOR:  S STOCK
MERGER IND: S SURVIVOR          CONVERSION/DOMESTICATION IND:
GOOD STANDING IND: N TERM(AUTO AR   MONITOR INDICATOR:
CHARTER FEE:  2500.00  CASE NO:         CASE STATUS:  HEARING DTE:
  R/A NAME:  GREGORY D GRANT

    STREET:  1600 TYSONS BLVD STE 200                   AR RTN MA

        CITY:  MCLEAN              STATE : VA  ZIP: 22101
  R/A STATUS:  4  ATTORNEY         EFF. DATE:  09/01/05  LOC.: 129
ACCEPTED AR#: 206 74 1256  DATE: 10/18/06                  FAIRFAX
 CURRENT AR#: 206 74 1256  DATE: 10/18/06 STATUS: A  ASSESSMENT IND
YEAR     FEES     PENALTY   INTEREST    TAXES     BALANCE       TOTA
 07    1,700.00    170.00                         1,870.00
COMMAND:  [..................................................
```

NOTE: Function Key usage varies depending on the Application Screen.
For specifics, refer to <u>Function Key Documentation.</u>

# NYS Department of State
## Division of Corporations
# Entity Information

**Selected Entity Name:** BIO-MAGNETIC THERAPY SYSTEMS, INC.

### Selected Entity Status Information

**Current Entity Name:** BIO-MAGNETIC THERAPY SYSTEMS, INC.

**Initial DOS Filing Date:** MAY 01, 1992

**County:** SUFFOLK

**Jurisdiction:** VIRGINIA

**Entity Type:** FOREIGN BUSINESS CORPORATION

**Current Entity Status:** INACTIVE

### Selected Entity Address Information

**DOS Process** (Address to which DOS will mail process if accepted on behalf of the entity)

BIO-MAGNETIC THERAPY SYSTEMS, INC.

SUITES 13 AND 14

1200 CLINT MOORE ROAD

BOCA RATON, FLORIDA, 33487

**Registered Agent**

NONE

**NOTE:** New York State does not issue organizational identification numbers.

Search Results   New Search

Division of Corporations, State Records and UCC Home Page     NYS Department of State Home Page

# NYS Department of State
## Division of Corporations
# Entity Information

---

**Selected Entity Name:** MAGNETIC TREATMENT MEDICAL SERVICES, P.C.

### Selected Entity Status Information

**Current Entity Name:** MAGNETIC TREATMENT MEDICAL SERVICES, P.C.

**Initial DOS Filing Date:** JUNE 30, 1992

**County:** SUFFOLK

**Jurisdiction:** NEW YORK

**Entity Type:** DOMESTIC PROFESSIONAL CORPORATION

**Current Entity Status:** INACTIVE

### Selected Entity Address Information

**DOS Process** (Address to which DOS will mail process if accepted on behalf of the entity)

HUNTON & WILLIAMS

ATTN: ROBERT ACOSTA-LEWIS

200 PARK AVENUE, 43RD FLOOR

NEW YORK, NEW YORK, 10166-0136

**Registered Agent**

NONE

**NOTE:** New York State does not issue organizational identification numbers.

Search Results    New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

# BIO-MAGNETIC THERAPY SYSTEMS, INC.
## AND SUBSIDIARIES
## CONSOLIDATED FINANCIAL STATEMENTS
### DECEMBER 31, 2003 and 2004

|                                                      | Page |
|------------------------------------------------------|------|
| Accountants Compilation Report                       | 1    |
| Financial Statements                                 |      |
| Consolidated Balance Sheets                          | 2    |
| Consolidated Statements of Operations                | 3    |
| Consolidated Statements of Stockholders' (Deficit)   | 4    |
| Consolidated Statements of Cash Flows                | 5    |
| Notes to Consolidated Financial Statements           | 6-11 |

# BRUCE J. O'DONNELL, CPA/PFS, PA

*Certified Public Accountant*
*Personal Financial Specialist*

**MEMBER**
Florida Institute of
Certified Public Accountants
American Institute of
Certified Public Accountants

21301 Powerline Road
Suite #102
Boca Raton, Fl 33433-2309
(561) 883-1210
Fax (561) 883-1252
Email bod@cpapfs.net

**LICENSED**
In Florida
and New York

To the Board of Directors and
Stockholders of
Bio-Magnetic Therapy Systems, Inc.
And Subsidiaries

## ACCOUNTANTS REPORT

We have compiled the accompanying consolidated balance sheets of Bio-Magnetic Therapy Systems, Inc
and Subsidiaries as of December 31, 2003 and 2004 and the related consolidated statements of operations,
stockholders' (deficit) and cash flows for the years then ended, in accordance with Statements on
Standards for Accounting and Review Services issued by the American Institute of Certified Public
Accountants.

A compilation is limited to presenting, in the form of financial statements, information that is the
representation of management. We have not audited or reviewed the accompanying financial statements
and, accordingly, do not express an opinion or any other form of assurance on them.

B od  CPA, PA

Bruce J. O'Donnell, C.P.A., P.A.
May 31, 2005

Securities offered through Medallion Investment Services, Inc.*
Member NASD/SIPC (410) 544-8400
271 53rd Circle, Vero Beach, Fl 32968
Investment Advice offered through Medallion Advisory Services, LLC*
Registered Investment Advisor
*Wholly owned subsidiary of TMG Holding Company, Inc.
T/A The Medallion Group

# BIO-MAGNETIC THERAPY SYSTEMS, INC.
## CONSOLIDATED BALANCE SHEETS
### December 31, 2003 and 2004

| ASSETS | RESTATED 2003 | 2004 |
|---|---|---|
| **Current Assets** | | |
| Cash and cash equivalents (Note 2b) | $739,443 | $876,610 |
| Acounts Receivable net of allowance of $887,898 for 2003 and 2004 (Note 3, 15) | 878,544 | 952,695 |
| Inventories (Note 2c) | 343,646 | 612,559 |
| Prepaid and other assets | 18,130 | 1,427 |
| Total Current Assets | 1,979,763 | 2,443,291 |
| Property and Equipment (Note 4) | 114,411 | 102,590 |
| **Other Assets** | | |
| Other Receivables net of allowance of $328,155 for 2003 (Note 13) | 580,103 | 0 |
| Patents (Note 5) | 0 | 619,334 |
| Total Current Assets | 580,103 | 619,334 |
| TOTAL ASSETS | $2,674,277 | $3,165,215 |

## LIABILITIES AND STOCKHOLDERS' DEFICIT

| | 2003 | 2004 |
|---|---|---|
| **Current Liabilities** | | |
| Accounts payable and accrued expenses (Note 6, 12) | $1,755,037 | $1,557,208 |
| Deferred Compensation (Note 10) | 656,261 | 826,261 |
| Deferred revenue - current portion | 1,130 | 49,357 |
| Accrued Litigation Settlement - current portion (Note 12) | 34,000 | 0 |
| Notes payable - current portion (Note 7) | 1,685,000 | 695,870 |
| Total Current Liabilities | 4,131,428 | 3,128,696 |
| **Long-Term Liabilities** | | |
| Accrued Litigation Settlement (Note 12) | 475,000 | 475,000 |
| Total Long-Term Liabilities | 475,000 | 475,000 |
| **Stockholders' Deficit** | | |
| Common Stock, par value $.01, 15,000,000 shares authorized, 9,276,549 shares issued and outstanding for 2003 and 2004 | 92,765 | 92,765 |
| Paid in Capital | 6,965,207 | 6,965,207 |
| Accumulated Deficit | (9,076,425) | (7,733,041) |
| Foreign currency translation adjustment (Note 2h) | 86,302 | 236,588 |
| Total Stockholders' Deficit | (1,932,151) | (438,481) |
| TOTAL LIABILITIES AND STOCKHOLDERS' DEFICIT | $2,674,277 | $3,165,215 |

# BIO-MAGNETIC THERAPY SYSTEMS, INC.
## AND SUBSIDIARIES
### CONSOLIDATED STATEMENTS OF OPERATIONS
For theYears Ended December 31, 2003 and 2004

|  | RESTATED 2003 | 2004 |
|---|---|---|
| Revenue | $5,700,560 | $8,164,343 |
| Cost of Goods Sold | 261,938 | 1,085,521 |
| Gross Margin | 5,438,622 | 7,078,822 |
| Operating Expenses |  |  |
| Cost of Operations | 2,996,423 | 3,051,641 |
| Payroll and related items | 1,391,532 | 2,648,157 |
| Depreciation and Amortization (Notes 4, 5) | 36,040 | 90,927 |
| Total Operating Expenses | 4,423,995 | 5,790,725 |
| Other (Expenses)Income |  |  |
| Interest (Expense) | (132,738) | (144,210) |
| Interest Income | 1,383 | 1,805 |
| Other (Expenses) Income (Notes 2g, 13) | (263,418) | 197,692 |
| Total Other (Expenses)Income - Net | (394,773) | 55,287 |
| Net Income | 619,854 | 1,343,384 |
| Other Comprehensive Income |  |  |
| Foreign Currency Translation | 67,867 | 150,286 |
| Total Comprehensive Net Income | $687,721 | $1,493,670 |

# BIO-MAGNETIC THERAPY SYSTEMS, INC.
### AND SUBSIDIARIES
## CONSOLIDATED STATEMENTS OF STOCKHOLDERS' (DEFICIT)
### For the Years Ended December 31, 2003 and 2004

|  | Common Stock | Stock Subscription Receivable | Accumulated Deficit | Foreign Currency Translation Adjustment | Paid-In Capital | Total Stockholders (Deficit) |
|---|---|---|---|---|---|---|
| December 31, 2002 | $92,765 | $0 | ($9,696,279) | $18,435 | $6,965,207 | ($2,619,872) |
| Issuance of Stock | - | - | - | - | - | 0 |
| Net Income | - | - | 619,854 | - | - | 619,854 |
| Translation Adjustment | - | - | - | 67,867 | - | 67,867 |
| December 31, 2003 | 92,765 | 0 | (9,076,425) | 86,302 | 6,965,207 | (1,932,151) |
| Issuance of Stock | - | - | - | - | - | 0 |
| Net Income | - | - | 1,343,384 | - | - | 1,343,384 |
| Translation Adjustment | - | - | - | 150,286 | - | 150,286 |
| December 31, 2004 | $92,765 | $0 | ($7,733,041) | $236,588 | $6,965,207 | ($438,481) |

BIO-MAGNETIC THERAPY SYSTEMS, INC.
