UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
DURAVEST, INC.,

                                        Plaintiff,

          -against-

VISCARDI, AG; WOLLMUTH MAHER & DEUTSCH, LLP;     Docket No.: 07-Civ-10590(JR)
MASON H. DRAKE, ESQ., BRUCE O'DONNELL, CPA,
BRUCE O'DONNELL CPA/PFS, P.A., BIOMEDICAL
CONSULTANT SL, RICHARD MARKOLL, and
ERNESTINE BINDER MARKOLL,

                                        Defendants.
------------------------------------------------------------------------x

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT VISCARDI'S MOTION PURSUANT TO
12(b)(1); 12(b)(6), and 9(b); AND IN OPPOSITION TO
DEFENDANTS WMD, and MASON DRAKE's
MOTION PURSUANT TO 12(b)(1) AND 28 U.S.C.§1367**

RAS ASSOCIATES, PLLC
Attorneys for Plaintiff
Ten Bank Street
White Plains, N.Y. 10606
(914) 289-2909

Luis F. Ras, Esq. (LFR 9989)

TABLE OF CONTENTS

TABLE OF AUTHORITIES  ................................................................................. ii

BACKGROUND ................................................................................................. 1

STATEMENT OF FACTS  ................................................................................. 3

ARGUMENT  ..................................................................................................... .6


I.      DEFENDANTS' MOTION MUST BE DENIED BECAUSE PLAINTIFF'S 33
        PAGE COMPLAINT, COVERING 224 PARAGRAPHS OF ALLEGATIONS,
        CONTAINS SUFFICIENT DETAIL, AND FOR PURPOSES OF THIS MOTION,
        ALL OF PLAINTIFF'S CONTENTIONS CONTAINED IN THE COMPLAINT
        MUST BE ACCEPTED AS TRUE .................................................................. ..6

II.     THE DEFENDANT VISCARDI OFFERS NO SUPPORT FOR ITS CONTENTIONS
        THAT PLAINTIFF'S COMMON LAW NEGLIGENCE, FRAUD, NEGLIGENT
        MISREPRESENTATION AND 1934 ACT RULE 10(b)(5) CLAIMS 'SHOULD BE
        DISMISSED……………………………………….. ………………………………….8

III.    THIS COURT CAN EXERCISE PERSONAL JURISDICTION OVER VISCARDI
        PURSUANT TO EITHER CPLR 301, OR, ALTERNATIVELY CPLR 302………...10

        A.  VISCARDI is Subject to General Personal Jurisdiction
            Because It Does Business in New York………………………………..…10

        B.  VISCARDI Transacted Business in New York, and is Subject to Long
            Arm Personal Jurisdiction Pursuant to CPLR 302(a)(1) and/or CPLR
            302(a)(3)……………………………………………………………..…..13

            a.  The Transaction Underlying this Case Confers Long Arm
                Jurisdiction over VISCARDI Pursuant to CPLR 302(a)(1)'s
                "transacting business" in New York Standard and/or CPLR
                302(a)(3) Because it Involved the Sale of a Closely Held
                Company Which Did Business in New York and Had a Substantial
                Amount of New York Shareholders, and VISCARDI Derived
                Substantial Commission Revenue from the Transaction when the
                New York Share Subscription Agreements were Executed……..13

            b.  VISCARDI is also Subject to Long Arm Jurisdiction under CPLR
                302(a)(1) Because Its Contract with BMTS Involved the Provision
                of Services Inside the State ………………………………………...…17

IV.    THIS COURT HAS SUPPLEMENTAL AND PENDENT JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS AGAINST VISCARDI, WMD, AND DRAKE, AND COULD ALSO EXERCISE DIVERSITY JURISDICTION ……..…………………………………………………..…..………………………………18

V.    VISCARDI'S ARGUMENT RELATING TO 15 U.SC.§77(*l*) IS PREMISED UPON AN INCORRECT ASSUMPTION…………………………………………………22

VI.    VISCARDI'S ARGUMENT RELATING TO PSLRA PRECLUSION OF RICO CLAIMS CONCEDES PLAINTIFF'S *PRIMA FACIE* PLEADING OF SECURITIES LAW CLAIMS…………………………………………………………………..23

CONCLUSION……………………………………………….................. ................................ 24

**TABLE OF AUTHORITIES**

**CASES**

Achtman v. Kirby, McInerney & Squires, LLP, 404 F.Supp.2d 540
(S.D.N.Y. 2005)………………………………………………………………....19

Alderman v. Pan Am World Airways, 169 F.3d 99 (2d Cir. 1999)……………….19, 20

Briarpatch, Ltd., LP v. Phenix Pictures, Inc., 373 F.3d 296 (2d Cir. 2004)……………18

Bulova Watch Co. Inc. v. K. Hattori & Co., Ltd., 508 F.Supp.1322
(E.D.N.Y. 1981)………………………………………………………………10

Bryant v. Finnish National Airlines, 15 N.Y.2d 426, 260 N.Y.2d 625,
208 N.E.2d 439 (1965)……………………………………………………………11

Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)….……….6

Cosmas v. Hassett, 886 F.2d 8, 12 (2d Cir.1989)……………………………….…..6

Credit & Fin Corp. v. Warner & Swasey Co., 638 F.2d 563, 566 (2d Cir. 1981)……..9

Daniel v. American Board of Emergency Medicine, 988 F.Supp. 127 (1997)……...10

Deutsche Bank Securities, Inc. v. Montana Board of Investments,
21 A.D.3d 90, 797 N.Y.S.2d 439 (1st Dept. 2005)……………………………14

Druck Corp. v. Macro Fund (U.S.) Ltd., 102 Fed.Appx. 192 (2d Cir. 2004)…………15

Fisk v. SuperAnnuities, Inc., 927 F. Supp. 718 (S.D.N.Y. 1996)…………………….23

Fischbarg v. Doucet, 38 A.D.3d 270, 832 N.Y.S.2d 164 (1ˢᵗ Dep't 2007)…………….14

Frummer v. Hilton Hotels International, Inc., 19 N.Y.2d 533, 536,
281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 853 (1967)……………………………12

Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir.1980)………………………..……..6

GMAC Commercial Credit, LLC v. Dillard Dept Stores, Inc.,
198 F.R.D. 402 (2001)……………………………………………………12

Gustafson v. Alloyd Co., 513 U.S. 561 (1995)……………………………………….23

Hill York Corp. v. American International Franchises, Inc.,
448 F.2d 680 (5ᵗʰ Cir. 1971)……………………………………………...23

Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229
        81 L.Ed.2d 59 (1984)……………………………………………………..….7

Hoffritz for Cutlery, Inc. v. Amajac., Ltd., 763 F.2d 55, 58 (2d. Cir. 1985)………….11

In re: Init. Pub Offering Securities Litigation, 241 F.Supp.2d 281
        (E.D.N.Y. 2003) ……………………………………………………….……9

In re: Scholastic Corp Securities Litigation, 252 F.3d 63, 72 (2d Cir. 2001)………....9

In re Tower Automotive Securities Litigation, 483 F.Supp.2d 327
        (S.D.N.Y. 2007)……………………………………………………………......9

Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181 (2d Cir. 1998)……………………….13

Lane v. Vacation Charters, Ltd., 750 F.Supp. 120, 125 (S.D.N.Y. 1990)……………12

Liberatore v. Calvino, 293 A.D.2d 217, 742 N.Y.S.2d 291 (1st Dep't 2002)…………17

Liquid Carrier Corp. v. American Marine Corp., 375 F.2d 951, 953
        (2d Cir. 1967)………………………………………………………………12

Maez v. Mountain States Tel. & Tel., Inc., 54 F.3d1488, 1496 (10th Cir. 1995)………...7

Nowak v. Ironworkers Local 6 Pension Fund,
        81 F.3d 1182 (2d Cir. 1996)………………………………………………20

Ouaknine v. MacFarlane, 897 F.2d 75 (2d Cir. 1990)………………………………….9

Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve
        City Apartments, Ltd., 147 A.D.2d 327, 543 N.Y.S.2d 978 (1st Dep't 1989)…16

Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 308 N.Y.S.2d 337,
        256 N.E.2d 506 (1970)…………………………………………………………14

Phonometrics, Inc. v. Hospitality Franchise System, Inc., 203 F.3d 790
        (Fed. Cir. 2000)………………………………………………………….......7

Promisel v. First American Artificial Flowers, 943 F.2d 251 (2d Cir. 1991)…………..18

Rivera v. Ndola Pharmacy Corp., 497 F.Supp.2d 381(E.D.N.Y. 2007)………………18

Scanapico v. Richmond, Fredericksburg & Potomac R.R. Co.,
        439 F.2d 17 (2d Cir 1970)…………………………………………………11

Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90………………….......6

Shaw v. Digital Equipment Corp., 82 F.2d 1194, 1225 (1st Cir. 1996)......................9

Schneider v. J & C Carpet, 23 A.D.2d 103, 258 N.Y.S.2d 717 (1st Dep't 1965).......17

Sohns v. Dahl, 392 F.Supp. 1208, 1219 (D.C.Va.1975)......................................23

Strand v. Diversified Collection Service, Inc., 380 F.3d 316 (8th Cir. 2004)..............7

United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130,
        16 L.Ed.2d 218 (1966)......................................................................18, 19

Wichita Federal Sav. and Loan Ass'n v. Comark, 586 F.Supp. 940 (S.D.N.Y. 1984).17

Wisconsin Dept of Corrections v. Schact, 524 U.S. 381, 387,
        118 S.Ct. 2047, 141 L.Ed.2d 364 (1998)..............................................18

Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88 (2d Cir. 2000)........................12

## RULES AND STATUTES

CPLR 301................................................................................................10, 12

CPLR 302(a)(1)........................................................................................13, 14

CPLR 302(a)(3)..............................................................................................13

Fed.R.Civ.P. 8...............................................................................................8, 9

Fed.R.Civ.P. 9(b) ............................................................................................8

Fed.R.Civ.P. 12...............................................................................................7

15 U.S.C.§77d(2)............................................................................................23

15 U.S.C. §77(l)..............................................................................................23

28 U.S.C. §1367.............................................................................................18

## TREATISES

6 A.L.R. Fed. 536 § 2[a]..................................................................................23

## BACKGROUND

This Memorandum of Law and attached documentation are respectfully submitted in opposition to the motions of Defendant Viscardi, A.G.'s ("Defendant VISCARDI"), Wollmuth Maher & Deutsch ("WMD"), and Mason Drake ("DRAKE") within Motion to dismiss this action pursuant to F.R.Civ.P 12(b)(1), 12(b)(6), and 9(b). Plaintiff's Complaint and Jury Demand ("Complaint") was filed on November 21, 2007.

For the purposes of the within Motion, Defendants concede, as they must, that all allegations set forth in Plaintiff's Complaint and Jury Demand are to be accepted as true, and all reasonable inferences contained therein are to be drawn in favor of Plaintiff.  As discussed more fully below, Plaintiff respectfully submits that Defendants' within Motions must be denied, as the factual assertions set forth in the Complaint, together with the additional submission herein, are more than sufficient to establish personal jurisdiction over VISCARDI and permit this Court to hear this case; and also set forth a *prima facie* basis to establish claims against VISCARDI sounding in common law negligence, negligent misrepresentation, fraud, RICO, and violation of the Securities Acts of 1933 and 1934.

As the Court will likely recall, a similar Motion of Defendants BRUCE O'DONNELL, C.P.A., and BRUCE O'DONNELL, C.P.A./PFS [grounded on F.R.Civ.P. 12(b)(1), 12(b)(2), and 9(b)] alleging the purported insufficiency of Plaintiff's Complaint as regards the allegations sounding in negligence and common law fraud, has been made and denied in regards to such claims.

