UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DURAVEST, INC.                                              : No. 07 CIV 10590
                Plaintiff,                      :
                                                            : Hon. Jed Rakoff, U.S.D.J.
VISCARDI AG, WOLLMUTH, MAHER &                              :
DEUTSCH, LLP; MASON H. DRAKE, ESQ., BRUCE                   :
O'DONNELL CPA, BRUCE O'DONNELL CPA/PFS                      :
P.A., BIOMEDICAL CONSULTANT SL, RICHARD                     :
MARKOLL and ERNESTINE BINDER MARKOLL,                       :
                                                            :
                Defendants.                     :
------------------------------------------------------------x


## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
## MOTION TO DISMISS OF VISCARDI AG


KASOWITZ, BENSON, TORRES
    & FRIEDMAN, LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Facsimile: (212) 506-1800

Mark W. Lerner, Esq.
Joshua A. Berman, Esq.
Henry B. Brownstein, Esq.

# **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ...................................................................................................... 1

I. THERE IS NO PERSONAL JURISDICTION OVER VISCARDI ........................................ 1

    A.    Specific Jurisdiction ............................................................................................... 1

    B.    General Jurisdiction ............................................................................................... 4

II. THE CLAIM UNDER 15 U.S.C. § 77(*l*) MUST BE DISMISSED ....................................... 6

III. THE COMMON LAW FRAUD, SECURITIES FRAUD AND NEGLIGENCE CLAIMS MUST BE DISMISSED ........................................................................................................ 7

    A.    Duravest Fails to Establish The Element of Justifiable Reliance ........................ 8

    B.    Duravest's Contention That It Satisfied Rule 9(b) Is Circular and Lacks Merit . 8

    C.    Duravest's Claim Under Rule 10b-5 Was Not Adequately Pled ........................ 9

CONCLUSION ............................................................................................................................ 10

# TABLE OF AUTHORITIES

PAGE

**Cases**

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985).................................................2

Burman v. Phoenix Worldwide Industries, Inc., 437 F. Supp. 2d 142 (D.D.C. 2006)....................3

China Express, Inc. v. Volpi & Son Machine Corp., 126 A.D.2d 239 (1st Dep't 1987).................2

Daniel v. Am. Bd. of Emergency Medicine, 988 F. Supp. 127 (W.D.N.Y. 1997).........................6

Delagi v. Volkswagenwerk AG of Wolfsburg, 29 N.Y.2d 426 (1972).....................................5

Deutsche Bank Securities, Inc. v. Montana Board of Investments, 21 A.D.3d 90
    (1st Dep't 2005) ...........................................................................4

Druck Corp. v. Macro Fund (U.S. Ltd.), 102 Fed.Appx. 1992 (2d Cir. 2004)...........................4

Fiedler v. First City Bank of Houston, 807 F.2d 315 (2d Cir. 1986) ................................2

First City Nat'l Trust v. Zuckerman, 682 F. Supp. 182 (S.D.N.Y. 1987)..............................2

Fischbarg v. Doucet, 832 N.Y.S.2d 164 (1st Dep't 2007) ............................................4

Fisk v. SuperAnnuities, Inc., 927 F.Supp. 718 (S.D.N.Y. 1996) ..................................4, 7

Gavish v. Revlon, Inc., No. 00 Civ. 7291, 2004 U.S. Dist. LEXIS 19771
    (S.D.N.Y. Sept. 30, 2004) .................................................................8

GMAC Commercial Credit, LLC v. Dillard Dep't Stores, 198 F.R.D. 402 (2001).........................6

Gustafson v. Alloyd Co., 513 U.S. 561 (1995) ......................................................6

Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984).............................2

Howard v. Am. Online, Inc., 208 F.3d 741 (9th Cir. 2000) .........................................10

In re Enron, 284 F. Supp. 2d 511 (S.D. Tex. 2003).................................................10

International Equity Investment v. Opportunity Equity Partner, Ltd.,
    475 F. Supp. 2d 456 (S.D.N.Y. 2007) .......................................................2

