UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DURAVEST, INC., | Civil Action No. 07 Civ. 10590 (JSR) |
| Plaintiff, | |
| v. | |
| VISCARDI, A.G., WOLLMUTH MAHER & DEUTSCH, LLP, MASON H. DRAKE, ESQ., BRUCE O'DONNELL, CPA, BRUCE O'DONNELL CPA/PFS, P.A., BIOMEDICAL CONSULTANTS SL, RICHARD MARKOLL, and ERNESTINE BINDER MARKOLL, | |
| Defendants. | |

## DECLARATION OF RICHARD MARKOLL

RICHARD MARKOLL makes this declaration under penalty of perjury and, unless otherwise stated, based upon personal knowledge:

1.      I am over the age of 18, and am competent to make this declaration.   The statements in this declaration are within my personal knowledge and are true and correct to the best of my knowledge and belief.

2.      I was born in 1938 and am 70 years of age.

3.      I reside in Spain, at 5 El Greco, 07157 Puerto D'Andratx with my wife of 13 years, Ernestine Binder Markoll.  I have resided in Europe continuously since approximately April 1996 and have resided in Spain since December 2005.

4.      I was born and raised in the State of New York.  Beginning in 1955, I attended State University of New York, then in Endicott, New York.   In  1958, I left the United States and pursued further education in Munich, Germany.  I remained in Europe until approximately 1974, when I returned to the United States to care for my mother, who was then living on Long Island.

After my mother had passed away, in approximately 1976, I returned to Europe, where I remained until 1983, when, at age 44, I decided to pursue a medical education. I did so first at the University of St. Lucia, West Indies, and later at the University of Health Sciences, in Antiqua, West Indies.

5.      Thereafter, in 1985, I moved to Litchfield, Connecticut, and pursued further medical training. While residing in Litchfield, Connecticut, I was in a residency training program at a hospital affiliated with Johns Hopkins University in Baltimore, and eventually obtained a similar position closer to where we were living, at a Connecticut hospital affiliated with Yale University.

6.      In 1986, I left the United States and returned to Europe, pursuing additional medical training in nephrology and gastroenterology in Munich.

7.      In 1989, I presented certain research in my field at Yale University. Thereafter, in early 1990, I began a four-year period of research at Yale.

8.      In May 1994, I decided to relocate to Florida, where I remained until April 1996, when I returned to Germany. I have remained a resident of Europe ever since.

9.      Since 1976, I have not resided in the State of New York.

10.      Since 1976, I have never owned or leased any real property in the State of New York.

11.      Since 1976, I have not maintained any office or mailing addresses in the State of New York.

12.      Since 1976, I have had no telephone listing in the State of New York.

13.      Since 1976, I have not maintained any bank accounts in the State of New York.

14.      Since 1976, I have had no employees or agents in the State of New York.

15.      Since 1976, I have not maintained any records in the State of New York

16.     Since 1976, I have not applied for, nor received, nor maintained any license or permit from the State of New York.  My New York State drivers license was not renewed in New York State after it expired in our about 1976.

17.     Since 1976, I have transacted no business in the State of New York in a personal capacity.

18.     I have never been registered to do business in the State of New York.

19.     I have never advertised nor solicited any business in any newspaper or media outlet located within the State of New York.

20.     I have reviewed the Affidavit of Barbara Thätig dated April 7, 2008 in support of Viscardi A.G.'s motion to dismiss for lack of personal jurisdiction.  That Affidavit discusses the transaction by which DuraVest, Inc. acquired the shares of Bio-Magnetic Therapy Systems, Inc. ("BMTS, Inc.").  The information in Ms. Thätig's Affidavit is accurate insofar as it explains that DuraVest's acquisition of BMTS, Inc. had no connection or relationship to the State of New York.

21.     At all times pertinent to this matter, and based upon my information and belief, DuraVest Inc. was a Florida corporation with its only office in Chicago, Illinois. To my knowledge, it had no office in New York.

22.     BMTS, Inc., which was a holding company for BMTS GmbH, was organized under the laws of the Commonwealth of Virginia and had its only office in Richmond, Virginia.   There were no BMTS, Inc. employees either in Virginia or anywhere, for that matter, because BMTS, Inc. was merely a holding company.

23.     For a time, BMTS, Inc. had in place an agreement with a sales agent in Wisconsin which offered certain "PST" products for veterinary use.  This agent was supported from Munich by BMTS, GmbH, not by any United States, let alone, New York State, employees because, as noted, there were none.

24.     At all times when I was affiliated with BMTS, Inc. and BMTS GmbH, the latter entity, which was the operating company, was located in Munich, Germany.  BMTS GmbH was first organized under German law in March 1998.  By 2005, BMTS GmbH had about fifty (50) employees, all of whom were located in Germany.

