UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DURAVEST, INC., <br><br> Plaintiff, <br><br> v. <br><br> VISCARDI, A.G., WOLLMUTH MAHER & DEUTSCH, LLP, MASON H. DRAKE, ESQ., BRUCE O'DONNELL, CPA, BRUCE O'DONNELL CPA/PFS, P.A., BIOMEDICAL CONSULTANTS SL, RICHARD MARKOLL, and ERNESTINE BINDER MARKOLL, <br><br> Defendants. | Civil Action No. 07 Civ. 10590 (JSR) |

---

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF
DEFENDANTS BIOMEDICAL CONSULTANTS SL, RICHARD MARKOLL AND
ERNESTINE BINDER MARKOLL

---

CONNELL FOLEY LLP
Attorneys for Defendants Biomedical
  Consultants SL, Richard Markoll, and
  Ernestine Binder Markoll
85 Livingston Avenue
Roseland, New Jersey 07068
(973) 535-0500

*On the Brief*:
    Peter J. Pizzi
    Susan Kwiatkowski
    Christopher Hemrick

## TABLE OF CONTENTS

**Page**

STATEMENT OF FACTS ......................................................................................................... 1

LEGAL ARGUMENT............................................................................................................... 3

I.     THE COURT LACKS PERSONAL JURISDICTION OVER
RICHARD MARKOLL, ERNESTINE MARKOLL OR BCSL........................... 4

     A.     Facts Relating to the Lack of Contacts with New York .............................. 4

     B.     There Is No "Specific Jurisdiction" Over Richard or
Ernestine Markoll............................................................................................ 5

     C.     There Is No "General Jurisdiction" Over Richard or
Ernestine Markoll............................................................................................ 7

     D.     There Is No Jurisdiction Over BCSL............................................................ 8

II.     DURAVEST'S CLAIMS FOR FRAUD, SECURITIES FRAUD
AND NEGLIGENCE (FIRST, SIXTH AND EIGHTH CAUSES
OF ACTION) MUST BE DISMISSED.................................................................... 9

     A.     The Markolls Did Not Sign the Subscription Agreement or
the Representation Letter and Therefore Cannot be Liable
for Securities Fraud.......................................................................................... 9

     B.     The Complaint Fails to Satisfy the Heightened Pleading
Requirements for Fraud and Negligent Misrepresentation ...................... 10

     C.     The Complaint Fails to Meet the Other Elements of Fraud
and Misrepresentation.................................................................................. 14

          1.     The Complaint Fails to Allege Justifiable Reliance ..................... 14

          2.     Plaintiff's Cannot Satisfy the Loss Causation
Requirement............................................................................... 16

III.     DURAVEST'S SECTION 12 CLAIMS (SEVENTH CAUSE OF
ACTION) MUST BE DISMISSED BECAUSE SECTION 12
DOES NOT APPLY TO PRIVATE OFFERINGS OF
SECURITIES............................................................................................................ 18

IV.     DURAVEST'S RICO CLAIM (SECOND CAUSE OF ACTION)
FAILS BECAUSE DURAVEST CANNOT ALLEGE A
PATTERN OF RACKETEERING ACTIVITY AND BECAUSE
THE CLAIM IS BARRED BY PSLRA ............................................................... 18

**TABLE OF CONTENTS**(Continued)

**Page**

A.    DuraVest Failed to Allege a Pattern of Racketeering Activity .................................................................................. 18

B.    DuraVest's RICO Claim is Barred by PSLRA .......................................... 21

V.    DURAVEST'S CONVERSION CLAIM (THIRD CAUSE OF ACTION) SHOULD BE DISMISSED BECAUSE IT HAS NOT ALLEGED FACTS SHOWING IMPROPER MONETARY TRANSFERS ................................................................................................. 23

VI.    DURAVEST'S CLAIM FOR BREACH OF CONTRACT (FOURTH CAUSE OF ACTION) MUST BE DISMISSED BECAUSE THE ELEMENTS OF BREACH OF CONTRACT HAVE NOT BEEN ALLEGED .......................................................................... 24

CONCLUSION ...................................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112 (2d Cir. 1984)........... 16

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47 (2d Cir. 1995) ............................................. 11

*Adams v. Central Fidelity*, 1995 WL 1044893 (Va.Cir.Ct. June 19, 1995) ................................ 14

*American Sur. Co. v. Hannah*, 143 Va. 291, 130 S.E. 411 (1925) ................................. 15

*ATSI Communications, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ...................... 10

*Bald Eagle Area Sch. Dist. V. Keystone Financial, Inc.*, 189 F.3d 321 (3d Cir. 1999).......... 19, 22

*Blythe v. Deutsche Bank A.G.*, 399 F. Supp. 2d 274 (S.D.N.Y. 2005) .................................. 19, 22

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) .................................................. 1, 2

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229 (2d Cir. 1999)............. 19, 20, 21

*Congress Fin. Corp. v. John Morrell & Co.*, 790 F. Supp. 459 (S.D.N.Y. 1992)........................... 14

*Congress Financial Corp. v. John Morrell & Co.*, 790 F.Supp. 459 (S.D.N.Y. 1992).......... 14, 16

*Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989) .............................................................. 10

*Credit Corp. v. Kaplan*, 198 Va. 67, 92 S.E.2d 359 (1956)........................................... 23

*De Falco v. Bernas*, 244 F.3d 286 (2d Cir. 2001) ....................................................... 19

*Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005)...................................................... 14

*Evaluation Research Corp. v. Alequin*, 247 Va. 143, 439 S.E.2d 387 (1994)........................... 15

*Feigenbaum v. Marble of America, Inc.*, 735 F.Supp. 79 (S.D.N.Y. 1990) ................................ 11

*Fezzani v. Bear, Stearns & Co., Inc.*, 2005 WL 500377 (S.D.N.Y. Mar. 2, 2005) ...................... 22

*First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159 (2d Cir. 2004)........ 19, 21

*Forgash v. Paley*, 659 F.Supp. 728 (S.D.N.Y. 1987) ..................................................... 7

*Gordon Partners v. Blumenthal*, No. 02 Civ. 7377(LAK), 2007 WL 1438753 (S.D.N.Y. May 16, 2007)................................................................................................. 17

## TABLE OF AUTHORITIES (Continued)

**Page**

*Gordonsville Energy, L.P. v. Virginia Elec. and Power Co.*, 257 Va. 344, 512 S.E.2d 811
(Va. 1999) ............................................................................................................... 16

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995) ............................................................ 18

*H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989) ................................ 19, 20

*Hamlet v. Hayes*, 273 Va. 437, 641 S.E.2d 115 (Va. 2007) ....................................... 24

*Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408 (1984) ................... 6

*Howard v. AOL, Inc.*, 208 F.3d 741 (9th Cir. 2000) ................................................... 22

*In re Crude Oil Commodity Litig.*, 2007 WL 1946553 (S.D.N.Y. June 28, 2007) ...................... 12

*In re Enron*, 284 F. Supp. 2d 511 (S.D. Tex. 2003) .................................................... 23

*In Re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472 (S.D.N.Y. 2005) ............................. 17

*Inn Chu Trading Co. v. Sara Lee Corp.*, 810 F.Supp. 501 (S.D.N.Y. 1992) ............... 11

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ......................................... 7

*Jacobs v. Felix Boch Erben Verlag fur Buhne Film und Funk KG*, 160 F.Supp.2d 722
(S.D.N.Y. 2001) ........................................................................................................ 7