AND SUBSIDIARIES
CONSOLIDATED STATEMENTS OF CASH FLOWS
For theYears Ended December 31, 2003 and 2004

|  | RESTATED 2003 | 2004 |
|---|---|---|
| Cash flows from operating activities: |  |  |
| Net Income | $619,854 | $1,343,384 |
|  |  |  |
| Adjustments to reconcile net income |  |  |
| to cash provided by operating activities: |  |  |
| Depreciation | 36,040 | 90,927 |
| Changes in assets and liabilities: |  |  |
| (Increase)Decrease in accounts receivable | (779,236) | (74,151) |
| (Increase)Decrease in inventory | (167,507) | (268,913) |
| (Increase)Decrease in prepaid expenses | 15,107 | 16,703 |
| (Increase)Decrease in other receivable and other assets | (580,103) | (41,827) |
| (Increase)Decrease in property and equipment - write off of devices | 2,062,835 | 9,411 |
| Increase(Decrease) in accounts payable and accrued expenses | 839,622 | (231,829) |
| Increase(Decrease) in deferred compensation | 170,000 | 170,000 |
| Increase(Decrease) in deferred revenue | (1,812,630) | 48,227 |
|  |  |  |
| Total Adjustments | (215,872) | (281,452) |
|  |  |  |
| Net cash provided by operating activities | 403,982 | 1,061,932 |
|  |  |  |
| Cash flows (used for) provided by investing activities: |  |  |
| Capital expenditures | (107,284) | (85,921) |
|  |  |  |
| Net cash (used for) investing activities | (107,284) | (85,921) |
|  |  |  |
| Cash flows (used for) provided by financing activities: |  |  |
| Proceeds (payments) of notes payable | (58,320) | (989,130) |
|  |  |  |
| Net cash (used for) provided by investing activities | (58,320) | (989,130) |
|  |  |  |
| Effect of exchange rate changes on cash and cash equivalents | 67,867 | 150,286 |
|  |  |  |
| Net increase(decrease) in cash and cash equivalents | 306,245 | 137,167 |
|  |  |  |
| Cash and cash equivalents at beginning of year | 433,198 | 739,443 |
|  |  |  |
| Cash and cash equivalents at end of year | $739,443 | $876,610 |
|  |  |  |
| Supplemental disclosure of cash flow information: |  |  |
| Cash paid during the year for interest | $ 481 | $ 5,429 |

NOTE 1 – NATURE OF BUSINESS

BIO-MAGNETIC THERAPY SYSTEMS, INC. (the "Company" or "BMTS") is a Virginia corporation engaged in the development and production and commercialization of proprietary technology based on extremely low frequency magnetic field pulses to treat osteoarthritis, sports type injuries, and other degenerative joint and neurological disorders.

The Company owns a number of United States process patents in addition to other foreign patent that utilize pulse electromagnetic fields ("PEMF") to treat arthritis, sports-type injuries, and other degenerative joint and neurological disorders. #5,131,904 for the "Treatment of Arthritis with Magnetic Field Therapy and Apparatus; #5,387,176 for the "Treatment of acute Diseases as Caused by Sport-type Injuries of the Musculoskeletal System Excluding Fractures with Magnetic Field Therapy"; #5,453,073 for the "Apparatus for Treatment of Diseased Body Organs with Magnetic Field Therapy" ; #5,669,868 for the "Treatment of Wrinkled, Discolored of Aging skin with Magnetic Field Therapy"; #5,665,049 for the "Treatment of Acute Diseases as Caused by Sports-type Injuries of the Musculoskeletal System (excluding fractures) with magnetic Field Therapy" (even broader than #5,387,176); #5,842,966 for the "Treatment of Disease including Degenerative and Inflammatory Conditions of the Musculoskeletal System and...(Enhanced Coverage on Arthritis Treatment)"; #407/809 for "Design patent for treatment bed"; #6,119,631 for "Coil cabinet for treating animals with magnetic field therapy"; #6,048,302 for "New Periodontal device"; #6,524,233 for the "Electromagnetic Stimulation of Cartilage Tissue"; and #111 9393B1(issued by the European Patent Office) for the "Electromagnetic Stimulation of Cartilage Tissue". The Company also holds numerous other foreign patents in this field.

Further, the Company has been granted an exclusive worldwide, royalty-free license by Dr. Richard Markoll, the Company's chairman and the primary developer of these intended processes, to use, manufacture and lease the proprietary device used to administer PEMF in these processes. In addition, the Company has an option to acquire all technology rights from Dr. Markoll in return for certain royalty payments on these leases.

In 2004 the Company moved its US corporate office from Boca Raton, Florida to Germany where most of the Companies activity are centralized.

NOTE 2 – SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

## 2a) PRINCIPLES OF CONSOLIDATION
The financial statements include the accounts of Bio-Magnetic Therapy Systems, GmbH a wholly owned German subsidiary and its subsidiaries Signal Medizin Vertriebs, GmbH and PST SMV Italy, GmbH. All significant transactions and balances between the Companies and its subsidiaries have been eliminated in consolidation.

## 2b) CASH AND CASH EQUIVALENTS
Cash equivalents consist of short-term liquid investments, which are readily convertible into cash, and have maturities of three months or less

### 2c) INVENTORIES

Inventories consist of treatment devices and accessories assembled for leasing. The inventories are stated at the lower of cost or market. The cost is determined by specific identification method.

### 2d) REVENUES

The Company's revenue is derived from the lease of devices, sale of activation cards used by these devices, and maintenance fees for each device in operation.

### 2e) DEPRECIATION

Depreciation is provided on a straight-line method over the estimated useful lives of the related assets. Leasehold improvements are expensed over the period of the respective leases.

### 2f) AMORTIZATION

The cost of patent rights acquired is being amortized on the straight-line method over a 20-year period.

### 2g) DEFERRED EARNINGS

Prior to 2003, the Company's deferred earnings represent leases of the treatment devices to operating clinics throughout Germany. Under the terms of the lease arrangements, the Company leases the treatment devices for a period of three to five years. Ownership of the device remains with the Company. Proceeds from the financing of the devices are received in advance from the lessee and income associated with these leases is recognized over the lease term. During 2003 all deferred revenue was recognized and all related devices were written off and is included in other income. Due to new regulations, beginning in 2004 the Company reports all revenue immediately. The Company also transfers ownership of the component parts of the devices to the financing company for the period financed.

### 2h) INCOME TAXES

Effective October 1, 1992, the Company adopted Statement of Financial Standards (SFAS) N. 109, Accounting for income Taxes.

### 2i) FOREIGN CURRENCY TRANSLATION

Foreign currency balance sheet accounts are translated into United States dollars at the exchange rate in effect at year end. Income statement accounts are translated at the average rate of exchange in effect during the year. The resulting translation adjustments are recorded as a separate component of stockholders' equity.

### 2j) USE OF ESTIMATES

The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assents and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

2k) LONG-LIVED ASSETS

Long-lived assets are reviewed on an ongoing basis for impairment based on comparison of carrying value against undiscounted future cash flows. If an impairment is identified, the asset carrying amount is adjusted to fair value.

NOTE 3 – ACCOUNTS RECEIVABLE

Management believes that the accounts receivable from PST Holdings/International as of December 31, 2003 and 2004 are uncollectible, and an allowance for doubtful accounts of $887,898 was recorded.

NOTE 4 – PROPERTY AND EQUIPMENT

Property and equipment at cost consist of the following:

|  | 2003 | 2004 |
|---|---|---|
| Furniture and Equipment | $ 195,804 | $ 246,366 |
| Leasehold Improvements | 18,363 | 18,363 |
| Vehicles | 7,198 | -0- |
|  | 221,365 | 264,729 |
| Less: Accumulated Depreciation | (106,954) | (166,906) |
| Total Property and Equipment | $ 114,411 | $ 102,590 |

Depreciation expense was $36,040 and $88,331 for the years ended December 31, 2003 and 2004, respectively.

NOTE 5 – PATENTS

Patents at cost consist of the following:

| Patent Rights | $ -0- | $ 621,930 |
|---|---|---|
| Less: Accumulated Amortization | -0- | (2,596) |
| Total Property and Equipment | $ -0- | $ 619,334 |

Amortization expense was $0 and $2,596 for the years ended December 31, 2003 and 2004, respectively.

NOTE 6 – INVESTMENT IN UNCONSOLIDATED SUBSIDIARY

In 1996, the Company acquired a 22% interest in PST Holdings(PST) in exchange for the granting of a distribution Agreement/Franchise Rights for the promotion, use and sale of the device developed by the Company used to treat arthritis and sports type injuries. This franchise

right was valued at $3 million by PST Holdings and is amortized over a 20 year period. PST owns approximately 10.8% of the outstanding shares of the Company. Due to the related party nature of this transaction, the share of earnings and losses from date of acquisition adjusted for related amortization taken by PST is recognized by the Company. However, the Company has discontinued using this equity method to account for its investment in PST since the investment was at zero value as of December 31, 2003 and 2004, respectively.

In June 2002, PST investors made loans to PST in order that PST could pay down amounts owed under its franchise agreement to the Company. In return, the Company guaranteed certain PST investors repayment of their loan if PST defaulted. Debt assumed by the Company on behalf of PST was due to the Company in full on October 1, 2003 but was never received. The Company has accrued $521,115 and $498,006 as a liability for these loans as of December 31, 2003 and 2004 respectively.

On March 27, 2003 BMTS and PST entered into an agreement that modified the distribution and licensing agreement by restricting the PST territory to France, Italy, Switzerland, Portugal and Spain. As a result, BMTS, GmbH assumed certain activities of PST relating to the operations in Germany and Austria effective April 1, 2003. Those territories, aforesaid, were on an exclusive basis to PST, however, all other countries including Germany and Austria were removed from the original agreement. The term was reduced to one year with one year extensions only if PST achieved certain minimum performance standards. On January 1, 2004, PST did not fulfill its agreement and all territories reverted back to the BMTS, GmbH.

NOTE 7 – NOTES PAYABLE

| Notes Payable consists of: | 2003 | 2004 |
|---|---|---|
| Note Payable, currently due with all unpaid interest payable at 8%. The Note is convertible into shares of the authorized but unissued Class A Common Stock. The Note is collateralized by certain patents and other intellectual property of the Company. | $ 100,000 | $ 100,000 |
| Note Payable, currently due with all unpaid interest payable at 8%. The Note is convertible into shares of the authorized but unissued Class A Common Stock. The Note is collateralized by certain patents and other intellectual property of the Company. | 50,000 | -0- |
| Notes payable, due upon demand with all unpaid Interest payable at 8% and is Collateralized by all assets of the Company. | 1,535,000 | 595,870 |
| Total Notes Payable | 1,685,000 | 695,870 |
| Less Current Portion | (1,685,000) | (695,870) |
| Total Long-Term Debt | $ -0- | $ -0- |

BIO-MAGENTIC THERAPY SYSTEMS, INC. AND SUBSIDIARIES
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
DECEMBER 31, 2003 AND 2004

Case 1:07-cv-10590-JSR   Document 42-8   Filed 04/28/2008   Page 12 of 13

## NOTE 8 – STOCK OPTION PLANS

On September 30, 1994, the company established a non-qualified stock option plan. The plan was amended and restated on January 31, 1996 and again on May 21, 1997 to authorize the issuance of options to purchase up to 3,175,077 shares of common stock, subject to certain anti-

dilution requirements. Any option issued entitles the holder to purchase the shares of Class A common stock subject to the option at a purchase price of $1.85 per share. On April 8, 1997, the Company established the 1997 stock option plan. The 1997 stock option plan established the issuance of options to purchase up to 700,000 shares subject to certain dilution requirements. Options have been issued for the purchase of 3,285,635 shares as of December 31, 2003 and 2004. A total of 2,196,135 and 2,754,944 options have expired as of December 31, 2003 and 2004 respectively and 1,191 options have been exercised.