Defendants Wollmuth, Maher & Drake ("WMD") and Mason Drake ("Drake")

1

do not allege that the allegations in the Complaint are insufficient in any way, but, rather, that this Court should decline to exercise its jurisdiction over the State law claims asserted against them.   As shall be fully discussed in Plaintiff's submission, such a position is untenable since the claims against WMD and DRAKE concern their representation of Plaintiff in the course of the very same business dealings that are at the center of this action.   Plaintiff respectfully submits that this Court has the authority to exercise supplemental jurisdiction over the claims against Defendants WMD and DRAKE, and should.   Plaintiff should not be forced to separately litigate the claims against these Defendants in another forum, as such a situation would not be conducive to a full and fair examination of the truth of the facts which are at the core of this case; would not be in the interests of judicial economy; and would place an undue burden upon Plaintiff to concurrently litigate in two courts.

## STATEMENT OF FACTS

This is an action which variously seeks damages against several defendants based on violations of federal securities laws [15 U.S.C. §77(l) and the Securities and Exchange Act of 1933 §12(2) and the Securities and Exchange Act of 1934, Rule 10(b)(5)]; the federal civil RICO statute [18 U.S.C. §§1962(c), and (d)]; and upon state common law torts of fraud, negligence, and conversion. The various Defendants were involved in differing ways with the facts that form the basis of the claims asserted herein, all leading up to and stemming from the Plaintiff's purchase of Bio-Medical Technologies, Inc. ("BMTS"), and the unlawful transfer of post-purchase operating funds provided by Plaintiff, to Defendants Richard Markoll and Ernestine Binder Markoll.

Defendants Wollmuth, Maher, & Deutsch, LLP, and Mason Drake, Esq., have answered.  They served as counsel for Plaintiff on the transaction, and are alleged to have failed in their duties of representation to Plaintiff, but-for which the transaction would not have been consummated. All other Defendants except Defendants, BIOMEDICAL CONSULTANT, S.L., RICHARD MARKOLL and ERNESTINE BINDER MARKOLL ("MARKOLL Defendants") have appeared, but not yet answered. The undersigned has been advised that there has been an attempt to serve the MARKOLL Defendants, and that they are attempting to avoid service of process. Steps have been taken to re-serve them and work around their attempts to avoid service.  It is expected that such service shall be completed shortly.

The O'DONNELL Defendants have previously moved to dismiss the portions of the Complaint asserting claims against them.  The Court will recall that their motion was decided by Memorandum Order dated April 11, 2008, which denied those

portions of the motion related to common law fraud, common law negligence, and negligent misrepresentation claims.   They have still not answered.

The Complaint asserts that Defendant VISCARDI was and is an investment bank that advised BMTS, marketed BMTS shares for sale, solicited buyers (Complaint ¶s 13-21, 106-118),[1] and made knowingly false and fraudulent or, at the very least, negligent and misleading representations regarding the individual professional backgrounds and criminal histories of key BMTS officers (Complaint ¶s 65-73); regarding the intellectual property right claimed to have been the property of BMTS (Complaint ¶s 74-79); regarding the financial condition of BMTS and its value as a going concern (Complaint ¶s 82-85); regarding loans and financial obligations that BMTS either had or would later claim to have which were not disclosed (Complaint ¶s 86-88); and that such representations were made by the use of telephone and wire services (Complaint ¶89-91).   VISCARDI is also alleged to have conspired with the MARKOLL Defendants as well as the O'DONNELL Defendants to conceal and/or misrepresent the true financial condition of BMTS, and its lack of suitable clinical studies (Complaint ¶s 144-147).

The Complaint further alleges that Plaintiff justifiably relied upon such representations (Complaint ¶s 116, 167-168 et seq., and 215); and that contrary to such representations, BMTS was or little or no actual value as a going concern (Complaint ¶s 116, and 106-118 generally) in that BMTS, INC. held little or no protectable intellectual property interests (Complaint ¶s117, and 106-118); in that its profitability, if any, was declining prior to the Purchase so as to render it a money-losing enterprise at or shortly after the Purchase (Complaint ¶s 117, and 106-118); in that

---

[1] Paragraph references are made herein to the Complaint, which has been attached as Exhibit "A" to the Declaration of VISCARDI's counsel on this motion.

there were little or no clinical studies which supported the business products sold by BMTS, INC. and its subsidiaries at the time of Purchase (Complaint ¶s 141-147); in that certain of its key officers had criminal convictions affecting their professional reputations which would and did affect the reputation of the company (Complaint, ¶s 65-73, 106-118).

VISCARDI is alleged to have transacted business in the State of New York, entered into contracts in the State of New York, solicited business in the State of New York, and derived substantial profit from its activities involving the State of New York (Complaint ¶s 12-21).   As set forth in the accompanying Affidavits of Plaintiff's counsel and Duravest's Chief Executive Officer; Duravest's Chief Executive Officer, Friedrich-Wilhelm Gobel has a substantial history as a New York City investment banker **(Exhibit "C" to Plaintiff's counsel's Declaration)**, and maintains a regular presence in New York with a permanent business address and telephone number at 111 Broadway, New York, New York **(Exhibit "A to Plaintiff's counsel's Declaration)** to solicit and serve investment banking business for VISCARDI.

The Complaint also asserts that BMTS was authorized to transact business in the State of New York, and did conduct substantial business in the State of New York (Complaint ¶ 4); and that it was a closed corporation with a substantial amount of New York domiciled shareholders (Complaint ¶ 5).