International Shoe Co. v. Washington, 326 U.S. 310 (1945).........................................5

Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181 (2d Cir. 1998).....................................6

Lane v. Vacation Charters, Ltd., 750 F. Supp. 120 (S.D.N.Y. 1990).................................6

Lewis v. Fresne, 252 F.3d 352 (5th Cir. 2001)..........................................................................7

Liquid Carrier Corp. v. American Marine Corp., 375 F.2d 951 (2d Cir. 1967)......................6

OSRecovery, Inc. v. One Groupe Int'l, Inc., 354 F. Supp. 2d 357 (S.D.N.Y. 2005)................9

Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments, Ltd.,
    147 A.D.2d 327 (1st Dep't 1989)......................................................................................3, 4

Park-Bernet Galleries, Inc. v. Franklyn, 308 N.Y.S. 337 (1970) ............................................3

Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004) ....................................................................9

Saenger v. Presbyterian Church, No. 96 Civ. 7684, 1997 U.S. Dist. LEXIS 19108
    (S.D.N.Y. Dec. 1, 1997)......................................................................................................8

Saraceno v. Johnson and Son, Inc., 83 F.R.D. 65 (S.D.N.Y. 1979).........................................5

Schneider v. J&C Carpet, 23 A.D.2d 103 (1st Dep't 1965)......................................................4

SEC v. Ralson Purina Co., 346 U.S. 119 (1953)......................................................................7

Siemens Westinghouse Power Corp. v. Dick Corp., 293 F. Supp. 2d 336
    (S.D.N.Y. 2003)...................................................................................................................9

Smith v. Kanter, 273 A.D.2d 793 (4th Dep't 2000) ..................................................................7

Sohns v. Dahl 392 F. Supp. 1208 (D.C. Va. 1975) ..................................................................7

Stutzman v. Means, No. 3:06-CV-0300-K, 2007 U.S. Dist. LEXIS 8697
    (S.D. Tex. Feb. 7, 2007) ......................................................................................................3

UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney, et al.,
    288 A.D.2d 87 (1st Dep't 2001)...........................................................................................8

Volkswagenwerk v. Beech Aircraft Corp., 751 F.2d 117 (2d Cir. 1984).................................5

Defendant Viscardi AG ("Viscardi") respectfully submits this reply memorandum of law in further support of its Motion to Dismiss the Complaint pursuant to Rules 12(b)(2), 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").[1]

**PRELIMINARY STATEMENT**

As set forth in Viscardi's opening brief (the "Op. Br."), Duravest alleged causes of action against Viscardi for common law fraud, two types of federal securities fraud, violation of the federal RICO statute, breach of contract, and negligent misrepresentation. Viscardi moved to dismiss the Complaint on the grounds that (i) Viscardi is not subject to personal jurisdiction in New York (Op. Br., Pt.II), and (ii) each of Duravest's claims was inadequately pled as to Viscardi. (Op. Br., Pts.III- VI). In response, Duravest has withdrawn its RICO and breach of contract. See Duravest Br. at 23-24.[2] However, Duravest asserts that Viscardi is subject to personal jurisdiction in New York, and opposes dismissal of the remaining claims. For the reasons that follow, Duravest's efforts must fail.

**I. THERE IS NO PERSONAL JURISDICTION OVER VISCARDI**

A.   Specific Jurisdiction

In the Opening Br., Viscardi asserted that it was not subject to "specific" personal jurisdiction in New York because it performed no acts in New York with respect to the BMTS transaction. Op. Br. at 7-8 (Viscardi collected all materials in Germany; approached all prospective purchasers in Europe; interacted with Duravest representatives exclusively in Germany; and facilitated the execution of the subscription agreement in Germany).[3] Duravest

---

[1] This memorandum is accompanied by the Declaration of Viscardi's co-founder and Chief Executive Officer, Friedrich-Wilhelm Göbel (the "Göbel Dec.") as well as the Declaration of Walter Schubert. (the "Schubert Dec.").