25.     With regard to the transaction between DuraVest Inc. and BMTS, Inc., no meetings or events took place in New York and, to my knowledge, nothing was sent to DuraVest  in New York as part of the transaction, except the Tender Offer to NY resident Shareholders to purchase their shares.  (Complaint ¶ 5.)

26.     At all times during the negotiation of the transaction, as well as after its closing on December 30, 2005, I always resided in Europe and never in the United States.

27.     I have reviewed the Affidavit of Hendrik Hammje dated April 25, 2008.  To my knowledge, that affidavit does not support any meaningful to the State of New York.  First, Mr. Hammje only arrived at BMTS, GmbH in or about October 2006, many months after closing of the DuraVest-BMTS, Inc. transaction. He therefore has no first-hand knowledge regarding the transaction or the history of BMTS, Inc. and BMTS, GmbH.  Further, Mr. Hammje attaches certain New York Department of State filings for BMTS, Inc. but these do not show contacts with the State of New York during the time frame in question in this case.  Rather, those papers show that, in the year 1992, BMTS, Inc. was apparently registered as a foreign corporation authorized to do business in New York.  This was during a time period in which a "PST" clinical study was ongoing.  Funding for that study ended in or about May 1994. After that point, to the best of my knowledge, BMTS, Inc. allowed its authorization to conduct business in New York to lapse.

28.     Mr. Hammje references Eugene Heller, a Long Island physician who served as medical director for the 1991-1994 clinical study.  Dr. Heller was also one of the shareholders of BMTS, Inc.  The lawsuit by Dr. Heller and his company, Magnetic Treatment Medical Services,

P.C., was disclosed in financials statements provided to DuraVest, Inc., including the 2003-2004 financials (at note 12). A copy of the 2003-2004 financial statement is attached as Exhibit A.

29.    Contrary to ¶ 7 of Mr. Hammje's Affidavit, at no time before the December 30, 2005 closing of the transaction with DuraVest, Inc. did BMTS, Inc. "sell PST machine technology for veterinary use in the State of New York," nor did it sell "chip card products" in the State of New York. Only *after* the closing of the transaction with DuraVest, Inc. did such a transaction take place. Attached as Exhibit B is a January 4, 2006 invoice to a New York veterinary clinic for the sale or lease of a PST machine, through a financing broker, Sharpe Financial Network.[1] This transaction has nothing to do with the allegations in the Complaint in this case and, as noted, occurred after that transaction closed.

30.    Once DuraVest's acquisition of BMTS, Inc. closed on December 30, 2005, I ceased to have any involvement in the day-to-day operation of BMTS GmbH. I was formally removed as an officer of the company in January 2006, as DuraVest's January 23, 2006 press release reports. See Pizzi Decl. Exhibit B.

31.    I understand that "Biomedical Consultants SL" is also named as a defendant. The complete name of that entity is "Biomedical Consultants, Sociedad Limitada." Its only office is the same as my address. Biomedical Consultants, Sociedad Limitada is the Spanish equivalent of a corporation and was formed in Spain on April 7, 2006. A copy of Spanish "Certificacion No. 06100583" reflecting the formation of this entity is attached as Exhibit C. Biomedical Consultants, Sociedad Limitada ("Biomedical Consultants SL") was formed for purpose of collecting payments (in Euros) due me under the December 29, 2005 Consulting Agreement with BMTS, Inc., which was executed at the closing of the acquisition by DuraVest of BMTS, Inc.

---

[1] This was one the last items of correspondence which DuraVest shared with me about BMTS before I was removed as an officer.

There are certain tax advantages in having those payments made to a corporation. In fact, DuraVest caused BTMS, Inc. to default almost immediately in its payment obligations to me. No payments were made after March 2006. No payments were ever made to Biomedical Consultants SL.

      32.     So that the record is clear, the following statements about Biomedical Consultants SL may be of interest to the Court:

    a.   Biomedical Consultants SL has never been domiciled in the State of New York.

    b.   Biomedical Consultants SL does not own or lease any real property in the State of New York, nor has ever owned or leased any real property in the State of New York.

    c.   Biomedical Consultants SL does not maintain any offices or mailing addresses in the State of New York, and has never maintained offices or a mailing address in the State of New York nor in any other State in the United States.

    d.   Biomedical Consultants SL has never maintained any telephone listings anywhere in the State of New York or any other State in the United States.

    e.   Biomedical Consultants SL does not maintain any bank accounts in the State of New York, and has never maintained any bank accounts in the State of New York.