*Kramer v. Vogl*, 17 N.Y.2d 27 (1966) ......................................................................... 5

*Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 918 F.2d 1039
(2d Cir. 1990) ........................................................................................................... 9

*Laufer v. Ostrow*, 55 N.Y.2d 305 (1982) ...................................................................... 7

*Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir. 2005) ........................ 16, 18

*Matter of Phoenix Ltd.*, 198 B.R. 78 (D. Del. 1996) ................................................... 13

*McGowan v. Smith*, 52 N.Y.2d 268 (1981) ........................................................... 5, 6, 9

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ......................... 7

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993) ................... 10, 11, 12, 19

*Montarino v. Consultant Eng'g Serv.*, 251 Va. 289, 467 S.E.2d 778 (1996) ............... 11

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ........................................................... 13

## TABLE OF AUTHORITIES (Continued)

**Page**

*O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674 (2d Cir. 1991).................................. 11

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 354 F.Supp.2d 357 (S.D.N.Y. 2005) ...................... 10

*PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105 (2d Cir. 1997) .................................................. 4, 5

*Plastwood Corp. v. Robinson*, No. 04 CV. 3214, 2004 WL 1933625 (S.D.N.Y. August 30, 2004)............................................................................................................. 5

*Regions Bank v. Wiedner & Mastroianni, P.C.*, 526 F.Supp.2d 411 (S.D.N.Y. 2007) ............... 23

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004)..................................................................... 10

*Saenger v. Presbyterian Church of Mount Kisco*, 1997 WL 742531 (S.D.N.Y. Dec. 1, 1997)............................................................................................................. 11

*Schlaifler v. Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91 (2d Cir. 1997) ...................... 19

*Shapiro v. Cantor*, 123 F.3d 717 (2d Cir. 1997)........................................................................ 9

*Siemens Westinghouse Power Corp. v. Dick Corp.*, 293 F.Supp.2d 336 (S.D.N.Y. 2003).......... 11

*Smith v. Kanter*, 273 A.D.2d 793 (4th Dept. 2000) ................................................................. 18

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178 (2d Cir. 2008) ........................... 20, 21

*Suez Equity Investors, L.P. v. Toronto Dominion Bank*, 250 F.3d 87 (2d Cir. 2001)............. 14, 16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ........................................... 1

*United States v. Turkette*, 452 U.S. 576 (1981) ........................................................................ 21

*Yung v. Lee*, 432 F.3d 142 (2d Cir. 2005)................................................................................ 18

**Statutes**

15 U.S.C. § 77(l)....................................................................................................................... 18

15 U.S.C. § 78u-4(b)(4) (2000) ................................................................................................ 17

18 U.S.C. § 1962(c) .................................................................................................................. 20

18 U.S.C. § 1964(c) .................................................................................................................. 22

18 U.S.C. §1961....................................................................................................................... 21

**TABLE OF AUTHORITIES** (Continued)

**Page**

**Other Authorities**

Pub. L. No. 104-67 § 107 ........................................................................... 20, 22

**Rules**

CPLR § 302 ........................................................................................... 4, 6, 8

CPLR § 302(a)(1) ................................................................................. 4, 5, 6, 9

CPLR § 302(a)(3)(i) ..................................................................................... 4

CPLR § 302(a)(3)(ii) .................................................................................... 4

Rule 9(b) ........................................................................................... passim

Rule 10b-5 ............................................................................................. 18

Rule 12(b)(6) ........................................................................................... 1

Rule 12(e) ............................................................................................ 25

Defendants Richard Markoll and Ernestine Markoll (collectively, "the Markolls") and defendant Biomedical Consultant SL ("BCSL") (collectively, "Movants") submit this memorandum in support of their motion pursuant to Rule 12(b)(2) to dismiss for lack of personal jurisdictional and pursuant to Rule 12(b)(6) motion for failure to state a claim upon which relief may be granted.

## STATEMENT OF FACTS

The facts pertinent to Movants' jurisdictional motions are set forth in the Declarations dated August 25, 2008 of Richard Markoll ("RM Decl.") and Ernestine Markoll ("EM Decl.") and the Affidavit of Barbara Thätig, dated April 8, 2008 [PACER Docket No. 36]. In summary, although Richard Markoll grew up in New York, he left the State in 1976 and has had no contact with New York meaningful for jurisdictional purposes since that year; neither Ernestine Markoll nor BCSL has ever had any contact with the State of New York meaningful for the purposes of personal jurisdiction; and, insofar as the claims in the Complaint are concerned, nothing took place in New York or otherwise relates to New York which could furnish a predicate for personal jurisdiction here over Movants.

Movants' Rule 12(b)(6) motion to dismiss rests upon the allegations in the Complaint, documents referenced in the Complaint, and documents of which judicial notice is appropriate.[1] Briefly, defendant Richard Markoll is the founder of Bio-Magnetic Therapy Systems, Inc. ("BMTS"), a privately-held Virginia corporation which, as of 2005, had principal offices at

---

[1] In ruling upon a Rule 12(b)(6) motion to dismiss a §10(b) action, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). *See also Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) (in ruling on a dismissal motion, court may consider the terms and effect of documents relied upon by plaintiff in drafting the complaint); *Barron Partners, LP v. Lab123, Inc.*, 2008 WL 2902187 (S.D.N.Y. July 25, 2008).

Kapellenweg 6, 81371 Munich, Germany, and engaged in the development of a process for the treatment of arthritic disease with pulsed electromagnetic fields (referred to as the PST technology). Complaint ("Compl."), ¶¶52, 157; DuraVest 12/1/2005 8-K at Item 1.01B, attached as Exhibit A to the Declaration of Peter J. Pizzi ("Pizzi Decl."). On November 25, 2005, plaintiff DuraVest, Inc. ("DuraVest") entered into an agreement to acquire the outstanding shares of BMTS. *Id.*[2]  Richard Markoll and Ernestine Binder Markoll were among the shareholders who sold BMTS shares to DuraVest. *Id.* Richard Markoll was BMTS's CEO at the time of the sale. *Id.* Defendant BCSL is a Spanish corporation which only first came into existence in April 2006 and had nothing to do with DuraVest's acquisition of BMTS. RM Decl. ¶31.

The Complaint is vague about the timing of DuraVest's acquisition of BMTS, suggesting that it took place over a period of six months "between November 2005 and April 2006." Compl. ¶2; see also ¶¶3, 7, 9, 55. DuraVest's contemporaneous SEC filings are more precise. Its tender offer to BMTS shareholders expired on December 28, 2005. Pizzi Decl. Exh. A. at Exhibit 12(d). DuraVest's February 27, 2006 8-K states that DuraVest acquired the required controlling interest in BMTS shares "in two stages in November and December 2005." Pizzi Decl. Exh. C at Item 1.01.

---

[2] Duravest's acquisition of BMTS was accomplished by the execution of a subscription agreement and related documents on November 25, 2005. *See* DuraVest Form 8-K filed December 1, 2005, (Pizzi Decl. Exh. A). That 8-K filing includes: Duravest's description of the BMTS transaction (Item 1.01); the Subscription Agreement dated November 25, 2005 (Exhibit 12(b)); the Representation Letter dated November 25, 2005 signed by BMTS (Exhibit 12(c)); and the tender offer for all outstanding BMTS shares (Exhibit 12(d)). The Representation Letter incorporates BMTS's 2003-2004 financial statement, which is attached as Exhibit A to the Declaration of Richard Markoll. Each of these documents is referenced in the Complaint or was necessarily relied upon by plaintiffs in preparing it. *See Chambers v. Time Warner, Inc.*, 282 F.3d at 152-153.