## NOTE 9 – OPERATING LEASE

The Company leases office space, warehouse space, and equipment under operating leases that expire through 2008. Annual rent expense under these operating leases amounted to $163,424 and $529,297 for the years ended December 31, 2003 and 2004, respectively.

At December 31, 2004, the future minimum lease payments approximated the following:

| | |
|---|---|
| 2005 | $556,034 |
| 2006 | 481,443 |
| 2007 | 375,674 |
| 2008 | 259,500 |
| 2009 | 82 |
| Total future minimum lease payments | $ 1,672,733 |

## NOTE 10 – DEFERRED COMPENSATION

The Company entered into an employment agreement with its chairman, which requires a minimum annual salary $250,000 for each of the years ended December 31, 2003 and 2004. The salary is payable $150,000 on an annualized bases and $100,000 payable at the discretion of the Company's board of directors. The Company has also deferred salary agreement with another officer in the amount of $20,000 annually. Any salary amounts not paid in the year earned, shall be carried forward to subsequent years and must be paid by the termination date of the agreement. Bonus amounts not paid in the current year are also carried forward. These unpaid obligations are recorded as deferred compensation. As of December 31, 2003 and 2004 deferred compensation was $656,261 and $826,261 respectively

NOTE 11 – INCOME TAXES

As of December 31, 2003 and 2004 the Company had net operating loss carryforwards available to offset future taxable income of approximately $6,300,000 and $3,900,000, respectively. These carryforwards begin to expire in 2011. Due to the uncertainty of the future utilization of these net operating losses, no deferred tax assets have been recorded.

NOTE 12 – LITIGATION SETTELEMENTS

In 2001, Eugene Heller, Magnetic Treatment Medical Services, P. C. and Magnetic Treatment Center, P.C. filed a lawsuit against the Company and Dr. Richard Markoll for monetary damages incurred as a result of the investigation by the United States Attorney's office for the District of Connecticut in regards to a possible Medicare/Medicaid violation. The Company has recorded $475,000 as an accrued liability to settle this matter.

In 2002 the Company settled a claim with a former clinic physician and agreed to pay a total of $62,000 in eight monthly payments beginning in October 2003. The unpaid balance of this claim was $34,000 and $0 as of December 31, 2003 and 2004 respectively.

NOTE 13 – RELATED PARTY RECEIVABLES

The Company has receivables due, for overhead charges, funds advanced, and sale of chipcards from Tinnitus Signal Medizin GmbH, Institute for Innovative Medizin GmbH (INFINOMED), and Innovatis EV in the amounts of 973,182 and $210,256 as of December 31, 2003 and 2004 respectively. An allowance for doubtful accounts of $393,079 and $210,256 was recorded as of December 31, 2003 and 2004 respectively.

The patents and trademarks developed by Tinnitus Signal Medizin, GmbH were transferred to BMTS, GmbH in 2004 for a purchase price of $621,930. The purchase price was calculated using the outstanding amounts due for overhead charges and funds advanced. Shareholders owning a substantial portion of the outstanding stock of the Company controlled this company until the end of 2004. All the shares of Tinnitus Signal Medizin, GmbH and Institute for Innovative Medizin, GmbH (INFINOMED) were transferred to BMTS, GmbH in 2005.

NOTE 14 – RESTATEMENT

An error resulting in the understatement of previously reported income for the year ended December 31, 2003 was discovered and accordingly, the accompanying 2003 financial statements have been restated to correct this error.

NOTE 15 – SUBSEQUENT EVENTS

Management believes that they will be successful in acquiring a portion of the 1,003,333 shares of BMTS, Inc. stock that PST holds in satisfaction of amounts owed. (See notes 3 and 6)

BIO-MAGNETIC THERAPY SYSTEMS, INC.
AND SUBSIDIARIES
CONSOLIDATED FINANCIAL STATEMENTS
DECEMBER 31, 2005

# BRUCE J. O'DONNELL, CPA/PFS, PA

*Certified Public Accountant*
*Personal Financial Specialist*

**MEMBER**
Florida Institute of
Certified Public Accountants
American Institute of
Certified Public Accountants

21301 Powerline Road
Suite #102
Boca Raton, Fl 33433-2309
(561) 883-1210
Fax (561) 883-1252
Email bod@cpapfs.net

**LICENSED**
In Florida
and New Yor

To the Board of Directors and
Stockholders of
Bio-Magnetic Therapy Systems, Inc.
And Subsidiaries

## ACCOUNTANTS REPORT

We have compiled the accompanying consolidated balance sheet of Bio-Magnetic Therapy Systems, Inc
and Subsidiaries as of December 31, 2005 and the related consolidated statements of operations,
stockholders' equity and cash flows for the year then ended, in accordance with Statements on Standards
for Accounting and Review Services issued by the American Institute of Certified Public Accountants.

A compilation is limited to presenting, in the form of financial statements, information that is the
representation of management. We have not audited or reviewed the accompanying financial statements
and, accordingly, do not express an opinion or any other form of assurance on them.

*[signature]* C.P.A., C.A.

Bruce J. O'Donnell, C.P.A., P.A.
April 25, 2006

Securities offered through Medallion Investment Services, Inc.*
Member NASD/SIPC (410) 544-8400
271 53rd Circle, Vero Beach, Fl 32968
Investment Advice offered through Medallion Advisory Services, LLC*
Registered Investment Advisor
*Wholly owned subsidiary of TMG Holding Company, Inc.
T/A The Medallion Group

# BIO-MAGNETIC THERAPY SYSTEMS, INC.
## AND SUBSIDIARIES
## CONSOLIDATED BALANCE SHEETS
### December 31, 2005

## ASSETS

| | |
|---|---:|
| **Current Assets** | |
| Cash and cash equivalents (Note 2b) | $743,367 |
| Acounts Receivable net of allowance of $0 (Note 3) | 1,000,500 |
| Inventories (Note 2c) | 412,765 |
| Prepaid and other assets | 225,633 |
| Total Current Assets | 2,382,265 |
| Property and Equipment (Note 4) | 116,245 |
| **Other Assets** | |
| Intangible assets (Note 5) | 2,088,199 |
| Total Other Assets | 2,088,199 |
| TOTAL ASSETS | $4,586,709 |

## LIABILITIES AND STOCKHOLDERS' EQUITY

| | |
|---|---:|
| **Current Liabilities** | |
| Accounts payable and accrued expenses (Note 6, 12) | $2,016,326 |
| Deferred Compensation (Note 10) | 970,000 |
| Deferred revenue - current portion | 76,718 |
| Notes payable - current portion (Note 7) | 195,917 |
| Total Current Liabilities | 3,258,961 |
| **Long-Term Liabilities** | |
| Accrued Litigation Settlement (Note 12) | 650,000 |
| **Stockholders' Equity** | |
| Common Stock, par value $.01, 25,000,000 shares authorized, | |
| 14,976,549 shares issued and outstanding. Preferred Stock, no par value, | 149,765 |
| 5,000,000 shares authorized, none outstanding | |
| Paid in Capital | 8,332,207 |
| Accumulated Deficit | (7,762,316) |
| Foreign currency translation adjustment (Note 2i) | (41,908) |
| Total Stockholders' Equity | 677,748 |
| TOTAL LIABILITIES AND STOCKHOLDERS' EQUITY | $4,586,709 |

See Accompanying Notes and Accountant's Report

2

# BIO-MAGNETIC THERAPY SYSTEMS, INC.
## AND SUBSIDIARIES
## CONSOLIDATED STATEMENTS OF OPERATIONS
### For the Year Ended December 31, 2005

| | |
|---|---:|
| Revenue | $6,511,284 |
| Cost of Goods Sold | 720,163 |
| Gross Margin | 5,791,121 |
| Operating Expenses | |
| Cost of Operations | 3,189,562 |
| Payroll and related items | 2,280,988 |
| Depreciation and Amortization (Notes 4, 5) | 106,432 |
| Total Operating Expenses | 5,576,982 |
| Other (Expenses)Income | |
| Interest (Expense) | (148,070) |
| Interest Income | 1,310 |
| Other (Expenses) Income (Notes 6, 12) | (340,773) |
| Total Other (Expenses)Income - Net | (487,533) |
| Net Loss | (273,394) |
| Other Comprehensive Loss | |
| Foreign Currency Translation | (278,496) |
| Total Comprehensive Net Loss | ($551,890) |

See Accompanying Notes and Accountant's Report

# BIO-MAGNETIC THERAPY SYSTEMS, INC. AND SUBSIDIARIES
## CONSOLIDATED STATEMENTS OF STOCKHOLDERS' EQUITY
### For the Year Ended December 31, 2005

| | Common Stock | Accumulated Deficit | Foreign Currency Translation Adjustment | Paid-In Capital | Total Stockholders' Equity(Deficit) |
|---|---|---|---|---|---|
| December 31, 2004 | $92,765 | ($7,733,041) | $236,588 | $6,965,207 | (438,481) |
| Adj for subsidaries acquired | - | 244,119 | - | - | 244,119 |
| Issuance of Stock | 57,000 | - | - | 1,367,000 | 1,424,000 |
| Net Loss | - | (273,394) | - | - | (273,394) |
| Translation Adjustment | - | - | (278,496) | - | (278,496) |
| December 31, 2005 | $149,765 | ($7,762,316) | ($41,908) | $8,332,207 | $677,748 |

# BIO-MAGNETIC THERAPY SYSTEMS, INC.
## AND SUBSIDIARIES
## CONSOLIDATED STATEMENTS OF CASH FLOWS
### For the Year Ended December 31, 2005

| | |
|---|---:|
| **Cash flows from operating activities:** | |
| Net Income | ($273,394) |
| | |
| Adjustments to reconcile net income | |
| to cash provided by operating activities: | |
| Depreciation and Amortization | 106,432 |
| Changes in assets and liabilities: | |
| (Increase)Decrease in accounts receivable | (216,924) |
| (Increase)Decrease in inventory | 199,794 |
| (Increase)Decrease in prepaid expenses | (55,087) |
| Increase(Decrease) in accounts payable and accrued expenses | 634,118 |
| Increase(Decrease) in deferred compensation | 143,739 |
| Increase(Decrease) in deferred revenue | 27,361 |
| | |
| Total Adjustments | 839,433 |
| | |
| Net cash provided by operating activities | 566,039 |
| | |
| **Cash flows (used for) provided by investing activities:** | |
| Equity of subsidiary acquired | 244,119 |
| Capital expenditures | (1,588,952) |
| | |
| Net cash (used for) investing activities | (1,344,833) |
| | |
| **Cash flows (used for) provided by financing activities:** | |
| Proceeds (payments) of notes payable | (499,953) |
| Issuance of Stock | 1,424,000 |
| | |
| Net cash (used for) provided by investing activities | 924,047 |
| | |
| Effect of exchange rate changes on cash and cash equivalents | (278,496) |
| | |
| Net increase(decrease) in cash and cash equivalents | (133,243) |
| | |
| Cash and cash equivalents at beginning of year | 876,610 |
| | |
| Cash and cash equivalents at end of year | $743,367 |
| | |
| **Supplemental disclosure of cash flow information:** | |
| Cash paid during the year for interest | $  148,070 |

See Accompanying Notes and Accountant's Report

**BIO-MAGENTIC THERAPY SYSTEMS, INC. AND SUBSIDIARIES**
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
**DECEMBER 31, 2005**

se 1:07-cv-10590-JSR   Document 42-9   Filed 04/28/2008   Page 7 of

## NOTE 1 – NATURE OF BUSINESS

BIO-MAGNETIC THERAPY SYSTEMS, INC. (the "Company" or "BMTS") is a Virginia corporation engaged in the development and production and commercialization of proprietary technology based on extremely low frequency magnetic field pulses to treat osteoarthritis, sports type injuries, and other degenerative joint and neurological disorders.