<u>POINT I</u>

**VISCARDI'S MOTION MUST BE DENIED BECAUSE PLAINTIFF'S 33 PAGE COMPLAINT, COVERING 224 PARAGRAPHS OF ALLEGATIONS, CONTAINS SUFFICIENT DETAIL, AND FOR PURPOSES OF THIS MOTION, ALL OF PLAINTIFF'S CONTENTIONS CONTAINED IN THE COMPLAINT MUST BE ACCEPTED AS TRUE**

It is well settled that in considering a motion to dismiss for failure to state a claim, the court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof. <u>Geisler v. Petrocelli</u>, 616 F.2d 636, 639 (2d Cir.1980). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In order to prevail on a motion to dismiss, the moving party must demonstrate beyond doubt that the [non-moving party] can prove no set of facts in support of his claim which would entitle him to relief. <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); <u>Dahlberg v. Becker</u>, 748 F.2d 85, 88 (2d Cir. 1984), cert. denied, 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A court must accept as true the factual allegations accompanying the complaint and draw all reasonable inferences in favor of the non-moving party. <u>Cosmas v. Hassett</u>, 886 F.2d 8, 12 (2d Cir.1989).

As set forth below, the Defendant VISCARDI's within Motion must fail because at its core, it is predominantly based on its denials of allegations in the Complaint rather than deficiencies in the Complaint. At this early stage of the litigation, even before their Answer has been filed or one discovery document has been exchanged by any defendant, Plaintiff is entitled to set forth, as it has, good faith assertions that suffice to state *prima facie* claims. Indeed, it is indicative of the specificity of the Complaint that Defendant VISCARDI has been able to identify

specific documentation that Plaintiff avers they fraudulently generated and exchanged.[2] This, in itself, demonstrates that the Complaint (33 pages in length, and covering 220 paragraphs of details) can easily withstand a motion on its sufficiency. It is not necessary for a Plaintiff to try and win an entire case based on details provided in its Complaint. Rather, a complaint must merely contain enough detail to permit a defendant to answer. Phonometrics, Inc. v. Hospitality Franchise System, Inc., 203 F.3d 790, 794 (Fed. Cir. 2000)(Rule 12(b)(6) requires no more). It has been held that there is a powerful presumption against dismissing pleadings for failing to state a cognizable claim for relief. Maez v. Mountain States Tel. & Tel., Inc., 54 F.3d1488, 1496 (10th Cir. 1995); Strand v. Diversified Collection Service, Inc., 380 F.3d 316 (8th Cir. 2004). A claim will only be dismissed under Rule 12(b)(6) if it appears beyond doubt that the pleader can prove no set of facts in support of the claim that would entitle the pleader to relief. Hishon v. King & Spalding, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

---

[2] A copy of the VISCARDI false "reps and warranties" letter of November 28, 2005 [referenced at VISCARDI Memorandum of Law, p. 3]. It falsely claimed, *inter alia*, that there were no related party transactions, that there were no claims pending against the company, and that the Company owned all of the intellectual property it used in its business.

<u>POINT II</u>

**DEFENDANT VISCARDI OFFERS NO SUPPORT FOR ITS
CONTENTIONS THAT PLAINTIFF'S COMMON LAW NEGLIGENCE,
FRAUD, NEGLIGENT MISREPRESENTATION AND
1934 ACT RULE 10(b)(5) CLAIMS 'SHOULD BE DISMISSED'**

VISCARDI claims that Plaintiff's fraud, common law negligence, and negligent misrepresentation, and securities law claims should be dismissed because they are purportedly insufficiently plead.  This is despite the fact that this Court has already ruled on the sufficiency of the similarly situated common law negligence, fraud, and negligent misrepresentation claims with regard to Plaintiff's claims against the O'DONNELL Defendants, declining to dismiss such claims in its recent Memorandum Order of April 11, 2008.

Despite having the dual procedural benefit of having the O'DONNELL Defendants' similar motion precede it, and having provided no discovery nor even an Answer, VISCARDI still offers no support for its request to dismiss common law negligence or negligent misrepresentation claims, except to apparently mistakenly premise its request for dismissal of such claims upon F.R.Civ.P. Rule 9(b).[3]  To the extent that VISCARDI also attempts to argue that Plaintiff's federal securities law violations claims are "insufficiently" plead by mentioning these claims in the context of its Rule 9(b) argument, such argument, like those relating to the other categories of aforementioned claims, are similarly misguided.  Rule 9(b) applies to fraud claims, and does <u>not</u> create any special pleading requirement for common law negligence claims, or negligent misrepresentation claims.

Rule 9(b) sets forth the pleading requirements of fraud.  Courts in the Second Circuit have uniformly held that Rule 9(b) does not abrogate the notice pleading

requirements of F.R.Civ.P. Rule 8.  In re Tower Automotive Securities Litigation, 483 F.Supp.2d 327 (S.D.N.Y. 2007); Ouaknine v. MacFarlane, 897 F.2d 75 (2d Cir. 1990)(Rule 9(b) must be read together with Rule 8(a) which requires only a 'short and plain statement' of the claims for relief"); Credit & Fin Corp. v. Warner & Swasey Co., 638 F.2d 563, 566 (2d Cir. 1981); In re: Init. Pub Offering Securities Litigation, 241 F.Supp.2d 281, 327 (E.D.N.Y. 2003)(These two rules have been read together to mean that a plaintiff need not plead evidentiary details).  The Second Circuit has stated that it does not require the pleading of detailed evidentiary matters in securities litigation.  In re: Scholastic Corp Securities Litigation, 252 F.3d 63, 72 (2d Cir. 2001); Shaw v. Digital Equipment Corp., 82 F.2d 1194, 1225 (1st Cir. 1996)(stating that 'in determining the adequacy of a complaint under Rule 9(b), we cannot hold plaintiffs to a standard that would effectively require them, pre-discovery, to plead evidence").

Plaintiff's fraud claims have been plead with particularity, specifying the time, method, and contents of VISCARDI's false representations [¶ 80-87, 89-91, 106-118, 162-170].  This is sufficient to set forth a *prima facie* claim pursuant to Rule 9(b).

Finally, VISCARDI's assertion that the Complaint fails to allege the element of justifiable reliance required for fraud and negligent misrepresentation claims (See Memorandum, p. 17), is misplaced.  Plaintiff's justifiable reliance claims are set forth in the Complaint, at ¶s 106-118 – see also, reliance referenced at ¶s 116, 167, 168, and 215, which paragraphs incorporate prior allegations by reference.