[2] Duravest's answering papers, which were filed with the Court on April 28, 2004, consist of a Memorandum of Law, the Declaration of Duravest's counsel Luis F. Ras, Esq., and the Affidavit of Hendrik Hammje, which will hereafter be referred to as the "Duravest Br.," the "Ras Dec.," and the "Hammje Aff.," respectively.

[3] These facts are drawn from the Affidavit of Barbara Thätig., ¶¶ 7, 9-11, 14, 15, in support of the Op. Br.

does not seriously challenge these contentions, nor could it.[4] Rather, Duravest argues that specific jurisdiction exists because BMTS was "a privately held company that had been licensed to do business in New York; had otherwise engaged in substantial business in New York; and also had a substantial number of New York domiciled shareholders." Duravest Br. at 13.

This argument is a red herring. Even assuming that the facts pled concerning BMTS are correct, they would not establish personal jurisdiction over Viscardi. For jurisdictional purposes, the only relevant question is what acts Viscardi performed in New York. See Op. Br. at pp. 6-8 citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984) and Fiedler v. First City Bank of Houston, 807 F.2d 315, 317 (2d Cir. 1986). See also Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) ("Jurisdiction [over a non-resident defendant] is proper, however, where the contacts proximately result from actions by the defendant himself that create a substantial connection with the forum state.") (emphasis in original). Accord First City Nat'l Bank & Trust Co. v. Zuckerman, 682 F. Supp. 182, 184 (S.D.N.Y. 1987) (relevant inquiry centers on totality of defendant's activities within the forum, not acts of other parties); China Express, Inc. v. Volpi & Son Machine Corp., 126 A.D.2d 239, 243 (1st Dep't 1987) (same).

In the Complaint Duravest did not allege that Viscardi performed any acts in New York, and it alleges none now. Instead Duravest sets forth a litany of irrelevant facts concerning BMTS and its shareholders and fails entirely to cite – let alone distinguish – the relevant precedents. It is well-settled that the residence of a corporation's shareholders is not relevant to the jurisdictional inquiry – even as to the corporation itself. See e.g. International Equity Investments v. Opportunity Equity Partners, Ltd., 475 F. Supp.2d 456, 459 (S.D.N.Y. 2007);

---

[4] In a single paragraph, at p.17 of its brief, Duravest makes the fanciful argument that Viscardi actually did "provide[] services in New York" because Viscardi received a fee for its work, and BMTS had shareholders in NY. This bizarre argument is supported by no citation to authority and defies logic.

2

Stutzman v. Means, No. 3:06-CV-0300-K, 2007 U.S. Dist. LEXIS 8697, *29 (S.D. Tex. Feb. 7, 2007) ("neither the residency nor the citizenship of the controlling shareholder will establish personal jurisdiction over the company."). Here, Duravest seeks to go one step further, using the residence of a third-party corporation's shareholders to establish jurisdiction over Viscardi, which it cannot do. See e.g. Burman v. Phoenix Worldwide Industries, Inc., 437 F. Supp. 2d 142, 150 (D.D.C. 2006) (no personal jurisdiction over defendant accounting firm based on residence in the forum of plaintiff's major shareholder, who received a copy of an allegedly-fraudulent financial report produced by the defendant).

Duravest has also attempted to suggest, with allegations vague as to scope and time, that BMTS was a New York business. See Hammje Aff., ¶ 6.[5] That is not the case. BMTS had no operations in New York at any time relevant to the sale, and its owners, the Markolls, had left New York and shuttered a Long Island office long before Viscardi was engaged by BMTS. Göbel Dec. ¶ 12.