    f.   Biomedical Consultants SL does not have, and have never had, any employees or agents based in the State of New York.

    g.   Biomedical Consultants SL does not maintain any records in the State of New York, and has never maintained any records within the State of New York.

    h.   Biomedical Consultants SL has never applied for, nor received, any license or permit from the State of New York or any other State in the United States.

    i.   Biomedical Consultants SL has never been registered to do business in the State of New York, and has never transacted business in the State of New York.

j.   Biomedical Consultants SL has never advertised nor solicited any business in any newspaper or media outlet located within the State of New York.

k.   Biomedical Consultants SL has no business contacts outside Europe.

l.   Biomedical Consultants SL has had no contacts with any State in the United States

[The balance of this page is intentionally left blank.]

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

DATED: August 25, 2008

_____

RICHARD MARKOLL

# EXHIBIT A

**BIO-MAGNETIC THERAPY SYSTEMS, INC.
AND SUBSIDIARIES
CONSOLIDATED FINANCIAL STATEMENTS
DECEMBER 31, 2003 AND 2004**

**BIO-MAGNETIC THERAPY SYSTEMS, INC.**
**AND SUBSIDIARIES**
**CONSOLIDATED FINANCIAL STATEMENTS**
**DECEMBER 31, 2003 and 2004**

|  | Page |
|---|---|
| Accountants Compilation Report | 1 |
| Financial Statements |  |
| Consolidated Balance Sheets | 2 |
| Consolidated Statements of Operations | 3 |
| Consolidated Statements of Stockholders' (Deficit) | 4 |
| Consolidated Statements of Cash Flows | 5 |
| Notes to Consolidated Financial Statements | 6-11 |

# BRUCE J. O'DONNELL, CPA/PFS, PA
### Certified Public Accountant
### Personal Financial Specialist

**MEMBER**
Florida Institute of
Certified Public Accountants
American Institute of
Certified Public Accountants

21301 Powerline Road
Suite #102
Boca Raton, Fl 33433-2309
(561) 883-1210
Fax (561) 883-1252
Email bod@cpapfs.net

**LICENSED**
In Florida
and New York

To the Board of Directors and
Stockholders of
Bio-Magnetic Therapy Systems, Inc.
And Subsidiaries

## ACCOUNTANTS REPORT

We have compiled the accompanying consolidated balance sheets of Bio-Magnetic Therapy Systems, Inc and Subsidiaries as of December 31, 2003 and 2004 and the related consolidated statements of operations, stockholders' (deficit) and cash flows for the years then ended, in accordance with Statements on Standards for Accounting and Review Services issued by the American Institute of Certified Public Accountants.

A compilation is limited to presenting, in the form of financial statements, information that is the representation of management. We have not audited or reviewed the accompanying financial statements and, accordingly, do not express an opinion or any other form of assurance on them.

Bruce J. O'Donnell, C.P.A., P.A.
May  31, 2005

Securities offered through Medallion Investment Services, Inc.*
Member NASD/SIPC (410) 544-8400
271 53rd Circle, Vero Beach, Fl 32968
Investment Advice offered through Medallion Advisory Services, LLC*
Registered Investment Advisor
*Wholly owned subsidiary of TMG Holding Company, Inc.
T/A The Medallion Group

### BIO-MAGNETIC THERAPY SYSTEMS, INC.
### AND SUBSIDIARIES
### CONSOLIDATED BALANCE SHEETS
#### December 31, 2003 and 2004

| ASSETS | RESTATED 2003 | 2004 |
|---|---|---|
| **Current Assets** | | |
| Cash and cash equivalents (Note 2b) | $739,443 | $876,610 |
| Acounts Receivable net of allowance of $887,898 for 2003 and 2004 (Note 3, 15) | 878,544 | 952,695 |
| Inventories (Note 2c) | 343,646 | 612,559 |
| Prepaid and other assets | 18,130 | 1,427 |
| Total Current Assets | 1,979,763 | 2,443,291 |
| Property and Equipment (Note 4) | 114,411 | 102,590 |
| **Other Assets** | | |
| Other Receivables net of allowance of $328,155 for 2003 (Note 13) | 580,103 | 0 |
| Patents (Note 5) | 0 | 619,334 |
| Total Current Assets | 580,103 | 619,334 |
| TOTAL ASSETS | $2,674,277 | $3,165,215 |