In January 2006, after the acquisition had been completed, DuraVest removed defendant Richard Markoll from any executive position at BMTS, as DuraVest's January 26, 2006 8-K reported. *See* DuraVest January 23, 2006 Press Release, Pizzi Decl. Exh. B at Exhibit 12(a).[3]

DuraVest's Complaint alleges that there were "wrongful pre-purchase representations" and seeks damages from Movants based upon claims for fraud, racketeering, and breach of contract, (First, Second, Sixth, Seventh and Eighth Causes of Action).  The Complaint asserts that there were five categories of wrongful representations: "Individual Professional Backgrounds and Criminal History;" "BMTS Intellectual Property 'Rights;'" "Clinical Studies and Results;" "BMTS Operating Income;" and "Loans Claimed from BMTS."  Complaint ¶¶65-88.  DuraVest also asserts a claim for conversion of amounts paid to Dr. Markoll in respective of deferred compensation disclosed in BMTS's financials (Third Cause of Action) and a claim for breach of a consulting agreement which Richard Markoll executed at the closing (Fourth Cause of Action).

## LEGAL ARGUMENT

The Markolls and BCSL adopt the discussion of the standard applicable to motions to dismiss contained in defendant Viscardi AG's April 7, 2008 Memorandum of Law, at 4-5.  The Markoll and BCSL also urge the Court not to exercise supplemental jurisdiction over the state law claims against them once the Court determines that dismissal of the federal law claims against Movants (Second, Sixth and Seventh Causes of Action) is appropriate.  *See* Point III of the O'Donnell Defendants' February 11, 2008 Memorandum of Law.

---

[3] The Complaint at ¶52 acknowledges that DuraVest removed Markoll as an executive after the acquisition, but contains what appears to be a typographical error, referencing January 2007 instead of January 2006.

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER RICHARD MARKOLL, ERNESTINE MARKOLL OR BCSL.

The Complaint must be dismissed as to the Markolls and BCSL for lack of personal jurisdiction under New York's "long-arm statute," Section 302 of the New York Civil Practice Law and Rules ("CPLR"), or consistent with the due process.[4]  Under CPLR §302, personal jurisdiction may be asserted over a non-resident defendant if either: (a) the defendant "transacts business" in New York and the claim against the defendant arises out of activity conducted in New York, *see* CPLR § 302(a)(1); or (b) the defendant causes actual injury in New York and the defendant either (i) "regularly does or solicits business, engages in any persistent course of conduct, or derives substantial revenue from goods or services in the forum state," CPLR §302(a)(3)(i), or (ii) "should reasonably expect the tortious act to have consequences in the state and derives substantial revenue from interstate or international commerce."  CPLR § 302(a)(3)(ii). As set forth *infra*, neither of those circumstances exists here.[5]

### A.   Facts Relating to the Lack of Contacts with New York

The Markoll Declarations show the following: (i) Richard and Ernestine Markoll currently reside in Spain at 5 El Greco, 07157 Puerto D'Andratx, EM Decl. ¶3, RM Decl. ¶3; (ii) since 1976, neither Richard Markoll has not resided, owned or leased real property in New York, or maintained an office or mailing address in New York, RM Decl. ¶¶9-11; (iii) since 1976, Mr. Markoll has maintained no telephone listing, bank account or any records, had no employees or agents or transacted, solicited, or advertised business in a personal capacity, and has not applied

---

[4] In diversity or federal question cases the court must look to the long arm statute of the forum state, in this instance, New York.  *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997).

[5] Defendant Viscardi AG's Memorandum contains an accurate discussion of constitutional principles applicable to the exercise of personal jurisdiction, at page 6.

for, received or maintained any permit or license in the State of New York, RM Decl. ¶¶11-19; (iv) Ernestine Markoll has never had a telephone listing, maintained a bank account, had employees or agents, transacted, solicited, or advertised business in a personal capacity, maintained any records, or applied for, received, or maintained any license or permit in the State of New York, EM Decl. ¶¶11-17; and (v) DuraVest, Inc. was a Florida corporation with its only office in Chicago, Illinois, RM Decl. ¶21. In addition, in relation to the transaction with DuraVest, due diligence, meetings, negotiations, execution and payment for the subscription agreement occurred in Germany and nothing occurred in New York. Thätig Aff. ¶13; RM Decl. ¶25.

### B.    There Is No "Specific Jurisdiction" Over Richard or Ernestine Markoll

Specific jurisdiction exists under CPLR § 302(a)(1)[6] when there is an adequate showing of a cause of action arising from the transaction of any business by the defendants in the forum state. *Kramer v. Vogl*, 17 N.Y.2d 27, 31 (1966) (holding cause of action did not arise out of sale of leather to plaintiff by Austrian defendants where leather was sold merchandise f.o.b., defendant had no sales, promotion, or advertising in New York, and plaintiff's purchase was small percent of defendant's total sales); *Plastwood Corp. v. Robinson*, No. 04 CV. 3214, 2004 WL 1933625 at *4 (S.D.N.Y. August 30, 2004).  Second, specific jurisdiction exists under CPLR § 302(a)(3) for a defendant's tortious injury outside the forum state that causes actual injury within the forum state. *See McGowan v. Smith*, 52 N.Y.2d 268 (1981), *Plastwood*, 2004 WL 1933625 at *5-6.  In addition, the plaintiff must show that the defendant regularly does or solicits business, engages in any persistent course of conduct, or derives substantial revenue from goods or services in the forum state. CPLR § 302(a)(3)(i).  In turn, due process is satisfied when specific jurisdiction is

---

[6] In diversity or federal question cases the court must look first to the long arm statute of the forum state, in this instance, New York.  *See PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 110 (2d Cir. 1997).

asserted over a defendant in a lawsuit that itself "is related to or 'arises out of' a defendant's contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).

Here, DuraVest cannot establish the prima facie elements required for personal jurisdiction under CPLR § 302(a)(1) and Due Process. First, while DuraVest alleges – without any factual foundation – that the Markolls conducted business in New York through BMTS, DuraVest has failed to identify any causal connection between any alleged New York business and the alleged tortious acts alleged in the Complaint. Instead, the alleged tortious acts occurred entirely in Europe. Thätig Aff. ¶13. Further, Richard Markoll permanently left New York in 1976, ceasing all business transactions in the State as of that date. RM Decl. ¶¶9-19. DuraVest's argument therefore fails to satisfy the threshold statutory and constitutional requirement that the alleged tortious acts arise from business transacted in New York, making inapplicable §302(a)(1).