The Company owns a number of United States process patents in addition to other foreign patent that utilize pulse electromagnetic fields ("PEMF") to treat arthritis, sports-type injuries, and othe: degenerative joint and neurological disorders. #5,131,904 for the "Treatment of Arthritis with Magnetic Field Therapy and Apparatus; #5,387,176 for the "Treatment of acute Diseases as Caused by Sport-type Injuries of the Musculoskeletal System Excluding Fractures with Magneti Field Therapy"; #5,453,073 for the "Apparatus for Treatment of Diseased Body Organs with Magnetic Field Therapy" ; #5,669,868 for the "Treatment of Wrinkled, Discolored of Aging skin with Magnetic Field Therapy"; #5,665,049 for the "Treatment of Acute Diseases as Caused by Sports-type Injuries of the Musculoskeletal System (excluding fractures) with magnetic Field Therapy" (even broader than #5,387,176); #5,842,966 for the "Treatment of Disease including Degenerative and Inflammatory Conditions of the Musculoskeletal System and…(Enhanced Coverage on Arthritis Treatment)"; #407/809 for "Design patent for treatment bed"; #6,119,631 for "Coil cabinet for treating animals with magnetic field therapy"; #6,048,302 for "New Periodontal device"; #6,524,233 for the "Electromagnetic Stimulation of Cartilage Tissue"; and #111 9393B1(issued by the European Patent Office) for the "Electromagnetic Stimulation of Cartilage Tissue". The Company also holds numerous other foreign patents in this field.

Further, the Company has been granted an exclusive worldwide, royalty-free license by Dr. Richard Markoll, the Company's former chairman and the primary developer of these intended processes, to use, manufacture and lease the proprietary device used to administer PEMF in these processes.

In 2004 the Company moved its US corporate office from Boca Raton, Florida to Germany where most of the Companies activities are centralized.

## NOTE 2 – SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

### 2a) PRINCIPLES OF CONSOLIDATION

The financial statements include the accounts of Bio-Magnetic Therapy Systems, GmbH a wholly owned German subsidiary and its subsidiaries Signal Medizin Vertriebs, GmbH,  PST SMV Italy, GmbH, Tinnitus Signal Medizin, GmbH, and Institute for Innovative Medizin, GmbH. (Infinomed).  All significant transactions and balances between the Companies and its subsidiaries have been eliminated in consolidation.

### 2b) CASH AND CASH EQUIVALENTS

Cash equivalents consist of short-term liquid investments, which are readily convertible into cash, and have maturities of three months or less.

se 1:07-cv-10590-JSR   Document 42-9   Filed 04/28/2008   Page 8 of

## 2c) INVENTORIES

Inventories consist of treatment devices and accessories assembled for leasing. The inventories are stated at the lower of cost or market. The cost is determined by specific identification method.

## 2d) REVENUES

The Company's revenue is derived from the lease of devices, sale of activation cards used by these devices, and maintenance fees for each device in operation.

## 2e) DEPRECIATION

Depreciation is provided on a straight-line method over the estimated useful lives of the related assets(3-15 years). Leasehold improvements are expensed over the period of the respective leases.

## 2f) AMORTIZATION

The cost of patent rights acquired is being amortized on the straight-line method over a 20-year period. The cost of the non-compete agreement are being amortized over a 5-year period.

## 2g) DEFERRED EARNINGS

Prior to 2003, the Company's deferred earnings represent leases of the treatment devices to operating clinics throughout Germany. Under the terms of the lease arrangements, the Company leases the treatment devices for a period of three to five years. Ownership of the device remains with the Company. Proceeds from the financing of the devices are received in advance from the lessee and income associated with these leases is recognized over the lease term. During 2003 all deferred revenue was recognized and all related devices were written off and is included in other income. Due to new regulations, beginning in 2004 the Company reports all revenue immediately. The Company also transfers ownership of the component parts of the devices to th financing company for the period financed.

## 2h) INCOME TAXES

Effective October 1, 1992, the Company adopted Statement of Financial Standards (SFAS) N. 109, Accounting for income Taxes.

## 2i) FOREIGN CURRENCY TRANSLATION

Foreign currency balance sheet accounts are translated into United States dollars at the exchange rate in effect at year end. Income statement accounts are translated at the average rate of exchange in effect during the year. The resulting translation adjustments are recorded as a separate component of stockholders' equity.

## 2j) USE OF ESTIMATES

The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assents and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

## 2k) LONG-LIVED ASSETS

Long-lived assets are reviewed on an ongoing basis for impairment based on comparison of carrying value against undiscounted future cash flows. If an impairment is identified, the asset carrying amount is adjusted to fair value.

## NOTE 3 – ACCOUNTS RECEIVABLE

Management believes that the accounts receivable from normal business operations are collectible, and no allowance for doubtful accounts has been recorded.

## NOTE 4 – PROPERTY AND EQUIPMENT

Property and equipment at cost consist of the following:

| | |
|---|---:|
| Furniture and Equipment | $   337,534 |
| Leasehold Improvements | 18,363 |
| Vehicles | 11,236 |
| | 367,133 |
| Less: Accumulated Depreciation | (250,888) |
| Total Property and Equipment | $   116,245 |

Depreciation expense was $75,297 for the year ended December 31, 2005.

## NOTE 5 – INTANGIBLES

Intangibles at cost consist of the following:

| | |
|---|---:|
| Patent Rights | $   621,930 |
| Non-compete agreement | 1,500,000 |
| | 2,121,930 |
| Less: Accumulated Amortization | (33,731) |
| Total Patent Rights | $ 2,088,199 |

The Company paid Dr. Richard Markoll $1,500,000 in 2005 as consideration for a non-compete agreement. These costs will be amortized over a five year period beginning in 2006.

Amortization expense was $31,135 for the year ended December 31, 2005.

## NOTE 6 – INVESTMENT IN UNCONSOLIDATED SUBSIDIARY

In 1996, the Company acquired a 22% interest in PST Holdings(PST) in exchange for the granting of a distribution Agreement/Franchise Rights for the promotion, use and sale of the device developed by the Company used to treat arthritis and sports type injuries. PST did not fulfill its agreement and all rights and territories reverted back to the BMTS, GmbH.

In June 2002, PST investors made loans to PST in order that PST could pay down amounts owed under its franchise agreement to the Company. In return, the Company guaranteed certain PST investors repayment of their loan if PST defaulted. Debt assumed by the Company on behalf of PST was due to the Company in full on October 1, 2003 but was never received. The Company has accrued $635,000 as a liability for these loans as of December 31, 2005.

## NOTE 7 – NOTES PAYABLE

| Notes Payable consists of: | 2005 |
|---|---|
| Note Payable, currently due with all unpaid interest payable at 8%. The Note is convertible into shares of the authorized but unissued Class A Common Stock. The Note is collateralized by certain patents and other intellectual property of the Company. | $ 100,000 |
| Notes payable, due upon demand with all unpaid Interest payable at 8% and is Collateralized by all assets of the Company. | 95,917 |
| Total Notes Payable | 195,917 |
| Less Current Portion | (195,917) |
| Total Long-Term Debt | $ -0- |

## NOTE 8 – STOCK OPTION PLANS

On September 30, 1994, the company established a non-qualified stock option plan. The plan was amended and restated on January 31, 1996 and again on May 21, 1997 to authorize the issuance of options to purchase up to 3,175,077 shares of common stock, subject to certain anti-dilution requirements. Any option issued entitles the holder to purchase the shares of Class A common stock subject to the option at a purchase price of $1.85 per share. On April 8, 1997, the Company established the 1997 stock option plan. The 1997 stock option plan established the issuance of options to purchase up to 700,000 shares subject to certain dilution requirements. Options have been issued for the purchase of 3,285,635 shares as of December 31, 2005. A total of 2,757,444 options have expired as of December 31, 2005 and 1,191 options have been exercised.

NOTE 9 – OPERATING LEASE

The Company leases office space, warehouse space, and equipment under operating leases that expire through 2009. Annual rent expense under these operating leases amounted to $570,395 for the year ended December 31, 2005.

At December 31, 2005, the future minimum lease payments approximated the following:

| | | |
|---|---|---|
| 2006 | $ | 126,950 |
| 2007 | | 66,228 |
| 2008 | | 31,107 |
| 2009 | | 3,423 |
| Total future minimum lease payments | $ | 227,708 |

NOTE 10 – DEFERRED COMPENSATION

The Company entered into an employment agreement with its chairman, which requires a minimum annual salary $250,000 for the year ended December 31, 2005. The salary is payable $150,000 on an annualized bases and $100,000 payable at the discretion of the Company's board of directors. The Company has also deferred salary agreement with another officer in the amount of $20,000 annually. Any salary amounts not paid in the year earned, shall be carried forward to subsequent years and must be paid by the termination date of the agreement. Bonus amounts not paid in the current year are also carried forward. These unpaid obligations are recorded as deferred compensation. As of December 31, 2005 deferred compensation was $970,000.

NOTE 11 – INCOME TAXES

As of December 31, 2005 the Company had net operating loss carryforwards available to offset future taxable income of approximately $2,900,000. These carryforwards begin to expire in 2011. Due to the uncertainty of the future utilization of these net operating losses, no deferred tax assets have been recorded.

NOTE 12 – LITIGATION SETTELEMENTS

In 2001, Eugene Heller, Magnetic Treatment Medical Services, P. C. and Magnetic Treatment Center, P.C. filed a lawsuit against the Company and Dr. Richard Markoll for monetary damages incurred as a result of the investigation by the United States Attorney's office for the District of Connecticut in regards to a possible Medicare/Medicaid violation. The Company has recorded $650,000 as an accrued liability to settle this matter.

**BIO-MAGENTIC THERAPY SYSTEMS, INC. AND SUBSIDIARIES**
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
**DECEMBER 31, 2005**

e 1:07-cv-10590-JSR    Document 42-9    Filed 04/28/2008    Page 12 o

## NOTE 13 – RELATED PARTY ACTIVITIES

The Company has receivables due, for overhead charges for Innovatis EV in the amounts of
$137,383 as of December 31, 2005. This amount has been written off as uncollectible.
The patents and trademarks developed by Tinnitus Signal Medizin, GmbH were transferred to
BMTS, GmbH in 2004 for a purchase price of $621,930. The purchase price was calculated
using the outstanding amounts due for overhead charges and funds advanced. Shareholders
owning a substantial portion of the outstanding stock of the Company controlled this company
until the end of 2004. All the shares of Tinnitus Signal Medizin, GmbH and Institute for
Innovative Medizin, GmbH (INFINOMED) were transferred to BMTS, GmbH in 2005.