---

[3] VISCARDI's Memorandum, at pages 16-17 indicates that it argues for the dismissal of, *inter alia*, [common law] negligence claims, based on F.R.Civ.P. Rule 9(b).

<u>POINT III</u>

**THIS COURT CAN EXERCISE PERSONAL JURISDICTION
OVER VISCARDI PURSUANT TO EITHER
CPLR 301, OR, ALTERNATIVELY CPLR 302**

VISCARDI's claim that this Court is incapable of exercising personal jurisdiction over it in this case ignores a host of facts that tie both VISCARDI itself, and the transaction which gives rise to this suit, to the State of New York. As discussed below, VISCARDI does business in the State of New York pursuant to CPLR 301, through the permanent presence of its CEO and Senior Partner, Friedrich-Wilhelm Gobel at 111 Broadway, New York, New York. Alternatively, it is still subject to *in personam jurisdiction* in this case pursuant to New York's long arm statute [i.e. CPLR 302] because the legal controversy herein is related to and arises out of VISCARDI's contacts with New York – specifically, a business deal that involved a company [i.e. BMTS] that conducted substantial business in New York.

**A.  VISCARDI is Subject to General Personal Jurisdiction
      Because It Does Business in New York**

CPLR 301 confers personal jurisdiction over unlicensed foreign corporations that are doing business in New York. <u>Bulova Watch Co. Inc. v. K. Hattori & Co., Ltd.</u>, 508 F.Supp.1322 (E.D.N.Y. 1981). It has been held that in order to satisfy the "doing business" standard, it is sufficient that a foreign corporation has an agent or employee who solicits business continuously and systematically. <u>Daniel v. American Board of Emergency Medicine</u>, 988 F.Supp. 127 (1997). The traditional indicia to which courts refer in deciding whether a foreign corporation is doing business in New York under this approach include (1) the existence of an office in New York, (2) the solicitation of business in New York, (3) the existence of bank accounts or other property in New York, and (4) the presence of employees of the foreign defendant

in New York.  Hoffritz for Cutlery, Inc. v. Amajac., Ltd., 763 F.2d 55, 58 (2d. Cir. 1985).

Plaintiff respectfully submits that VISCARDI is connected to New York through the

investment banking activities of its CEO and Senior Partner, Friedrich-Wilhelm Gobel,

in at least three of the four respects noted above.

Though one can find no mention of same in VISCARDI's submission,

VISCARDI's Chief Executive Officer Friedrich-Wilhelm Gobel (without question an

employee and agent of VISCARDI) regularly solicits investment banking business in

the State of New York for the VISCARDI firm.  He maintains an office and phone

contact for investment banking business at 111 Broadway, 12th floor, New York, New

York 10006, with a website directly linking itself to VISCARDI's own corporate website

(Declaration of Plaintiff's counsel, **Exhibit "A"**).  The same firm that Mr. Goebel uses as

his New York base, has a self-described broker/dealer arm SGI, LLC, that is organized

in New York since 1998, and headquartered at the same 111 Broadway offices in

Manhattan (Declaration of Plaintiff's counsel, **Exhibit "B"**).

VISCARDI's website makes specific mention of Mr. Gobel's experience as a

Partner at New York investment bank Cowen & Co. (Declaration of Plaintiff's

counsel, **Exhibit "C"**); and also as a Managing Director of Hypo Securities, Inc.,

stated to be a New York investment bank (Declaration of Plaintiff's counsel, **Exhibit

"C"**).  Not surprisingly, VISCARDI's website also trumpets a report on american capital

markets (Declaration of Plaintiff's counsel, **Exhibit "K"**).

It is no longer a matter of doubt that a foreign corporation can do business in

New York through its employees.  Bulova, supra, at 1333;  Bryant v. Finnish National

Airlines, 15 N.Y.2d 426, 260 N.Y.2d 625, 208 N.E.2d 439 (1965); Scanapico v. Richmond,

Fredericksburg & Potomac R.R. Co., 439 F.2d 17 (2d Cir 1970).  Clearly, as VISCARDI's

CEO and self-described Senior Partner Friedrich-Wilhelm Gobel, maintains a business

address and telephone number just down the street from this courthouse, to engage in investment banking activities with a company approved web link to VISCARDI, VISCARDI is conducting business in New York through its employees.  GMAC Commercial Credit, LLC v. Dillard Dept Stores, Inc., 198 F.R.D. 402 (2001)(corporate defendant amenable to personal jurisdiction where it maintained office and place of business in New York).

   VISCARDI's presence in the State of New York can be measured both by the existence of the permanent New York presence of its CEO, its CEO's solicitation of business in New York; and by the very nature of the deal that is the subject of this action.   Plaintiff respectfully submits that the presence of VISCARDI's CEO to solicit investment banking business with the blessing of VISCARDI, by itself, confers this Court with personal jurisdiction over VISCARDI pursuant to CPLR 301, as it is evidence that VISCARDI "does business" and operates in New York with a fair measure of permanence and continuity.  Frummer v. Hilton Hotels International, Inc., 19 N.Y.2d 533, 536, 281 N.Y.S.2d 41, 43, 227 N.E.2d 851, 853 (1967); Liquid Carrier Corp. v. American Marine Corp., 375 F.2d 951, 953 (2d Cir. 1967).

   As its CEO, Mr. Gobel is clearly the agent of VISCARDI, and VISCARDI's New York presence must be deemed to include such activities, which were for the benefit of VISCARDI, and with its knowledge and consent.   An individual who is none other than a CEO, ipso facto, is dedicated to promoting the interests of his company.  Thus, his is a permanent presence sufficient to confer "doing business" jurisdiction.  Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88 (2d Cir. 2000)(presence permanently dedicated to promoting a defendant's interests confers "doing business" jurisdiction); Lane v. Vacation Charters, Ltd., 750 F.Supp. 120, 125 (S.D.N.Y. 1990).