The decisions that Duravest cites do nothing more than state and apply the established standard for long-arm jurisdiction, and they are easily distinguished on their facts. For example, in Parke-Bernet Galleries, Inc. v. Franklyn, 308 N.Y.S. 337 (1970), the plaintiff was a New York-based gallery that sued a non-resident defendant to recover the purchase price for a piece of art that the defendant had purchased by telephone -- from an auction in New York at which he had an agent physically present to bid. See id. at 340-341. Likewise, Otterbourg, Steindler, Houston & Rosen, P.C. v. Shreve City Apartments, Ltd.,147 A.D.2d 327 (1st Dep't 1989) was a collection action by a New York attorney against an out-of-state client, relating to representation in a litigation in the Southern District of New York. To facilitate the representation, the

---

[5] Notably, Ex. A to the Hammje Affidavit, which is described as evidencing BMTS's ownership of a New York subsidiary, belies that very contention. That document, which constitutes BMTS's registration to do business in new York lists the entity as a *Florida* company with no registered agent in new York.

3

defendant participated in numerous calls and other communications to his attorney New York. Id. at 332. Here, Viscardi performed no acts in New York relative to the BMTS transaction.[6]

B.  General Jurisdiction

Having failed to establish the existence of specific jurisdiction, Duravest seeks to persuade the Court that Viscardi is subject to "general" jurisdiction in New York based on Viscardi's "systematic and continuous" contacts with the state. Based on what Viscardi assumes is information gleaned from an Internet search, Duravest's counsel alleges in his Declaration that Viscardi's CEO, Friedrich-Wilhelm Göbel, formerly worked as an investment banker in New York, that Göbel is currently the banking "Team Leader" at New York company known as The Schubert Group ("TSG"); that Göbel maintains a permanent office and telephone line in New York; and that Göbel uses that office to solicit business for Viscardi. See Ras Dec., ¶¶ 5, 7, 9, 10. With the exception of the claim that Göbel worked as an investment banker in New York prior to 1999 when he returned to his native Germany and founded Viscardi – which is irrelevant to the existence of jurisdiction over Viscardi – the "facts" asserted are simply incorrect.

The plain facts are that Viscardi does not have and never has had, and Göbel does not have and never has had, an affiliation with TSG. Göbel Dec. ¶ 4. Neither Göbel nor Viscardi has ever maintained an office or telephone number at 111 Broadway in New York City. Göbel Dec. ¶ 3, 5. And neither Göbel nor Viscardi solicit or do business in New York.

---

[6] The other decisions that Duravest cites are likewise inapposite. Fischbarg v. Doucet, 832 N.Y.S.2d 164 (1st Dep't 2007) was a collection action by a New York attorney against an out-of-state client, in which the plaintiff attorney had performed 238.4 hours of legal work *in New York*, on the defendant's behalf. In Druck Corp. v. Macro Fund (U.S. Ltd.), 102 Fed.Appx. 1992 (2d Cir. 2004), the defendant, a non-resident investment fund had traveled to New York to solicit investment money from the plaintiff investor, participated in meetings concerning the investment in New York, and followed up by sending numerous communications and transaction documents to the plaintiff in New York. Deutsche Bank Securities, Inc. v. Montana Board of Investments, 21 A.D.3d 90 (1st Dep't 2005) was a breach of contract action by a New York-based plaintiff against a non-resident defendant in which the defendant had contracted, after extensive communications with the New York plaintiff, to buy bonds from the plaintiff, and then reneged on the contract. In Schneider v. J&C Carpet, 23 A.D.2d 103 (1st Dep't 1965), the plaintiff was a New York based agent of the non-resident defendant who solicited customers to buy carpets from the defendant in New York, and sought to recover commissions based on those sales, which he was to be paid in New York.

Mr. Ras relies heavily on the "discovery" of Göbel's biography on TSG's web site. However, as Göbel points out in his affidavit, Göbel's biography was placed on TSG's website as the result of an unauthorized action by Walter Schubert, a personal friend of Göbel's, who put Göbel's biography on the website, and a link to Viscardi's website, without authorization, ostensibly to bolster an inactive business. Göbel Dec. ¶ 6. Upon discovering his biography and Viscardi's logo on TSG's website, Göbel demanded that Schubert remove them, and Schubert agreed to do so. Göbel Dec. ¶ 6. Göbel does not lead any investment banking "team" of TSG, and the "screen-shots" reveal TSG to be the essentially-defunct business it is. Göbel Dec. ¶¶ 3-6.