### LIABILITIES AND STOCKHOLDERS' DEFICIT

| | RESTATED 2003 | 2004 |
|---|---|---|
| **Current Liabilities** | | |
| Accounts payable and accrued expenses (Note 6, 12) | $1,755,037 | $1,557,208 |
| Deferred Compensation (Note 10) | 656,261 | 826,261 |
| Deferred revenue - current portion | 1,130 | 49,357 |
| Accrued Litigation Settlement - current portion (Note 12) | 34,000 | 0 |
| Notes payable - current portion (Note 7) | 1,685,000 | 695,870 |
| Total Current Liabilities | 4,131,428 | 3,128,696 |
| **Long-Term Liabilities** | | |
| Accrued Litigation Settlement (Note 12) | 475,000 | 475,000 |
| Total Long-Term Liabilities | 475,000 | 475,000 |
| **Stockholders' Deficit** | | |
| Common Stock, par value $.01, 15,000,000 shares authorized, 9,276,549 shares issued and outstanding for 2003 and 2004 | 92,765 | 92,765 |
| Paid in Capital | 6,965,207 | 6,965,207 |
| Accumulated Deficit | (9,076,425) | (7,733,041) |
| Foreign currency translation adjustment (Note 2h) | 86,302 | 236,588 |
| Total Stockholders' Deficit | (1,932,151) | (438,481) |
| TOTAL LIABILITIES AND STOCKHOLDERS' DEFICIT | $2,674,277 | $3,165,215 |

**BIO-MAGNETIC THERAPY SYSTEMS, INC.**
**AND SUBSIDIARIES**
**CONSOLIDATED STATEMENTS OF OPERATIONS**
**For theYears Ended December 31, 2003 and 2004**

|  | RESTATED 2003 | 2004 |
|---|---|---|
| Revenue | $5,700,560 | $8,164,343 |
| Cost of Goods Sold | 261,938 | 1,085,521 |
| Gross Margin | 5,438,622 | 7,078,822 |
| Operating Expenses |  |  |
| Cost of Operations | 2,996,423 | 3,051,641 |
| Payroll and related items | 1,391,532 | 2,648,157 |
| Depreciation and Amortization (Notes 4, 5) | 36,040 | 90,927 |
| Total Operating Expenses | 4,423,995 | 5,790,725 |
| Other (Expenses)Income |  |  |
| Interest (Expense) | (132,738) | (144,210) |
| Interest Income | 1,383 | 1,805 |
| Other (Expenses) Income (Notes 2g, 13) | (263,418) | 197,692 |
| Total Other (Expenses)Income - Net | (394,773) | 55,287 |
| Net Income | 619,854 | 1,343,384 |
| Other Comprehensive Income |  |  |
| Foreign Currency Translation | 67,867 | 150,286 |
| Total Comprehensive Net Income | $687,721 | $1,493,670 |

**BIO-MAGNETIC THERAPY SYSTEMS, INC.**
**AND SUBSIDIARIES**
**CONSOLIDATED STATEMENTS OF STOCKHOLDERS' (DEFICIT)**
**For the Years Ended December 31, 2003 and 2004**

| | Common Stock | Stock Subscription Receivable | Accumulated Deficit | Foreign Currency Translation Adjustment | Paid-In Capital | Total Stockholders' (Deficit) |
|---|---|---|---|---|---|---|
| December 31, 2002 | $92,765 | $0 | ($9,696,279) | $18,435 | $6,965,207 | ($2,619,872) |
| Issuance of Stock | - | - | - | - | - | 0 |
| Net Income | - | - | 619,854 | - | - | 619,854 |
| Translation Adjustment | - | - | - | 67,867 | - | 67,867 |
| December 31, 2003 | 92,765 | 0 | (9,076,425) | 86,302 | 6,965,207 | (1,932,151) |
| Issuance of Stock | - | - | - | - | - | 0 |
| Net Income | - | - | 1,343,384 | - | - | 1,343,384 |
| Translation Adjustment | - | - | - | 150,286 | - | 150,286 |
| December 31, 2004 | $92,765 | $0 | ($7,733,041) | $236,588 | $6,965,207 | ($438,481) |

**BIO-MAGNETIC THERAPY SYSTEMS, INC.**
**AND SUBSIDIARIES**
**CONSOLIDATED STATEMENTS OF CASH FLOWS**
**For theYears Ended December 31, 2003 and 2004**