Second, DuraVest fails to establish the requirements for personal jurisdiction under CPLR §302(a)(3). As a threshold matter, DuraVest's Complaint fails to allege direct local harm to any person or place in New York so as to show actual injury occurring in New York. *See McGowan v. Smith*, 52 N.Y.2d 268, 274 (1981) (provision inapplicable where there was no allegation the tortious conduct caused injury in New York and the accident site was Ontario, Canada). Similarly, DuraVest has not alleged any direct harm occurred within New York, and all of the alleged tortious acts, including negotiation and execution of the agreement, occurred in Europe. Thätig Aff. ¶13. Because there is no evidentiary basis of an actual injury in New York, DuraVest's claim of personal jurisdiction under §302(a)(3) fails. Even if an actual injury had been sufficiently alleged, the Complaint fails to claim that the Markolls ever received any revenue from any alleged business transactions in New York. Additionally, the Markolls' Declarations show

that they had no business contacts in New York during the relevant period.  RM Decl. ¶¶11-19, Ernestine Decl. ¶¶ 1-17.  The transaction, related conduct and the general activity of the Markolls occurred in Europe.  Thätig Aff. ¶13.  The allegations in the Complaint fall short of establishing any business, solicitation, conduct or substantial revenue from New York that would confer personal jurisdiction on the Markolls.  There is, therefore, no basis for asserting personal jurisdiction over Richard and Ernestine Markoll under CPLR §302(a)(1) or on a theory of "specific jurisdiction" under federal law.

> **C.     There Is No "General Jurisdiction" Over Richard or Ernestine Markoll**

There is also no basis for asserting jurisdiction over the Markolls on a theory of "general jurisdiction."  General jurisdiction in New York is proper where the defendant engaged in a "continuous and systematic course of 'doing business'."  *Laufer v. Ostrow*, 55 N.Y.2d 305, 309-10 (1982). The test examines the quality and nature of the defendant's contacts with the State to see if "traditional notions of fair play and substantial justice" require a finding of personal jurisdiction. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  New York courts have refused to find a defendant is "doing business" where certain factors are lacking, such as an office, solicitation of business, bank accounts, property, or employees in New York.  *Forgash v. Paley*, 659 F.Supp. 728, 730 (S.D.N.Y. 1987); *see also Jacobs v. Felix Boch Erben Verlag fur Buhne Film und Funk KG*, 160 F.Supp.2d 722 (S.D.N.Y. 2001) (German producers were not "doing business" during four to five business trips to New York a year that were incidental to and merely enhanced their business).  Further, the business must be fairly permanent and continuous.  *Id.*

Here, neither Richard nor Ernestine Markoll had an office, employees, solicitation or advertisement of business, bank accounts or any other type of property in the State of New York during the relevant time period of this Complaint.  *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996) (reasonable period for assessing defendant's contacts

with forum state was a period of seven years prior filing the complaint; other jurisdictions found five or six years to be reasonable); RM Decl. ¶¶11-19, EM Decl. ¶¶11-17.  Richard Markoll's last business contact in New York, unrelated to this suit, ceased in 1976, nearly thirty years prior to the filing of the Complaint. EM Decl. ¶¶8-17; RM Decl. ¶¶9-19.  Thus, even if the Court were to consider a reasonably long time period *prior* to the events alleged in the Complaint, there are no facts showing that either Richard or Ernestine Markoll conducted any business in New York, much less "continuous and systematic" business.  General jurisdiction is therefore inappropriate and the Complaint should be dismissed as to them.[7]

     **D.**     **There Is No Jurisdiction Over BCSL**

The same CPLR §302 and due process analysis defeats personal jurisdiction over BCSL. This corporation was formed in Spain on April 7, 2006, *see* RM Decl. Exh. C, RM Decl. ¶31, to collect payments (in Euros) due to defendant Richard Markoll under the December 29, 2005 Consulting Agreement with BMTS, Inc.  No payments were ever made by DuraVest to BCSL. Richard Decl. ¶31.  BCSL has never had any contacts with the State of New York of any kind.  *Id.* at ¶32.  DuraVest therefore cannot establish the prima facie elements required for personal jurisdiction under CPLR §302(a)(1) and due process as to BCSL. The Complaint falsely suggests that BCSL transacted business in New York *indirectly* by consulting for companies such as BMTS.  More than a decade ago, BMTS was briefly authorized to transact business in New York.

---

[7] Contrary to ¶7 of Mr. Hammje's Affidavit, at no time before the transaction with DuraVest, Inc. closed on December 30, 2005 did BMTS, Inc. "sell PST machine technology for veterinary use in the State of New York," nor did it sell "chip card products" in the State of New York.  Only *after* the closing of the transaction with DuraVest, Inc. did such a transaction take place.  Attached as Exhibit A to the Richard Markoll Declaration is a January 4, 2006 invoice to a New York veterinary clinic for the sale or lease of a PST machine.  This transaction has nothing to do with the allegations in the Complaint, occurred *after* that transaction closed, and does not support the exercise of personal jurisdiction over Richard Markoll or Ernestine Markoll, or the other defendants, for that matter.

In fact, no consulting ever took place between BMTS and BCSL, and BMTS never paid anything to BCSL.  RM Decl. ¶¶31.  Moreover, the Complaint has failed to identify any relationship between BMTS's alleged stale connections to New York decades ago and DuraVest's claims in this case. Therefore, even if BMTS and BCSL had engaged in business together, there would be no basis for jurisdiction in New York under CPLR §302(a)(1).   CPLR §302(a)(3) also does not apply because DuraVest fails to allege direct local harm to any person or place in New York.  *See McGowan v. Smith*, 52 N.Y.2d 268, 274 (N.Y. 1981). There is also no evidentiary basis of an actual injury in New York and, as such, DuraVest's claim of personal jurisdiction under §302(a)(3) fails because all of the alleged tortious acts, including negotiation and execution of the agreement, occurred in Europe.  Thätig Aff. ¶13. Additionally, the Complaint fails to specify any business activities or revenue earned by BCSL in New York.  In sum, there is no basis for asserting personal jurisdiction over BCSL under CPLR § 302(a)(1) or on a theory of "specific jurisdiction" under federal law.  Nor is BCSL subject to "general jurisdiction."  BCSL has never had an office, employees, solicitation or advertisement of business, bank accounts or any other type of property in the State of New York. RM Decl. at ¶32; *see Landoil Resources Corp. v. Alexander & Alexander Services, Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990).

## II.    DURAVEST'S CLAIMS FOR FRAUD, SECURITIES FRAUD AND NEGLIGENCE (FIRST, SIXTH AND EIGHTH CAUSES OF ACTION) MUST BE DISMISSED

### A.    The Markolls Did Not Sign the Subscription Agreement or the Representation Letter and Therefore Cannot be Liable for Securities Fraud

In order to state a claim for a primary securities violation, the misrepresentation must be attributed to the specific defendant at the time of dissemination.  *Shapiro v. Cantor*, 123 F.3d 717, 720-21 (2d Cir. 1997).  Neither the Subscription Agreement nor the Representation Letter was signed by Richard Markoll or by Ernestine Markoll individually, precluding a §10(b) claim

against either of them individually based upon those writings.  Moreover, in paragraph "4 e" of the

Subscription Agreement, DuraVest specifically denied that BMTS's employees, agents, officers or

directors made representations.  That provision reads:

> No representations or warranties, oral or otherwise, have been made to the undersigned by
> BMTS, or any officer, director, representative, agent, employee or affiliate of BMTS, or
> any other person.

While DuraVest alleges control person liability (¶207), for the reasons discussed below, no

colorable primary securities claim is alleged against BMTS, which is not a party to this action,

therefore precluding §20(a) liability against the Markolls.  *See Rombach v. Chang*, 355 F.3d 164,

177-178 (2d Cir. 2004).