## NOTE 15 – SUBSEQUENT EVENTS

In December 2005 Duravest, Inc. acquired 5,700,000 shares of stock from the Company and an
additional 2,803,083 shares directly from other shareholders. In January 2006, Duravest, Inc.
acquired an additional 8,362,094 shares from the Company at the same price per share. Dr.
Richard Markoll stepped down as CEO and now consults the Company and remains a member of
the board of directors. Dr. Rolf Käse and Dr. Ogan Gurel became members of the board of
directors effective January 1, 2006.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

Index No. 07-34292
Date Purchased
and Filed: 11|13|07
Plaintiffs designate Suffolk
County as the place of trial

------------------------------------------------------------------X

EUGENE HELLER, MAGNETIC TREATMENT
MEDICAL SERVICES, P.C. and
MAGNETIC TREATMENT CENTER, P.C.,

Plaintiffs,

-against-

BIO-MAGNETIC THERAPY SYSTEMS, INC.,
and RICHARD MARKOLL,

Defendants.

------------------------------------------------------------------X

**SUMMONS WITH NOTICE**

The basis of the venue is:
Individual Plaintiff's place of
business

Plaintiff's Address:
205 East Main Street
Huntington, New York 11743

TO THE ABOVE NAMED DEFENDANT(S):

**YOU ARE HEREBY SUMMONED** to answer the Complaint in this action and to serve
a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of
Appearance on the Plaintiffs' Attorney(s) within 20 days after the service of this Summons,
exclusive of the day of service (or within 30 days after the service is complete if this Summons is
not personally delivered to you within the State of New York); and in case of your failure to appear
or answer, Judgment will be taken against you by default for the relief demanded herein.

Dated: Mineola, New York
November 7, 2007.

**DEFENDANTS' ADDRESSES**:

RICHARD MARKOLL
103 East Palmetto Park Road
Boca Raton, Florida 33432

BIO-MAGNETIC THERAPY SYSTEMS, INC.
1040 S. Milwaukee Ave., Suite 250
Wheeling, Illinois 60090

BIO-MAGNETIC THERAPY SYSTEMS, INC.
103 East Palmetto Park Road
Boca Raton, Florida 33432

Yours, etc.,
FORCHELLI, CURTO, SCHWARTZ,
MINEO, CARLINO & COHN, LLP

By:_____

ANDREW E. CURTO
Attorneys for Plaintiffs
330 Old Country Road, Suite 301
Mineola, New York 11501
(516) 248-1700

Notice: This action seeks relief for, breach of Settlement and Release Agreement, statutory indemnification,
fraud and other equitable relief. Upon your failure to appear judgment will be taken against you by
default for $785,000.00, attorney's fees and the costs and disbursements of this action, together with
such an further relief as may be deemed just, proper and equitable.

## DESCRIPTION OF SHARES TENDERED

| Name and Address of Registered Owner(s) | Certificate(s) Enclosed (Attach List, If Necessary) | | |
|---|---|---|---|
| | Certificate No. | Class | No. of Shares Tendered |
| John A. Hall and Charlotte L. Hall joint tenants with rights of survival | 69 | | 9,250 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Shares Tendered | | 9,250 |

This Letter of Transmittal must be used, according to the procedures set forth in the Offer to Purchase under the caption "The Offer" The instructions included with this Letter of Transmittal must be followed. See Instructions 1 and 4 below.

## PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY

Ladies and Gentlemen:

The undersigned hereby tenders to DuraVest Inc. (the "Purchaser"), the above-described shares of Common Stock, par value $.01 per share (the "Shares") of Bio-Magnetic Therapy Systems, Inc. (the "Company") pursuant to Purchaser's offer to purchase Shares for a price of $0.32 per Share (the "Consideration"), payable on the consummation of the purchase of Shares as contemplated by the Offer, all upon the terms and subject to the conditions set forth in Purchaser's Offer to Purchase, dated November 29, 2005 (the "Offer to Purchase"), receipt of which is hereby acknowledged (which, together with the Offer to Purchase, constitute the "Offer").

Subject to, and effective upon, acceptance for purchase of the Shares tendered herewith in accordance with the terms of the Offer, the undersigned hereby sells, assigns, and transfers to, or upon the order of, the Purchaser all right, title and interest in and to all the Shares tendered hereby (and any and all other Shares or other securities issued or issuable in respect thereof on or after November 29, 2005) and appoints the Purchaser the true and lawful agent and attorney-in-fact of the undersigned with respect to such Shares and any such other Shares (or securities) with full power of substitution (such power of attorney being deemed to be an irrevocable power coupled with an interest), to (a) deliver certificates for such Shares (and any such other Shares or securities), together in any such case with all accompanying evidence of transfer and authenticity, to or upon the order of the Company, (b) present such Shares (and any such other Shares or securities) for transfer on the books of the Company and (c) receive all benefits and otherwise exercise all rights of beneficial ownership of such Shares (and any such other Shares or securities), all in accordance with the terms of the Offer.

3

**IMPORTANT**

This Letter of Transmittal must be signed below by the registered shareholder(s) exactly as name(s) appear(s) on share certificate(s) or by such person(s) are (is)(are) authorized to become registered holder(s) by certificates and documents transmitted herewith. If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of corporation or other person acting in a fiduciary or representative capacity, please set forth full title and submit herewith evidence of authority to sign. See Instruction 4.

_____
Signature(s) of Owner(s)

Dated  12/26/05

Name(s)  John A. Hall   Charlotte L. Hall
_____
(Please Print)

Capacity _____
(See Instruction 4)

Address  158, 11th  Avenue
Huntington Sta. N.Y. 11746
(Including Zip Code)

Area Code and Tel No. (Bus.) _____

Area Code and Tel. No. (Res.)  631 424 2868

Tax Identification No. or Social Security No.  132 20 7019

6

**DESCRIPTION OF SHARES TENDERED**

| Name and Address of Registered Owner(s) | Certificate(s) Enclosed (Attach List. If Necessary) | | |
|---|---|---|---|
| | Certificate No. | Class | No. of Shares Tendered |
| FRED N. FERRI JUNE E. FERRI JOINT TENANTS. 15 FLAMINGO DR. SMITHTOWN N.Y 11787 | #36 | | 4,250 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Shares Tendered | | 4,250 |

This Letter of Transmittal must be used, according to the procedures set forth in the Offer to Purchase under the caption "The Offer" The instructions included with this Letter of Transmittal must be followed. See Instructions 1 and 4 below.

## PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY

Ladies and Gentlemen:

The undersigned hereby tenders to DuraVest Inc. (the "Purchaser"), the above-described shares of Common Stock, par value $.01 per share (the "Shares") of Bio-Magnetic Therapy Systems, Inc. (the "Company") pursuant to Purchaser's offer to purchase Shares for a price of $0.32 per Share (the "Consideration"), payable on the consummation of the purchase of Shares as contemplated by the Offer, all upon the terms and subject to the conditions set forth in Purchaser's Offer to Purchase, dated November 29, 2005 (the "Offer to Purchase"), receipt of which is hereby acknowledged (which, together with the Offer to Purchase, constitute the "Offer").

Subject to, and effective upon, acceptance for purchase of the Shares tendered herewith in accordance with the terms of the Offer, the undersigned hereby sells, assigns, and transfers to, or upon the order of, the Purchaser all right, title and interest in and to all the Shares tendered hereby (and any and all other Shares or other securities issued or issuable in respect thereof on or after November 29, 2005) and appoints the Purchaser the true and lawful agent and attorney-in-fact of the undersigned with respect to such Shares and any such other Shares (or securities) with full power of substitution (such power of attorney being deemed to be an irrevocable power coupled with an interest), to (a) deliver certificates for such Shares (and any such other Shares or securities), together in any such case with all accompanying evidence of transfer and authenticity, to or upon the order of the Company, (b) present such Shares (and any such other Shares or securities) for transfer on the books of the Company and (c) receive all benefits and otherwise exercise all rights of beneficial ownership of such Shares (and any such other Shares or securities), all in accordance with the terms of the Offer.

3

**IMPORTANT**
**All TENDERING SHAREHOLDERS MUST SIGN HERE**

This Letter of Transmittal must be signed below by the registered shareholder(s) exactly as name(s) appear(s) on share certificate(s) or by such person(s) are (is)(are) authorized to become registered holder(s) by certificates and documents transmitted herewith.    If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of corporation or other person acting in a fiduciary or representative capacity, please set forth full title and submit herewith evidence of authority to sign.    See Instruction 4.

Signature(s) of Owner(s)

Dated 12/20/06

Name(s) _Fred N. Ferri / June E. Ferri_
FRED N FERRI      JUNE E. FERRI
(Please Print)

Capacity JOINT TENANTS / RIGHTS OF SURVIVAL.
(See Instruction 4)

Address 15 FLAMINGO. DR.
SMITHTOWN N.Y. 11787
(Including Zip Code)

Area Code and Tel No. (Bus.)
Area Code and Tel. No. (Res.) (631) 765 8511
Tax Identification No. or Social Security No. 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
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

6

## DESCRIPTION OF SHARES TENDERED

| Name and Address of Registered Owner(s) | Certificate(s) Enclosed (Attach List. If Necessary) | | |
|---|---|---|---|
| | Certificate No. | Class | No. of Shares Tendered |
| Bruce Heller | 12 | A | 2000- |
| 17 Sussex Lane | | | |
| Lake grove, NY. | | | |
| 11755 | | | |
| 11755 | | | |
| | Total Shares Tendered | | 2000 |

This Letter of Transmittal must be used, according to the procedures set forth in the Offer to Purchase under the caption "The Offer" The instructions included with this Letter of Transmittal must be followed. See Instructions 1 and 4 below.

### PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY

Ladies and Gentlemen:

The undersigned hereby tenders to DuraVest Inc. (the "Purchaser"), the above-described shares of Common Stock, par value $.01 per share (the "Shares") of Bio-Magnetic Therapy Systems, Inc. (the "Company") pursuant to Purchaser's offer to purchase Shares for a price of $0.32 per Share (the "Consideration"), payable on the consummation of the purchase of Shares as contemplated by the Offer, all upon the terms and subject to the conditions set forth in Purchaser's Offer to Purchase, dated November 29, 2005 (the "Offer to Purchase"), receipt of which is hereby acknowledged (which, together with the Offer to Purchase, constitute the "Offer").

Subject to, and effective upon, acceptance for purchase of the Shares tendered herewith in accordance with the terms of the Offer, the undersigned hereby sells, assigns, and transfers to, or upon the order of, the Purchaser all right, title and interest in and to all the Shares tendered hereby (and any and all other Shares or other securities issued or issuable in respect thereof on or after November 29, 2005) and appoints the Purchaser the true and lawful agent and attorney-in-fact of the undersigned with respect to such Shares and any such other Shares (or securities) with full power of substitution (such power of attorney being deemed to be an irrevocable power coupled with an interest), to (a) deliver certificates for such Shares (and any such other Shares or securities), together in any such case with all accompanying evidence of transfer and authenticity, to or upon the order of the Company, (b) present such Shares (and any such other Shares or securities) for transfer on the books of the Company and (c) receive all benefits and otherwise exercise all rights of beneficial ownership of such Shares (and any such other Shares or securities), all in accordance with the terms of the Offer.