It is well settled that a party doing business in New York may be sued in New York on any claim, regardless of whether or not the claim arose in New York or from the party's contacts with New York.  Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181 (2d Cir. 1998).  Plaintiff respectfully submits that the presence of VISCARDI's CEO, with a permanent office in New York for the solicitation and service of investment banking business, of the type that caused the very damages complained of herein, constitutes a sufficient New York presence for VISCARDI to be "doing business" in New York.

**B. VISCARDI Transacted Business in New York, and is Subject to Long Arm Personal Jurisdiction Pursuant to CPLR 302(a)(1) and/or CPLR 302(a)(3)**

**a. The Transaction Underlying this Case Confers Long Arm Jurisdiction over VISCARDI Pursuant to CPLR 302(a)(1)'s "transacting business" in New York Standard and/or CPLR 302(a)(3) Because it Involved the Sale of a Closely Held Company Which Did Business in New York and Had a Substantial Amount of New York Shareholders, and VISCARDI Derived Substantial Commission Revenue from the Transaction when the New York Share Subscription Agreements were Executed.**

It is undisputed that VISCARDI chose to be a central participant in the marketing and sale of BMTS.   By the terms of its own contract (attached as Exhibit A to the VISCARDI Thatig Affidavit), VISCARDI stood to earn millions of dollars in commissions from the transaction (5% of the transaction value).[4]   Moreover, as summarized below, in Plaintiff's Statement of Facts, and in Plaintiff's counsel's Declaration in opposition to the within Motion, the sale of BMTS was a business transaction with New York connections because VISCARDI contracted to promote, analyze, solicit offers for, and sell  BMTS - a privately held company that had been licensed to do business in New York; had otherwise engaged in substantial business in New York; and also had a substantial amount of New York domiciled shareholders.

Significantly, the deal at the crux of this case could not be consummated without first obtaining the consent and signatures of sixteen (16) New York domiciled shareholders on Share Subscription Agreements (Plaintiff's counsel's Declaration **Exhibit "J"**).  The Agreements were discussed with them, transmitted to them in New York by mail and/or fax, and transmitted back by these shareholders.

In New York, long arm jurisdiction has been upheld against foreign corporations in matters relating to their transaction of business in New York where the transaction of business was conducted solely by phone, fax, and e-mail.  <u>Fischbarg v. Doucet</u>, 38 A.D.3d 270, 832 N.Y.S.2d 164 (1st Dep't 2007)(defendant who transacted business by telephone calls to New York in relation to matters involving fee dispute giving rise to case was subject to long arm jurisdiction).  Indeed, New York's CPLR 302(a)(1)'s long arm jurisdiction provisions do not require any physical appearance in New York State by a defendant in connection with the transaction at issue.  <u>Parke-Bernet Galleries, Inc. v. Franklyn</u>, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970)(California defendant held subject to suit in New York over claims related to out of state telephone participation in auction – call constituted purposeful activity  in state).  The New York Court of Appeals in <u>Parke-Bernet</u>, *supra*, held that:

> "in this day of instant long range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State."

<u>Id.</u> At 17.

In regard to the particular corporate purchase transaction that is at the core of this case, share Subscription Agreements (**Exhibit "J"** to Plaintiff's counsel's

---

[4] VISCARDI's exact earnings from this transaction are unknown at this time.  It is believed to be approximately $500,000.00 and could be greater.

Declaration) for the sale of this closed corporation were sent out to sixteen (16) New York domiciled shareholders for execution in order to consummate the transaction, giving rise to the damages claimed herein.  The names and addresses of the shareholders are listed at paragraph 17 of the Affidavit.  Transactions (such as the tender of shares herein) involving the transfer of assets in New York, even though accomplished by electronic means with the assistance of a long arm defendant outside New York  have been found to be sufficient to confer jurisdiction.  Deutsche Bank Securities, Inc. v. Montana Board of Investments, 21 A.D.3d 90, 797 N.Y.S.2d 439 (1st Dept. 2005)(Defendant Montana government entity that made deal for Pennzoil corporate bonds via electronic trade ticket consummated in one day was subject to long arm jurisdiction).  The requisite transaction of business by the nonresident defendant within the forum may consist of such activity on his part as engaging in preliminary negotiations, or in subsequent acts in furtherance thereof, the issue turning, in essence, on the totality of defendant's activities within the forum.  Druck Corp. v. Macro Fund (U.S.) Ltd., 102 Fed.Appx. 192 (2d Cir. 2004)(court considered defendant foreign investment solicitor's activities in soliciting investment in New York – activities consisted of exchanging an "Offering Memorandum, subscription information, and other phone, mail, and electronic communications; all of…[which]… led [Plaintiff]…to make a $5 million investment in defendants' offshore fund (whose activities are the subject of the underlying litigation").

        As discussed in the Statement of Facts herein; and in the accompanying Affidavits of the undersigned and Duravest's Chief Executive Officer Hendrik Hammje, BMTS also conducted substantial business activities in the State of New York; solicited business in the State of New York; generated sales of its Pulsed Signal Technology ("PST") product for both human and veterinary use in the State of New

York; and indeed has been licensed to transact business in the State of New York.  It had also been a party to lawsuits in the State of New York, based on what is now known to have been the fraudulent conduct of the Markoll Defendants, and whose resulting potential liabilities were also fraudulently underreported by both VISCARDI and the O'DONNELL DEFENDANTS.  Indeed, Plaintiff herein asserts that among the fraudulent, misleading, and/or negligent misrepresentations by Defendant VISCARDI, the O'DONNELL Defendants, and the MARKOLL Defendants herein, were misrepresentations related to the amount and value of existing litigation liability claim exposure to BMTS prior to the sale [i.e. the Heller claim – See Complaint ¶s 150 et seq.] prior to the purchase.  Matters in dispute in a subsequent litigation (where jurisdiction is challenged) that, in turn, relate to prior litigation in this State have been cited as relevant contacts with New York for the purposes of establishing long arm jurisdiction.  Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments, Ltd., 147 A.D.2d 327, 543 N.Y.S.2d 978 (1st Dep't 1989)(calls related to settlement of a New York litigation were relevant contacts in fee dispute case which constituted active projection into New York).