Although quite false, it is helpful to note that even if the Ras allegations and their extension by innuendo were credible and correct, they would not establish general jurisdiction because they fail to allege "sufficiently pervasive" contacts between Viscardi and New York. See Op. Br. at 6. The Second Circuit has made clear that general jurisdiction may be established over a non-resident corporation based on its affiliation with a New York entity only when (1) there is an express agency relationship, or (2) the non-resident's control of the New York entity is otherwise so total that the New York entity is, in substance, nothing more than a department of the defendant's. See Saraceno v. Johnson and Son, Inc., 83 F.R.D. 65, 67 (S.D.N.Y. 1979). The non-resident's ownership interest (or lack thereof) in the New York entity is a determinative factor in the latter inquiry. See Volkswagenwerk v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir. 1984). Other factors include the financial dependence of the New York entity on the non-resident defendant, the degree of control by the foreign defendant over the selection and assignment of the executive personnel of the New York entity, and the degree of control over the local entity's operations. Id., at 121-122.[7]

---

[7] Significantly, the New York Court of Appeals has never found jurisdiction over a foreign corporation absent a parent-subsidiary relationship. Delagi v. Volkswagenwerk AG of Wolfsburg, 29 N.Y.2d 426, 432 (1972).

5

Here, by its own terms, the TSG website stopped far short of representing that TSG was an "agent" of Viscardi, or that there was any formal corporate affiliation between the parties other than that of "Strategic Partner." Such a term, even if it were correct (which it is not), does not mean, "agent," "representative," or "employee," or suggest common ownership or control. And Duravest's argument that Viscardi itself has a presence in New York is based on speculation about the activities of Wilhelm Göbel, and is not supported by the record.

The decisions cited by Duravest do not support jurisdiction. For example, in GMAC Commercial Credit, LLC v. Dillard Dep't Stores, 198 F.R.D. 402, 406 (2001), the defendant itself maintained an office in New York. Duravest has not alleged that Viscardi maintains an office in New York, only that Göbel has an office at TSG. Lane v. Vacation Charters, Ltd., 750 F. Supp. 120 (S.D.N.Y. 1990) was a personal injury case in which the plaintiff was injured at the out-of-state defendant's ski resort. The court found that the defendant's substantial advertising and solicitation of business through New York travel agents was not sufficient to establish general jurisdiction in New York.[8] Absent any evidence that Viscardi does business in New York, this Court simply does not have jurisdiction over it, and this lawsuit should be dismissed.

## II. THE CLAIM UNDER 15 U.S.C. § 77(*l*) MUST BE DISMISSED

In its Opening Br. Viscardi argued that Duravest's claim under Section 77(*l*) of the Securities Act of 1933 was subject to dismissal because, under established Supreme Court precedent, that provision applied only to "public offerings," and Duravest's acquisition of BMTS did not constitute a public offering. See Opening Br. at 23, citing Gustafson v. Alloyd Co., 513 U.S. 561, 571 (1995). In response, Duravest weakly argues -- although conceding that § 77(*l*) applies only to public transactions -- that there has never been a conclusive judicial determination of what constitutes a "public transaction"; that at least one court in this district has

---

[8] Likewise, Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181 (2d Cir. 1998), Daniel v. Am. Bd. of Emergency Medicine, 988 F. Supp. 127 (W.D.N.Y. 1997) and Liquid Carrier Corp. v. American Marine Corp., 375 F.2d 951 (2d Cir. 1967) were lawsuits against non-resident defendants in which general jurisdiction was found not to exist.

6

refused to dismiss a claim under § 77(*l*) that involved a private placement; and that "the question of whether a given transaction involves a public offering should be resolved on a case-to-case basis." Duravest Br. at 22.