|  | RESTATED 2003 | 2004 |
|---|---|---|
| **Cash flows from operating activities:** | | |
| Net Income | $619,854 | $1,343,384 |
| | | |
| Adjustments to reconcile net income | | |
| to cash provided by operating activities: | | |
| Depreciation | 36,040 | 90,927 |
| Changes in assets and liabilities: | | |
| (Increase)Decrease in accounts receivable | (779,236) | (74,151) |
| (Increase)Decrease in inventory | (167,507) | (268,913) |
| (Increase)Decrease in prepaid expenses | 15,107 | 16,703 |
| (Increase)Decrease in other receivable and other assets | (580,103) | (41,827) |
| (Increase)Decrease in property and equipment - write off of devices | 2,062,835 | 9,411 |
| Increase(Decrease) in accounts payable and accrued expenses | 839,622 | (231,829) |
| Increase(Decrease) in deferred compensation | 170,000 | 170,000 |
| Increase(Decrease) in deferred revenue | (1,812,630) | 48,227 |
| | | |
| Total Adjustments | (215,872) | (281,452) |
| | | |
| Net cash provided by operating activities | 403,982 | 1,061,932 |
| | | |
| **Cash flows (used for) provided by investing activities:** | | |
| Capital expenditures | (107,284) | (85,921) |
| | | |
| Net cash (used for) investing activities | (107,284) | (85,921) |
| | | |
| **Cash flows (used for) provided by financing activities:** | | |
| Proceeds (payments) of notes payable | (58,320) | (989,130) |
| | | |
| Net cash (used for) provided by investing activities | (58,320) | (989,130) |
| | | |
| Effect of exchange rate changes on cash and cash equivalents | 67,867 | 150,286 |
| | | |
| Net increase(decrease) in cash and cash equivalents | 306,245 | 137,167 |
| | | |
| Cash and cash equivalents at beginning of year | 433,198 | 739,443 |
| | | |
| Cash and cash equivalents at end of year | $739,443 | $876,610 |
| | | |
| **Supplemental disclosure of cash flow information:** | | |
| Cash paid during the year for interest | $      481 | $      5,429 |

**BIO-MAGENTIC THERAPY SYSTEMS, INC. AND SUBSIDIARIES**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
**DECEMBER 31, 2003 AND 2004**

NOTE 1 – NATURE OF BUSINESS

BIO-MAGNETIC THERAPY SYSTEMS, INC. (the "Company" or "BMTS") is a Virginia corporation engaged in the development and production and commercialization of proprietary technology based on extremely low frequency magnetic field pulses to treat osteoarthritis, sports-type injuries, and other degenerative joint and neurological disorders.

The Company owns a number of United States process patents in addition to other foreign patents that utilize pulse electromagnetic fields ("PEMF") to treat arthritis, sports-type injuries, and other degenerative joint and neurological disorders.  #5,131,904 for the "Treatment of Arthritis with Magnetic Field Therapy and Apparatus;  #5,387,176 for the "Treatment of acute Diseases as Caused by Sport-type Injuries of the Musculoskeletal  System Excluding Fractures with Magnetic Field Therapy";  #5,453,073 for the "Apparatus for Treatment of Diseased Body Organs with Magnetic Field Therapy" ; #5,669,868 for the "Treatment of Wrinkled, Discolored of Aging skin with Magnetic Field Therapy"; #5,665,049 for the "Treatment of Acute Diseases as Caused by Sports-type Injuries of the Musculoskeletal System (excluding fractures) with magnetic Field Therapy" (even broader than #5,387,176); #5,842,966 for the "Treatment of Disease including Degenerative and Inflammatory Conditions of the Musculoskeletal System and…(Enhanced Coverage on Arthritis Treatment)"; #407/809 for "Design patent for treatment bed"; #6,119,631 for "Coil cabinet for treating animals with magnetic field therapy"; #6,048,302 for "New Periodontal device"; #6,524,233 for the "Electromagnetic Stimulation of Cartilage Tissue"; and #111 9393B1(issued by the European Patent Office) for the "Electromagnetic Stimulation of Cartilage Tissue".  The Company also holds numerous other foreign patents in this field.

Further, the Company has been granted an exclusive worldwide, royalty-free license by Dr. Richard Markoll, the Company's chairman and the primary developer of these intended processes, to use, manufacture and lease the proprietary device used to administer PEMF in these processes.  In addition, the Company has an option to acquire all technology rights from Dr. Markoll in return for certain royalty payments on these leases.

In 2004 the Company moved its US corporate office from Boca Raton, Florida to Germany where most of the Companies activity are centralized.

NOTE 2 – SUMMARY OF SIGNIFICANT ACCOUNTING POLICIES

2a)  PRINCIPLES OF CONSOLIDATION
The financial statements include the accounts of Bio-Magnetic Therapy Systems, GmbH a wholly owned German subsidiary and its subsidiaries Signal Medizin Vertriebs, GmbH and PST SMV Italy, GmbH.  All significant transactions and balances between the Companies and its subsidiaries have been eliminated in consolidation.

2b)  CASH AND CASH EQUIVALENTS
Cash equivalents consist of short-term liquid investments, which are readily convertible into cash, and have maturities of three months or less.