### B.    The Complaint Fails to Satisfy the Heightened Pleading Requirements for Fraud and Negligent Misrepresentation

DuraVest's First Cause of Action asserts a claim for common law fraud.  The Sixth Cause

of Action attempts a securities fraud claim under §10(b) of the 1934 Act.  DuraVest's Eighth

Cause of Action, for negligent misrepresentation is based on alleged misstatements.  Under Rule

9(b), these fraud and negligent misrepresentation claims must: (1) specify the statements that the

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the

statements were made, and (4) explain why the statements were fraudulent. *Mills v. Polar*

*Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (fraud); *Cosmas v. Hassett*, 886 F.2d 8, 11

(2d Cir. 1989) (negligent misrepresentation). *See also Rombach v. Chang*, 355 F.3d 164, 171 (2d

Cir. 2004) (non-fraud claims that rely on averments of fraud are subject to Rule 9(b));

*OSRecovery, Inc. v. One Groupe Int'l, Inc.*, 354 F.Supp.2d 357, 379 (S.D.N.Y. 2005) (when

negligent misrepresentation claim sounds in fraud, by incorporating fraud allegations by reference,

it is subject to Rule 9(b)); *ATSI Communications, Inc. v. The Shaar Fund, Ltd.*, 493 F.3d 87, 99

(2d Cir. 2007) ("Securities fraud claims are subject to heightened pleading requirements."); *Acito*

*v. IMCERA Group, Inc.*, 47 F.3d 47, 53 (2d Cir. 1995); *Siemens Westinghouse Power Corp. v. Dick Corp.*, 293 F.Supp.2d 336, 343 (S.D.N.Y. 2003) (a negligent misrepresentation claim must "adequately specify the statements it claims were false or misleading… state when and where the statements were made, and identify those responsible for the statements"); *Montarino v. Consultant Eng'g Serv.*, 251 Va. 289, 295 467 S.E.2d 778, 782 (1996) ("a claim of fraud must be plead with particularity in order to allow the defendant to properly shape his defense.").[8]

The particularity requirement of Rule 9(b) serves to "provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991). State law fraud claims are subject to the same Rule 9(b) criteria as claims for securities fraud. *See Inn Chu Trading Co. v. Sara Lee Corp.*, 810 F.Supp. 501, 506-507 (S.D.N.Y. 1992); *Feigenbaum v. Marble of America, Inc.*, 735 F.Supp. 79, 82-83 (S.D.N.Y. 1990) (dismissing state law fraud claim pursuant to Rules 9(b), 12(b)(6)).

DuraVest's vague allegations are insufficient to meet the Rule 9(b) standard. DuraVest alludes to false statements throughout the Complaint, but fails to identify the specific statements made, the speaker or the dates and the locations when the statements were made. Claims lacking such specificity fail. *See Saenger v. Presbyterian Church of Mount Kisco*, 1997 WL 742531 at *5 (S.D.N.Y. Dec. 1, 1997) (Rule 9(b) not satisfied where the complaint failed to state the date on which the fraudulent statements were made); *Mills*, 12 F.3d at 1175 (plaintiff must specify what was false and why it was false).

Rather than identifying specific individual defendants responsible for particular misstatements, DuraVest's Complaint lumps together multiple defendants and attributes the

---

[8] The Subscription Agreement chooses Virginia law, at ¶7a.

alleged false and/or misleading statements collectively, a practice which fails to satisfy Rule 9(b). *In re Crude Oil Commodity Litig.*, 2007 WL 1946553 at *6 (S.D.N.Y. June 28, 2007) ("where multiple defendants are alleged to have committed fraud, the complaint must specifically allege fraud perpetrated by each defendant, and 'lumping' all defendants together fails to satisfy the particularity requirement").

Even in the portions of the Complaint in which Richard Markoll and Ernestine Markoll are singled out, DuraVest's claims still fail for lack of particularity. For example, DuraVest alleges in ¶¶89-90 of the Complaint that the November 28, 2005 BMTS Representation Letter, contained false statements, but the mere reference to this three-page document, coupled with the statement that it misrepresented BMTS's financial condition, related party transactions and pending claims, fails to satisfy the particularity requirements of Rule 9(b). *Mills*, 12 F.3d at 1175. The Complaint does not indicate what representations about the financial condition of BMTS were false, which paragraphs of the letter contained such representations, or why the alleged misstatements were false. Moreover, the Representation Letter was signed by BMTS only, and not by Richard Markoll or Ernestine Markoll. Nowhere does DuraVest present allegations which quantify the alleged misstatements or overstatement about BMTS, another fatal deficiency. *Gavish v. Revlon, Inc.*, 2004 WL 2210269 at *16 (S.D.N.Y. Sept. 30, 2004) ("although there is no numerical benchmark for assessing the materiality of misstatements in financial reports defendants … are still entitled to be apprised of the approximate amount of overstatement involved") (internal quotations omitted).

Likewise, the allegation of ¶84 that the financial statements were inconsistent with "GAP"[9] is insufficient under Rule 9(b). *Id.* at *12; *see also Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir.

---

[9] Presumably, this is a reference to Generally Accepted Accounting Procedures or "GAAP."

2000) (GAAP violations alone are insufficient to support a §10(b) claim; where coupled with corresponding evidence of fraudulent intent, they might be sufficient). Moreover, this allegation is patently frivolous given that the financial statements were compilation reports and not based upon an audit. RM Decl. Exh. A.[10]

At ¶80, DuraVest alleges that the Markolls "negligently, fraudulently and inaccurately misrepresented" that they "had participated in and conducted clinical trials of PST technology, and that such clinical trials proved and showed that PST Technology was effective for the purposes marketed by BMTS prior to the purchase." DuraVest claims that these representations were false and that there were "virtually no" reliable studies pertaining to PST technology. Once again, DuraVest fails to identify a date on which such representations were made, the substance of such representations, or which specific defendants made them. Moreover, DuraVest does not demonstrate how any of these alleged representations were false. No where does DuraVest identify any clinical study which the Markoll defendants allegedly told DuraVest had been conducted which had not, in fact, been conducted in the manner described.

The November 28, 2005 Representation Letter, moreover, is completely silent regarding the subject of clinical trials, which by itself negates DuraVest's claim that it relied on such representations at the time of purchase. The Subscription Agreement precludes reliance upon representations not expressly set forth. Pizzi Decl. Exh. A at Exhibit 12(b) at para. "e." Equally as significant, DuraVest never told its own shareholders anything about the state of BMTS's clinical trials except to point out that DuraVest – not BMTS – intended to finance *more* trials than BMTS

---

[10]  A compilation report provides no assurance of the accuracy of the financial information and is not is not necessarily in accordance with GAAP. *Matter of Phoenix Ltd.*, 198 B.R. 78 (D. Del. 1996).

had accomplished by the time of the acquisition.[11]  DuraVest's fraud and racketeering claim based upon representations about clinical trials is frivolous.

In ¶76, DuraVest alleges that the Markolls "concealed and/or failed to disclose one or more previously asserted competing claims to PST Technology, which were in derogation of BMTS' rights to own or use such technology on an exclusive or protectable basis." This claim suffers from the same infirmities discussed above.  No where does the Complaint identify the allegedly "competing claims" or the deficiency in the disclosures concerning BMTS's intellectual property rights.  For all these reasons, the First, Second, Sixth and Eighth Causes of Action must be dismissed.