3

**IMPORTANT**

**SURRENDERING SHAREHOLDERS MUST SIGN HERE**

This Letter of Transmittal must be signed below by the registered shareholder(s) exactly as name(s) appear(s) on share certificate(s) or by such person(s) are (is)(are) authorized to become registered holder(s) by certificates and documents transmitted herewith. If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of corporation or other person acting in a fiduciary or representative capacity, please set forth full title and submit herewith evidence of authority to sign. See Instruction 4.

X ___Bruce Heller_____

Signature(s) of Owner(s)

Dated ___12/12/05___

Name(s) ___Bruce Heller___

(Please Print)

Capacity ___Self___

(See Instruction 4)

Address ___17 Sussex Lane___

___Lake Grove NY 11755___

(Including Zip Code)

Area Code and Tel No. (Bus.) ___631 676-3874___

Area Code and Tel. No. (Res.) ___631 676-3874___

Tax Identification No. or Social Security No. ___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___

6

| Name and Address of Registered Owner(s) | Certificate(s) Enclosed (Attach List If Necessary) | | |
|---|---|---|---|
| | Certificate No. | Class | No. of Shares Tendered |
| Eugene Heller | A-4 | A | 65,000 |
| Sheila Heller | | | |
| 353 Attesca Blvd | | | |
| Melville, Ney | | | |
| 11747 | | | |
| | Total Shares Tendered | | 65,000 |

This Letter of Transmittal must be used, according to the procedures set forth in the Offer to Purchase under the caption "The Offer" The instructions included with this Letter of Transmittal must be followed. See Instructions 1 and 4 below.

## PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY

Ladies and Gentlemen:

The undersigned hereby tenders to DuraVest Inc. (the "Purchaser"), the above-described shares of Common Stock, par value $.01 per share (the "Shares") of Bio-Magnetic Therapy Systems, Inc. (the "Company") pursuant to Purchaser's offer to purchase Shares for a price of $0.32 per Share (the "Consideration"), payable on the consummation of the purchase of Shares as contemplated by the Offer, all upon the terms and subject to the conditions set forth in Purchaser's Offer to Purchase, dated November 29, 2005 (the "Offer to Purchase"), receipt of which is hereby acknowledged (which, together with the Offer to Purchase, constitute the "Offer").

Subject to, and effective upon, acceptance for purchase of the Shares tendered herewith in accordance with the terms of the Offer, the undersigned hereby sells, assigns, and transfers to, or upon the order of, the Purchaser all right, title and interest in and to all the Shares tendered hereby (and any and all other Shares or other securities issued or issuable in respect thereof on or after November 29, 2005) and appoints the Purchaser the true and lawful agent and attorney-in-fact of the undersigned with respect to such Shares and any such other Shares (or securities) with full power of substitution (such power of attorney being deemed to be an irrevocable power coupled with an interest), to (a) deliver certificates for such Shares (and any such other Shares or securities), together in any such case with all accompanying evidence of transfer and authenticity, to or upon the order of the Company, (b) present such Shares (and any such other Shares or securities) for transfer on the books of the Company and (c) receive all benefits and otherwise exercise all rights of beneficial ownership of such Shares (and any such other Shares or securities), all in accordance with the terms of the Offer.

3

**IMPORTANT**

This Letter of Transmittal must be signed below by the registered shareholder(s) exactly as name(s) appear(s) on share certificate(s) or by such person(s) are (is)(are) authorized to become registered holder(s) by certificates and documents transmitted herewith. If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of corporation or other person acting in a fiduciary or representative capacity, please set forth full title and submit herewith evidence of authority to sign. See Instruction 4.

→

_____
Signature(s) of Owner(s)

Dated __12/22/05__

Name(s) ___Eugene Heller___
         ___Sheila Heller___
         (Please Print)

Capacity ___self___
         (See Instruction 4)

Address __353 Altessa Blvd__
         __Melville NY 11747__
         (Including Zip Code)

Area Code and Tel No. (Bus.) __631 271 5671__

Area Code and Tel. No. (Res.) __631 271 5671__

Tax Identification No. or Social Security No. __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 (EH)__
                                              __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 (SH)__

6

**IMPORTANT**

This Letter of Transmittal must be signed below by the registered shareholder(s) exactly as name(s) appear(s) on share certificate(s) or by such person(s) are (is)(are) authorized to become registered holder(s) by certificates and documents transmitted herewith.    If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of corporation or other person acting in a fiduciary or representative capacity, please set forth full title and submit herewith evidence of authority to sign.  See Instruction 4.

_Sheila Heller_
Signature(s) of Owner(s)

Dated   12/12/06

Name(s)   Sheila Heller

                Self        (Please Print)
Capacity

                (See Instruction 4)
Address   353  Altessa  Blvd

        Melville  NY  11747
                (Including Zip Code)

Area Code and Tel No. (Bus.)   631  271 - 5671

Area Code and Tel. No. (Res.)   631  271 - 5671

Tax Identification No. or Social Security No.   123  28  2998

6

## DESCRIPTION OF SHARES TENDERED

| Name and Address of Registered Owner(s) | Certificate(s) Enclosed (Attach List. If Necessary) | | |
|---|---|---|---|
| | Certificate No. | Class | No. of Shares Tendered |
| Sheryl Heller | A 7 | A | 2000 — |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Shares Tendered | | 2000 — |

This Letter of Transmittal must be used, according to the procedures set forth in the Offer to Purchase under the caption "The Offer" The instructions included with this Letter of Transmittal must be followed.  See Instructions 1 and 4 below.

## PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY

Ladies and Gentlemen:

The undersigned hereby tenders to DuraVest Inc. (the "Purchaser"), the above-described shares of Common Stock, par value $.01 per share (the "Shares") of Bio-Magnetic Therapy Systems, Inc. (the "Company") pursuant to Purchaser's offer to purchase Shares for a price of $0.32 per Share (the "Consideration"), payable on the consummation of the purchase of Shares as contemplated by the Offer, all upon the terms and subject to the conditions set forth in Purchaser's Offer to Purchase, dated November 29, 2005 (the "Offer to Purchase"), receipt of which is hereby acknowledged (which, together with the Offer to Purchase, constitute the "Offer").

Subject to, and effective upon, acceptance for purchase of the Shares tendered herewith in accordance with the terms of the Offer, the undersigned hereby sells, assigns, and transfers to, or upon the order of, the Purchaser all right, title and interest in and to all the Shares tendered hereby (and any and all other Shares or other securities issued or issuable in respect thereof on or after November 29, 2005) and appoints the Purchaser the true and lawful agent and attorney-in-fact of the undersigned with respect to such Shares and any such other Shares (or securities) with full power of substitution (such power of attorney being deemed to be an irrevocable power coupled with an interest), to (a) deliver certificates for such Shares (and any such other Shares or securities), together in any such case with all accompanying evidence of transfer and authenticity, to or upon the order of the Company, (b) present such Shares (and any such other Shares or securities) for transfer on the books of the Company and (c) receive all benefits and otherwise exercise all rights of beneficial ownership of such Shares (and any such other Shares or securities), all in accordance with the terms of the Offer.

3

**IMPORTANT**

**ALL TENDERING SHAREHOLDERS MUST SIGN HERE**

This Letter of Transmittal must be signed below by the registered shareholder(s) exactly as name(s) appear(s) on share certificate(s) or by such person(s) are (is)(are) authorized to become registered holder(s) by certificates and documents transmitted herewith. If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of corporation or other person acting in a fiduciary or representative capacity, please set forth full title and submit herewith evidence of authority to sign. See Instruction 4.

x _____

Signature(s) of Owner(s)

Dated  12/12/05

Name(s)  Sheryl Heller

(Please Print)

Capacity  Self

(See Instruction 4)

Address  1 Oaktree Lane

Hampton Bays, NY  11946

(Including Zip Code)

Area Code and Tel. No. (Bus.)  631 236-9628

Area Code and Tel. No. (Res.)  516 398-7769

Tax Identification No. or Social Security No.  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

6

**IMPORTANT**

This Letter of Transmittal must be signed below by the registered shareholder(s) exactly as name(s) appear(s) on share certificate(s) or by such person(s) are (is)(are) authorized to become registered holder(s) by certificates and documents transmitted herewith. If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of corporation or other person acting in a fiduciary or representative capacity, please set forth full title and submit herewith evidence of authority to sign. See Instruction 4.

_Harvey Hellering_
Signature(s) of Owner(s)

Dated _12/6/05_

Name(s) _HARVEY Hellering_

(Please Print)

Capacity _____
(See Instruction 4)

Address _75 JeAN Court_
_RiVERheAd NY 11901_
(Including Zip Code)

Area Code and Tel No. (Bus.) _____

Area Code and Tel. No. (Res.) _631 - 727-8666_

Tax Identification No. or Social Security No. _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_

6

## DESCRIPTION OF SHARES TENDERED

| Name and Address of Registered Owner(s) | Certificate(s) Enclosed (Attach List. If Necessary) | | |
|---|---|---|---|
| | Certificate No. | Class | No. of Shares Tendered |
| HARVEY Hellering 75 JEAN COUrt RIVERhEAd, NY 11901 | A - 6 | A | 5000 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Shares Tendered | | |

   This Letter of Transmittal must be used, according to the procedures set forth in the Offer to Purchase under the caption "The Offer" The instructions included with this Letter of Transmittal must be followed. See Instructions 1 and 4 below.

## PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY

Ladies and Gentlemen:

   The undersigned hereby tenders to DuraVest Inc. (the "Purchaser"), the above-described shares of Common Stock, par value $.01 per share (the "Shares") of Bio-Magnetic Therapy Systems, Inc. (the "Company") pursuant to Purchaser's offer to purchase Shares for a price of $0.32 per Share (the "Consideration"), payable on the consummation of the purchase of Shares as contemplated by the Offer, all upon the terms and subject to the conditions set forth in Purchaser's Offer to Purchase, dated November 29, 2005 (the "Offer to Purchase"), receipt of which is hereby acknowledged (which, together with the Offer to Purchase, constitute the "Offer").

   Subject to, and effective upon, acceptance for purchase of the Shares tendered herewith in accordance with the terms of the Offer, the undersigned hereby sells, assigns, and transfers to, or upon the order of, the Purchaser all right, title and interest in and to all the Shares tendered hereby (and any and all other Shares or other securities issued or issuable in respect thereof on or after November 29, 2005) and appoints the Purchaser the true and lawful agent and attorney-in-fact of the undersigned with respect to such Shares and any such other Shares (or securities) with full power of substitution (such power of attorney being deemed to be an irrevocable power coupled with an interest), to (a) deliver certificates for such Shares (and any such other Shares or securities), together in any such case with all accompanying evidence of transfer and authenticity, to or upon the order of the Company, (b) present such Shares (and any such other Shares or securities) for transfer on the books of the Company and (c) receive all benefits and otherwise exercise all rights of beneficial ownership of such Shares (and any such other Shares or securities), all in accordance with the terms of the Offer.