Given VISCARDI's presence in New York, it is no coincidence that VISCARDI represented a small firm [i.e. BMTS] that had a substantial amount of its shareholders domiciled in New York; and that was licensed to transact business in the State of New York as Bio-Magnetic Therapy Systems, Inc.; and that had conducted substantial business with companies based in Long Island - Magnetic Treatment Medical Services, P.C., resulting in litigation in the State of New York.  To consummate the deal, numerous Share Subscription Agreements had to be sent to and signed in New York by the aforementioned New York domiciled shareholders.

Given the above, it can hardly be denied that VISCARDI's agreement to market and find buyers for a closed corporation, BMTS, was a purposeful transaction sufficient to allow VISCARDI to know that acts would have to be done to consummate the transaction in New York. <u>Wichita Federal Sav. and Loan Ass'n v. Comark</u>, 586 F.Supp. 940 (S.D.N.Y. 1984)(a defendant may be found to have engaged in a purposeful transaction when the contract calls for the plaintiff to perform activities in New York for the benefit of the defendant); <u>Schneider v. J & C Carpet</u>, 23 A.D.2d 103, 258 N.Y.S.2d 717 (1st Dep't 1965).  VISCARDI benefitted from the sale by charging a substantial commission.

**b. VISCARDI is also Subject to Long Arm Jurisdiction under CPLR 302(a)(1) Because Its Contract with BMTS Involved the Provision of Services Inside the State**

VISCARDI's contract with BMTS allowed it to charge a commission upon the sale of the closed corporation – BMTS.   The sale of BMTS involved procuring a buyer for the negotiation, acceptance, and execution of share subscription agreements with sixteen (16) New York domiciled shareholders.   It was not necessary for VISCARDI to be physically present in New York for such conduct to give rise to personal jurisdiction against it under New York's long arm statute.  <u>Liberatore v. Calvino</u>, 293 A.D.2d 217, 742 N.Y.S.2d 291 (1st Dep't 2002)(out of state lawyer subject to New York long arm jurisdiction based on his contract to provide legal services in New York for his out of state client).

<u>POINT IV</u>

**THIS COURT HAS SUPPLEMENTAL AND PENDENT JURISDICTION
OVER PLAINTIFF'S STATE LAW CLAIMS AGAINST VISCARDI, WMD,
AND DRAKE, AND COULD ALSO EXERCISE DIVERSITY JURISDICTION**

For the reasons set forth herein, Plaintiff respectfully submits that it has set forth valid securities law violation and state common law claims against Defendant VISCARDI. Accordingly, pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over the state law claims asserted against VISCARDI, as well as supplemental and pendent jurisdiction on its claims against Defendants WMD and DRAKE.

It is well settled that Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. <u>Rivera v. Ndola Pharmacy Corp.</u>, 497 F.Supp.2d 381(E.D.N.Y. 2007); citing <u>Wisconsin Dept of Corrections v. Schact</u>, 524 U.S. 381, 387, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); Claims are part of the same case or controversy when both the state law claims and federal claims "derive from a common nucleus of operative fact." <u>Rivera</u>, *supra*, citing <u>Briarpatch, Ltd., LP v. Phenix Pictures, Inc.</u>, 373 F.3d 296 (2d Cir. 2004). A federal court's exercise of supplemental jurisdiction, while not automatic, is a favored and normal course of action. <u>Promisel v. First American Artificial Flowers</u>, 943 F.2d 251 (2d Cir. 1991).

<u>United Mine Workers v. Gibbs</u>, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) is the seminal case regarding pendent jurisdiction with respect to related state claims over which no independent predicate for jurisdiction exists. In <u>Gibbs</u>, the plaintiff brought an action in federal court against the union asserting a federal statutory claim and a state common law claim arising out of alleged concerted

union activity intended to deprive him of his rights. Although the federal claim was ultimately dismissed, the Supreme Court recognized the power of the federal court to adopt a flexible treatment within the contours of Article III, Section 2 of the constitutional grant of jurisdiction and to adjudicate appended state claims. The Court held that the district court had jurisdiction, in the sense of "power" to adjudicate the claim, when the relationship between the federal claim and the state claim is such that the entire action can be said to comprise "one constitutional 'case'." Gibbs, supra, at 725. The Court noted that the claims must derive from a "common nucleus of operative fact" so that the plaintiff would ordinarily be expected to try the entire case in one forum. Id. Finally, the court held that the doctrine of pendent jurisdiction is "a doctrine of discretion, not of plaintiff's right" and focus must be on the considerations of "judicial economy, convenience and fairness to litigants" in determining whether it should be applied.

It has been held that legal malpractice claims in particular, such as the ones against Defendants WMD and DRAKE herein, that factually relate to federal claims can also be the subject of supplemental jurisdiction. Achtman v. Kirby, McInerney & Squires, LLP, 404 F.Supp.2d 540 (S.D.N.Y. 2005)(court exercised supplemental jurisdiction over putative class action for legal malpractice brought by class members in underlying securities class action against law firms representing them in securities action where District Court had original jurisdiction over underlying securities action, and malpractice action arising from representation in securities action was part of same case or controversy as underlying securities action). The Second Circuit has noted that supplemental jurisdiction empowers, and sometimes compels, courts to hear such matters as attorney fee disputes that arise from actions that were properly before the court. Alderman v. Pan Am World Airways,

19

169 F.3d 99 (2d Cir. 1999).

Simply put, there is no way to fairly extricate claims nor parties from the controversy before this court.  The claims against Defendants WMD and DRAKE, while more limited in scope than as against the other defendants herein, still revolve around and exclusively concern the same set of operative facts, as these defendants' counsel during the course of the transactions at issue forms the basis for Plaintiff's claims against them.  Moreover, in the interests of fairness and judicial economy, there is no sound reason put forth by the O'Donnell Defendants as to why Plaintiff, seeking compensation for the wrongs it alleges, should be made to concurrently litigate what is one controversy in multiple courts at the federal and state level.  This would not serve judicial economy, not the interests of justice.