This argument is incorrect, and the decisions that Duravest cites do not support it. For example, Plaintiff cites Fisk v. SuperAnnuities, Inc., 927 F.Supp. 718 (S.D.N.Y. 1996). In Fisk, the court held that the plaintiff's purchase through a private placement of 50,000 of 4 million (i.e., 1.3%) shares of a company that was otherwise publicly sold did not render it a purely private transaction). Compare Lewis v. Fresne, 252 F.3d 352 (5th Cir. 2001) (expressly distinguishing Fisk where the plaintiff purchased 29% of the outstanding stock of the target company, rendering the transaction "a private placement." Id. at 357 Here Duravest purchased 100% of all issued and outstanding shares of BMTS stock pursuant to a negotiated subscription agreement where all shares were offered to it and only it. Duravest's contention that its own status as a public company rendered the transaction public -- notwithstanding that BMTS was never the subject of a public offering -- is also plain wrong as a matter of law. See SEC v. Ralson Purina Co., 346 U.S. 119, 127 (1953); Smith v. Kanter, 273 A.D.2d 793, 794 (4th Dep't 2000) (determination of whether an offering is public or private is based on (1) number of offerees, (2) their relationship to each other and offeror, (3) sophistication of offerees, and (4) manner of the offering). Durvaest loses on each of these factors since it was the *sole* offerree, a sophisticated corporate acquirer and the transaction was negotiated and consummated as an outright acquisition of 100% of BMTS's stock. In sum, notwithstanding Duravest's meek arguments to the contrary, there is no serious question that the sale of BMTS to Duravest was a purely private transaction and is not subject to claims under § 77(*l*).

### III. THE COMMON LAW FRAUD, SECURITIES FRAUD AND NEGLIGENCE CLAIMS MUST BE DISMISSED

Duravest seeks to revive its claims for common law fraud, securities fraud and negligent misrepresentations in the face of the fatal deficiencies set forth in the Opening brief, see Op. Br. at pp. 16-23. As set forth below, Duravest's arguments lack merit.[9]

A.   Duravest Fails To Establish The Element Of Justifiable Reliance

In its Opening Br., Viscardi argued that Duravest's claims for common law fraud, securities fraud and negligent misrepresentation were deficient because Duravest failed adequately to allege the required element of justifiable reliance. See Opening Br. at pp. 21-23. Viscardi cited UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney et al., 288 A.D.2d 87 (1st Dep't 2001) and other decisions which held that a sophisticated corporate acquirer in Duravest's position cannot adequately allege justifiable reliance when it fails to establish (or even allege) that it conducted any customary due diligence or investigated or used publicly-available information in making its purchase. See Opening Br. at 21-23.

In response, Durvaest does nothing more than refer the Court back to the Complaint, and re-state – by nothing more than bare assertion – that it did allege justifiable reliance. See Duravest Br., p.9. Duravest fails to cite – let alone to distinguish the UST decision or any of the other relevant decisions that Viscardi cited in its opening brief, and its argument therefore fails.

B.   Duravest's Contention That It Satisfied Rule 9(b) Is Circular And Lacks Merit

In the Op. Br., Viscardi devoted four pages to a paragraph-by-paragraph analysis of why Duravest's fraud allegation fall short of Rule 9(b)'s requirements under binding precedent. See Op. Br. at 17-20, citing, e.g., Gavish v. Revlon, Inc., No. 00 Civ. 7291, 2004 U.S. Dist. LEXIS 19771, *48 (S.D.N.Y. Sept. 30, 2004) ("[A]lthough there is no numerical benchmark for assessing the materiality of misstatements in financial reports defendants . . . are still entitled to be appraised of the approximate amount of overstatement involved."); Saenger v. Presbyterian

---

[9] Durvaest is incorrect when it argues that the Court rejected a Rule 9(b) particularity challenge by the O'Donnell defendants – that issue was not briefed or argued in connection with the O'Donnell defendants' motions.

8

Church, No. 96 Civ. 7684, 1997 U.S. Dist. LEXIS 19108, *15 (S.D.N.Y. Dec. 1, 1997) (Rule 9(b) not satisfied where complaint failed to state the date on which fraudulent statements made).