**BIO-MAGENTIC THERAPY SYSTEMS, INC. AND SUBSIDIARIES**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
**DECEMBER 31, 2003 AND 2004**

2c) INVENTORIES
Inventories consist of treatment devices and accessories assembled for leasing. The inventories are stated at the lower of cost or market. The cost is determined by specific identification method.

2d) REVENUES
The Company's revenue is derived from the lease of devices, sale of activation cards used by these devices, and maintenance fees for each device in operation.

2e) DEPRECIATION
Depreciation is provided on a straight-line method over the estimated useful lives of the related assets. Leasehold improvements are expensed over the period of the respective leases.

2f) AMORTIZATION
The cost of patent rights acquired is being amortized on the straight-line method over a 20-year period.

2g) DEFERRED EARNINGS
Prior to 2003, the Company's deferred earnings represent leases of the treatment devices to operating clinics throughout Germany. Under the terms of the lease arrangements, the Company leases the treatment devices for a period of three to five years. Ownership of the device remains with the Company. Proceeds from the financing of the devices are received in advance from the lessee and income associated with these leases is recognized over the lease term. During 2003 all deferred revenue was recognized and all related devices were written off and is included in other income. Due to new regulations, beginning in 2004 the Company reports all revenue immediately. The Company also transfers ownership of the component parts of the devices to the financing company for the period financed.

2h) INCOME TAXES
Effective October 1, 1992, the Company adopted Statement of Financial Standards (SFAS) N. 109, Accounting for income Taxes.

2i) FOREIGN CURRENCY TRANSLATION
Foreign currency balance sheet accounts are translated into United States dollars at the exchange rate in effect at year end. Income statement accounts are translated at the average rate of exchange in effect during the year. The resulting translation adjustments are recorded as a separate component of stockholders' equity.

2j) USE OF ESTIMATES
The preparation of financial statements in conformity with generally accepted accounting principles requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assents and liabilities at the date of the financial statements and the reported amounts of revenues and expenses during the reporting period. Actual results could differ from those estimates.

### BIO-MAGENTIC THERAPY SYSTEMS, INC. AND SUBSIDIARIES
### NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
### DECEMBER 31, 2003 AND 2004

2k)  <u>LONG-LIVED ASSETS</u>
Long-lived assets are reviewed on an ongoing basis for impairment based on comparison of
carrying value against undiscounted future cash flows.  If an impairment is identified, the asset
carrying amount is adjusted to fair value.

NOTE 3 – ACCOUNTS RECEIVABLE

Management believes that the accounts receivable from PST Holdings/International as of
December 31, 2003 and 2004 are uncollectible, and an allowance for doubtful accounts of
$887,898 was recorded.

NOTE 4 – PROPERTY AND EQUIPMENT

Property and equipment at cost consist of the following:

|                                | 2003 | 2004 |
|--------------------------------|-----:|-----:|
| Furniture and Equipment        | $    195,804 | $    246,366 |
| Leasehold Improvements         | 18,363 | 18,363 |
| Vehicles                       | 7,198 | -0- |
|                                | 221,365 | 264,729 |
| Less: Accumulated Depreciation | (106,954) | (166,906) |
| Total Property and Equipment   | $    114,411 | $    102,590 |

Depreciation expense was $36,040 and $88,331 for the years ended December 31, 2003 and
2004, respectively.

NOTE 5 – PATENTS

Patents at cost consist of the following:

|                                | | |
|--------------------------------|-----:|-----:|
| Patent Rights                  | $    -0- | $    621,930 |
| Less: Accumulated Amortization | -0- | (2,596) |
| Total Property and Equipment   | $    -0- | $    619,334 |

Amortization expense was $0 and $2,596 for the years ended December 31, 2003 and 2004,
respectively.

NOTE 6 – INVESTMENT IN UNCONSOLIDATED SUBSIDIARY

In 1996, the Company acquired a 22% interest in PST Holdings(PST) in exchange for the
granting of a distribution Agreement/Franchise Rights for the promotion, use and sale of the
device developed by the Company used to treat arthritis and sports type injuries.  This franchise

## BIO-MAGENTIC THERAPY SYSTEMS, INC. AND SUBSIDIARIES
## NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
## DECEMBER 31, 2003 AND 2004

right was valued at $3 million by PST Holdings and is amortized over a 20 year period. PST owns approximately 10.8% of the outstanding shares of the Company. Due to the related party nature of this transaction, the share of earnings and losses from date of acquisition adjusted for related amortization taken by PST is recognized by the Company. However, the Company has discontinued using this equity method to account for its investment in PST since the investment was at zero value as of December 31, 2003 and 2004, respectively.