### C.    The Complaint Fails to Meet the Other Elements of Fraud and Misrepresentation

The elements of common law fraud and securities fraud are the same: misrepresentation of a material fact, scienter, a connection with a securities sale, reliance, economic loss, and loss causation.  *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341 (2005); *Suez Equity Investors, L.P. v. Toronto Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001); *Adams v. Central Fidelity*, 1995 WL 1044893 at *2 (Va.Cir.Ct. June 19, 1995) (under Virginia law, a fraud claim "must set forth the misrepresentation; knowledge, if it is a claim for actual fraud; justifiable reliance; and injury to the plaintiff."). The failure of any single element of a claim for fraud or negligent misrepresentation will void the claim.  *Congress Fin. Corp. v. John Morrell & Co.*, 790 F. Supp. 459, 469 (S.D.N.Y. 1992).

### 1.    The Complaint Fails to Allege Justifiable Reliance

The fraud and negligent misrepresentation claims must be dismissed because DuraVest has failed to plead the element of justifiable reliance.  DuraVest cannot demonstrate any factors which

---

[11] Under the heading "Purpose of the Offer" the 8-K states: "To acquire a majority stake in the Company in combination with to capital increases to fund (among other) the US approval of  the PST Therapy and to finance further clinical trials."  Pizzi Decl. Exhibit A at page 21.

would establish justifiable reliance by a sophisticated investor. There is no indication that plaintiff was denied access to relevant information pertaining to BMTS, such as records of its patent and other IP holdings.  Moreover, allegedly withheld information about the Markolls, such as their past convictions, were matters of public record readily discoverable through the due diligence process.[12]

Under Virginia law, to establish constructive fraud, a plaintiff must show "that a false representation or a material fact was made innocently or negligently, and that the injured party was damaged as a result of his reliance upon the misrepresentation." *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994).  The defrauded party also must demonstrate the right to reasonably rely on the misrepresentation. *American Sur. Co. v. Hannah*, 143 Va. 291, 301, 130 S.E. 411, 414 (1925). To establish actual fraud, plaintiff must prove: "(1) a false representation, (2) of material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation*, 247 Va. at 148, 439 S.E.2d 387, 390.

DuraVest cannot allege justifiable reliance for numerous reasons.  The Subscription Agreement states: "The Subscriber recognizes that an investment in the Share is highly speculative and involves a substantial risk of loss of the entire investment and involves significant and material risks."

DuraVest's reliance was not justifiable given that DuraVest fails to allege that the company, a sophisticated investor, conducted any due diligence or sought out public information about BMTS in preparation for the transaction.  *See Gordonsville Energy, L.P. v. Virginia Elec.*

---

[12] *See U.S. v. Markoll*,  2001 WL 173763 (D. Conn. Jan. 24, 2001) and FDA article located at http://www.fda.gov/ora/about/enf_story/archive/2001/ch6/oci6.htm.

*and Power Co.*, 257 Va. 344, 356, 512 S.E.2d 811, 818 (Va. 1999) (finding no fraud established where a contract resulted from arms-length negotiations between sophisticated corporate entities represented by counsel). Had DuraVest conducted due diligence, it would have uncovered readily available public information which it claims the Markolls withheld. The Markolls were subject to no heightened duty to DuraVest in the transaction.

DuraVest does not and cannot contend that it conducted adequate due diligence which would reveal critical information. The allegedly material matters DuraVest claims were withheld were largely matters of public record that should have be discoverable by a sophisticated investor conducting due diligence.  There can be no justifiable reliance where the information that the plaintiff claims was concealed is a matter of public record.  *Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 113 (2d Cir. 1984). As such the fraud and negligent misrepresentation claims should be dismissed. *See Congress Financial Corp. v. John Morrell & Co.*, 790 F.Supp. 459, 479 (S.D.N.Y. 1992).

### 2.    Plaintiff's Cannot Satisfy the Loss Causation Requirement

Causation in a federal securities claim is a two-part analysis: transactional causation and loss causation.  *Suez*, 250 F.3d at 95.  A plaintiff must establish transactional causation or the "but for" cause.  *Id.* at 95-96.  The plaintiff must show that the fraud caused the plaintiff to enter into a transaction.  *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005); *Suez*, 250 F.3d at 95. The next element, loss causation, is the causal connection between the material misrepresentation and the loss suffered – the "proximate cause" of the legal injury.  *Dura*, 544 U.S. at 341, 346; *see* PSLRA, 15 U.S.C. §78u-4(b)(4) (2000) (proximate cause requirement as codified in the PSLRA).  The loss suffered by the plaintiff must be foreseeable and caused by the materialization of the harm from the misrepresentation.  *Lentell*, 396 F.3d at 173.  Economic loss has traditionally been "measured by the difference between the price at which a stock sold and the

price the stock would have sold absent the alleged misrepresentations or omissions." *Gordon Partners v. Blumenthal*, No. 02 Civ. 7377(LAK), 2007 WL 1438753, at *1 (S.D.N.Y. May 16, 2007).

DuraVest claims that matters allegedly concealed "were material to the value, or lack thereof, of the Purchase" (¶163) and that such concealment "hid the real and reasonable value of BMTS, INC., which was far less then the value professed by the MARKOLL Defendants" (¶207). It does not demonstrate any nexus between this vague allegation and the alleged concealed and misstated matters. In its Complaint, DuraVest contends that Richard Markoll held himself out as a medical doctor, when he was not "licensed to practice medicine in any State of the United States." (¶¶65-67). DuraVest also alleges that the Markolls (and Viscardi) stated that the Markolls had conducted clinical trials of PST technology when in fact "there were virtually no reliable clinical studies or clinical study results for PST Technology in existence prior to the Purchase." (Complaint at ¶¶80-81). No attempt is made to tie these accusations to any detriment allegedly suffered by DuraVest. DuraVest quite simply does not allege any loss causation. In fact, DuraVest does not even sufficiently assert transactional causation as it has not alleged facts showing that specific misrepresentations induced it to purchase BMTS shares. The Complaint alleges misrepresentations regarding Markoll's status as a medical doctor and clinical trials, but does not explain what these alleged misstatements have to do with any alleged loss.

DuraVest has not pleaded facts sufficient to establish loss causation under Rule 10b-5. "To plead loss causation, the complaint must allege facts that support an inference that [the defendant's] misstatements and omissions concealed the circumstances that bear upon the loss suffered such that plaintiffs would have been spared all or an ascertainable portion of that loss absent the fraud." *In Re Parmalat Sec. Litig.*, 376 F. Supp. 2d 472, 510 (S.D.N.Y. 2005). The

loss suffered by the plaintiff must be foreseeable and caused by the materialization of the harm which was not disclosed. *Lentell v. Merrill Lynch & Co.*, 369 F.3d 161, 173-74 (2d Cir. 2005). Here, the Complaint does not draw any connection between these allegations and the losses DuraVest claims it has suffered.

III.   **DURAVEST'S SECTION 12 CLAIMS (SEVENTH CAUSE OF ACTION) MUST BE DISMISSED BECAUSE SECTION 12 DOES NOT APPLY TO PRIVATE OFFERINGS OF SECURITIES**

Pursuant to §12 of the Securities Act of 1933, it is unlawful to sell a security in violation of Section 5 or to offer or sell a security by means of a prospectus containing an untrue statement. 15 U.S.C. §77(l). This provision only applies to public offerings of securities, and not to private transactions such as DuraVest's acquisition of BMTS. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 571 (1995); *Yung v. Lee*, 432 F.3d 142, 148 (2d Cir. 2005). Here, DuraVest and the shareholders of privately-held BMTS entered into a private transaction for the shares of BMTS stock. *See Smith v. Kanter*, 273 A.D.2d 793, 794 (4th Dept. 2000). DuraVest purchased the shares of BMTS stock pursuant to a negotiated subscription agreement where shares were offered to DuraVest alone.  For the foregoing reasons, the Seventh Count should be dismissed.