3

DESCRIPTION OF SHARES TENDERED

| Name and Address of Registered Owner(s) | Certificate(s) Enclosed (Attach List. If Necessary) | | |
|---|---|---|---|
| | Certificate No. | Class | No. of Shares Tendered |
| RICHARD S. JOSEPH SO WILLIS Lane MUTTONTOWN, N.Y. 11791 | A 130 | A | 18,000 |
| | | | |
| | | | |
| | | | |
| | Total Shares Tendered | | 18,000 |

This Letter of Transmittal must be used, according to the procedures set forth in the Offer to Purchase under the caption "The Offer" The instructions included with this Letter of Transmittal must be followed. See Instructions 1 and 4 below.

## PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY

Ladies and Gentlemen:

The undersigned hereby tenders to DuraVest Inc. (the "Purchaser"), the above-described shares of Common Stock, par value $.01 per share (the "Shares") of Bio-Magnetic Therapy Systems, Inc. (the "Company") pursuant to Purchaser's offer to purchase Shares for a price of $0.32 per Share (the "Consideration"), payable on the consummation of the purchase of Shares as contemplated by the Offer, all upon the terms and subject to the conditions set forth in Purchaser's Offer to Purchase, dated November 29, 2005 (the "Offer to Purchase"), receipt of which is hereby acknowledged (which, together with the Offer to Purchase, constitute the "Offer").

Subject to, and effective upon, acceptance for purchase of the Shares tendered herewith in accordance with the terms of the Offer, the undersigned hereby sells, assigns, and transfers to, or upon the order of, the Purchaser all right, title and interest in and to all the Shares tendered hereby (and any and all other Shares or other securities issued or issuable in respect thereof on or after November 29, 2005) and appoints the Purchaser the true and lawful agent and attorney-in-fact of the undersigned with respect to such Shares and any such other Shares (or securities) with full power of substitution (such power of attorney being deemed to be an irrevocable power coupled with an interest), to (a) deliver certificates for such Shares (and any such other Shares or securities), together in any such case with all accompanying evidence of transfer and authenticity, to or upon the order of the Company, (b) present such Shares (and any such other Shares or securities) for transfer on the books of the Company and (c) receive all benefits and otherwise exercise all rights of beneficial ownership of such Shares (and any such other Shares or securities), all in accordance with the terms of the Offer.

3

**IMPORTANT**

**TENDERING SHAREHOLDERS MUST SIGN HERE**

This Letter of Transmittal must be signed below by the registered shareholder(s) exactly as name(s) appear(s) on share certificate(s) or by such person(s) are (is)(are) authorized to become registered holder(s) by certificates and documents transmitted herewith. If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of corporation or other person acting in a fiduciary or representative capacity, please set forth full title and submit herewith evidence of authority to sign. See Instruction 4.

_Richard S Joseph_

Signature(s) of Owner(s)

Dated _12-18-05_

Name(s) _RICHARD S. Joseph_

(Please Print)

Capacity _OWNER_

(See Instruction 4)

Address _80 WILLIS LANE_
_Murrtontoun, N.Y. 11791_

(Including Zip Code)

Area Code and Tel No. (Bus.) _631-549-6969_

Area Code and Tel. No. (Res.) _516-921-2992_

Tax Identification No. or Social Security No. _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_

6

**DESCRIPTION OF SHARES TENDERED**

| Name and Address of Registered Owner(s) | Certificate(s) Enclosed (Attach List, If Necessary) | | |
|---|---|---|---|
| | Certificate No. | Class | No. of Shares Tendered |
| NANCY KENNAUGH 59 OAKLAND ST HUNTINGTON, NY 11743 | A32 | A | 3,375 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Shares Tendered | | 3375 |

This Letter of Transmittal must be used, according to the procedures set forth in the Offer to Purchase under the caption "The Offer" The instructions included with this Letter of Transmittal must be followed. See Instructions 1 and 4 below.

## PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY

Ladies and Gentlemen:

The undersigned hereby tenders to DuraVest Inc. (the "Purchaser"), the above-described shares of Common Stock, par value $.01 per share (the "Shares") of Bio-Magnetic Therapy Systems, Inc. (the "Company") pursuant to Purchaser's offer to purchase Shares for a price of $0.32 per Share (the "Consideration"), payable on the consummation of the purchase of Shares as contemplated by the Offer, all upon the terms and subject to the conditions set forth in Purchaser's Offer to Purchase, dated November 29, 2005 (the "Offer to Purchase"), receipt of which is hereby acknowledged (which, together with the Offer to Purchase, constitute the "Offer").

Subject to, and effective upon, acceptance for purchase of the Shares tendered herewith in accordance with the terms of the Offer, the undersigned hereby sells, assigns, and transfers to, or upon the order of, the Purchaser all right, title and interest in and to all the Shares tendered hereby (and any and all other Shares or other securities issued or issuable in respect thereof on or after November 29, 2005) and appoints the Purchaser the true and lawful agent and attorney-in-fact of the undersigned with respect to such Shares and any such other Shares (or securities) with full power of substitution (such power of attorney being deemed to be an irrevocable power coupled with an interest), to (a) deliver certificates for such Shares (and any such other Shares or securities), together in any such case with all accompanying evidence of transfer and authenticity, to or upon the order of the Company, (b) present such Shares (and any such other Shares or securities) for transfer on the books of the Company and (c) receive all benefits and otherwise exercise all rights of beneficial ownership of such Shares (and any such other Shares or securities), all in accordance with the terms of the Offer.

3

**IMPORTANT**

**TENDERING SHAREHOLDERS MUST SIGN HERE**

This Letter of Transmittal must be signed below by the registered shareholder(s) exactly as name(s) appear(s) on share certificate(s) or by such person(s) are (is)(are) authorized to become registered holder(s) by certificates and documents transmitted herewith.   If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of corporation or other person acting in a fiduciary or representative capacity, please set forth full title and submit herewith evidence of authority to sign. See Instruction 4.

_____
Signature(s) of Owner(s)

Dated _____December 26, 2005_____

Name(s) _____Nancy B Kennaugh_____

_____aka_____Nancy Kennaugh_____
(Please Print)

Capacity _____
(See Instruction 4)

Address _____59 Oakland Street_____

_____Huntington NY. 11743_____
(Including Zip Code)

Area Code and Tel No. (Bus.) _____

Area Code and Tel. No. (Res.) ____631 - 421 - 2494____

Tax Identification No. or Social Security No. ___125 - 54 - 7949___

6

| Name and Address of Registered Owner(s) | Certificate(s) Enclosed (Attach List, If Necessary) | | |
|---|---|---|---|
| | Certificate No. | Class | No. of Shares Tendered |
| **Jeffry Ordover**<br>168 Carpenter Avenue<br>Sea Cliff, NY 11579-1334 | 97 | | 1,544 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Shares Tendered | | |

This Letter of Transmittal must be used, according to the procedures set forth in the Offer to Purchase under the caption "The Offer" The instructions included with this Letter of Transmittal must be followed. See Instructions 1 and 4 below.

## PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY

Ladies and Gentlemen:

The undersigned hereby tenders to DuraVest Inc. (the "Purchaser"), the above-described shares of Common Stock, par value $.01 per share (the "Shares") of Bio-Magnetic Therapy Systems, Inc. (the "Company") pursuant to Purchaser's offer to purchase Shares for a price of $0.32 per Share (the "Consideration"), payable on the consummation of the purchase of Shares as contemplated by the Offer, all upon the terms and subject to the conditions set forth in Purchaser's Offer to Purchase, dated November 29, 2005 (the "Offer to Purchase"), receipt of which is hereby acknowledged (which, together with the Offer to Purchase, constitute the "Offer").

Subject to, and effective upon, acceptance for purchase of the Shares tendered herewith in accordance with the terms of the Offer, the undersigned hereby sells, assigns, and transfers to, or upon the order of, the Purchaser all right, title and interest in and to all the Shares tendered hereby (and any and all other Shares or other securities issued or issuable in respect thereof on or after November 29, 2005) and appoints the Purchaser the true and lawful agent and attorney-in-fact of the undersigned with respect to such Shares and any such other Shares (or securities) with full power of substitution (such power of attorney being deemed to be an irrevocable power coupled with an interest), to (a) deliver certificates for such Shares (and any such other Shares or securities), together in any such case with all accompanying evidence of transfer and authenticity, to or upon the order of the Company, (b) present such Shares (and any such other Shares or securities) for transfer on the books of the Company and (c) receive all benefits and otherwise exercise all rights of beneficial ownership of such Shares (and any such other Shares or securities), all in accordance with the terms of the Offer.

3

**IMPORTANT**
**ALL TENDERING SHAREHOLDERS MUST SIGN HERE**

This Letter of Transmittal must be signed below by the registered shareholder(s) exactly as name(s) appear(s) on share certificate(s) or by such person(s) are (is)(are) authorized to become registered holder(s) by certificates and documents transmitted herewith. If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of corporation or other person acting in a fiduciary or representative capacity, please set forth full title and submit herewith evidence of authority to sign. See Instruction 4.

_____
Signature(s) of Owner(s)

Dated _12/28/05_

Name(s) _Jeffry Ordover_
(Please Print)

Capacity _Owner_
(See Instruction 4)

Address _168 Carpenter Ave, Sea Cliff,_
_NY 11579_
(Including Zip Code)

Area Code and Tel No. (Bus.) _516-759-8408_

Area Code and Tel. No. (Res.)

Tax Identification No. or Social Security No. _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_

6

**IMPORTANT**
**All TENDERING SHAREHOLDERS MUST SIGN HERE**

This Letter of Transmittal must be signed below by the registered shareholder(s) exactly as name(s) appear(s) on share certificate(s) or by such person(s) are (is)(are) authorized to become registered holder(s) by certificates and documents transmitted herewith. If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of corporation or other person acting in a fiduciary or representative capacity, please set forth full title and submit herewith evidence of authority to sign. See Instruction 4.

_____
Signature(s) of Owner(s)

Dated _____ 12/28/05 _____

Name(s) _____ Jeffry Ordover _____
(Please Print)

Capacity _____ Owner _____
(See Instruction 4)

Address _____ 168 Carpenter Ave, Sea Cliff, NY 11579 _____
(Including Zip Code)

Area Code and Tel No. (Bus.) _____ 516-759-8408 _____

Area Code and Tel. No. (Res.) _____

Tax Identification No. or Social Security No. _____ 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 _____

6

## DESCRIPTION OF SHARES TENDERED

| Name and Address of Registered Owner(s) | Certificate(s) Enclosed (Attach List, If Necessary) | | |
|---|---|---|---|
| | Certificate No. | Class | No. of Shares Tendered |
| STANLEY SHER AND HELEN SHER, JOINT Tenants with Rights of SurvivAl | 44 | | 33,000 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Shares Tendered | | |

This Letter of Transmittal must be used, according to the procedures set forth in the Offer to Purchase under the caption "The Offer" The instructions included with this Letter of Transmittal must be followed. See Instructions 1 and 4 below.

## PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY

Ladies and Gentlemen:

The undersigned hereby tenders to DuraVest Inc. (the "Purchaser"), the above-described shares of Common Stock, par value $.01 per share (the "Shares") of Bio-Magnetic Therapy Systems, Inc. (the "Company") pursuant to Purchaser's offer to purchase Shares for a price of $0.32 per Share (the "Consideration"), payable on the consummation of the purchase of Shares as contemplated by the Offer, all upon the terms and subject to the conditions set forth in Purchaser's Offer to Purchase, dated November 29, 2005 (the "Offer to Purchase"), receipt of which is hereby acknowledged (which, together with the Offer to Purchase, constitute the "Offer").

Subject to, and effective upon, acceptance for purchase of the Shares tendered herewith in accordance with the terms of the Offer, the undersigned hereby sells, assigns, and transfers to, or upon the order of, the Purchaser all right, title and interest in and to all the Shares tendered hereby (and any and all other Shares or other securities issued or issuable in respect thereof on or after November 29, 2005) and appoints the Purchaser the true and lawful agent and attorney-in-fact of the undersigned with respect to such Shares and any such other Shares (or securities) with full power of substitution (such power of attorney being deemed to be an irrevocable power coupled with an interest), to (a) deliver certificates for such Shares (and any such other Shares or securities), together in any such case with all accompanying evidence of transfer and authenticity, to or upon the order of the Company, (b) present such Shares (and any such other Shares or securities) for transfer on the books of the Company and (c) receive all benefits and otherwise exercise all rights of beneficial ownership of such Shares (and any such other Shares or securities), all in accordance with the terms of the Offer.

3

**IMPORTANT**
**All TENDERING SHAREHOLDERS MUST SIGN HERE**

This Letter of Transmittal must be signed below by the registered shareholder(s) exactly as name(s) appear(s) on share certificate(s) or by such person(s) are (is)(are) authorized to become registered holder(s) by certificates and documents transmitted herewith.    If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of corporation or other person acting in a fiduciary or representative capacity, please set forth full title and submit herewith evidence of authority to sign. See Instruction 4.

_____
Signature(s) of Owner(s)

Dated    12-12-05

Name(s)    STANLEY SHER
           HELEN SHER
           (Please Print)

Capacity _____
              (See Instruction 4)

Address    161 W. 15th St - 5G
           New York, N.Y.   10011
           (Including Zip Code)

Area Code and Tel No. (Bus.)    (212) 732-7341

Area Code and Tel. No. (Res.)    (212) 242-3086

Tax Identification No. or Social Security No.    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

6

**IMPORTANT**

ALL ORDERING SHAREHOLDERS MUST SIGN HERE

This Letter of Transmittal must be signed below by the registered shareholder(s) exactly as name(s) appear(s) on share certificate(s) or by such person(s) are (is)(are) authorized to become registered holder(s) by certificates and documents transmitted herewith. If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of corporation or other person acting in a fiduciary or representative capacity, please set forth full title and submit herewith evidence of authority to sign. See Instruction.

_Stanley Sokol_
_Judith Sokol_

Signature(s) of Owner(s)

Dated     _December 12, 2005_

Name(s)   _Stanley Sokol_
          _Judith Sokol_
(Please Print)

Capacity _____
(See Instruction 4)

Address   _10 Stewart Place, 6 GW_
          _White Plains, NY 10603_
(Including Zip Code)

Area Code and Tel No. (Bus.) _____

Area Code and Tel. No. (Res.)   _914 - 761 - 5319_

---

| DESCRIPTION OF SHARES TENDERED | | | |
|---|---|---|---|
| Name and Address of Registered Owner(s) | Certificate(s) Enclosed (Attach List, If Necessary) | | |
| | Certificate No. | Class | No. of Shares Tendered |
| Stanley & Judith Sokol 10 Stewart Place 6 GW White Plains, NY 10603 | 515 | A | 5,000 |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Shares Tendered | | 5,000 |

This Letter of Transmittal must be used, according to the procedures set forth in the Offer to Purchase under the caption "The Offer" The instructions included with this Letter of Transmittal must be followed. See Instructions 1 and 4 below.

### PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY

Ladies and Gentlemen:

The undersigned hereby tenders to DuraVest Inc. (the "Purchaser"), the above-described shares of Common Stock, par value $.01 per share (the "Shares") of Bio-Magnetic Therapy Systems, Inc. (the "Company") pursuant to Purchaser's offer to purchase Shares for a price of $0.32 per Share (the "Consideration"), payable on the consummation of the purchase of Shares as contemplated by the Offer, all upon the terms and subject to the conditions set forth in Purchaser's Offer to Purchase, dated November 29, 2005 (the "Offer to Purchase"), receipt of which is hereby acknowledged (which, together with the Offer to Purchase, constitute the "Offer").

Subject to, and effective upon, acceptance for purchase of the Shares tendered herewith in accordance with the terms of the Offer, the undersigned hereby sells, assigns, and transfers to, or upon the order of, the Purchaser all right, title and interest in and to all the Shares tendered hereby (and any and all other Shares or other securities issued or issuable in respect thereof on or after November 29, 2005) and appoints the Purchaser the true and lawful agent and attorney-in-fact of the undersigned with respect to such Shares and any such other Shares (or securities) with full power of substitution (such power of attorney being deemed to be an irrevocable power coupled with an interest), to (a) deliver certificates for such Shares (and any such other Shares or securities), together in any such case with all accompanying evidence of transfer and authenticity, to or upon the order of the Company, (b) present such Shares (and any such other Shares or securities) for transfer on the books of the Company and (c) receive all benefits and otherwise exercise all rights of beneficial ownership of such Shares (and any such other Shares or securities), all in accordance with the terms of the Offer.

3

## DESCRIPTION OF SHARES TENDERED

| Name and Address of Registered Owner(s) | Certificate(s) Enclosed (Attach List. If Necessary) | | |
|---|---|---|---|
| | Certificate No. | Class | No. of Shares Tendered |
| Michael Spiegel 12 Stonewall Ridge Rd Newtown CT 06470 | A51 | B | 1,020 |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Shares Tendered | | 1,020 |

This Letter of Transmittal must be used, according to the procedures set forth in the Offer to Purchase under the caption "The Offer" The instructions included with this Letter of Transmittal must be followed. See Instructions 1 and 4 below.

## PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY

Ladies and Gentlemen:

The undersigned hereby tenders to DuraVest Inc. (the "Purchaser"), the above-described shares of Common Stock, par value $.01 per share (the "Shares") of Bio-Magnetic Therapy Systems, Inc. (the "Company") pursuant to Purchaser's offer to purchase Shares for a price of $0.32 per Share (the "Consideration"), payable on the consummation of the purchase of Shares as contemplated by the Offer, all upon the terms and subject to the conditions set forth in Purchaser's Offer to Purchase, dated November 29, 2005 (the "Offer to Purchase"), receipt of which is hereby acknowledged (which, together with the Offer to Purchase, constitute the "Offer").

Subject to, and effective upon acceptance for purchase of the Shares tendered herewith in accordance with the terms of the Offer, the undersigned hereby sells, assigns, and transfers to, or upon the order of, the Purchaser all right, title and interest in and to all the Shares tendered hereby (and any and all other Shares or other securities issued or issuable in respect thereof on or after November 29, 2005) and appoints the Purchaser the true and lawful agent and attorney-in-fact of the undersigned with respect to such Shares and any such other Shares (or securities) with full power of substitution (such power of attorney being deemed to be an irrevocable power coupled with an interest), to (a) deliver certificates for such Shares (and any such other Shares or securities), together in any such case with all accompanying evidence of transfer and authenticity, to or upon the order of the Company, (b) present such Shares (and any such other Shares or securities) for transfer on the books of the Company and (c) receive all benefits and otherwise exercise all rights of beneficial ownership of such Shares (and any such other Shares or securities), all in accordance with the terms of the Offer.

3

| Name and Address of Registered Owner(s) | Certificate(s) Enclosed (Attach List. If Necessary) | | |
|---|---|---|---|
| | Certificate No. | Class | No. of Shares Tendered |
| G. DEAN YEP + WINNIE S. YEP JOINT TENANTS WITH RIGHTS OF SURVIVAL | A 71 | COMMON | 9,250 |
| | | | |
| | | | |
| | | | |
| | | | |
| | Total Shares Tendered | | 9,250 |

This Letter of Transmittal must be used, according to the procedures set forth in the Offer to Purchase under the caption "The Offer" The instructions included with this Letter of Transmittal must be followed. See Instructions 1 and 4 below.

**PLEASE READ THE ACCOMPANYING INSTRUCTIONS CAREFULLY**

Ladies and Gentlemen:

The undersigned hereby tenders to DuraVest Inc. (the "Purchaser"), the above-described shares of Common Stock, par value $.01 per share (the "Shares") of Bio-Magnetic Therapy Systems, Inc. (the "Company") pursuant to Purchaser's offer to purchase Shares for a price of $0.32 per Share (the "Consideration"), payable on the consummation of the purchase of Shares as contemplated by the Offer, all upon the terms and subject to the conditions set forth in Purchaser's Offer to Purchase, dated November 29, 2005 (the "Offer to Purchase"), receipt of which is hereby acknowledged (which, together with the Offer to Purchase, constitute the "Offer").

Subject to, and effective upon, acceptance for purchase of the Shares tendered herewith in accordance with the terms of the Offer, the undersigned hereby sells, assigns, and transfers to, or upon the order of, the Purchaser all right, title and interest in and to all the Shares tendered hereby (and any and all other Shares or other securities issued or issuable in respect thereof on or after November 29, 2005) and appoints the Purchaser the true and lawful agent and attorney-in-fact of the undersigned with respect to such Shares and any such other Shares (or securities) with full power of substitution (such power of attorney being deemed to be an irrevocable power coupled with an interest), to (a) deliver certificates for such Shares (and any such other Shares or securities), together in any such case with all accompanying evidence of transfer and authenticity, to or upon the order of the Company, (b) present such Shares (and any such other Shares or securities) for transfer on the books of the Company and (c) receive all benefits and otherwise exercise all rights of beneficial ownership of such Shares (and any such other Shares or securities), all in accordance with the terms of the Offer.

3

**IMPORTANT**

**All TENDERING SHAREHOLDERS MUST SIGN HERE**

This Letter of Transmittal must be signed below by the registered shareholder(s) exactly as name(s) appear(s) on share certificate(s) or by such person(s) are (is)(are) authorized to become registered holder(s) by certificates and documents transmitted herewith. If signature is by a trustee, executor, administrator, guardian, attorney-in-fact, officer of corporation or other person acting in a fiduciary or representative capacity, please set forth full title and submit herewith evidence of authority to sign. See Instruction 4.

_____
Signature(s) of Owner(s)

Dated    12/22/05

Name(s)    G. DEAN YEP
           WINNIE S. YEP
                        (Please Print)

Capacity _____
                        (See Instruction 4)

Address    2 CARLYLE DRIVE
           GLEN COVE, NY 11542
                        (Including Zip Code)

Area Code and Tel No. (Bus.)     (212) 239 5599

Area Code and Tel. No. (Res.)    (516) 674 8972

Tax Identification No. or Social Security No.    113 - 40 - 2103

6