In the case at bar, involving state law negligence, conversion, contract, malpractice, and federal securities fraud and RICO claims that are inextricably related, and where multiple parties are alleged to have conspired to participate in carrying out the fraud, there is no logical or fair way to concurrently adjudicate such claims in different fora.   Moreover, forcing Plaintiff to undergo the expense of litigating in two different courts at once would not serve judicial economy nor the interests of justice.

It is well settled that even if a Court dismisses claims which conferred it with original jurisdiction, it may still exercise supplemental jurisdiction over related state law claims.   Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182 (2d Cir. 1996).  In the case at bar, multiple federal claims still exist against several parties, and Plaintiff respectfully submits that there is ample sufficiency in the Complaint to set forth *prima facie* securities and RICO claims against Defendant VISCARDI.

Defendants WMD and DRAKE's assertion that the claims against them can or should be dismissed based because Plaintiff has not plead diversity subject matter jurisdiction is without merit.  In the unlikely event that Plaintiff needed to rely on diversity for jurisdiction herein, the Complaint could be amended accordingly, as defendants in this matter have either New York, out of state, or foreign domiciles that are entirely diverse from Plaintiff.

<u>POINT V</u>

**VISCARDI'S ARGUMENT RELATING TO 15 U.SC.§77(*l*) IS PREMISED UPON AN INCORRECT ASSUMPTION**

On page 23 of its Memorandum, VISCARDI argues that Plaintiff's claim under 15 U.S.C. §77(l) must be dismissed because the transaction that underlies this case was between two privately held companies.  This is incorrect.  Duravest was and is a public company.  Thus, VISCARDI has failed to demonstrate that the transaction which gives rise to this case is <u>not</u> a public transaction.

Plaintiff agrees that the Supreme Court's holding in <u>Gustafson v. Alloyd Co.</u>, 513 U.S. 561 (1995) does address the issue of the 1933 Act Section 12's applicability to private transactions.  However, Plaintiff has been unable to uncover any case in which a Court in this Circuit has determined that a stock purchase by a public company such as Plaintiff herein is not a "public offering."  Indeed, there have been post-<u>Gustafson</u> cases in New York that have refused to dismiss claims under the 1933 Act Section 12, that involved private placements.  See e.g. <u>Fisk v. SuperAnnuities, Inc.</u>, 927 F. Supp. 718 (S.D.N.Y. 1996).

Plaintiff submits that the phrase "public offering" in § 4 (2) of the Securities Act of 1933 (15 U.S.C.A.§77d(2)) exempting from the disclosure requirements of the Act "transactions by an insurer not involving any public offering," has not been specifically defined statutorily or judicially. 6 A.L.R. Fed. 536 § 2[a].  It has been held that the question whether a given transaction involves a public offering should be resolved on a case-to-case basis. <u>Hill York Corp. v. American International Franchises, Inc.</u>, 448 F.2d 680 (5th Cir. 1971).  It has also been held in the context of some securities laws that is the burden of a defendant who claims exemption from securities laws which might otherwise be applicable, to prove that exemption.

Sohns v. Dahl, 392 F.Supp. 1208, 1219 (D.C.Va.1975).

## POINT VI

**VISCARDI'S ARGUMENT RELATING TO PSLRA PRECLUSION OF RICO CLAIMS
CONCEDES PLAINTIFF'S *PRIMA FACIE* PLEADING OF SECURITIES LAW CLAIMS**

VISCARDI makes the argument that it cannot be liable under the RICO statute because the claims asserted against it constitute securities law violations, and securities law violations are precluded by statute from constituting predicate acts under RICO.  [See VISCARDI Memorandum, Section III(A)].  To be successful, such an argument must essentially concede that Plaintiff has properly plead securities law violations.  Otherwise, Plaintiff would be free to pursue RICO claims against VISCARDI.

In light of the above, and considering that VISCARDI has advanced no cogent argument for dismissal of Plaintiff's 1934 Securities Act §10(b)(5) claim, nor has established a right to dismissal of the 1933 Act claim, Plaintiff respectfully submits that the 1934 Securities Act §10(b)(5) and 1933 Act  15 U.S.C. §77(l) claims have been sufficiently plead and should be allowed to proceed through discovery.

Plaintiff respectfully points out that RICO claims are also asserted as against the MARKOLL Defendants and remain a part of this case.

## CONCLUSION

Defendant VISCARDI's within Motion should be denied, as this Court can exercise personal jurisdiction over it; and the Complaint adequately sets forth specific assertions of fact sufficient to make out *prima facie* claims against it sounding in common law negligence, negligent misrepresentation, common law fraud, and securities violations under the 1933 and 1934 Acts.  Plaintiff does not assert any breach of contract claim against VISCARDI, and withdraws the RICO

claim as against VISCARDI only.  In addition, the motion of defendants WMD and DRAKE must be denied, as this Court has supplemental jurisdiction to entertain the state law claims asserted against them because they are inextricably factually linked to the claims asserted against the remaining defendants.  Such claims against WMD and DRAKE should be litigated together with the claims against the remaining Defendants, since it benefits the aims of judicial economy; would prevent inconsistent results, and because Plaintiff respectfully submits that it would be unfair for it to be burdened with having to litigate the same case twice, in two different courts.

Dated:      White Plains, New York
            April 28, 2008

                                        Yours, etc.


                                        RAS ASSOCIATES, PLLC
                                         Attorneys for Plaintiff
                                         Ten Bank Street
                                         White Plains, N.Y. 10606
                                         (914) 289-2909

                                        ____s/LFR_____
                                        Luis F. Ras, Esq. (LFR 9989)