Yet Duravest does not address any of Viscardi's points concerning the specific defective allegations in the brief, nor does it cite -- let alone distinguish -- any of the applicable precedents. The <u>entirety</u> of Duravest's response to Viscardi's Rule 9(b) argument consists of two sentences stating that "[p]laintiff's fraud claims have been pled with particularity, specifying the time, method and contents of Viscardi's false representations [¶ 80-87, 89-91, 106-118, 162-170]. This is sufficient to set forth a *prima facie* claim pursuant to Rule 9(b)." Duravest Br. at p.9.

Duravest's argument is completely circular. It does nothing more than refer the court back to the complaint, and insist – without any explanation or authority – that it has satisfied the requirements of Rule 9(b). This is inadequate to defeat dismissal.[10]

C.    <u>Duravest's Claim Under Rule 10b-5 Was Not Adequately Pled</u>

Finally, Duravest argues that by contending that Duravest's RICO claim was barred by the PSLRA because it was based on predicate acts that could have been pled as securities fraud, Viscardi has <u>conceded</u> that Duravest adequately pled its 10b-5 claim. Duravest Br. at p.23. This argument is not supported by a single authority, and makes no sense.

Viscardi's argument that the RICO claim is barred by the PSLRA is far from a concession that Duravest adequately pleaded its 10b-5 claim. As set forth in the Opening Br., the PSLRA precludes RICO claims based on predicate acts that <u>could be</u> alleged as securities

---

[10] Without citing a single precedent or distinguishing any of the numerous decisions set forth in Viscardi's brief, Duravest also asserts that the particularity standard of Rule 9(b) does not apply to claims of negligent misrepresentation relating to statements made in connection with the sale of securities. See Duravest Br., p.8. This is incorrect. See Opening Br. at p. 17, citing Siemens Westinghouse Power Corp. v. Dick Corp., 293 F. Supp. 2d 336, 343 (S.D.N.Y. 2003) (claim for negligent misrepresentation must "adequately specify the statements it claims were false or misleading . . . state when and where the statements were made, and identify those responsible for the statements."). See also Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004) (non-fraud claims that rely on averments of fraud are subject to Rule 9(b)'s standard); OSRecovery, Inc. v. One Groupe Int'l, Inc., 354 F. Supp. 2d 357, 379 (S.D.N.Y. 2005) (when negligent misrepresentation claim sounds in fraud, by incorporating fraud allegations by reference, it is subject to Rule 9(b).

9

fraud, not claims that <u>are in fact</u> actionable as securities fraud. See Op. Br., p.10. See also <u>In re Enron</u>, 284 F. Supp. 2d 511, 620 (S.D. Tex. 2003) (PSLRA bars securities fraud claims "even when the plaintiff himself cannot bring a cause of action under the securities laws."); <u>Howard v. AOL, Inc.</u>, 208 F.3d 741, 749 (9th Cir. 2000) (the PSLRA's preclusion of RICO claims based on predicate acts that could have been alleged as securities fraud does not require that plaintiff in fact have an actionable securities fraud claim).

In sum, for the reasons stated in the Opening Br., Plaintiff's claim s for common law fraud, securities fraud and negligent misrepresentation are deficient as a matter of law under Rules 12(b)(6) and 9(b) and must be dismissed.

## CONCLUSION

For the foregoing reasons, Viscardi respectfully requests that the Complaint be dismissed as to Viscardi for lack of personal jurisdiction, under Rule 12(b)(2) or, in the alternative, for failure to state a claim pursuant to Rules 12(b)(6) and 9(b).

Dated: May 5, 2008

>Respectfully submitted,
>
>KASOWITZ, BENSON, TORRES
>& FRIEDMAN LLP
>
>By: /s/ <u>Mark W. Lerner</u>
>    Mark W. Lerner
>    Joshua A. Berman
>    1633 Broadway
>    New York, New York  10019
>
>Attorneys for Defendant Viscardi AG