In June 2002, PST investors made loans to PST in order that PST could pay down amounts owed under its franchise agreement to the Company. In return, the Company guaranteed certain PST investors repayment of their loan if PST defaulted. Debt assumed by the Company on behalf of PST was due to the Company in full on October 1, 2003 but was never received. The Company has accrued $521,115 and $498,006 as a liability for these loans as of December 31, 2003 and 2004 respectively.

On March 27, 2003 BMTS and PST entered into an agreement that modified the distribution and licensing agreement by restricting the PST territory to France, Italy, Switzerland, Portugal and Spain. As a result, BMTS, GmbH assumed certain activities of PST relating to the operations in Germany and Austria effective April 1, 2003. Those territories, aforesaid, were on an exclusive basis to PST, however, all other countries including Germany and Austria were removed from the original agreement. The term was reduced to one year with one year extensions only if PST achieved certain minimum performance standards. On January 1, 2004, PST did not fulfill its agreement and all territories reverted back to the BMTS, GmbH.

NOTE 7 – NOTES PAYABLE

| Notes Payable consists of: | 2003 | 2004 |
|---|---|---|
| Note Payable, currently due with all unpaid interest payable at 8%. The Note is convertible into shares of the authorized but unissued Class A Common Stock. The Note is collateralized by certain patents and other intellectual property of the Company. | $ 100,000 | $ 100,000 |
| Note Payable, currently due with all unpaid interest payable at 8%. The Note is convertible into shares of the authorized but unissued Class A Common Stock. The Note is collateralized by certain patents and other intellectual property of the Company. | 50,000 | -0- |
| Notes payable, due upon demand with all unpaid Interest payable at 8% and is Collateralized by all assets of the Company. | 1,535,000 | 595,870 |
| Total Notes Payable | 1,685,000 | 695,870 |
| Less Current Portion | (1,685,000) | ( 695,870) |
| Total Long-Term Debt | $     -0- | $     -0- |

9

**BIO-MAGENTIC THERAPY SYSTEMS, INC. AND SUBSIDIARIES
NOTES TO CONSOLIDATED FINANCIAL STATEMENTS
DECEMBER 31, 2003 AND 2004**

NOTE 8 – STOCK OPTION PLANS

On September 30, 1994, the company established a non-qualified stock option plan. The plan was amended and restated on January 31, 1996 and again on May 21, 1997 to authorize the issuance of options to purchase up to 3,175,077 shares of common stock, subject to certain anti-

dilution requirements. Any option issued entitles the holder to purchase the shares of Class A common stock subject to the option at a purchase price of $1.85 per share. On April 8, 1997, the Company established the 1997 stock option plan. The 1997 stock option plan established the issuance of options to purchase up to 700,000 shares subject to certain dilution requirements. Options have been issued for the purchase of 3,285,635 shares as of December 31, 2003 and 2004. A total of  2,196,135 and 2,754,944 options have expired as of December 31, 2003 and 2004 respectively and 1,191 options have been exercised.

NOTE 9 – OPERATING LEASE

The Company leases office space, warehouse space, and equipment under operating leases that expire through 2008. Annual rent expense under these operating leases amounted to $163,424 and $529,297 for the years ended December 31, 2003 and 2004, respectively.

At December 31, 2004, the future minimum lease payments approximated the following:

|      |           |
|------|-----------|
| 2005 | $556,034  |
| 2006 | 481,443   |
| 2007 | 375,674   |
| 2008 | 259,500   |
| 2009 | 82        |

| Total future minimum lease payments | $ 1,672,733 |
|-------------------------------------|-------------|

NOTE 10 – DEFERRED COMPENSATION

The Company entered into an employment agreement with its chairman, which requires a minimum annual salary $250,000 for each of the years ended December 31, 2003 and 2004. The salary is payable $150,000 on an annualized bases and $100,000 payable at the discretion of the Company's board of directors. The Company has also deferred salary agreement with another officer in the amount of $20,000 annually. Any salary amounts not paid in the year earned, shall be carried forward to subsequent years and must be paid by the termination date of the agreement. Bonus amounts not paid in the current year are also carried forward. These unpaid obligations are recorded as deferred compensation. As of December 31, 2003 and 2004 deferred compensation was $656,261 and $826,261 respectively.

**BIO-MAGENTIC THERAPY SYSTEMS, INC. AND SUBSIDIARIES**
**NOTES TO CONSOLIDATED FINANCIAL STATEMENTS**
**DECEMBER 31, 2003 AND 2004**

NOTE 11 – INCOME TAXES

As of December 31, 2003 and 2004 the Company had net operating loss carryforwards available to offset future taxable income of approximately $6,300,000 and $3,900,000, respectively. These carryforwards begin to expire in 2011. Due to the uncertainty of the future utilization of these net operating losses, no deferred tax assets have been recorded.