IV.   **DURAVEST'S RICO CLAIM (SECOND CAUSE OF ACTION) FAILS BECAUSE DURAVEST CANNOT ALLEGE A PATTERN OF RACKETEERING ACTIVITY AND BECAUSE THE CLAIM IS BARRED BY PSLRA**

A.   **DuraVest Failed to Allege a Pattern of Racketeering Activity**

There are multiple deficiencies in DuraVest's attempted RICO claim any one of which warrants a dismissal.  The most obvious deficiency, and one that cannot be cured by any re-pleading, is DuraVest's failure to allege the continuity necessary to adequately plead a "pattern" of racketeering activity.  To establish a pattern of racketeering activity under RICO, a plaintiff must show (1) that the defendant committed at least two acts of racketeering activity within a 10-year

period; (2) that the predicate acts of racketeering activity are related; and (3) that they amount to, or threaten the likelihood of, continued criminal activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 241-43 (1989); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999).  To satisfy the element of "continuity" necessary to plead the requisite "pattern" of racketeering activity, the plaintiff must plead facts sufficient to allege "either an 'open-ended' pattern of racketeering activity, (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a 'closed ended' pattern of racketeering activity (i.e., past criminal conduct 'extending over a substantial period of time')." *Schlaifler v. Nance & Co. v. Estate of Andy Warhol*, 119 F.3d 91, 97 (2d Cir. 1997); *Cofacredit*, 187 F.3d at 242.

Construing the RICO allegations most favorably to DuraVest, and putting aside DuraVest's failure to plead adequately even the *predicate acts* required to state a claim under 18 U.S.C. § 1962(c),[13] DuraVest's RICO claim must be dismissed because DuraVest has failed to

---

[13] Because Duravest's Complaint merges the O'Donnell, Viscardi and Markoll Defendants together in vague "joint and several" allegations of misconduct, *see* Compl. ¶180, it is not clear which *individual* actions of the Markolls Duravest is relying upon as constituting the "predicate acts" necessary to state a claim under RICO.  For this reason alone, Duravest's RICO claim should be dismissed. *See De Falco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) (holding that the requirements necessary to establish a civil RICO claim "must be established as to each individual defendant" and that the focus of 1962(c) is on individual as opposed to collective activities). Additionally, to the extent Duravest relies on its allegations of fraud as constituting a predicate act, its reliance is misplaced.  Because, throughout its Complaint, Duravest only vaguely alleges that false statements were made by the Defendants collectively, without ever supplying the *specific* statement, speaker, date or location of the statement, Duravest has failed to satisfy the heightened pleading requirement of Fed. R. Civ. P. 9(b) applicable to such allegations. *See First Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Moreover, as outlined by the Viscardi Defendants at pp. 10-11 of their Motion to Dismiss, and at Point IV B. of this brief, even if sufficiently plead, the fraudulent conduct alleged in Duravest's Complaint is barred, as a matter of law, from qualifying as a predicate act for the purposes of RICO because the alleged conduct both was and, in any event, could have been plead as securities fraud. *See* Pub. L. No. 104-67 § 107; *Bald Eagle Area Sch. Dist. V. Keystone Financial, Inc.*, 189 F.3d 321, 327 (3d Cir. 1999); *Blythe v. Deutsche Bank A.G.*, 399 F. Supp. 2d 274, 282 (S.D.N.Y. 2005).  As such, Duravest has failed to plead the

allege facts sufficient to support either an open-ended or closed-ended pattern of racketeering activity. With respect to closed-ended continuity, since the Supreme Court clarified the standard for establishing a "pattern" under RICO in *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229 (1989), the Second Circuit "has never held a period of less than two years to constitute a substantial period of time." *Cofacredit*, 187 F.3d at 242. While two years is not a bright-line requirement, "it will be rare that conduct persisting for a shorter period of time establishes closed ended continuity, particularly where '[t]he activities alleged involved only a handful of participants' and do not involve a 'complex, multi-faceted conspiracy.'" *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) (quoting *GICC Capital Corp. v. Technology Fin. Group*, 67 F.3d 463, 468 (2d Cir. 1995)).

Giving DuraVest the benefit of every doubt in its Complaint, the "pattern" of racketeering activity in which the Markoll Defendants are alleged to have engaged extends, at most, from May 31, 2005 through some undisclosed date "on or about April 2006," Compl. at ¶¶83, 86 and 98, a time-period of approximately eleven months.[14] Indeed, DuraVest expressly admits as much in ¶9 of its Complaint: "By and through the activities set forth herein... *between May 2005 and April 2006*, Defendants O'DONNELL, MR. MARKOLL, AND MRS. MARKOLL engaged in a pattern of racketeering activity in violation of [RICO.]" Compl. ¶9 (emphasis added). Thus, because this period is far shorter than two years, and the alleged racketeering activity "involved only a handful of participants" and did not involve a "complex, multi-faceted conspiracy," no closed-ended continuous period of racketeering activity has been plead. April 11, 2008 Memorandum Order of

---

required RICO predicate acts and its RICO claim against the Markoll Defendants must be dismissed.

[14] In fact, the time period was not longer than *six* months, ending in January 2006. *See* Statement of Facts at page 2, above.

Hon. Jed. S. Rakoff, U.S.D.J., 07 Civ. 10590, at 5-6 ["April 11 Order"] (quoting *Spool*, 520 F.3d at 184) (internal quotation marks omitted)).

DuraVest's Complaint similarly fails to plead an open-ended pattern of racketeering because DuraVest has not, and cannot, allege facts sufficient to show there is "a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit*, 187 F.3d at 242. As observed by this Court in dismissing the RICO claim as to the O'Donnell Defendants, the only plausible reading of the Complaint is that the "enterprise" was BMTS.[15] April 11, 2008 Order at 3, 6. Because BMTS is now under the control of DuraVest itself as a consequence of the purchase that was consummated no later than April 2006, DuraVest cannot plead facts sufficient to demonstrate a threat of continuing criminal activity by the enterprise. DuraVest's RICO claim must be dismissed.

**B.      DuraVest's RICO Claim is Barred by PSLRA**

Section 107 of PSLRA expressly amended the federal RICO statute to *prohibit* conduct actionable as securities fraud from constituting a predicate act. *See* Pub. L. No. 104-67 § 107. Following the amendment, which became effective on December 22, 1995, the RICO statute excludes "conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c) (emphasis added). This prohibition operates to preclude RICO claims based on conduct actionable as securities fraud regardless of how they are nominally plead. The purpose of the PSLRA amendment was not only to bar RICO actions expressly predicated on alleged acts of securities fraud, "but also to prevent a plaintiff

---

[15] As this Court aptly stated in resolving the O'Donnell Defendants' Motion to Dismiss, "if the enterprise were anything other than BMTS, such as 'a group of individuals associated in fact although not a legal entity,' 18 U.S.C. §1961, the Complaint would have to plead the basis for such an enterprise," *see, e.g., United States v. Turkette*, 452 U.S. 576, 580-93 (1981); *First Capital Asset Mgmt*. v. *Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004), and would be deficient for failing to do so." April 11 Order at 3, n.2.

from pleading other specified offenses, such as mail or wire fraud, as predicate action under civil RICO, if such offenses are based on conduct that would have been actionable as securities fraud." *Bald Eagle Area Sch. Dist. v. Keystone Financial, Inc.*, 189 F.3d 321, 327 (3d Cir. 1999) (emphasis added) (internal quotations omitted). Indeed, allowing such a surgical presentation of the cause of action would "undermine the congressional intent behind the RICO Amendment." *Blythe v. Deutsche Bank A.G.*, 399 F. Supp. 2d 274, 282 (S.D.N.Y. 2005).