NOTE 12 – LITIGATION SETTELEMENTS

In 2001, Eugene Heller, Magnetic Treatment Medical Services, P. C. and Magnetic Treatment Center, P.C. filed a lawsuit against the Company and Dr. Richard Markoll for monetary damages incurred as a result of the investigation by the United States Attorney's office for the District of Connecticut in regards to a possible Medicare/Medicaid violation. The Company has recorded $475,000 as an accrued liability to settle this matter.

In 2002 the Company settled a claim with a former clinic physician and agreed to pay a total of $62,000 in eight monthly payments beginning in October 2003. The unpaid balance of this claim was $34,000 and $0 as of December 31, 2003 and 2004 respectively.

NOTE 13 – RELATED PARTY RECEIVABLES

The Company has receivables due, for overhead charges, funds advanced, and sale of chipcards from Tinnitus Signal Medizin GmbH, Institute for Innovative Medizin GmbH (INFINOMED), and Innovatis EV in the amounts of 973,182 and $210,256 as of December 31, 2003 and 2004 respectively. An allowance for doubtful accounts of $393,079 and $210,256 was recorded as of December 31, 2003 and 2004 respectively.

The patents and trademarks developed by Tinnitus Signal Medizin, GmbH were transferred to BMTS, GmbH in 2004 for a purchase price of $621,930. The purchase price was calculated using the outstanding amounts due for overhead charges and funds advanced. Shareholders owning a substantial portion of the outstanding stock of the Company controlled this company until the end of 2004. All the shares of Tinnitus Signal Medizin, GmbH and Institute for Innovative Medizin, GmbH (INFINOMED) were transferred to BMTS, GmbH in 2005.

NOTE 14 – RESTATEMENT

An error resulting in the understatement of previously reported income for the year ended December 31, 2003 was discovered and accordingly, the accompanying 2003 financial statements have been restated to correct this error.

NOTE 15 – SUBSEQUENT EVENTS

Management believes that they will be successful in acquiring a portion of the 1,003,333 shares of BMTS, Inc. stock that PST holds in satisfaction of amounts owed. (See notes 3 and 6)

EXHIBIT B

# Sharpe Financial Network

P.O Box 10337 — Glendale, AZ 85318
Phone: (623) 934-1340 — Fax: (623) 934-9565

1/4/2006

P.O.Number:     06-Bio-M-1
Your Invoice #:

## Commercial Order To Purchase Equipment

**Payable To:**     Bio-Magnetic Therapy Systems Inc

                          ,

**For Delivery To:** Dana Browne
                          TheraVet Acres Rehabilitation and Fitness
                          1748 Kennedy Rd
                          Webster, NY  14580

### Equipment Leased

| Quantity | Description | Price |
|---|---|---|
| PST VET system Mark 2 | | |
| | Sub Total: | $28,400.00 |
| | Total for this order: | $28,400.00 |

This Purchase Order is applicable for 30 days from the date above unless otherwise notified.
Other terms and conditions to this purchase order are contained on the second page.
Please reference the above P.O. Number on your invoicing and documentation.
All invoices must be dated within 30 days of this purchase order.

Sharpe Financial Network

Patrick Sponsel / Vice President

EXHIBIT C



PRINCIPE DE VERGARA, 94
TELÉF. 91 563 12 52
28006 MADRID

REGISTRO MERCANTIL CENTRAL
SECCION DE DENOMINACIONES

## CERTIFICACION NO. 06100583

DON **Jose Luis Benavides del Rey**, Registrador Mercantil Central,
en base a lo interesado por:
— D/Da. **RICHARD MARKOLL**, fecha 05/04/2006 y numero de entrada 06101306,
en solicitud presentada con

**CERTIFICO:** Que NO FIGURA registrada la denominacion

### ### BIOMEDICAL CONSULTANTS, SOCIEDAD LIMITADA ###

En consecuencia, **QUEDA RESERVADA DICHA DENOMINACION** a favor del citado
interesado, por el plazo de quince meses a contar desde esta fecha, con-
forme a lo establecido en el articulo 412.1 del reglamento del Regis-
tro Mercantil.

Madrid, a Seis de Abril de Dos Mil Seis.

EL REGISTRADOR,

NOTA.- Esta certificacion tendra una vigencia, a efectos de otorgamiento
de escritura, de DOS MESES contados desde la fecha de su expedicion, de
conformidad a lo establecido en el art. 414.1 del Reglamento del Registro
Mercantil.