Here, the fraudulent conduct in which the Markoll Defendants are alleged to have engaged both was and, in any event, could have been plead as securities fraud. *See* Compl. ¶¶203-218 (asserting claims for securities fraud based on same conduct underlying the RICO claim). Where a RICO claim and a securities fraud claim purport to rely on the same alleged conduct, the RICO claim is barred *per se* by PSLRA. *See Fezzani v. Bear, Stearns & Co., Inc.*, 2005 WL 500377, *5-6 (S.D.N.Y. Mar. 2, 2005) (dismissing RICO claim where plaintiff relied on the same factual allegations to support securities fraud and RICO claims and holding that "the RICO amendment does not require a particular plaintiff to have an actionable securities-fraud claim, but rather bars reliance on any conduct actionable as securities fraud").

Moreover, by contending that DuraVest's RICO claim is barred by PSLRA, the Markoll defendants are *not* conceding that DuraVest's securities fraud claims are adequately plead. On the contrary, as discussed at Point II, *supra*, DuraVest's claims sounding in securities fraud are fatally defective. As the case law makes clear, PSLRA precludes RICO claims based on predicate acts that *could* be alleged as securities fraud *regardless* of whether such claims are in fact actionable as securities fraud. *See Howard v. AOL, Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) (holding that the PSLRA's preclusion of RICO claims based on predicate acts that could have been alleged as securities fraud does not require that the plaintiff in fact have an actionable securities fraud claim);

*In re Enron*, 284 F. Supp. 2d 511, 620 (S.D. Tex. 2003) (holding that the PSLRA "bars claims based on conduct that *could* be actionable under the securities laws even when the plaintiff, himself, cannot bring a cause of action under the securities laws") (emphasis added).  Thus, the Markoll Defendants have not conceded that DuraVest's securities fraud claims are adequately plead, and any argument by DuraVest to the contrary is specious.

As a result of the foregoing, DuraVest's RICO claim is barred by the PSLRA.

## V.    DURAVEST'S CONVERSION CLAIM (THIRD CAUSE OF ACTION) SHOULD BE DISMISSED BECAUSE IT HAS NOT ALLEGED FACTS SHOWING IMPROPER MONETARY TRANSFERS

DuraVest's Complaint alleges that post-purchase monetary transfers to the Markolls served no legitimate business purpose and therefore constituted a conversion.  ¶187. In order to state a claim for conversion, a plaintiff must demonstrate "legal ownership of a specific identifiable piece of property and the defendant's exercise of dominion over or interference with the property in defiance of the plaintiff's rights." *Regions Bank v. Wiedner & Mastroianni, P.C.*, 526 F.Supp.2d 411, 413 (S.D.N.Y. 2007), *quoting Ahles v. Aztec Enters., Inc.*, 120 A.D.2d 903 (3d Dept. 1986) (New York); *Credit Corp. v. Kaplan*, 198 Va. 67, 75-76, 92 S.E.2d 359, 365 (1956) (conversion is the wrongful assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights).

The financial statements which DuraVest incorporated into its 8-K filing make clear that the Markolls were owed deferred compensation and bonuses. Note 10 states that "deferred compensation [for the "chairman"] was $656,261 and $826,261, respectively." The November 28, 2005 Representation Letter, at ¶(f), makes clear that "Proceeds" from the transaction will be used for the "payment of loans, advances, compensation (including, without limitation, deferred compensation) and/or bonuses to [the Markolls]" and adds that a "bonus of $50,000 for Dr. Markoll is noted for payment for 2005 bonuses as per his employment agreement."  Pizzi Decl.

Exh. D.  Because there is no factual allegation of wrongful interference, the conversion claim fails under Virginia law.

## VI.    DURAVEST'S CLAIM FOR BREACH OF CONTRACT (FOURTH CAUSE OF ACTION) MUST BE DISMISSED BECAUSE THE ELEMENTS OF BREACH OF CONTRACT HAVE NOT BEEN ALLEGED

The elements of a breach of contract claim are "(1) a legal obligation of a defendant to a plaintiff, (2) violation or breach of that obligation, and (3) consequential injury or damage to the plaintiff." *Hamlet v. Hayes*, 273 Va. 437, 442, 641 S.E.2d 115, 117 (Va. 2007), *citing Caudill v. Wise Rambler*, 210 Va. 11, 13, 168 S.E.3d 257, 259 (1969). Here, in its fourth cause of action, Duravest alleges that "[t]he MARKOLL Defendants' aforementioned contacts with, and aid to, competitors of BMTS, Inc. following the Purchase violated the terms and provisions of MR. MARKOLL's terms of employment with BMTS, INC., as set forth in a December 29, 2005 Consulting Agreement." Compl. ¶191.  Duravast also alleges that actions of the O'Donnell, Markoll and Viscardi Defendants leading up to the Purchase were in violation of the terms and conditions of that Purchase, and thus constituted breach of contract.  Compl. ¶ 192.

Duravest's vague and ambiguous allegations do not state a claim for breach of contact and too are vague to permit defendants to respond.  Neither Richard Markoll nor Ernestine Markoll were parties to the Subscription Agreement, which was between DuraVest and BMTS only, nor did they sign the Representation Letter, so no claim against them individually could lie for breach of these documents.  Duravest has failed to allege how the Markolls could have violated any cognizable contract in favor of DuraVest.  Duravest vaguely alludes the Markoll's alleged contact with third party competitors in ¶104 but does not allege any specifics. Duravest has not alleged any injury. Duravest has also not alleged and cannot demonstrate it has fulfilled its own obligations under the Consulting Agreement. To the contrary, Duravest failed to fulfill its obligations to compensate the Richard Markoll pursuant to the Consulting Agreement's terms.

Because Duravest has not sufficiently alleged a claim for breach of contract, this claim should be dismissed.  At a minimum, pursuant to Rule 12(e), the Markoll Defendants move for a more definite statement on this claim.

## **CONCLUSION**

For all of the foregoing reasons, the Complaint should be dismissed with prejudice and without leave to amend as to defendants Richard Markoll, Ernestine Markoll, and BCSL.  In the event the Court choose to reach, and dismiss, the federal law claims against Movants (Second, Sixth and Seventh Causes of Action) only, the Court should decline to exercise supplemental jurisdiction over the state law claims and dismiss the entire action.

CONNELL FOLEY LLP
Attorneys for Defendants Biomedical Consultants
SL, Richard Markoll, and Ernestine Binder Markoll


By:____/s/ Peter J. Pizzi_____
      Peter J. Pizzi
A Member of the Bar of this Court

DATED:  September 2, 2008